```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2

3  -------------------------------X
                                   :
4  UNITED STATES OF AMERICA,       :
                                   :  18-CR-00681 (WFK)
5            v.                    :
                                   :  January 2, 2019
6  JEAN BOUSTANI,                  :  Brooklyn, New York
                                   :
7                 Defendant.       :
                                   :
8  -------------------------------X

9
         TRANSCRIPT OF CRIMINAL CAUSE FOR INITIAL PRESENTMENT
10                  BEFORE THE HONORABLE PEGGY KUO
                    UNITED STATES MAGISTRATE JUDGE
11

12 APPEARANCES:

13
   For the Government:         UNITED STATES ATTORNEY
14                             BY:  MARK BINI, ESQ.
                                    MATTHEW AMATRUDA, ESQ.
15                             ASSISTANT U.S. ATTORNEY

16

17 For the Defendant:          MICHAEL SCHACTER, ESQ.
                               RANDALL JACKSON, ESQ.
18

19

20

21 Court Transcriber:          SHARI RIEMER, CET-805
                               TypeWrite Word Processing Service
22                             211 N. Milton Road
                               Saratoga Springs, New York 12866
23

24

25


   Proceedings recorded by electronic sound recording,
   transcript produced by transcription service
```

                                                                    2

 1   (Proceedings began at 4:16 p.m.)
 2              THE CLERK:  Criminal Cause for Arraignment, Case No.
 3   18-CR-681, United States v. Jean Boustani.
 4              Counsel, your name for the record.
 5              MR. BINI:  Mark Bini, Matthew Amatruda and Molly
 6   Maser for the United States.  Good afternoon, Your Honor.
 7              THE COURT:  Good afternoon.
 8              MR. SCHACTER:  Good afternoon, Your Honor.  Michael
 9   Schacter and Randall Jackson on behalf of Mr. Boustani.
10              THE COURT:  All right.  Mr. Boustani --
11              THE DEFENDANT:  Hello, Your Honor.
12              THE COURT:  Hello.  Mr. Boustani, you've been
13   charged in an indictment with conspiracy to commit wire fraud,
14   conspiracy to commit securities fraud, conspiracy to violate
15   the Foreign Corrupt Practices Act and type robbery and
16   internal controls provision and conspiracy to commit money
17   laundering.
18              Have you received a copy of the indictment?
19              THE DEFENDANT:  Yes, Your Honor.
20              THE COURT:  Did you have a chance to talk to your
21   lawyers about the indictment?  Yes?
22              THE DEFENDANT:  Yes, Your Honor.
23              THE COURT:  And you understand what you're being
24   charged with?
25              THE DEFENDANT:  Yes, Your Honor.

```
 1              THE COURT:  All right.  You have the right to an
 2   attorney.  If you can't afford one one will be appointed to
 3   represent you.  You also have the right to remain silent. You
 4   don't have to make any statements.  If you've made any
 5   statements in the past you don't have to make any more
 6   statements.  If in the future you start to make a statement
 7   you can stop at any time.  Any statements you do make could be
 8   used against you.  Do you understand?
 9              THE DEFENDANT:  Yes, Your Honor.
10              THE COURT:  As to -- yes.
11              MR. BINI:  I'm so sorry.  I should have made this
12   clear.  I know this is a lengthy redacted indictment.
13              THE COURT:  Yes.
14              MR. BINI:  With respect to Count 3, the defendant's
15   actually not charged with that FCPA conspiracy count.  So he
16   is charged with Counts 1, 2 and 4.
17              THE COURT:  1, 2 and 4 only.  Okay.
18              MR. BINI:  Yes, Your Honor.
19              THE COURT:  So thank you for that correction.
20              So as to Counts 1, 2 and 4, which are the counts
21   that you've been charged in, how do you plead, guilty or not
22   guilty?
23              THE DEFENDANT:  Not guilty, Your Honor.
24              THE COURT:  So how do you want to proceed?
25              MR. BINI:  Your Honor, the parties have discussed
```

