# EXHIBIT B

```
                                                  Page 1
 1   UNITED STATES COURT OF APPEALS

 2   FOR THE SECOND DISTRICT

 3   Case# 19-344-cr

 4   --------------------------X

 5   UNITED STATES OF AMERICA

 6       -against-

 7   JEAN BOUSTANI,

 8       Also known as "Jean Boustany",

 9              Defendant.

10   --------------------------X

11

12   March 5, 2019

13

14

15

16

17

18

19

20

21

22   B E F O R E :

23   HON. ROBERT D. SACK

24   HON. REENA RAGGI

25   HON. SUSAN L. CARNEY
```

Page 32

```
 1          That's partly I guess because things
 2   are changing.  When this all started, there was
 3   the notion that you were going to wait for other
 4   co-defendants, and now, that's not the case.  But
 5   --
 6          MR. BINI:  Well, Your Honor, it
 7   depends.  For example, the Judge has said he's
 8   going to set his trial date.  It's possible that
 9   other co-defendants appear here in the next few
10   months, regardless.
11          HON. RONALD D. SACK:  It's possible and
12   you deal with it, if it happens.
13          MR. BINI:  Yes.
14          HON. REENA RAGGI:  That becomes
15   relevant though to, we asked you how quickly
16   you'd go to trial because if the Defendant is
17   going to get his trial very quickly, that may
18   assuage certain concerns that are viewed very
19   differently, if he's going to be in custody for
20   more than a year.
21          We've kept you past your time, but I
22   want to ask you a question about your case,
23   because the strength of the case is of course
24   another factor that was considered here.  What is
25   the security that was fraudulently offered to
```

```
                                      Page 33
 1    United States investors?

 2              MR. BINI:  Your Honor, the -- well, the

 3    security is the EMATUM security, which was a loan

 4    participation note.  This involves two syndicated

 5    loans and in the middle, there is a syndicated

 6    loan called Proindicus and one called MAM, and in

 7    the middle is a security.

 8              So the entire thing is a wire fraud,

 9    and the thing in the middle, EMATUM, was a

10    security.  It was a loan participation note that

11    was later sold as a Euro bond.

12              HON. REENA RAGGI:  Sold --

13              MR. BINI:  And these were sold to US

14    investors --

15              HON. REENA RAGGI:  And what's the

16    fraudulent statement material omission or

17    statement that was made to these investors?

18              MR. BINI:  The loan agreements for all

19    three of these loans, because these are

20    principally loans, indicated that the --

21              HON. REENA RAGGI:  I'm interested in

22    the security that was sold to US investors.

23              MR. BINI:  Yes, Your Honor.

24              HON. REENA RAGGI:  What's the false

25    statement or the fraudulent statement?
```

1              MR. BINI:  The false statement is the

2    use of proceeds and the explicit violation of an

3    anti-bribery provision that was in all these loan

4    agreements.  The loan agreements and the

5    materials that were marketed to investors claim

6    that this money would be used to pay for boats

7    and projects in Mozambique.

8              And the Government's indictment sets

9    out and its case will prove that in fact, those

10   prices were grossly inflated.  The $2 billion --

11             HON. REENA RAGGI:  I understand this.

12   I read the indictment.  But what's confusing to

13   me is, I thought from the indictment that the

14   money was loaned to Mozambique by the two

15   unidentified investment banks, who then created

16   securities that were offered to the American

17   public.  Is that not right?

18             MR. BINI:  It is, with respect to

19   EMATUM, which is a security, and the loan

20   participation notes.

21             HON. REENA RAGGI:  I'm just interested

22   in what --

23             MR. BINI:  Yes.

24             HON. REENA RAGGI:  -- we sold to US

25   investors, because that's the only basis for your

Page 35

1  bringing this charge in the United States, right?

2          MR. BINI:  Well, yes and no, as we also

3  set out, all of these loan agreements required

4  that the money be paid from and to bank accounts

5  in New York City.

6          HON. REENA RAGGI:  We'll get to that in

7  a minute.

