UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
UNITED STATES OF AMERICA,                                     :
                                                              :   No. 18-cr-681 (WFK)
              - against -                                     :
                                                              :   ECF Case
JEAN BOUSTANI, et al.,                                        :
                    Defendants.                               :
                                                              :   Dated:  July 8, 2019
                                                              :
------------------------------------------------------------- X

# DEFENDANT JEAN BOUSTANI'S
# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS
# MOTION FOR THE ISSUANCE OF A RULE 17(C) SUBPOENA TO ICE CANYON LLC

**WILLKIE FARR & GALLAGHER LLP**
Michael S. Schachter
Randall W. Jackson
Casey E. Donnelly
Philip F. DiSanto
787 Seventh Avenue
New York, New York 10019-6099
Phone:  (212) 728-8000
Email:  mschachter@willkie.com

*Attorneys for Defendant Jean Boustani*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...................................................................................................................................2

I.    THE PROPOSED SUBPOENA SATISFIES THE STANDARDS OF RULE 17(c). .........2

        A.    The Proposed Subpoena Seeks Vital Materials Which Have Not Already Been Produced. ...................................................................................................................2

        B.    The Proposed Subpoena Also Seeks Materials Which Were Not Requested By The Grand Jury Subpoena..........................................................................................6

        C.    The Proposed Subpoena Is Not Unduly Burdensome.............................................6

II.    THE GOVERNMENT LACKS STANDING TO CHALLENGE THE PROPOSED RULE 17(C) SUBPOENA..................................................................................................8

CONCLUSION................................................................................................................................10

## **TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*United States v. Barnes*,
    No. S9 04 CR 186 (SCR), 2008 WL 9359654 (S.D.N.Y. Apr. 2, 2008) ..................................

*United States v. Barnes*,
    560 F. App'x 36 (2d Cir. 2014) ................................................................................................

*United States* v. *Giampa*,
    No 92 Cr. 437 (PKL), 1992 WL 296440 (S.D.N.Y. Oct. 7, 1992) ..........................................

*United States v. Martoma,*
    962 F. Supp. 2d 602 (S.D.N.Y. 2013) .....................................................................................

*United States v. Nachamie*,
    91 F. Supp. 2d 552 (S.D.N.Y. 2000) .......................................................................................

*United States* v. *Nixon,*
    418 U.S. 683 (1974) ................................................................................................................

*United States v. Tucker*,
    249 F.R.D. 58 (S.D.N.Y. 2008) ...............................................................................................

Defendant Jean Boustani respectfully submits this reply memorandum of law in further support of his motion for the issuance of a Rule 17(c) subpoena to Ice Canyon LLC ("Ice Canyon").

## PRELIMINARY STATEMENT

The Government's Opposition does not contest that the Proposed Subpoena on its own appropriately seeks materials from Ice Canyon that are relevant, admissible and sufficiently defined, and therefore meets the standards for issuance of a Rule 17(c) subpoena. The Government's only objection to the Proposed Subpoena is that it is duplicative of material that the Government has already obtained through a grand jury subpoena (the "Grand Jury Subpoena") and produced to Mr. Boustani. (Gov. Br. 1 ("[b]ecause the documents … have already been produced to the defendant … the defendant has not met his burden to show that the documents … are not otherwise procurable by the exercise of due diligence")). The Government claims that Defendant's contention that Ice Canyon may possess relevant materials that have not already been produced is speculative and amounts to a "fishing expedition."

The Government is incorrect for three reasons. First, while the Government's Grand Jury Subpoena may indeed have been calculated to retrieve all relevant and admissible evidence, Ice Canyon did not comply with it. The defense's review of materials produced in discovery by other parties establishes that Ice Canyon failed to produce large swaths of relevant materials. The Court's issuance of a Rule 17(c) subpoena is now the only means of requiring Ice Canyon to make a complete production of its materials relating to its purchases of the Mozambique debt instruments. Second, the Proposed Subpoena requires no duplication of effort. It only seeks documents that were not already produced pursuant to the Grand Jury Subpoena. Third, the Government lacks standing to challenge the Proposed Subpoena to Ice Canyon, a third party. The Court should grant the Defendant's motion.

1

# ARGUMENT

## I. THE PROPOSED SUBPOENA SATISFIES THE STANDARDS OF RULE 17(c).

### A. The Proposed Subpoena Seeks Vital Materials Which Have Not Already Been Produced.

The core of the Government's opposition is that the Requested Documents are "otherwise procurable in advance of trial by the exercise of due diligence" because "any relevant and admissible materials sought by the defendant's Rule 17(c) subpoena were called for by the ICE Canyon [Grand Jury] Subpoena and the government has already produced these materials to the defendant." (Gov. Br. 5-6). The Government is correct that many of the documents sought by the Proposed Subpoena were in fact called for by the Ice Canyon Grand Jury Subpoena, but the Proposed Subpoena is nonetheless necessary because Ice Canyon did not fully comply with the Grand Jury Subpoena.

