# Exhibit B

1

<pre>
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2
     - - - - - - - - - - - - - - X
3
     UNITED STATES OF AMERICA,      : 18-CR-00681(WFK)
4                                   :
                                    :
5                                   :
          -against-                 : United States Courthouse
6                                   : Brooklyn, New York
                                    :
7                                   :
                                    : Thursday, March 28, 2019
8    JEAN BOUSTANI,                 : 12:00 p.m.
                                    :
9            Defendant.             :
                                    :
10
     - - - - - - - - - - - - - - X
11

12
          TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
13        BEFORE THE HONORABLE WILLIAM FRANCIS KUNTZ, II
                     UNITED STATES DISTRICT JUDGE
14

15
                       A P P E A R A N C E S :
16
     For the Government:  RICHARD P. DONOGHUE, ESQ.
17                         United States Attorney
                           Eastern District of New York
18                          271 Cadman Plaza East
                            Brooklyn, New York 11201
19                         BY:  MATTHEW S. AMATRUDA, ESQ.
                                MARK E. BINI, ESQ.
20                              Assistant United States Attorneys

21                         UNITED STATES DEPARTMENT OF JUSTICE
                              Criminal Division
22                            1400 New York Avenue, NW
                              Suite 10424
23                            Washington, DC 20005
                           BY:  MARGARET MOESER, ESQ.
24                              DAVID M. FUHR, ESQ.

25
</pre>

```
                        Proceedings                    2
 1              A P P E A R A N C E S:  (Continued)

 2

 3
      For the Defendant:    WILLKIE FARR & GALLAGHER, LLP
 4                          787 Seventh Avenue
                            New York, New York 10019
 5                          BY:RANDALL W. JACKSON, ESQ.
                              MICHAEL S. SCHACHTER, ESQ.
 6                            CASEY E. DONNELLY, ESQ.

 7

 8

 9
      Court Reporter:  Stacy A. Mace, RMR, CRR, RPR, CCR
10                     Official Court Reporter
                       E-mail:  SMaceRPR@gmail.com
11    Proceedings recorded by computerized stenography.  Transcript
      produced by Computer-aided Transcription.
12

13

14

15

16                            ooo0ooo

17

18

19                       (In open court.)

20           THE COURTROOM DEPUTY:  All rise.

21           (Judge WILLIAM F. KUNTZ, II entered the courtroom.)

22           THE COURTROOM DEPUTY:  The Honorable William F.

23    Kuntz, II is now presiding.

24           Criminal cause for status conference, docket number

25    18-CR-681, USA versus Boustani, et al.
```

Proceedings                                         3

1            Counsel, please state your appearances for the

2    record and spell your first and your last names for the court

3    reporter.

4            (Defendant entered the courtroom.)

5            MR. AMATRUDA:  Matthew Amatruda for the United

6    States.  M-A-T-T-H-E-W, A-M-A-T-R-U-D-A.

7            Good afternoon, Your Honor.

8            THE COURT:  Good afternoon, Mr. Amatruda.  You may

9    be seated.

10            MR. AMATRUDA:  Thank you, Your Honor.

11            MR. BINI:  Mark Bini for the United States, M-A-R-K,

12    B-I-N-I.

13            THE COURT:  Good afternoon, Mr. Bini.  You may be

14    seated.

15            MS. MOESER:  Margaret Moeser for the United States.

16    M-A-R-G-A-R-E-T, M-O-E-S-E-R.

17            Good afternoon, Your Honor.

18            THE COURT:  You may be seated as well.  Good

19    afternoon.

20            MR. FUHR:  David Fuhr for the United States.

21    F-U-H-R.  Good afternoon.

22            THE COURT:  Good afternoon, sir.  You may be seated.

23            SPECIAL AGENT TASSONE:  Special Agent Angela Tassone

24    from the FBI.  T-A-S-S-O-N-E.

25            THE COURT:  And would you spell your name for the

```
                      Proceedings                    4
```

1   reporter:

2           SPECIAL AGENT TASSONE:  T-A-S-S-O-N-E.

3           THE COURT:  Good afternoon, Special Agent.  You may

4   be seated.

