# WILLKIE FARR & GALLAGHER LLP

RANDALL W. JACKSON
212 728 8216
rjackson@willkie.com

787 Seventh Avenue
New York, NY 10019-6099
Tel:  212 728 8000
Fax:  212 728 8111

August 30, 2019

**BY FEDEX AND ECF**

The Honorable William F. Kuntz
United States District Court for the
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:    *United States v. Jean Boustani, et al. (Case No. 18-cr-681 (WFK))*

Dear Judge Kuntz:

We represent Defendant Jean Boustani in the above-captioned matter. We respectfully submit this letter in further support of our Motion to Suppress emails improperly seized by the Government.  For all of the reasons described in Mr. Boustani's June 17, 2019 motion to suppress as well as his August 5, 2019 reply memorandum of law, the record is sufficient for the Court to grant the Motion to Suppress, and the Court should grant the requested relief.

The record, however, is *not* sufficient for the Court to take any other action with regard to the motion to suppress.  To the extent that the Court would place any weight on the representations in the Government's submission, **the Court must hold a suppression hearing.** A suppression hearing is required to address the contested factual issues raised by the Government's submission in Opposition to the Motion to Suppress.

As an initial matter, it must be noted that, at oral argument on the instant motion, the Government improperly suggested that the standing inquiry could resolve the motion.  As the Government's own submission makes clear, it cannot.  *See* Government's July 22, 2019 Memorandum in Opposition ("Gov. Br.") at 6 (acknowledging that its standing arguments apply only to the emails the defendant argues should be suppressed as the fruit of the poisonous tree). Moreover, to the extent that the Government argued at oral argument that no suppression hearing was warranted because Mr. Boustani had not demonstrated by sworn evidence his legitimate expectation of privacy, *see* Ex. A, Transcript of Oral Argument (Aug. 21, 2019) at 105-07, Mr. Boustani now attaches a declaration establishing his expectation of privacy in the contents of emails he sent or received using his Gmail account. (*See* Ex. B, Aug. 29, 2019 Declaration of Jean Boustani).

The reason that neither the Government's standing argument nor its other legal argument negate the need for a hearing is simple: the Government has admitted that it seized information beyond the scope of the warrants. (Gov Br. at Footnote 3).  In fact, after promising this Court that it

would review the documents identified by defense counsel—as a courtesy, as a *nonexhaustive* list of examples of irrelevant and highly personal information which could not possibly fall within the scope of the warrant (to the extent there were any content-based limitations at all)— the Government told the Court: "[w]e've reviewed those 11 documents [and] we've now marked them as nonresponsive." *See* Ex. A, Transcript of Oral Argument (Aug. 21, 2019) at 108:3-4. The Government failed even to attempt to provide any sort of explanation as to how or why these nonresponsive documents were marked as responsive. Regardless, at least as to these documents, the Government concedes that it made multiple errors in its process of identifying responsive material as part of its execution of the warrants.

The failures of the Government's execution process, however, are not nearly as limited as the Government would suggest. As explained in the attached Declaration of Philip F. DiSanto, a supervising attorney of the defense team that reviewed the search warrant materials, "the Government obtained from Mr. Boustani's personal Gmail account many documents and communications that are both irrelevant to the allegations in the Indictment and highly personal in nature . . . [and] also obtained and produced to Mr. Boustani thousands of irrelevant and highly personal documents from the personal email accounts of his co-defendants, alleged co-conspirators, and other third parties." (*See* Ex. C, Aug. 30, 2019 Declaration of Philip F. DiSanto, at ¶¶ 7 & 19).

Faced with the fact that the seizure and retention of documents in this case took place in a manner that was illegal, the Government ultimately falls back its argument that this can be excused because of the Government's supposed "good faith." Notwithstanding the fact that the Government bears the burden of proving its good faith, the Government claims that no suppression hearing is warranted because there is no contested issue of fact.

The Government is wrong. The circumstances described above raise numerous contested issues of fact that go to the heart of the issues raised by the Motion to Suppress. The Court must resolve the question of whether the nature of the Government's execution of the warrant can be considered to have been sufficiently proper to allow the Court to conclude that the evidence should not be suppressed. This is a highly fact-intensive inquiry and it cannot be resolved with an examination of the procedures under which the Government executed the warrant.