4

1  requesting an order of excludable delay which I would ask to
2  hand up at this time between now and January 23rd of this
3  year.  The case has been assigned to Judge Kuntz.  We've
4  checked with chambers but have not found a status date.
5  However, the parties in order to begin discovery in the case
6  and to start plea negotiations would ask for an order of
7  excludable delay between now and January 23rd of this year.
8             THE COURT:  Mr. Schacter.
9             MR. SCHACTER:  We consent to that, Your Honor.
10            THE COURT:  All right.  So, Mr. Boustani, under the
11 Speedy Trial Act you're entitled to have a trial within 70
12 days.  Your lawyers and the lawyer for the Government, lawyers
13 for the Government, have agreed not to count the time between
14 today and January 23rd because they need more time to talk
15 about your case and see if you can resolve it without a trial.
16 Do you want to have the time between now and January 23rd
17 excluded and not counted in those 70 days?
18            THE DEFENDANT:  Yes.  Yes, Your Honor.
19            THE COURT:  Yes.  All right.  So I have this
20 application.  It looks like you signed it.  Is that your
21 signature?
22            THE DEFENDANT:  Yes.  Yes, Your Honor.
23            THE COURT:  Yes.  All right.  And it also looks like
24 Mr. Bini has signed it and also counsel for defendant.
25            So I find that the ends of justice are served by

1  excluding the time between now and January 23rd for purposes
2  of the Speedy Trial Act and therefore I will sign this order.
3           So is there anything else that we need to take care
4  of today?
5           MR. BINI:  Your Honor, the Government would ask for
6  an order of detention at this time based upon the flight risk,
7  the defendant's lack of ties to the jurisdiction outside of
8  the fraud charged and I understand that at this time defense
9  counsel does not yet have a bail package that they wish to
10 present.
11          MR. SCHACTER:  Actually, Your Honor, we haven't
12 reached agreement with the Government with respect to a bail
13 package but we do have one that we would like to present to
14 Your Honor.
15          THE COURT:  Right now?
16          MR. SCHACTER:  Right now.
17          THE COURT:  Okay.  I don't have a Pretrial Services
18 Report.  Is there --
19              [Pause in proceedings.]
20          THE COURT:  So I don't know anything about this
21 case.
22          MR. SCHACTER:  We'll let it fly then, Your Honor.
23 Your Honor, the Government is absolutely correct that Mr.
24 Boustani does not have ties to the United States.  He is a
25 citizen of Lebanon, also resides in Abu Dhabi and was also

6

1  sort of -- he was arrested yesterday in the Dominican Republic
2  and his connections to -- the jurisdiction on nexus of this
3  case to the United States we would submit is pretty limited
4  and Mr. Boustani's connection to any allegations in the case
5  that have anything to do with the United States is also pretty
6  limited.  So he is in a bit of a conundrum because he faces
7  charges that have with respect to him have very little to do
8  with the United States and so it is [inaudible] that his
9  connections to the United States would be of course limited.
10             So we are then given the task of how do we
11 [inaudible] together something that can provide Your Honor
12 with some degree of comfort or sufficient comfort that he will
13 return to respond to these charges.
14             So understanding that, we would like Your Honor to
15 consider the following.  Mr. Boustani would during the
16 pendency of this case maintain residency in the United States.
17 Electronic monitoring would be acceptable.  He has a wife and
18 young child who he would have move here during the pendency of
19 the case and he would post a very substantial collateral of $2
20 million to secure the bond, whatever bond needs to be
21 [inaudible].  We don't care about the size of the bond that
22 would be secured by the $2 million in cash.
23             We think that those combination of conditions with
24 his travel restricted just to the Southern and Eastern
25 Districts of New York with him only being permitted to leave