8          MR. BINI:  And you have the investors -

9  -

10         HON. REENA RAGGI:  We'll get to that in

11  a minute.

12         MR. BINI:  Okay, yes.

13         HON. REENA RAGGI:  I want you to answer

14  my question.  To the extent that the US investors

15  were putting up their money, who did that money

16  go to?  I don't -- I didn't understand that their

17  money went to the Government in Mozambique, it

18  went to whoever loaned the money to the

19  Government in Mozambique, right?

20         MR. BINI:  It went to -- oftentimes, it

21  went to the New York City bank account to be

22  distributed to the -- to actually to the employer

23  for this Defendant, Mr. Boustani, Privinvest.  So

24  the money went to the bank, and then the bank

25  gave it directly to Privinvest, which was to --

Page 36

1          HON. REENA RAGGI:  Is Privinvest the

2    issuer of the security?

3          MR. BINI:  No, the issuer is --

4          HON. REENA RAGGI:  You've got a lengthy

5    indictment here.  I don't understand what the

6    security is or what the fraudulent statement is.

7    So there's pages and pages about what went on in

8    Mozambique, and you don't tell us what the

9    fraudulent security is.  I don't think you'd

10   satisfy this if this were a civil complaint on

11   what the fraud is in the instrument.

12         But that -- I think I've gotten enough

13   to get a sense of what your case is.  You're not

14   trying it here after all.  But with respect to

15   the money moving through US accounts, how did the

16   money moving through US accounts contribute to

17   the laundering or the fraud?

18         I mean, I thought it was coincidental,

19   and that under our case law, that wouldn't be

20   enough to give you jurisdiction in the United

21   States.  What are you going to rest it on?

22         MR. BINI:  Your Honor, among other

23   things, first of all, these are conspiracy

24   counts, and the investors were hundreds of

25   millions of dollars, the investments were sold

```
                                         Page 37
 1   into the United States.  And those money went
 2   through, again, bank accounts in New York --
 3           HON. REENA RAGGI:  Now I'm dealing with
 4   the transactions --
 5           MR. BINI:  Yes.
 6           HON. REENA RAGGI:  -- that don't
 7   involve the investors, but that involve the money
 8   moving among the confederates, which you, in your
 9   indictment highlight, went through US bank,
10   clearing banks.  And what's the case that allows
11   you to say that the fact that that money went
12   through US clearing banks is enough to give you
13   jurisdiction here in the United States?
14           MR. BINI:  The name escapes me, but I
15   know that there's the case where there's a
16   Southern District of New York case, where the
17   drug dealers are driving across the Goethals
18   Bridge.  And the communication in furtherance of
19   the conspiracy in the -- over the territorial
20   waters conveyed jurisdiction in the Southern
21   District of New York.
22           HON. REENA RAGGI:  (indiscernible) bank
23   clearing.  And that -- I mean, I assumed, since
24   this is the whole theory of your case, that
25   you've got legal support for this being enough to
```

Page 38

1    give you a hook in the United States --

2            MR. BINI:  Yes, Your Honor.  And the

3    wires did pass through the Eastern District of

4    New York in going to those correspondent bank

5    accounts.  And since the wires passed through, as

6    part of this, and frankly, these were all

7    denominated in US dollar accounts.  So this was

8    always conceived of and known by the co-

9    defendants that this in fact would occur.

10           HON. REENA RAGGI:  I suspect you'll

11   have some interesting litigation on all of this.

12   I don't want to hold you any more on bail --

13           HON. SUSAN L. CARNEY:  Let me ask just

14   -- let me just ask one, maybe -- so I just wanted

15   to make sure I understand.  Is it the

16   Government's position that there is no bail

17   package or condition of confinement package that

18   the Defendant can offer that would provide

19   reasonable assurance that he will appear in

20   Court?  None?  So there's no point in Mr. Jackson

21   going back to the District Court?  Is that your

22   position?

23           MR. BINI:  The Government's position is

24   is that there is no set of conditions that would

25   reasonably assure his appearance.  However, the