In response to the May 23, 2018 Grand Jury Subpoena, Ice Canyon made three separate, small productions that the Government in turn produced to Mr. Boustani on January 22, 2019 (18 documents), March 19, 2019 (28 documents), and July 1, 2019 (3 documents). The first Ice Canyon production, of just 18 documents, was comprised *exclusively* of various versions of the Proindicus and EMATUM loan documents and only *two* email communications from anyone at Ice Canyon. The second Ice Canyon production, of 28 documents, is comprised exclusively of email communications which appear to have been collected from just *two* custodians at Ice Canyon—Andrei Rodzianko and Nathan Sandler—notwithstanding the fact that those two custodians communicated about the Mozambique debt instruments with others at Ice Canyon including: Aneesh Partap, Joel Singson, Angela Kay, Barry An, Chrisy Eyster, Hector Rocha, Mai Yaari, Patrick Free, Ruman Ivanov, Shaun Park, Silvia Inzunza, Victor Tran, as well as the email account ICEResearch@canyonpartners.com. It does not appear that Ice Canyon

2

made any effort to collect documents created, sent or received by these other employees, unless those communications included Messrs. Rodzianko and Sandler (and it does not appear that it even produced a complete set of materials from those custodians). The third Ice Canyon production, of only 3 documents, includes two indenture agreements between Ice Canyon affiliated entities and Citibank and a spreadsheet of trade runs across different funds for Proindicus and EMATUM.

Ice Canyon's production was by no means complete. Although the Grand Jury Subpoena sought "[a]ll documents related in any way to ProIndicus, EMATUM, or MAM, including all documents related in any way to any loan, Loan Participation Note, bond, guarantee, derivative, insurance, or any other transaction concerning those entities," *see* Gov. Br. 2, Ice Canyon did not produce at least 65 responsive communications between Ice Canyon and Credit Suisse. The defense knows of Ice Canyon's failure to produce these responsive materials only because they were produced by Credit Suisse.

To illustrate Ice Canyon's failure to comply with this provision of the Grand Jury Subpoena, Mr. Boustani has attached three representative communications between Ice Canyon and Credit Suisse that are clearly responsive and were found only in Credit Suisse's production to the Government. Such communications include: (1) a March 25, 2013 email chain wherein Credit Suisse's Dominic Schultens sends Ice Canyon's Aneesh Partap legal opinions in support of the Proindicus loan as well as analyst reports on Mozambique from Fitch, S&P, and the Economist Intelligence Unit (EIU) (Ex. 1, DOJ0000168056); (2) a March 26, 2013 email chain wherein Schultens, Daniel Jurkowitz (Credit Suisse), and Partap discuss terms in the Proindicus facility agreement and Partap notes that the Ice Canyon funds are domiciled in Ireland (Ex. 2, DOJ0000168537); and (3) a December 5, 2014 email wherein Partap complains to Credit Suisse about the approval process for the Proindicus maturity date extension (Ex. 3, DOJ000194432).

3

Had Ice Canyon made a complete production, it too would have produced these responsive communications. It did not.

The complete absence of documents—during critical periods of time—from Ice Canyon's production also demonstrates that neither the Government nor the defense have a complete production from Ice Canyon. For example, the earliest document in Ice Canyon's largest production to the Government is dated October 21, 2013—more than *three months after* Ice Canyon committed $15 million to the Proindicus loan and *seven months after* Credit Suisse first contacted Ice Canyon about the transaction. In other words, Ice Canyon did not produce a single document created during this 10-month period, when it was evaluating and then deciding to purchase the Proindicus debt instrument. Although Ice Canyon purchased $11 million of the EMATUM LPNs in 2013, the word EMATUM hardly appears in any Ice Canyon produced document prior to 2016. Similarly, although Ice Canyon purchased $6.7 million of Mozambique Eurobonds in June and July of 2016, its production contains almost no references to it. Moreover, the productions by Ice Canyon are entirely devoid of *any* diligence communications or internal deliberations concerning Ice Canyon's purchase of these debt instruments. It defies belief that Ice Canyon would have only 49 relevant documents concerning the Mozambique Debt Instruments, despite its involvement in three of the four transactions at issue in this case.