5           SPECIAL AGENT TASSONE:  Thank you.

6           SPECIAL AGENT HAQUE:  Special Agent Fatima Haque

7   with the FBI.  F-A-T-I-M-A, H-A-Q-U-E.

8           THE COURT:  Good afternoon, Special Agent.  You may

9   be seated.

10          MR. JACKSON:  Good afternoon, Your Honor.  Randall

11  Jackson on behalf of Mr. Boustani.  That's R-A-N-D-A-L-L,

12  J-A-C-K-S-O-N.

13          THE COURT:  Good afternoon, Mr. Jackson.  You may be

14  seated.

15          MR. SCHACHTER:  Good afternoon, Your Honor.  Michael

16  Schachter on behalf of Mr. Boustani.  It's Michael,

17  M-I-C-H-A-E-L; Schachter, S-C-H-A-C-H-T-E-R.

18          THE COURT:  Good afternoon.  You may be seated as

19  well.

20          THE DEFENDANT:  Good afternoon, Your Honor.  Jean

21  Boustani, J-E-A-N, B-O-U-S-T-A-N-I.

22          THE COURT:  Good afternoon, Mr. Boustani.  You may

23  be seated.

24          THE DEFENDANT:  Thank you.

25          MS. DONNELLY:  And I'm Casey Donnelly on behalf of

Proceedings                                          5

1  Mr. Boustani, C-A-S-E-Y, D-O-N-N-E-L-L-Y.

2         THE COURT:  Good afternoon.  You may be seated as

3  well.  Thank you.

4         We are here for a status conference in this action,

5  United States versus Boustani, 18-CR-681.  The defendant,

6  Mr. Boustani, who is present here today, is currently in

7  custody.

8         The background is as follows:

9         On December 18th of 2018 a grand jury of the United

10 States of America returned a four-count indictment against

11 this defendant and others charging:

12         1.  Conspiracy to commit wire fraud in violation of

13 Title 18 United States Code Section 1349;

14         2.  Conspiracy to commit securities fraud in

15 violation of Title 18 United States Code Section 371;

16         3.  Conspiracy to violate the FCPA anti-bribery and

17 internal controls provisions in violation of Title 18 United

18 States Code Section 371; and

19         4.  Conspiracy to commit money laundering in

20 violation of Title 18 United States Code Section 1956(h).

21         This defendant is charged with Counts 1, 2 and 4.

22         The indictment avers this defendant created, with

23 others, maritime projects as fronts to raise money to enrich

24 themselves and diverted, with others, portions of loan

25 proceeds to pay at least $20 million in bribes and kickbacks

Proceedings                                          6

1   to themselves, government officials in and of Mozambique, and

2   others.

3           On January 2nd of 2019, this defendant was arraigned

4   on the indictment before the Honorable Magistrate Judge Peggy

5   Kuo and the defendant pled not guilty to all charges set forth

6   in all counts.  Denying the defendant's first bail

7   application, Magistrate Judge Kuo ordered detention, but

8   granted the defendant leave to renew his bail application.

9           On January 8th of 2019 the defense appealed the

10  order of detention to this court.

11          On January 22nd of 2019 this Court held its first

12  status conference in this case.  The United States Government

13  reported it produced its first round of Rule 16 discovery,

14  including one million pages and bank records identifying what

15  it claimed were illegal transactions and expected and

16  anticipated it would be able to provide and would provide

17  additional discovery on or before February 1st of 2019.  The

18  Court designated the case complex and entered an order of

19  excludable delay.  The Court then heard oral argument on the

20  appeal of detention.  The Court reserved decision, and on

21  February 4th of 2019 this Court denied the defendant's motion

22  appealing the order of detention.

23          The defendant subsequently appealed that order to

24  the United States Court of Appeals of the Second Circuit.

25          On February 7th of 2019 this Court held its second

Proceedings                                  7

1   status conference in this case.  First, the Government

2   reported it had already produced and anticipated producing

3   hundreds of thousands of documents to complete its Rule 16

4   discovery obligations on or before March 31st of 2019.