## CONTESTED FACTUAL ISSUES

As the record stands, there are at least eight critical, contested, factual issues that must be addressed at a hearing before this motion can be resolved:

- First, the Government claims in its brief that "the first and second warrants were reasonably executed" (Gov. Br. 14). This is a factual claim for which the Government has identified no factual support other than a claim in its brief. **The defendant disputes that the warrants were reasonably executed.**

- Second, the Government claims in its brief that the "first and second warrants were executed" in a manner "consistent with well-settled Second Circuit Law," and specifically claims that, "once the government identified non-responsive information, it was not reviewed further." (Gov. Br. 14-16). **The defendant disputes that the**

**warrants were executed appropriately and specifically disputes that the government appropriately separated responsive and non-responsive information.**

- Third, the Government claims that it used a process "similar" to the process used by the government in *Mendlowitz*, in which the government used "two separate techniques, including (1) reviewing the seized material identifying specific individuals' emails and documents; and (2) key-word computerized searches to identify and compile collections of emails containing certain search terms." (Gov. Br. 16-17) (internal quotation marks omitted). **The defendant disputes that the Government used such a process, as the evidence discussed in the defendant's opening brief demonstrates that the Government seized as responsive information that could not possibly have been identified as appropriately responsive using the techniques described herein.**

- Fourth, the Government claims that "agents and attorneys began identifying responsive documents as soon as the Returns came in through targeted searches and individualized review." (Gov. Br. 16). **The defendant disputes this assertion and notes that the evidence indicates that the Government unreasonably delayed substantive review of the search warrant returns.**

- Fifth, the Government claims that it completed the search within a reasonable, though undefined, time frame. (Gov. Br. 15-16). **The defendant disputes this claim and asserts that the evidence indicates the Government has unreasonably continued to delay completion of its search even to this day.**

- Sixth, the Government *admits* that it improperly seized and marked as responsive multiple documents in a sample provided by the defense at the Government's request, but claims, without explanation, that these documents were aberrations in an otherwise appropriately executed process. (Gov. Br. 18 at n. 3, 19-20). **The defendant disputes this claim and asserts that these examples, of which there are many more, evince that the Government failed to follow the process it has claimed to have followed in its brief and improperly seized and marked as responsive numerous documents beyond the reach of the warrants.**

- Seventh, the Government claims that its errors in executing the warrant were made in "good faith," which is necessarily a fact-intensive inquiry. (Gov. Br. 21-22). **The defense disputes this claim and asserts that the evidence of improperly seized information demonstrates a haphazard execution of the warrants that would not comport with any understanding of good faith.**

- Eighth, the Government claims that "[u]nlike [in the] *Wey* [case], here, the government, including Special Agent Kirshner, moved swiftly to identify responsive documents within the purely electronic information disclosed by Google pertaining to the fraudulent schemes identified in the Kirshner Affidavit by using targeted searches and individualized review." (Gov. Br. 22). **The defense disputes this claim and asserts that the evidence indicates that the Government did not conduct any "swift" identification of responsive documents and in fact improperly tagged as responsive numerous unresponsive documents through a haphazard, improper process.**

As explained in more detail below, the Court is not permitted, under the law, to simply credit the Government's conclusory assertions in its brief that everything was handled appropriately. The

factual questions that underlie this claim, which are contested by the defendant, must be appropriately tested in a suppression hearing before Your Honor.

## DISCUSSION

It is axiomatic that a court is generally required to a hold a suppression hearing whenever there are contested issues of fact going to the validity of the search. *See, e.g. United States v. Nelson*, 193 Fed. App'x 47, 48-49 (2d Cir. 2006) (finding abuse of discretion in district court's failure to grant defendant evidentiary hearing on suppression motion where, as here, "[n]o evidence before the district court at the time of the suppression motion supported the Government's current theory that the search and questioning were discrete; indeed, what evidence was before the court directly contradicted it," and observing that **"[a] suppression hearing ordinarily is required** if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question") (internal quotation marks omitted); *United States v. Pena*, 961 F.2d 333, 338-39 (2d Cir. 1992) (reversing district court's denial of a hearing and remanding with instructions to hold suppression hearing where defendant was able to articulate facts in his papers contested by the Government which could have led to suppression); *see also United States v. Durand*, 767 F. App'x. 83, 87-88 (2d Cir. 2019) (citing *Pena* and reversing district court for failure to grant suppression hearing where defendant had "sufficiently demonstrated to the district court that the postal inspectors were investigating the mail and identity fraud crimes for months and . . . at least alleged a sufficient basis to raise the evidentiary issue of whether the inspectors' questions about his phone number were reasonably likely to elicit incriminating information, and thus violated the Fifth Amendment"); *United States v. Awadallah*, 202 F. Supp. 2d 17, 21 (S.D.N.Y. 2002) (observing that "[a]lthough suppression hearings are not always required, **a court should hold a hearing when the motion alleges facts that, if proved, would require the suppression of evidence**.") (emphasis added).

Courts have been particularly conscious of the need to hold a hearing where, as here, fact-intensive questions regarding search procedures are raised by a suppression motion.  This is especially so in cases where good faith is at issue, because it is the Government's burden to prove that law enforcement officers acted reasonably. *See United States v. Bershchansky*, 788 F.3d 102, 113 (2d Cir. 2015) ("the burden is on the government to demonstrate the objective reasonableness of the officers' good faith").