1  that residence in order to meet with his lawyers and with that
2  [inaudible] collateral should give the Court sufficient
3  comfort that he will respond to answer these charges.  And
4  that is our proposal.
5           THE COURT:  You said he doesn't have a residence in
6  the United States.  So where would that be?
7           MR. SCHACTER:  He would need to -- we would need to
8  posthaste, and we did not know that this was coming and he
9  would need posthaste bond, some kind of corporate apartment so
10 that he could live here.
11          THE COURT:  How would he do -- I mean he doesn't
12 have any ties here.
13          MR. SCHACTER:  That can be part of our legal
14 services that we can provide is to find a residence for him
15 and then he would stay there with electronic monitoring and
16 cash.
17          It seems unfair, Your Honor, that he -- you have a
18 man that has very little to do with the United States that
19 finds himself charged with what are pretty -- I'm not going to
20 say aggressive but there -- it is a broad interpretation of
21 these statutes that have any nexus between Mr. Boustani and
22 the United States and then when he is whisked here to keep him
23 detained in prison during the pendency of the trial because it
24 turns out he's got nothing to do with the United States.  That
25 seems unfair.

8

1          So we think that there should be a combination of
2  conditions that allows this person to answer these charges
3  that don't have much to do with the United States in a way
4  that doesn't result in him already serving his sentence during
5  the pendency of these charges.
6          THE COURT:  Well, but I have -- under the Bail
7  Reform Act I have to find that he does not pose a danger to
8  the community and that he's not a flight risk.  Given his lack
9  of ties to this jurisdiction it seems like he's a pretty
10 strong flight risk.
11         MR. SCHACTER:  I don't believe --
12         THE COURT:  So notwithstanding the merits of your
13 arguments I'm really not supposed to look at the merits.  I'm
14 supposed to be looking at just your client's situation and
15 whether he poses a risk of flight and given that he seems to
16 be a person of means, he doesn't have ties to the community
17 and it seems like he's a pretty high flight risk --
18         MR. SCHACTER:  I certainly understand that and I do
19 not disagree that given his lack of ties to the United States
20 that from the Court's perspective there's a concern that he's
21 a flight risk.  It's our job to try to persuade the Court but
22 there can be conditions that will give the Court comfort that
23 he is -- that that risk is sufficiently mitigated, and that's
24 what we're trying to do.
25         We think if he has a -- we would propose, and it

```
 1   doesn't even need to be today, Your Honor, that if -- that the
 2   moment that he has residency where he can set up electronic
 3   monitoring with a bond of -- pick a number, $5 million, $10
 4   million secured by $2 million in cash, the minute that is
 5   deposited with the Court that that should give the Court at
 6   that point that -- that those -- once those conditions are met
 7   that that should be the conditions that should permit his
 8   release.
 9               THE COURT:  And normally the residence has to be
10   approved by Pretrial Services and at the moment no one knows
11   where that exactly would be and whether it would be
12   appropriate for him to be there at all --
13               MR. SCHACTER:  That would be our job.  It would be
14   our job to find a residence that would be sufficient to
15   satisfy Pretrial that they can set up electronic monitoring
16   there and that would be one of the conditions and upon our
17   satisfaction of those conditions that he secure his residence
18   that is satisfactory to Pretrial, to set up electronic
19   monitoring, travel restricted then to the Southern and Eastern
20   Districts of New York, surrender of all travel documents.  I
21   hadn't mentioned that earlier but of course that would be part
22   of the conditions, as well as the transfer of $2 million to
23   the Court.  It is our hope that would be sufficient.
24               THE COURT:  Let me hear from the Government.
25               MR. BINI:  Your Honor --
```