These are not the only indicia of Ice Canyon's minimalist approach to the Grand Jury Subpoena. Rather than conducting a thorough search for responsive communications using a document review platform, it is evident from its production that Ice Canyon selectively identified the emails it wished to produce and forwarded them to counsel or someone who then forwarded them to the Government. Internal emails produced by Ice Canyon appear to have

4

been printed to PDF, with the top most email on nearly every chain appearing to be missing. (*See, e.g.,* Ex. 4, DOJ0002074279).

In short, the Requested Documents surely exist. The Requested Documents would have been a necessary component of any internal process that Ice Canyon must have undergone when deciding whether to invest in the Mozambique debt instruments. Ice Canyon made three relevant investment decisions. It purchased the Proindicus debt instrument in 2013. Later in 2013, it separately purchased the EMATUM LPNs. Years later, in the summer of 2016, Ice Canyon purchased the Mozambique Eurobonds. These debt purchases totaled over $30 million. The notion that Ice Canyon went through all of the necessary procedures leading up to such purchases and only generated 49 relevant documents is inconsistent with logic, experience, and common sense. Registered investment advisors do not decide to spend tens of millions of dollars to acquire debt obligations of state-owned companies in developing African countries without conducting *any* significant "due diligence" or having *any* significant "internal deliberations." (*See* Dkt. 92-1 at 2-3 (requesting such material)). And all registered investment advisers are required by law to maintain such records for review by the SEC under Rule 204-2(a)(7) of the Investment Advisers Act. Contrary to the Government's claim, there is nothing speculative about the defense's belief that Ice Canyon possesses relevant materials that it has not yet produced and this is no "fishing expedition."

To be clear, we do not mean to suggest that Ice Canyon intentionally defied the Grand Jury Subpoena. It may be that the Government permitted Ice Canyon to so limit the scope of its production or told Ice Canyon there was no need to conduct a thorough search for documents. But the Government cannot claim that the defense's request for a subpoena should be blocked based on the issuance of a Grand Jury Subpoena that was not complied with. Even if

5

the Government does not care that Ice Canyon's production is incomplete, this is a matter of the utmost importance to the Defendant. At this point, the issuance of a Rule 17(c) subpoena is the only means of obtaining a complete production from Ice Canyon.

### B. The Proposed Subpoena Also Seeks Materials Which Were Not Requested By The Grand Jury Subpoena.

The Government is also incorrect to say that "the Ice Canyon GJ Subpoena covered *all* of the categories of documents the defendant seeks through his Rule 17(c) subpoena." (*See* Gov. Br. 6 (emphasis added)). It did not. For example, nothing in the Grand Jury Subpoena is duplicative of Request No. 8 of the Proposed Subpoena—which calls for "[a]ll documents and communications concerning any insurance, derivative, direct or indirect hedge, or other financial product or structure to mitigate the risk of positions taken by any fund or related security managed by Ice Canyon LLC or issued by its affiliates in the Mozambique Debt Instruments." (Dkt. 92-1 at 5). Nor is anything in the Grand Jury Subpoena duplicative of Request No. 9 of the Proposed Subpoena—which calls for "[a]ll documents and communications concerning the Privinvest Group and Jean Boustani." (*Id.*). The Proposed Subpoena is also appropriate because it seeks additional categories of relevant materials that are different from the Grand Jury Subpoena.

### C. The Proposed Subpoena Is Not Unduly Burdensome.

The Proposed Subpoena would place little if any burden on Ice Canyon. In a footnote, the Government contested the defense's reliance on what it called the "more lenient" standard set forth in *United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008), but nonetheless claimed that the Proposed Subpoena did not meet the *Tucker* standard because it would be

6

"unduly burdensome."  (Gov. Br. 4 n.3).[1]  The Government did not even attempt to explain how or why the Proposed Subpoena is unduly burdensome.  Ice Canyon is a $2 billion hedge fund, and the Proposed Subpoena seeks documents relating to significant investment decisions that it made and must be able to readily retrieve.  Moreover, the Proposed Subpoena is plainly limited to documents that were *not* already produced to the Government, so it requires no duplication of effort.  (Dkt. 92-1 at 1 ("Documents responsive to this subpoena that were previously produced by Ice Canyon LLC to the United States Attorney's Office for the Eastern District of New York in response to a grand jury subpoena *do not need to be produced*.")) (emphasis added).