5   Secondly, the Government discussed its progress on extraditing

6   the other defendants in this case.  The Government submitted

7   defendant Manuel Chang, C-H-A-N-G, to his formal extradition

8   to the South African government, which was expected to be

9   discussed at Defendant Chang's hearing on February 26th of

10  2019.  The Government also stated it did not know when the

11  extradition process in the United Kingdom would conclude.

12  Defense counsel advised the Court that it might take up to

13  three years for the defendants to be extradited from the

14  United Kingdom and there is the possibility Defendant Chang

15  will never be extradited from South Africa.  However, as the

16  United States Government conceded, at this point there are no

17  other defendants and the Government is prepared to proceed

18  without them.

19        The Court will commence trial of this action on

20  Monday, October 7th of 2019 at 9:30 a.m. in this courtroom.

21  Counsel should calendar that date and that time.

22        Finally, the defense counsel informed the Court that

23  he requested search items from the Government, that the

24  Government had failed to produce documents to the defense.

25  The Court ordered the parties to submit a joint briefing

Proceedings                                              8

1    schedule on the search terms in the event the parties failed

2    to reach an agreement on that issue.  Time was excluded in the

3    interest of justice to today's date, March 28th of 2019.

4             In a letter to the Court dated February 28th of 2019

5    the parties reported that they had resolved their issues

6    regarding the search terms.  The Government filed letters on

7    March 12th, 2019 and March 19th, 2019, March 21st of 2019 and

8    March 27th of 2019 stating it had produced additional Rule 16

9    discovery and requested reciprocal discovery from the

10   defendant.

11            On March 7th of 2019 the United States Court of

12   Appeals for the Second Circuit unanimously affirmed this

13   Court's order on the defendant's appeal of detention and

14   denied the defendant's appeal without prejudice to present a

15   further bail application before this Court in the first

16   instance.  The Second Circuit noted in the event the defendant

17   presents an amended bail package, the Government shall

18   continue to bear the burden of establishing by a preponderance

19   of the evidence that, one, the defendant presents an actual

20   risk of flight; and two, that no condition or combination of

21   conditions could be imposed that would reasonably assure his

22   presence in court.

23            On March 19th of 2019 defense counsel submitted an

24   amended bail package that includes the conditions described in

25   the initial bail application and proposes additional or

Proceedings                                    9

1   amended items as follows:

2           1.  A $20 million personal recognizance bond secured

3   by a $2 million in cash position from personal accounts and

4   $7 million in cash posted by defendant's father; amounting to

5   75 percent of the combined cash assets of the defendant and

6   his father;

7           2.  A waiver of extradition relinquishing his rights

8   to fight extradition to the United States from anywhere in the

9   world;

10          3.  The advancement of a year's worth of fees to

11  Guidepost or any private security firm designated by the

12  Government; and

13          4.  An agreement to revisit the bail package in the

14  event the defendant's co-defendants cannot afford private

15  security as a condition of release.

16          Defense counsel also argues the Government's case

17  against the defendant is "substantially flawed" because the

18  indictment impermissibly applies wire fraud and securities

19  fraud statutes to reach extraterritorial conduct lacking a

20  sufficient domestic nexus.  The defense asserts the securities

21  fraud statute does not extend to foreign securities trades

22  executed on foreign exchanges, even if purchased or sold by

23  American investors and even if some aspects of the transaction

24  occurred in the United States.  According to defense counsel,

25  in order to properly allege a domestic application of the wire

Proceedings                                    10

 1  fraud statute, the Government must show defendant committed a

 2  substantial portion of the conduct in the United States of

 3  America and that the conduct in the United States of America

 4  was integral to the commission of the scheme to defraud.

 5  Relying on the use of domestic wires is simply not enough.

 6  See the renewed application for bail at ECF number 54.

 7          On March 26th of 2019 the Government filed its

 8  response in opposition to the defendant's renewed bail

 9  application.  The Government averred defendant remained a

10  flight risk and asserts the amended bail application fails to

11  assure reasonably his appearance for the following reasons:

12          First, the amount of cash offered to secure his bond

13  stems from the charged criminal scheme, the source of funds,

14  as was questioned and raised by Judge Raggi of the Second

15  Circuit in the oral argument of the appeal.

16          Secondly, the waiver of extradition would have no

17  practical or binding effect because a waiver of extradition

18  does not compel the nation in which the defendant would find

19  himself to honor the waiver.