For example, in *United States v. Bronfman*, the defendant asserted that the government had improperly executed a search of his private effects by improperly directing a private party to "index" and rummage through the materials in question.  No. 18-Cr-204-3, 2019 WL 1332888 at *5-6 (E.D.N.Y. Mar. 25, 2019).  Judge Garaufis rejected the Government's contention that such thorny, fact-intensive issues surrounding the nature of the search in question could be resolved without a hearing, observing that "a suppression hearing [would] help" answer the factual questions relevant to the overall necessary legal inquiry. *See id.*  The court concluded "[a]s Bronfman has established a basis for her motion to suppress with respect to her personal documents (and may yet do so with respect to the storage unit and business documents), it is the Government's burden 'to prove, by a preponderance of the evidence, the legality of the actions of its officers' at the anticipated suppression hearing." *Id.* at *6.

Perhaps the clearest example of a court's recognition of the critical need for a hearing in this situation is demonstrated by the procedures deployed by Judge Nathan in *United States v. Wey*, 256 F. Supp. 3d 355 (S.D.N.Y. 2017).  In *Wey*, as here, the Government suggested that no hearing was required in order to resolve the suppression motion. (*See* Ex. D (Brief for United States at 25, 42, *United States v. Wey*, No. 15-cr-0611 (Jul. 8, 2016))).  The court disagreed.  (*See* Ex. E (Order of the Honorable Alison J. Nathan, *United States v. Wey*, No. 15-cr-0611 (Nov. 28, 2016))).  In her Order scheduling the suppression hearing in *Wey*, the court identified two of the precise issues that have been raised in this case: "(i) whether the Government acted in good faith in executing the January 25, 2012 searches of the offices of New York Global Group . . . and (ii) whether the Government acted reasonably and in good faith in executing off-site searches of computers and computer-related equipment seized from those locations."  (*See id.* at 1).

At the hearing, as the Second Circuit has instructed, the burden was on the Government to demonstrate that it acted reasonably and that it acted in good faith in the execution of the warrants. (*See* Ex. F (Transcript of Suppression Hearing at 4, *United States v. Wey*, No. 15-cr-0611 (Jan. 23-24, 2015))).  In its attempt to appropriately demonstrate that the court could find a factual basis existed to support the Government's claims regarding the execution of the warrant, the Government first called the AUSA who originally drafted the warrant. (*Id.* at 4-5).  The AUSA testified to subjects including: how search terms were utilized during the execution of the warrant (*Id.* at 25); the specific instructions that were given to the reviewing agents (*id.* at 51-52); the pace at which the review took place (*id.* at 84); the nature of the privilege review (*id.* at 85); and the AUSA's discussion with his supervisor of the impact of Judge Irizarry's opinion in *Metter* ("Q. I'll just direct your attention to the bottom half of the page. Do you see where there is a bracketed sentence or two that says: As incentive to keep this process going, we have the recent EDNY opinion suppressing 50 plus hard drives for failure to review them quickly enough. Do you see that? A. I see that. Q. Is that the Judge Irizarry opinion you were referring to earlier? A. Yes. Q. You see where it says: We seized the NYGG hard drives etc. seven months ago and this privilege review is nowhere near finished. Do you see that? A. I do.") (*Id.* at 86), among other topics.  The Government also called agents who executed the searches in question. (*Id.* at 119, 236).  The defense also called one of the agents involved in the investigation, the agent who acted as the "taint agent" for the case. (*Id.* 368).

The entire hearing involved less than two days of testimony but addressed fully all of the critical questions that *must* be answered where, as here, the Government is asking the Court to rely on its representations that an electronic search was executed appropriately even though it *concedes* there is significant evidence of errors in the process by which it executed the search.  Such an inquiry at an appropriate hearing is the minimum factual inquiry that the Court must conduct where these issues are present.

**The Hearing Can Be Completed Within a Short Amount of Time
and Will Not Require Any Delay in the Trial Schedule**

As indicated at the last conference before Your Honor, the defense stands ready to appear on any date, at any time, to include nights and weekends, in order to efficiently hold the required hearing in this case, which should lead to no delay in the trial schedule. None of the anticipated witnesses will be required to travel. The questions are straightforward.

An evidentiary hearing here would help establish the following facts: (i) when the Government's searching began and if/when it ended; (ii) the search protocol and minimization procedures the Government used, if any, to ensure searching agents would comply with content-based parameters of the warrant (to the extent any existed) in determining which documents were "responsive"; (iii) the manner in which the Government identified and segregated non-responsive material and conducted its privilege review; (iv) how and why this process failed in properly identifying responsive material; (v) how and to what extent the Government "updat[ed] search parameters as the review continued," *see* Gov. Br. at 3; (vi) who has access to nonresponsive documents and what type of access they have; and (vii) whether the law enforcement agents who executed the warrant continued to search materials previously deemed nonresponsive.

In short, this case requires a standard suppression hearing and should not impose any undue burden on the trial schedule. Accordingly, we respectfully request that the Court schedule an evidentiary hearing as soon as practicable.

Respectfully submitted,

Randall W. Jackson
Michael S. Schachter

cc: (by ECF)

AUSA Mark E. Bini
AUSA Hiral Mehta