10

1  MR. SCHACTER:  I'm sorry, Your Honor.  Let me just
2  add one thing.  While this courthouse is very familiar with
3  very similar circumstances in the Fifa case there were the
4  arrests of probably a dozen foreign nationals and from -- from
5  all over and every single one was released on different
6  amounts of cash bail.  I can go through those circumstances
7  with Your Honor if I can reach for -- I have it with my
8  briefcase.
9  THE COURT:  Well, I don't know if I'm ready to hear
10 that.  Were they released on the promise that they would get
11 this -- a residence and all those other things or after that
12 was secured?
13 MR. SCHACTER:  I'm not asking for Mr. Boustani to be
14 released on the promise.  I'm asking that those conditions be
15 set today and that upon our satisfaction of those conditions
16 that he would be released upon the satisfaction of those
17 conditions.
18 THE COURT:  I understand. So let me hear from the
19 Government.
20 MR. BINI:  Thank you, Your Honor.  First let me just
21 say that the reason why we're here is because the defendant is
22 charged as a central figure in a $2 billion fraud scheme, the
23 defrauding of United States investors.
24 With respect to the flight risk, Your Honor, the
25 Government believes that the offer or the release conditions

11

set out by the defendant are not even concrete release conditions.  They are the promise of it's [inaudible] developing release conditions and that is certainly not sufficient in this case where the Government believes first the seriousness of the offense and the overwhelming evidence.

Second, the defendant's vast financial resources. much of which is proceeds of the charged crime.  He's actually charged in the indictment with having received more than $15 million from this fraud scheme.

And third, as defense counsel readily admits, he does not have other than this fraud connections to the Eastern District of New York.  In fact, he has extensive ties.  He's a citizen of Lebanon and the company from which he was working at Priv Invest or Priv Invest as I pronounce it, is based in the United Arab Emirates.  Neither Lebanon or the United Arab Emirates have extradition treaties with the United States, Your Honor.

In addition, he is closely connected to individuals at Priv Invest, including uncharged co-conspirators, and the head of Priv Invest is a billionaire.  So the defendant has access potentially not only to the resources in this case that he stole from investors including U.S. investors but the resources of a billionaire and to get to places from which he cannot be extradited.

For those reasons, Your Honor, and the lack of his

12

1   having any ties other than having stolen from investors in the
2   United States the Government believes that he should be
3   detained and at minimum there should be some extensive package
4   put before you that you can vet before you ever consider
5   releasing him.
6           THE COURT:  Okay.  So I don't think I'm ready to
7   release the defendant in this case.  If you do put together a
8   bail package that's very specific about where he'll be living,
9   who he'll be living with, the financial arrangements.  If you
10  want to put in case law or precedent in the Fifa case you can
11  feel free to do that but -- and the opportunity for Pretrial
12  Services to weigh in.  Certainly you can do that in the future
13  but today I don't think there's enough for me to release Mr.
14  Boustani.
15          So I'll put in a permanent order of detention but
16  with leave to reopen it once you put together a more concrete
17  package.
18          MR. SCHACTER:  Your Honor, we would return to Your
19  Honor with that package?
20          THE COURT:  Normally it goes to whoever is on duty.
21  So I'm here until Friday and then next week there will be
22  someone else and we rotate whoever is on criminal duty at that
23  point.
24          So is there anything else?
25          MR. BINI:  Your Honor, I would just note that

13

1  consular notification was made to Antigua and Barbuda because
2  the defendant holds a passport to that country and the
3  defendant indicated that he did not -- he indicated to the
4  agents that he did not want notification to Lebanon.  So no
5  notification was made to their consular.
6          THE COURT:  All right.  Thank you.  Is there
7  anything from the defense?
8          MR. SCHACTER:  Nothing further for today, Your
9  Honor.
10         THE COURT:  All right.  Thank you very much.
11 (Proceedings concluded at 4:31 p.m.)
12                       * * * * *

```
                                                                    14
 1       I certify that the foregoing is a court transcript from
 2  an electronic sound recording of the proceedings in the above-
 3  entitled matter.
 4
 5                              _____
 6                                    Shari Riemer, CET-805
 7  Dated:  January 4, 2019
```