While compliance with the Proposed Subpoena may be a minor inconvenience, it cannot be considered unduly burdensome.  If, as the Government suggests, "the Ice Canyon GJ Subpoena covered *all* of the categories of documents the defendant seeks through his Rule 17(c) subpoena," Ice Canyon could simply reply that it has "no responsive documents."  If, however, the defense is correct that the Proposed Subpoena calls for additional material—either because the Requested Documents were not called for under the Grand Jury Subpoena or because Ice Canyon failed to produce such material in response to the Grand Jury subpoena—it should be produced promptly.  Notably, it is in the interests of judicial efficiency to resolve these issues now so as to avoid any delay in the trial that could result from having the existence of relevant, unproduced documents be revealed for the first time on cross examination of the Government's

---

[1] The Government is incorrect that *Tucker* should be rejected as offering a "more lenient" standard.  The district court in *Tucker* appropriately distilled *United States v. Nixon*, 418 U.S. 683 (1974). and other applicable Supreme Court precedent, and the Second Circuit has not expressly addressed the issue of what precise standard should apply.  *See United States v. Barnes*, 560 F. App'x 36, 40 (2d Cir. 2014) (declining to reach the issue).  Accordingly, *Tucker* represents helpful analysis and authority.  There is no binding authority to the contrary.

7

witness from Ice Canyon. In such a situation, a significant continuance would potentially be necessary.

Because (1) the Proposed Subpoena calls for material that is relevant, admissible, specifically defined, and not otherwise procurable through the exercise of due diligence; (2) it is apparent that Ice Canyon failed to produce large amounts of relevant and admissible material; and (3) the Proposed Subpoena would not be unduly burdensome on Ice Canyon—this Court should issue the Proposed Subpoena.

## II. THE GOVERNMENT LACKS STANDING TO CHALLENGE THE PROPOSED RULE 17(C) SUBPOENA.

Courts in the Second Circuit have stated that the Government has standing to challenge a Rule 17(c) subpoena directed to a non-party when the subpoenaed party authorizes the Government to assert his or her rights by request, by indicating its joinder in a motion to quash, or by forwarding responsive material to the Government. *See United States v. Martoma,* 962 F. Supp. 2d 602, 605 n.4 (S.D.N.Y. 2013) (collecting cases); *United States v. Barnes*, No. S9 04 CR 186 (SCR), 2008 WL 9359654, at *1 (S.D.N.Y. Apr. 2, 2008). Other courts have stated the Government has standing to quash a third-party subpoena where it has a "legitimate interest" of its own in quashing. For example, courts have stated that the Government has a "legitimate interest" in "preventing undue lengthening of the trial, undue harassment of its witness, and prejudicial over-emphasis on [the witness'] credibility." *United States* v. *Giampa*, No 92 Cr. 437 (PKL), 1992 WL 296440, at *1-2 (S.D.N.Y. Oct. 7, 1992) (quoting *United States* v. *Ranieri*, 670 F.2d 702, 712 (7th Cir. 1982)).

However, the "legitimate interests" test "cannot be applied uncritically." *United States v. Nachamie*, 91 F. Supp. 2d 552, 560 (S.D.N.Y. 2000) ("If the Government had standing to move to quash whenever a subpoena was served on a potential witness, then it could move to

8

quash virtually every Rule 17(c) subpoena merely by claiming that the recipient might become a witness."). Rather, "[a] party generally lacks standing to challenge a subpoena to a third party absent a claim of privilege or a proprietary interest in the subpoenaed matter." *Id.* at 558.

Here, there is no indication that Ice Canyon has authorized the Government to assert its rights. Nor does the Government identify a "legitimate interest" of its own sufficient to provide standing. The Government certainly does not have "a claim of privilege or proprietary interest in the subpoenaed matter." *Id*. Similarly, there is no basis for the Government to contend that it has standing in order to prevent an undue lengthening of the trial, undue harassment of its witness, or prejudicial overemphasis on the witnesses' credibility. *Id.* at 560. Rather, in light of the sheer similarity between the Government's Grand Jury Subpoena and Mr. Boustani's Proposed Subpoena, the Government cannot seriously contend that the Requested Documents are sought for any other purpose than to obtain relevant, admissible, and specifically defined material.

9

## **CONCLUSION**

This Court should grant the Defendant's motion and issue the Proposed Subpoena.


Dated:   New York, New York
         July 8, 2019


**WILLKIE FARR & GALLAGHER LLP**

By: /s/ Michael S. Schachter
    Michael S. Schachter
    Randall W. Jackson
    Casey E. Donnelly
    Philip F. DiSanto
    787 Seventh Avenue
    New York, New York 10019-6099
    Phone:  (212) 728-8000
    Email:  mschachter@willkie.com

   *Attorneys for Defendant Jean Boustani*

10