20          Third, the defendant's offer to advance a year's

21  worth of fees to Guidepost or any other security firm

22  designated by the Government would not alleviate the inherent

23  conflict of interest faced by private jailers paid by the

24  defendant or his employer who might be called upon to exert

25  force, perhaps up to and including deadly force, to stop the

1   defendant from an attempted escape.

2        Fourth, the agreement to revisit his proposed bail

3   conditions in the event his co-defendants were extradited to

4   the United States and detained upon the basis that they could

5   not afford private security would not prevent this defendant

6   from fleeing before any of his co-defendants arrived, should

7   that ever be the case.

8        The Government further argues its application of the

9   wire fraud and securities statutes is domestic.  In its view,

10  the Government actors, including the Securities Exchange

11  Commission and the Department of Justice, have

12  extraterritorial jurisdiction analogous to 304 jurisdiction of

13  bankruptcy courts over securities fraud violations where

14  significant conduct or foreseeable effects occur in the United

15  States of America.  Moreover, the conspiracy charged is

16  domestic because it encompasses purchases of loan

17  participation notes and bonds by investors physically present

18  in the United States.

19       Finally, the Government argues the focus of the wire

20  fraud statute in the use of wires, which in this case occurred

21  domestically in the United States and in New York City.  The

22  Government concludes that no combination of conditions will

23  reasonably assure the defendant's appearance in future court

24  proceedings.

25       Last evening the Court received, by way of ECF

Proceedings                                    12

1    filing, an eight-page letter from defense counsel.  The letter

2    makes the following points:

3              First, it alleges that the posting of a majority of

4    Mr. Boustani's and his father's assets provides sufficient

5    moral suasion to ensure Mr. Boustani's appearance.  Some

6    people don't think morality is what counts, it's getting

7    caught is what counts, but here we have the assertion of moral

8    suasion.

9              In any event, on page 3 of the letter, again, the

10   word moral force is used.  It says midway through the first

11   full paragraph:  It is hard to imagine a moral force more

12   compelling on Mr. Boustani than harm to those he loves most in

13   the world.

14             Page 3 also says further down that Mr. Boustani

15   presumed innocent; quite so.  But it also states his earnings

16   from his lawful employment should be presumed to be legitimate

17   funds.  That is not the position asserted by my learned Second

18   Circuit colleague Judge Raggi.  Because while it may or may

19   not be the issue, Judge Raggi made it clear at the oral

20   argument that the source of funds is an issue in this case

21   that is of importance to her and to the judges on the Second

22   Circuit who heard this case.  And as Judge Carney opined at

23   the time of the oral argument, it is clear that the question

24   of flight risk has not been sufficiently addressed to the

25   satisfaction of the Second Circuit at the time of the argument

Proceedings                                        13

1    to the Second Circuit.

2           The second point in the letter that came in last

3    night from the Willkie Farr law firm is the Government's

4    objections to Mr. Boustani's other additional conditions do

5    not satisfy its burden of proving that no conditions will

6    reasonably ensure Mr. Boustani's appearance.  And, again, they

7    pick on the issue of the waiver of extradition.  And, again,

8    the issue is the issue that was raised in response by the

9    Government as to whether or not a mere waiver by an individual

10   compels a government that does not have extradition with the

11   United States to extradite a citizen.  And as the Government

12   pointed out, undoubtedly, the waiver that is executed here

13   would at the time, if one was in a country and did not want to

14   be extradited from that country, the argument would be made

15   that the waiver was done under compulsion.  And in any event,

16   nations that decline to have extradition treaties with the

17   United States of America would certainly not be bound by any

18   signed document by this defendant.

19          Next is the statement that Mr. Boustani's challenge

20   to the indictments are not frivolous and militate in favor of

21   granting bail.  Obviously, subject matter jurisdiction cannot

22   be conferred to a limited jurisdiction court, such as this

23   district court, as an Article III court.  And the question of

24   whether or not there is subject matter jurisdiction is

25   certainly one that this Court will address.  There has,

1    obviously, been an alleged statement by the defendant with

2    respect to subject matter jurisdiction and the ubiquity of the

3    great American dollar worldwide.  The reality is that either

4    this Court has subject matter jurisdiction as a matter of law

5    or it does not.  But in any event, those are issues that I am

6    sure will be briefed before this Court and will be decided

7    before this Court.

8              So the trial is going to commence in this action at

9    9:30 a.m. on Monday, October 7th of this year.  We will pick

10   the jury here.  We will go directly to trial.  The amended

11   bail application is denied.  It is not sufficient.  This

12   defendant is still a flight risk.  I am not approving it.  The

13   defendant has not satisfied the moral issue, does not persuade

14   the Court, as is asserted by the Willkie Farr firm, and I do

15   not believe that putting people in countries that do not have

16   extradition with the United States in any way, shape or form

17   ensures that they will appear for trial.

18             Obviously, the Willkie Farr firm is absolutely free

19   to take an appeal, as they did before, with respect to this,

20   but I think the issues are important.  I think it is clear

21   that this defendant continues to be a flight risk.  I do not

22   think that the issues were adequately addressed, and I am not

23   persuaded by the moral suasion arguments that have come

24   forward by the Willkie Farr law firm in this case.

25             So having said that, I will now hear from the

Proceedings                                    15

1    Government, then I will hear from defense counsel.

2           MR. AMATRUDA:  Thank you, Your Honor.

3           Just to give -- I will give the Court an update on

4    two matters; one is discovery in the case.  The second are the

5    extradition proceedings related to the other defendants.

6           With respect to discovery, we have substantively

7    completed discovery in this case.  We produced what now

8    amounts to approximately 5 million pages of documents, that

9    translates into a million actual records.  Some of the records

10   are multiple pages.  That discovery includes e-mail accounts,

11   personal e-mail accounts on which the Government executed

12   search warrants, documents from victims, documents from

13   third-party witnesses, as well as from the investment banks

14   that arranged the underlying transactions.

15          Of course, our discovery obligations we understand

16   are ongoing.  And to that effect, we continue to scrub our

17   files to triple and quadruple check that we have produced

18   everything we are required to.  Obviously, if we have other

19   documents that we did not produce earlier that we realize we

20   should have, we will get those out right away.

21          There are a few, some categories or some documents

22   that continue to come in that somebody received in the interim

23   between the last two status conferences, and there may very

24   well be more that we receive in the interim and we will move

25   to produce those documents expeditiously and get those to

Proceedings                                    16

1    defense right away.

2           The last category is that there are some documents

3    that were tied up in privilege analysis in a filter process.

4    Obviously, the e-mail accounts, the personal e-mail accounts

5    we have contained some documents that were arguably

6    communications between the e-mail holders and their counsel,

7    and we have instituted a filter process.  And we are -- as we

8    get documents that are cleared through that filter process, we

9    are producing them as well.

10          THE COURT:  Do you have a separate taint team or are

11   the same lawyers reviewing for privilege as are trying the

12   case?

13          MR. AMATRUDA:  Thank you for clarifying, Your Honor.

14   There is a separate taint team who review those materials.

15          THE COURT:  That's important.  Go ahead.

16          MR. AMATRUDA:  So that is the status of discovery,

17   but I would like to emphasize that my latter points are simply

18   to say that inevitably there are things that we find, there

19   are things that come up that we will produce expeditiously,

20   but substantively in terms of the discovery in this case,

21   we're done.  We've produced -- we've produced with those, I

22   think, minor exceptions, we produced everything and the most

23   significant records that we're aware of.

24          So with respect to the extradition proceedings, the

25   defendant Manuel Chang remains detained in South Africa.

1   There is a hearing on April 8th to consider the merits of our

2   extradition request.  We are hoping, obviously, that we will

3   get a ruling quickly.  Procedurally after that we understand

4   there is another step to this that I am not -- we don't know

5   how long it will take, but that's where things stand with

6   that.

7            THE COURT:  That's separate and apart, though; as

8   you said earlier, you are ready to go to trial on this case?

9            MR. AMATRUDA:  Yes, Judge.

10           THE COURT:  You will be ready to go on October 7th?

11           MR. AMATRUDA:  That's exactly right, Judge.  We are

12  ready to proceed.  We will be -- you know, we will be here

13  April 7th -- I'm sorry, we will be here April 7th if the Court

14  wants us to be.

15           THE COURT:  October 7th.

16           MR. AMATRUDA:  We will be here October 7th.  But if

17  Mr. Chang shows up tomorrow, certainly we may ask the Court to

18  consider that, but we are not asking the Court to delay the

19  proceedings while we wait for extradition.

20           THE COURT:  That's good because the Court will not

21  do that.

22           MR. AMATRUDA:  And that certainly is what we would

23  expect, Your Honor.  We appreciate that.  And we are not --

24  we're not going to go there.

25           So in terms of the proceedings in the United

Proceedings                              18

1   Kingdom, the defendants have appeared.  We have filed our

2   extradition papers.  They've appeared.  There is the

3   proceedings or litigation that goes on with those, but as the

4   Court has said, the defense counsel has made clear we don't

5   know how long that's going to take.  Hopefully, it will be

6   fast, but --

7            THE COURT:  That's what they said about Brexit, so

8   you never know.

9            MR. AMATRUDA:  Yes, they have other things going on

10  over there, but we will keep the Court informed.  And we will

11  move forward in the interim with this case and, as I made

12  clear, we are ready to go forward with Mr. Boustani.

13           I think that is -- those are the only things that I

14  wanted to raise with the Court.

15           THE COURT:  I will urge the parties to put in a

16  briefing motion schedule.  If you cannot do it consensually, I

17  will impose one.  Now that you know the trial date, I think

18  you should work with defense counsel against a backdrop that

19  indicates if there are going to be motions to suppress or

20  other motions that need to be decided, and obviously you will

21  comply with the Court's individual rules for criminal trials,

22  but I just wanted to get you thinking about that sooner rather

23  than later.  All right?

24           MR. AMATRUDA:  Yes, and that's fine, Your Honor.

25  We've been able to work with defense counsel productively in

Proceedings                                    19

1    the past with regard to these things.

2            THE COURT:  Good.

3            MR. AMATRUDA:  I can't imagine that we're going to

4    have any issues figuring out a motion schedule.

5            THE COURT:  Thank you.

6            I will hear from defense counsel.

7            MR. SCHACHTER:  Your Honor, with respect to the

8    trial date --

9            THE COURT:  I'm sorry, would you just speak into the

10   microphone?

11           MR. SCHACHTER:  I'm sorry, yes, Your Honor.

12           With respect to the trial dates, I have a couple of

13   conflicts.

14           THE COURT:  I am sorry to hear that, but you know,

15   you are the ones who said you wanted to go to trial sooner

16   rather than later.  And I can ask the Government if they want

17   to go to trial sooner than October the 7th, but your

18   colleague, Mr. Jackson, talked about needing to get experts

19   and moving people in from around the world, so I thought

20   October 7th was a date that is far enough in the future for

21   you to prepare your defense adequately and for the prosecution

22   to go forward.  But if you want to start talking about August

23   dates, we can talk about August dates.

24           Would that be better for you?

25           MR. SCHACHTER:  It would, Your Honor.

Proceedings                                        20

1          THE COURT:  Do you want to go to trial on this case

2   in August?

3          MR. AMATRUDA:  Judge, I -- we certainly would be

4   ready whenever the Court would set the trial date.  However,

5   what I would say is that we would anticipate having some

6   legitimate difficulty with witnesses in the middle of August

7   obtaining their appearance.  Certainly, we'll be ready to go

8   whenever the Court sets.

9          THE COURT:  All right, well, I am going to stick

10  with October the 7th, but I will hear from defense counsel

11  about your scheduling problems.

12         MR. SCHACHTER:  Thank you, Your Honor, and I

13  apologize for needing to note this.

14         I have a criminal trial scheduled before Judge

15  Engelmayer on September 22nd that has already been scheduled,

16  as well as a criminal trial before Judge Koeltl on -- that's

17  scheduled for October the 25th.  And if it wasn't for set

18  criminal trial dates, believe me, Your Honor, I would not have

19  even mentioned them.

20         THE COURT:  Well, now you have another set criminal

21  trial date and my colleagues, Paul Engelmayer is a fine fellow

22  and I'm sure my colleague John Koeltl on the other side of the

23  harbor will understand that you cannot be there and certainly

24  the jury will understand that you can't be here during certain

25  parts the trial.

```
                    Proceedings                    21
```

1          MR. SCHACHTER:  So in light of those other trial

2     dates, Your Honor, and in light of the Government's

3     representation that it is ready for trial whenever the Court

4     sets it, we would ask if Your Honor could consider an earlier

5     trial date.

6          There are things to do in this case, but

7     particularly given Mr. Boustani's detention, we are anxious to

8     go to trial as swiftly as is humanly possible.

9          And so we understand that Your Honor has a crowded

10    schedule, but it would be our request that the Court set a

11    date, even if -- we certainly understand the Government's

12    concerns about witnesses' availability in August.

13         THE COURT:  Well, I will tell you what we will do,

14    right now I am setting it for Monday, October 7th at 9:30

15    a.m., pick and go.  If you and the Government want to come in

16    with a consensual request for a different trial date, you can

17    submit that on ECF and I will take it under advisement.

18         I have the power to move my cases around, just as

19    Engelmayer and Koeltl have the power to move their cases

20    around.  So, Moses came down with ten things on the tablet;

21    our trial calendars, despite our enormous Article III egos,

22    were not on it.  So, there you go.

23         MR. SCHACHTER:  I appreciate that, Your Honor.

24    We'll confer with the Government.  I just face three judges

25    who each have the power to incarcerate me.

Proceedings                                    22

1          THE COURT:  And which are just great friends, but
2    you have those sort of back-to-school scheduling issues.  I
3    get it, okay, go ahead.
4          MR. SCHACHTER:  That's all with respect to trial
5    dates.
6          THE COURT:  Okay.
7          MR. JACKSON:  Again, good afternoon, Your Honor.
8          THE COURT:  Good afternoon.
9          MR. JACKSON:  Just to note a couple of things.
10          One, first Mr. Amatruda is absolutely correct, we
11   are confident that we can work with the Government in crafting
12   an appropriate briefing schedule that will be helpful to the
13   Court.
14          THE COURT:  You handled those search term issues
15   very well, and I appreciate you doing that.
16          MR. JACKSON:  We appreciate that, Your Honor.
17          I do want to raise with the Court that I anticipate
18   discussing with the Government an earlier schedule for some of
19   the productions that we typically make before trial than would
20   occur in some of the simpler trials that the Court deals with
21   because the last thing that we want is for the Court to have a
22   raft of extraordinarily complex motions on the eve of trial.
23   So we anticipate that one of the issues we'll be discussing
24   with the Government is early production of 3500 material and
25   exhibits so that we can file timely motions in limine.

Proceedings                                    23

1          We know that the Court, Your Honor's individual

2     rules for typical trials allows for motions in limine shortly

3     before trial, only ten days before, but we think that getting

4     out ahead of what we anticipate will be some significant

5     evidentiary issues and giving the Court adequate time will be

6     a better use of everyone's resources.

7               THE COURT:  I appreciate that.

8               MR. JACKSON:  Thank you, Your Honor.

9          Also wanted to flag that there are -- the Government

10    has been diligently moving through their rolling discovery.

11    There is a substantial amount of discovery that we've only

12    recently received, at least several hundred-thousand pages of

13    documents that we've gotten relatively recently, and one

14    statement that the Government identified as having been made

15    by Mr. Boustani that was delivered to us, I believe, just

16    yesterday.

17              THE COURT:  I saw that statement and as I averred,

18    it seemed to have more to do with subject matter jurisdiction

19    than personal jurisdiction.  So whether the statement was made

20    or not made, the reality is subject matter jurisdiction does

21    not depend on a statement made by an individual other than the

22    United States Supreme Court justices, Court of Appeals

23    justices, and occasionally District Court justices.

24              So I mean I read it, it is what it is, but it is no

25    more than what it is --

Proceedings                    24

1          MR. JACKSON:  Absolutely, Judge.

2          THE COURT:  -- when it comes to subject matter

3    jurisdiction anyway.

4          MR. JACKSON:  That makes sense, Judge.  Wanted to

5    just flag that.

6          THE COURT:  Consider it flagged.

7          MR. JACKSON:  Yes, and we'll be discussing with them

8    sort of the schedule for additional motions.

9          THE COURT:  Okay.

10          MR. SCHACHTER:  And then, Your Honor, just one more

11    question about our conferring with the Government regarding

12    potential or earlier trial dates to see if they will be

13    amenable to a joint proposal on that.

14          Would it be helpful if we conferred with Your

15    Honor's Courtroom Deputy?

16          THE COURT:  No, I think in this case because there

17    are so many moving parts, we have a number of criminal matters

18    that are also vying for the Court's time, and not to say that

19    Social Security appeals, habeas corpus cases, Fair Labor

20    Standard Act cases, Fair Debt Collection Practice Act action

21    cases are not important, and not to say that it has anything

22    to do with the fact that there were four colleagues who were

23    put forward for appointment to the District Court and that

24    Judge Bianco has been approved for the Second Circuit, that

25    has nothing to do with what we are talking about here.

Proceedings                                    25

1          MR. SCHACHTER:  Yes, Your Honor.  All right, we'll

2     confer with the Government and we'll submit something.

3          THE COURT:  Thank you.

4          Anything else?

5          MR. AMATRUDA:  Judge, I know that Your Honor will

6     get to this, but we would respectfully ask the Court to enter

7     an order excluding the time between now and trial.

8          THE COURT:  We will do that, and Mr. Jackson will

9     circulate that order.  Hopefully, all counsel and parties will

10    sign it, but in any event, even if they do not, I have already

11    deemed it a complex trial and I will exclude time in the

12    interest of justice through and including October 7th of 2019.

13          I would hope that the parties and counsel will sign

14    it, but if they do not, if they don't want to say this is a

15    complex case despite millions of documents and dozens of

16    witnesses and international issues, then that is the position

17    they can take.

18          Anything else?

19          MR. AMATRUDA:  No; thank you, Your Honor.

20          THE COURT:  Anything else from defense counsel?

21          MR. JACKSON:  No, Your Honor; thank you.

22          THE COURT:  All right, Mr. Jackson, would you

23    circulate the proposed order excluding time in the interest of

24    justice in this case through and including October 7th of

25    2019, so if we can have a sign-off from counsel?

```
                        Proceedings                        26
```

1          MR. JACKSON:  Your Honor, we have -- at this point
2    we are not in a position to waive our client's speedy trial.
3          THE COURT:  Okay.
4          MR. JACKSON:  Thank you.
5          THE COURTROOM DEPUTY:  Here you are, Judge.
6          THE COURT:  I have what has been marked as Court 1
7    for identification, a waiver of speedy trial and order of
8    excludable delay in the interest of justice excluding time in
9    this case from today's date, March 28th of 2019, to and
10   including October 7th of 2019.
11         The proposed order has been signed by the Assistant
12   United States Attorney, Mr. Amatruda, the defendant has
13   declined to sign it and defense counsel has declined to sign
14   it.  I am signing it and admitting it into evidence as Court
15   1, and time in this case, it is clearly a complex case, is
16   excluded until October 7th, of 2019 when we will pick our jury
17   and go to trial.
18         Anything else I can help counsel with today?
19         Mr. Jackson, here is Court 1 in evidence.
20         (Court's Exhibit 1 was received in evidence.)
21         THE COURT:  Anything else?
22         MR. AMATRUDA:  No; thank you, Your Honor.
23         THE COURT:  Anything else?
24         MR. JACKSON:  No; thank you, Your Honor.
25         THE COURT:  Thank you.  We are adjourned.