AES:MEB/HDM/MAM/KN
F. #2016R00695

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – –X

UNITED STATES OF AMERICA

   - against -                           Docket No. <u>18 CR 681 (S-1) (WFK)</u>

JEAN BOUSTANI,
      also known as "Jean Boustany,"

            Defendant.

– – – – – – – – – – – – – – – – – –X

<u>THE GOVERNMENT'S REQUESTS TO CHARGE</u>

                                    RICHARD M. DONOGHUE
                                    UNITED STATES ATTORNEY
                                    Eastern District of New York
                                    271 Cadman Plaza East
                                    Brooklyn, New York 11201

Mark E. Bini
Hiral D. Mehta
Assistant U.S. Attorneys
Margaret A. Moeser
Katherine Nielsen
Trial Attorneys
      (Of Counsel)

# Table of Contents

PRELIMINARY STATEMENT ........................................................................................ 1
   REQUEST NO. 1 General Requests ............................................................................... 2
   REQUEST NO. 2 Superseding Indictment .................................................................... 3
   REQUEST NO. 3 Knowingly, Intentionally, Willfully ................................................. 4
      A. Knowingly .......................................................................................................... 4
      B. Intentionally ........................................................................................................ 4
      C. Willfully .............................................................................................................. 4
   REQUEST NO. 4 Count One: Wire Fraud Conspiracy ................................................. 6
      A. Conspiracy to Commit Wire Fraud .................................................................... 6
      B. Wire Fraud: Definition and Elements ............................................................... 10
      C. Venue ................................................................................................................. 15
   REQUEST NO. 5 Conscious Avoidance: Wire Fraud Conspiracy ............................... 17
   REQUEST NO. 6 Count Two: Conspiracy to Commit Securities Fraud ...................... 19
      A. Conspiracy to Commit Securities Fraud ........................................................... 23
      B. Securities Fraud: Definition and Elements ........................................................ 25
      C. Venue ................................................................................................................. 31
   REQUEST NO. 7 Conscious Avoidance: Securities Fraud Conspiracy ....................... 34
   REQUEST NO. 8 Count Four: Money Laundering Conspiracy .................................... 36
      A. Conspiracy to Commit Money Laundering ....................................................... 36
      B. Object One: Promotion ....................................................................................... 38
      C. Object Two: Concealment .................................................................................. 40
   REQUEST NO. 9 Specified Unlawful Activites .......................................................... 42
      A. Violations of the FCPA ...................................................................................... 42
      B. Bribery of Foreign Officials in Violation of the Laws of Mozambique ............. 51
   REQUEST NO. 10 Co-Conspirators Statements and Liability ..................................... 57
   REQUEST NO. 11 Character Evidence ....................................................................... 59
   REQUEST NO. 12 Uncharged Persons ....................................................................... 60
   REQUEST NO. 13 Accomplice Testimony .................................................................. 61
   REQUEST NO. 14 Testimony of Defendant ................................................................ 64
   REQUEST NO. 15 Defendant's Right Not to Testify ................................................... 65
   REQUEST NO. 16 Uncalled Witnesses Equally Available .......................................... 66
   REQUEST NO. 17 Summary Evidence ........................................................................ 67
   CONCLUSION ........................................................................................................... 68

PRELIMINARY STATEMENT

Pursuant to Rule 30 of the Federal Rules of Criminal Procedure, the government respectfully requests that the Court include the following instructions in its charge to the jury.  The government also requests leave to offer additional instructions as may become appropriate during the course of the trial.

<u>REQUEST NO. 1</u>
(General Requests)

The government respectfully requests that the Court charge the jury in its usual manner on the following subjects:

a.    The function of the Court and the jury;

b.    Equality of the parties before the Court;

c.    Jury communications with lawyers and the Court;

d.    Presumption of innocence;

e.    Burden of proof and reasonable doubt;

f.    Permissible inferences from evidence;

g.    Circumstantial evidence;

h.    Dates approximate and use of conjunctive in the indictment;

i.    Stipulations;

j.    Objections;

k.    Witness credibility;

l.    Expert witnesses;

m.    Particular investigative techniques not required;

n.    Uncalled witnesses equally available;

o.    Preparation for testimony;

p.    Questioning wisdom of law or basing verdict on sympathy or prejudice prohibited;

q.    Considerations of punishment not the province of the jury; and

r.    Verdict must be unanimous.

2

REQUEST NO. 2
(The Superseding Indictment)

The defendant is formally charged in an indictment, specifically here, in the

Superseding Indictment.  As I instructed you at the beginning of this case, an indictment is a

charge or accusation.  The Superseding Indictment in this case contains a total of three

counts against the defendant.  You must, as a matter of law, consider each count of the

Superseding Indictment separately, and you must return a separate verdict for each count.

Authority

Adapted from Modern Federal Jury Instructions ("Sand"), Instr. 3-8.

REQUEST NO. 3
(Knowingly, Intentionally, Willfully)

During these instructions, you will hear me use the terms "knowingly,"

"intentionally," and "willfully."  Therefore, I will define these terms for you.

A.    Knowingly

To act "knowingly" means to act intentionally and voluntarily, and not

because of ignorance, mistake, accident, negligence, or carelessness.  Whether a defendant

acted knowingly may be proven by his conduct and by all of the facts and circumstances

surrounding the case.

B.    Intentionally

A person acts "intentionally" when he acts deliberately and purposefully.  That

is, the defendant's acts must have been the product of his conscious objective decision rather

than the product of a mistake or accident.

C.    Willfully

To act "willfully" means to act with knowledge that one's conduct is unlawful

and with the intent to do something the law forbids, that is to say with the bad purpose to

disobey or to disregard the law.  The defendant's conduct was not "willful" if it was due to

negligence, inadvertence, or mistake.

Whether a person acted knowingly, intentionally, or willfully is a question of

fact for you to determine, like any other fact question.  Direct proof of knowledge and

fraudulent intent is almost never available.  It would be a rare case where it could be shown

that a person wrote or stated that as of a given time in the past he committed an act with

fraudulent intent.  Such direct proof is not required.  The ultimate facts of knowledge and

4

criminal intent, though subjective, may be established by circumstantial evidence, based upon a person's outward manifestations, his words, his conduct, his acts and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn therefrom.  In either case, the essential elements of the crime charged must be established beyond a reasonable doubt.

Authority

Adapted from the charge of the Hon. Brian M. Cogan in United States v. Petrossi, No. 16-CR-234 (E.D.N.Y. 2017) (hereinafter the "Petrossi Jury Charge"), Trial Tr. 1118-1119; Sand, Instr. 3A-3.

<u>REQUEST NO. 4</u>
(Count One: Wire Fraud Conspiracy)

I will first address Count One.  Count One of the Superseding Indictment

charges the defendant with conspiracy to commit wire fraud.  Specifically, Count One states,

in pertinent part:

> In or about and between January 2011 and December 2018, both
> dates being approximate and inclusive, within the Eastern District
> of New York and elsewhere, the defendant JEAN BOUSTANI,
> together with others, did knowingly and intentionally conspire to
> devise a scheme and artifice to defraud one or more investors and
> potential investors in Proindicus, EMATUM and MAM, and to
> obtain money and property from them by means of one or more
> materially false and fraudulent pretenses, representations and
> promises, and for the purpose of executing such scheme and
> artifice, to transmit and cause to be transmitted by means of wire
> communication in interstate and foreign commerce writings,
> signs, signals, pictures and sounds, contrary to Title 18, United
> States Code, Section 1343.

A.      <u>Conspiracy to Commit Wire Fraud</u>

I will first instruct you on conspiracy.  The relevant portion of the conspiracy

statute, Title 18, United States Code, Section 1349, provides, in relevant part that it shall be

unlawful for any person to "conspire[] to commit" wire fraud.

A conspiracy is a kind of criminal partnership, at the heart of which is an

agreement or understanding by two or more persons to violate other laws.  A conspiracy to

commit a crime is an entirely separate and different offense from the underlying crime that

the conspirators intended to commit.  Thus, if a conspiracy exists, it is still punishable as a

crime, even if it should fail to achieve its purpose.  A defendant may be found guilty of

conspiracy even if he was incapable of committing the substantive crime.  Consequently, for

a defendant to be guilty of conspiracy, there is no need for the government to prove that he or

6

any other conspirator actually succeeded in their criminal goals or even that they could have succeeded.

To prove the crime of conspiracy to commit wire fraud, the government must prove two elements beyond a reasonable doubt:

First, that two or more persons entered into an agreement to commit wire fraud, a crime I will define for you later in my instructions;

Second, that the defendant knowingly and intentionally became a member of the conspiracy.

### 1. First Element: Existence of the Agreement

The first element that the government must prove beyond a reasonable doubt for Count One is that two or more persons entered into the charged agreement to commit wire fraud. One person cannot commit a conspiracy alone. Rather, the proof must convince you that at least two persons joined together in a common criminal scheme. The government need not prove that members of the conspiracy met together or entered into any express or formal agreement. You need not find that the alleged conspirators stated, in words or writing, what the scheme was, its object or purpose, or the means by which the scheme was to be accomplished. It is sufficient to show that the conspirators tacitly came to a mutual understanding to accomplish an unlawful act by means of a joint plan or common design.

You may, of course, find that the existence of an agreement between two or more persons to violate the law has been established by direct proof. But since, by its very nature, a conspiracy is characterized by secrecy, direct proof may not be available. Therefore, you may infer the existence of a conspiracy from the circumstances of this case and the conduct of the parties involved. In a very real sense, then, in the context of

conspiracy cases, actions often speak louder than words.  In determining whether an agreement existed here, you may consider the actions and statements of all those you find to be participants in the conspiracy as proof that a common design existed to act together for the accomplishment of the unlawful purpose stated in the Superseding Indictment.

### 2.   Second Element: Membership in the Conspiracy

The second element the government must prove beyond a reasonable doubt for Count One is that the defendant knowingly and intentionally became a member in the charged conspiracy.  I have explained to you what it means to act knowingly and intentionally.  A person acts knowingly and intentionally if he acts voluntarily, deliberately, and purposefully, and not because of ignorance, mistake, accident, negligence or carelessness.  In other words, did the defendant participate in the conspiracy with knowledge of its unlawful purpose and with the specific intention of furthering its business or objective?  Knowledge and intent may be inferred from a secretive or irregular manner in which activities are carried out.  Whether a defendant acted knowingly may be proven by the defendant's conduct and by all of the facts and circumstances surrounding the case.

In order for a defendant to be deemed a member of a conspiracy, he need not have had a stake in the venture or its outcome.  While proof of a financial or other interest in the outcome of a scheme is not essential, if you find that a defendant did have such an interest, it is a factor you may properly consider in determining whether or not the defendant was a member of the conspiracy charged in the Superseding Indictment.

A defendant's participation in the conspiracy must be established by independent evidence of his own acts or statements, as well as those of the other alleged co-conspirators, and the reasonable inferences that may be drawn from them.

8

A defendant's knowledge may be inferred from the facts proved.  In that connection, I instruct you that, to become a member of the conspiracy, a defendant need not have been apprised of all of the activities of all members of the conspiracy.  Moreover, a defendant need not have been fully informed as to all of the details, or the scope, of the conspiracy in order to justify an inference of knowledge on his part.  In addition, a defendant need not have joined in all of the conspiracy's unlawful objectives.

In considering whether a defendant participated in a conspiracy, be advised that a conspirator's liability is not measured by the extent or duration of his participation as he need not have been a member of the conspiracy for the entire time of its existence.  In addition, each member of the conspiracy may perform separate and distinct acts and may perform them at different times.  Some conspirators play major roles, while others play minor parts in the scheme.  An equal role is not what the law requires.  Even a single act may be sufficient to draw a defendant within the ambit of the conspiracy.  The key inquiry is simply whether a defendant joined the conspiracy charged with an awareness of at least some of the basic aims and purposes of the unlawful agreement and with the intent to help it succeed.

I caution you that mere knowledge or acquiescence, without participation, in the unlawful plan is not sufficient.  Moreover, the fact that the acts of a defendant, without knowledge, merely happen to further the purposes or objectives of the conspiracy, does not make the defendant a member.  More is required under the law.  What is required is that a defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.  In sum, a defendant, with an understanding of the unlawful character of the

conspiracy, must have intentionally engaged, advised, or assisted in it for the purpose of furthering the illegal undertaking.

If you find that the government has not proven either of these elements, then you must find the defendant not guilty of Count One.

B.    Wire Fraud: Definition and Elements

I will now define wire fraud, which is alleged to be the object of the conspiracy charged in Count One of the Superseding Indictment.  The relevant statute regarding wire fraud is Section 1343 of Title 18 of the United States Code, which provides that:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures or sounds for the purpose of executing such scheme or artifice, shall be [guilty of a crime].

The elements of wire fraud are:

First, that there was a scheme or artifice to defraud or to obtain money or property by false and fraudulent pretenses, representations or promises, as alleged in the Superseding Indictment;

Second, that the defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud; and

Third, that in the execution of that scheme, the defendant used or caused the use of interstate wires or international wires.

1.    First Element – Existence of a Scheme or Artifice to Defraud

10

The first element of wire fraud is that there was a scheme or artifice to defraud and to obtain money or property from it by means of false or fraudulent pretenses, representations or promises.

A "scheme or artifice" is simply a plan for the accomplishment of an objective. "Fraud" is a general term which embraces all the various means that an individual can devise and that are used by an individual to gain an advantage over another by false representations, suggestions, suppression or omission of the truth, or deliberate disregard for the truth.

A "scheme or artifice to defraud" for the purposes of the wire fraud statute is any plan, device, or course of action designed to obtain money or property by means of false representations. Thus, a "scheme to defraud" is a plan to deprive another of money or property by trick, deceit, deception or swindle, or overreaching. The scheme to defraud giving rise to the wire fraud conspiracy charged in Count One is alleged to have been carried out by making false representations and half-truth statements. A statement, representation, claim, or document is false if it is untrue when made and was known at the time to be untrue by the person making it or causing it to be made. A representation or statement is fraudulent if it was falsely made with the intention to deceive.

Deceitful statements of half-truths or the concealment or omission of material facts, and the expression of an opinion not honestly entertained may constitute false or fraudulent representations under the statute.

The fraudulent representation must relate to a material fact or matter. A material fact in the context of wire fraud is one that reasonably would be expected to be of

concern to a reasonable and prudent person in relying upon the representation or statement in making a decision.

      The deception need not be premised upon spoken or written words alone.  The arrangement of words, or the circumstances in which they are used may convey a false and deceptive appearance.  If there is intentional deception, the manner in which it is accomplished does not matter.

In addition to proving that a statement was false or fraudulent and related to a material fact, in order to establish a scheme to defraud, the government must prove that the alleged scheme contemplated depriving another of money or property.

It is not necessary that the government prove that the defendant actually realized any gain from the scheme or that the intended victim actually suffered any loss.

2.    <u>Second Element – Participation in Scheme with Intent</u>

The second element of wire fraud is that the defendant participated in the scheme to defraud knowingly, willfully and with the specific intent to defraud.

I already instructed you as to the meaning of "knowingly" and "willfully." I refer you to those instructions as they apply here also.  (<u>See</u> pages 4-5.)  For the purposes of the wire fraud statute, an "intent to defraud" means to act knowingly and with specific intent to deceive for the purpose of causing some financial loss to someone or depriving somebody of their interest in property.

I will remind you, however, that the question of whether a person acted knowingly, willfully and with intent to defraud is a question of fact for you to determine, like any other fact question.  This question involves the defendant's state of mind.  As I said before, direct proof of knowledge and fraudulent intent is not necessary.  The ultimate facts

of knowledge and criminal intent, though subjective, may be established by circumstantial evidence, based upon a person's outward manifestations, his or her words, his or her conduct, his or her acts and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them.  Circumstantial evidence, if believed, is of no less value than direct evidence.

Under the wire fraud statute, even false representations or statements, or omissions of material facts, do not amount to a fraud unless done with fraudulent intent. However misleading or deceptive a plan may be, it is not fraudulent if it was devised or carried out in good faith.  An honest belief in the truth of the representations made by a defendant is a complete defense, however inaccurate the statements may turn out to be.  A defendant, however, has no burden to establish a defense of good faith.

There is another consideration to bear in mind in deciding whether or not the defendant acted in good faith.  You are instructed that if the defendant conspired to commit wire fraud, then a belief by the defendant, if such a belief existed, that ultimately everything would work out so that no one would lose any money does not require you to find that the defendant acted in good faith.  No amount of honest belief on the part of the defendant that the scheme would, for example, ultimately make a profit for investors, will excuse fraudulent actions or false representations caused by him to obtain money or property.  I reiterate, however, that an "intent to defraud" for the purposes of the wire fraud statute means to act knowingly and with specific intent to deceive for the purpose of causing financial loss or property loss to another.  As a practical matter, then, you may find intent to defraud if the defendant knew that his conduct as a participant in the scheme was calculated to deceive and,

13

nonetheless, he associated himself with the alleged fraudulent scheme for the purpose of causing loss to another.

       3.    <u>Third Element – Use of the Wires</u>

      The third and final element of wire fraud is the use of an interstate or international wire communication in furtherance of the scheme to defraud.  The wire communication must pass between two or more states, or it must pass between the United States and a foreign country.  A wire communication includes a wire transfer of funds between banks in different states or the United States and a foreign country, telephone calls, emails and facsimiles between two different states or between the United States and a foreign country.

      The item sent through the wires need not itself contain a fraudulent representation.  However, it must further or assist in the carrying out of the scheme to defraud.  It is not necessary for the defendant to be directly or personally involved in the wire communication, as long as the communication was reasonably foreseeable in the execution of the alleged scheme to defraud in which the defendant is accused of participating.

      It is not necessary that all or most of the wire communications involved in the alleged scheme to defraud were sent to, from, through, or within the United States.  However, for the wire-use element to be satisfied, the scheme to defraud must make more than minimal use of wire communications that pass between two or more states or between the United States and a foreign country.

      I remind you that the government need not prove that the defendant actually committed wire fraud, the unlawful act charged as the object of the conspiracy in Count One.  Rather, what the government must prove beyond a reasonable doubt is that the purpose of the

conspiracy was to commit wire fraud, and that the defendant knowingly and intentionally joined that conspiracy.

      C.    <u>Venue</u>

I have explained to you the elements the government must prove beyond a reasonable doubt as to Count One.  The government must also prove venue.  Unlike the elements I just explained to you that the government must prove beyond a reasonable doubt, the government must prove venue by a preponderance of the evidence.  To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not.  A preponderance of the evidence means the greater weight of the evidence, both direct and circumstantial.  It refers to the quality and persuasiveness of the evidence, not to the quantity of evidence.

To establish venue for wire fraud conspiracy as charged in Count One, the government must prove that it is more likely than not that an act in furtherance of the conspiracy occurred, at least in part, in the Eastern District of New York, which consists of the Counties of Kings (also known as Brooklyn), Queens, Richmond (also known as Staten Island), Nassau, and Suffolk, the waters surrounding all of those counties and the waters surrounding the counties of New York and the Bronx.  In this regard, the government need not prove that the crime charged was committed in the Eastern District of New York or that the defendant or any alleged co-conspirator was even physically present here.  It is sufficient to satisfy the venue requirement if an act in furtherance of the conspiracy occurred within the Eastern District of New York.  This includes not just acts by the defendant or his co-conspirators, but also acts that the conspirators caused others to take that materially furthered the ends of the conspiracy.

Therefore, if you find that it is more likely than not that an act or transaction in furtherance of the wire fraud conspiracy took place in the Eastern District of New York, the government has satisfied its burden of proof as to venue as to Count One.

Again, I caution you that the preponderance of the evidence standard applies only to venue.  The government must prove each of the elements of conspiracy to commit wire fraud in Count One beyond a reasonable doubt.

\* \* \* \* \*

In sum, if you find that the government has failed to prove either of the elements of conspiracy for Count One beyond a reasonable doubt, then you must find the defendant not guilty of wire fraud conspiracy.  To find the defendant guilty of conspiracy to commit wire fraud as charged in Count One, you must find that the government has proven, beyond a reasonable doubt, both elements of conspiracy as charged in Count One, and that the government has also established venue on that count by a preponderance of the evidence.

Authority

Adapted from the charge of the Hon. Kiyo A. Matsumoto in United States v. Shkreli, No. 15-CR-637 (E.D.N.Y. 2017) (hereinafter the "Shkreli Jury Charge"), instructions for Counts One and Four, Two and Five, and Seven; Petrossi Jury Charge, Trial Tr. at 1137-42; from the charge of the Hon. Pamela K. Chen in United States v. Napout et al., 15-CR-252 (E.D.N.Y. 2017); from the charge of the Hon. Theodore D. Chuang, United States v. Elbaz, 18-CR-157 (D. Md. 2019); and Sand, Instr. 3-11; 28 U.S.C. § 112(c).

16

### REQUEST NO. 5
(Conscious Avoidance: Wire Fraud Conspiracy)
(If Applicable)

As I explained, for purposes of Count One, the government is required to prove that the defendant knowingly and intentionally became a member of the conspiracy and that the object of the conspiracy was to commit wire fraud.  In determining whether the defendant acted knowingly with respect to the object or objects of the conspiracy, you may consider whether the defendant deliberately closed his eyes to what would otherwise have been obvious to him.

If you find beyond a reasonable doubt that the defendant was aware that there was a high probability that his conspirators' objective was to violate the law as charged in Count One but that the defendant deliberately avoided confirming this fact, you may treat this deliberate avoidance of positive knowledge as the equivalent of knowledge of the object of the charged conspiracy.  However, if you find that the defendant actually believed that he or his co-conspirators were acting in a lawful manner, he may not be convicted of the charge in Count One.

Moreover, guilty knowledge may not be established by demonstrating that the defendant was merely negligent, foolish, or mistaken.  There is a difference between knowingly participating in the conspiracy and knowing the objects of the conspiracy. "Conscious avoidance" or "willful blindness" as I have described it cannot be used as a basis for finding that the defendant knowingly joined the conspiracy.  It is logically impossible for a defendant to join the conspiracy unless he or she knows the fact that the conspiracy exists.

However, if you find beyond a reasonable doubt that the defendant chose to participate in a joint undertaking, you may consider whether the defendant deliberately

17

avoided confirming an otherwise obvious fact: that the purpose of the partnership he joined was to violate the law as charged in Count One.

<u>Authority</u>

Adapted from the charge of the Hon. Vernon S. Broderick in <u>United States v. Ng Lap Seng</u>, No. 15-CR-706 (VSB) (S.D.N.Y. July 26, 2017) (hereinafter the "<u>Ng Lap Seng</u> Jury Charge"), July 26, 2017 Trial Tr. (ECF No. 610); and from Sand <u>et al.</u>, <u>Modern Federal Jury Instructions</u>, 3A-2. <u>See</u> <u>id.</u> cmt. ("Instruction 3A-2 is appropriate when a defendant has claimed a . . . lack of knowledge as to the unlawful aims of a conspiracy, but the evidence suggests deliberate ignorance.").

"A conscious-avoidance charge is appropriate when (a) the element of knowledge is in dispute, and (b) the evidence would permit a rational juror to conclude beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." <u>United States v. Hopkins</u>, 53 F.3d 533, 542 (2d Cir. 1995) (citations and internal quotation marks omitted). The Second Circuit has cautioned that "the prosecutor should request that the 'high probability' and 'actual belief' language be incorporated into every conscious avoidance charge." <u>United States v. Feroz</u>, 848 F.2d 359, 360 (2d Cir. 1988) (per curiam) ("[K]nowledge of the existence of a particular fact is established (1) if a person is aware of a high probability of its existence, (2) unless he actually believes that it does not exist."). Second Circuit "precedents establish that the doctrine [of conscious avoidance] may be invoked to prove defendant had *knowledge* of the unlawful conspiracy. But we do not permit the doctrine to be used to prove intent to participate in a conspiracy. The reason for this distinction is that common sense teaches it is logically impossible to intend and agree to join a conspiracy if a defendant does not know of its existence. Yet once defendant's participation in a conspiracy has been proved, conscious avoidance may properly be used to prove his knowledge of its unlawful objectives." <u>United States v. Reyes</u>, 302 F.3d 48, 54–55 (2d Cir. 2002).

REQUEST NO. 6
(Count Two: Conspiracy to Commit Securities Fraud)

Count Two also charges a conspiracy, though of a different type than the wire

fraud conspiracy charged in Count One.  Count Two of the Superseding Indictment charges

the defendant with conspiracy to commit securities fraud.  Specifically, Count Two states, in

pertinent part:

> In or about and between January 2013 and December 2018, both
> dates being approximate and inclusive, within the Eastern District
> of New York and elsewhere, the defendant JEAN BOUSTANI,
> together with others, did knowingly and willfully conspire to use
> and employ one or more manipulative and deceptive devices and
> contrivances, contrary to Rule 10b-5 of the Rules and Regulations
> of the United States Securities and Exchange Commission, Title
> 17, Code of Federal Regulations, Section 240.10b-5, by:
> (i) employing one or more devices, schemes and artifices to
> defraud; (ii) making one or more untrue statements of material
> fact and omitting to state material facts necessary in order to make
> the statements made, in light of the circumstances under which
> they were made, not misleading; and (iii) engaging in one or more
> acts, practices and courses of business which would and did
> operate as a fraud and deceit upon investors and potential
> investors in the EMATUM Securities, in connection with the
> purchase and sale of investments in the EMATUM Securities,
> directly and indirectly, by use of means and instrumentalities of
> interstate commerce and the mails, contrary to Title 15, United
> States Code, Sections 78j(b) and 78ff.
>
> In furtherance of the conspiracy and to effect its objects, within
> the Eastern District of New York and elsewhere, the defendant
> JEAN BOUSTANI, together with others, did commit and cause
> to be committed, among others, the following:
>
> (a)      On or about June 26, 2013, Privinvest sent
> approximately $1 million from the Proindicus loan proceeds to a
> bank account that Pearse held at UAE Bank 2, which payment
> passed through a correspondent bank account in the United
> States and the Eastern District of New York.
>
> (b)      On or about July 5, 2013, Pearse sent BOUSTANI a
> PowerPoint presentation regarding the project that would

19

become EMATUM that stated that the project would be funded through "the international bond markets."

(c)      On or about July 21, 2013, Subeva wrote an email to BOUSTANI, Pearse and Do Rosario, stating: "[W]e should also keep a cushion for Proindicus of $17mn so that we don't need to go back to MoF and they are on our side."

(d)      On or about July 25, 2013, Privinvest sent approximately $1 million from the Proindicus loan proceeds to a bank account that Pearse held at UAE Bank 2, which payment passed through a correspondent bank account in the United States and the Eastern District of New York.

(e)      On or about September 1, 2013, Privinvest sent approximately $1 million from the Proindicus loan proceeds to a bank account that Pearse held at UAE Bank 2, which payment passed through a correspondent bank account in the United States and the Eastern District of New York.

(f)      On or about October 11, 2013, Investment Bank 2 sent $350 million in EMATUM loan proceeds, less its fees of more than $37 million, to Investment Bank 1's bank account at New York City Bank 1, which payment passed through the Eastern District of New York.

(g)      On or about October 11, 2013, Investment Bank 1 sent approximately $312 million in EMATUM loan proceeds from New York City Bank 1 to Privinvest, which payment passed through the Eastern District of New York.

(h)      On or about October 23, 2013, a Privinvest entity with a bank account in the UAE sent approximately $800,000 to Singh's bank account at UAE Bank 2, which passed through a correspondent bank account in the United States and through the Eastern District of New York.

(i)      On or about November 24, 2013, Do Rosario sent BOUSTANI an invoice for $400,000 for a "Real Estate Project Purchase in Mozambique Project," to be paid to the UAE-based bank account of a third party.

(j)      On or about November 26, 2013, Privinvest wired $400,000 from its UAE-based bank through a bank in New York City to the UAE-based bank account specified in the

invoice referenced in subparagraph (i) above, which payment passed through the Eastern District of New York.

(k)     On or about March 31, 2014, Do Rosario sent BOUSTANI an invoice for $1 million from a UAE-based third-party entity for "CONSTRUCTION WORK IN THE MOZAMBICAN EXCLUSIVE ECONOMIC ZONE (EEZ)."

(l)     On or about April 2, 2014, Privinvest wired $1 million from its UAE-based bank through a bank in New York City and through the Eastern District of New York to the UAE-based bank account specified in the invoice referenced in subparagraph (k) above.

(m)     On or about April 8, 2014, Do Rosario sent BOUSTANI an invoice for $1.75 million for a "Real Estate Project Purchase in Mozambique."

(n)     On or about April 9, 2014, Privinvest wired $1 million from its UAE-based bank through a bank in New York City and through the Eastern District of New York to the UAE-based bank account specified in the invoice referenced in subparagraph (m) above.

(o)     On or about May 28, 2014, Privinvest wired $976,000 from its UAE-based bank account through a bank in New York City and through the Eastern District of New York to the UAE-based bank account specified in the invoice referenced in subparagraph (m) above.

(p)     On or about April 8, 2014, BOUSTANI sent an email to ALLAM detailing bribes and kickbacks Privinvest paid or intended to be paid in connection with the Proindicus and EMATUM projects.

(q)     On or about March 2, 2015, a Palomar employee sent an email to Pearse and Subeva, in which the employee summarized a meeting with Mozambican Co-Conspirator 3, and stated that Mozambique's Minister of Finance who had replaced Chang was "now aware of Proindicus and MAM" and that transactions associated with those entities "were not disclosed to the IMF." The Palomar employee further stated that while the new Minister of Finance disagreed with the failure to disclose the loans to the IMF, he nonetheless accepted that those "transactions now need to remain undisclosed."

(r)     On or about February 19, 2016, an employee of Investment Bank 1 emailed SINGH two valuation reports regarding the value of the 27 boats sold to EMATUM by Privinvest.  Those reports indicated that the boats were valued at approximately $265 million to $394 million less than the EMATUM Loan.

(s)     On or about March 4, 2016, Pearse forwarded to BOUSTANI an email and PowerPoint presentation regarding the Exchange.  The email described briefing Mozambican officials from the Ministry of Finance regarding potential default of the EMATUM Loan and related EMATUM Securities in connection with a March 11, 2016 loan interest payment.  The email also described briefing Mozambique's Minister of Finance on the road show schedule to promote the Exchange. The presentation set out a proposed road show travel timetable including "Investor meetings in London & New York."

(t)     On or about March 5, 2016, BOUSTANI replied to Pearse's March 4, 2016 email stating, "Please let's keep [DO ROSARIO] updated.  Because the option of a 'default' is a position that the President must be aware or take.

(u)     On or about March 14, 2016, Pearse sent an email to Subeva and BOUSTANI regarding a potential downgrading of Mozambique's credit rating, stating "It's a tactic to get the terms improved for US investors."

(v)     On or about March 14, 2016, DO ROSARIO and other co-conspirators flew from London, England to John F. Kennedy International Airport, in Queens, New York, to attend meetings with investors regarding the exchange of the EMATUM loan participation notes for Eurobonds.

(w)     On or about March 15, 2016, during a meeting in New York City, DO ROSARIO, together with others, provided false and misleading information to investors regarding Mozambique's economic prospects, debt level and its ability and intention to meet its EMATUM debt obligations to induce them to exchange EMATUM loan participation notes for Eurobonds.

A.    <u>Conspiracy to Commit Securities Fraud</u>

I have already instructed you on conspiracy generally when discussing Count One, the conspiracy to commit wire fraud.  (<u>See</u> pages 6-7.)  There are some additional instructions I will provide that relate to the conspiracy to commit securities fraud charged in Count Two.

To prove the crime of conspiracy to commit securities fraud, the government must prove four elements beyond a reasonable doubt:

<u>First</u>, that two or more persons entered into an agreement to commit securities fraud, a crime I will define for you in a few minutes;

<u>Second</u>, that the defendant knowingly and intentionally became a member of the conspiracy;

<u>Third</u>, that one of the members of the conspiracy committed at least one of the overt acts charged in the Superseding Indictment; and

<u>Fourth</u>, that at least one overt act was in furtherance of some object or purpose of the conspiracy as charged in the Superseding Indictment.

As with conspiracy to commit wire fraud, a defendant may be found guilty of conspiracy to commit securities fraud even if he was incapable of committing the substantive crime.  Consequently, for a defendant to be guilty of conspiracy, there is no need for the government to prove that he or any other conspirator actually succeeded in their criminal goals or even that they could have succeeded.

I will now discuss the four elements that the government must prove beyond a reasonable doubt to prove the charge of conspiracy to commit securities fraud.

23

1.     First Element: Existence of the Agreement

The first element that the government must prove beyond a reasonable doubt for Count Two is that two or more persons entered into the charged agreement to commit securities fraud. I have previously explained to you what it means to enter into an agreement for purposes of a conspiracy. (See pages 7-8.)

2.     Second Element: Membership in the Conspiracy

The second element the government must prove beyond a reasonable doubt for Count Two is that the defendant knowingly and intentionally became a member in the charged conspiracy. I have previously explained to you what it means to knowingly and intentionally become a member of a conspiracy. (See page(s) 8-10.)

3.     Third Element: Overt Acts

The third element the government must prove beyond a reasonable doubt for Count Two is that one of the members of the conspiracy knowingly committed at least one of the overt acts charged in the Superseding Indictment, as I read them before.

In order for the government to satisfy this element, it is not required that all of the overt acts alleged in the Superseding Indictment be proven or that the overt act was committed at precisely the time alleged in the Superseding Indictment. It is sufficient if you are convinced beyond a reasonable doubt that the overt act occurred at or about the time and place stated. Similarly, you need not find that the defendant himself committed the overt act. It is sufficient for the government to show that one of the conspirators knowingly committed an overt act in furtherance of the conspiracy, since, in the eyes of the law, such an act becomes the act of all of the members of the conspiracy.

4.      Fourth Element: In Furtherance of Some Objective of the Conspiracy

Finally, if you find that an overt act or acts were committed, the government must prove beyond a reasonable doubt that the overt act or acts were done specifically to further some objective of the conspiracy.

In order for the government to satisfy this element, it must prove, beyond a reasonable doubt, that at least one overt act was knowingly and willfully done, by at least one conspirator, in furtherance of some object or purpose of the conspiracy as charged in the Superseding Indictment.  In this regard, you should bear in mind that the overt act, standing alone, may be an innocent, lawful act.  Frequently, however, an apparently innocent act sheds its harmless character if it is a step in carrying out, promoting, aiding or assisting the conspiratorial scheme.  Therefore, you are instructed that the overt act does not have to be an act which, in and of itself, is criminal or constitutes an objective of the conspiracy.

B.      Securities Fraud: Definition and Elements

I will now define securities fraud, which is alleged to be the object of the conspiracy charged in Count Two of the Superseding Indictment.  The relevant statute is Section 10(b) of the Securities Exchange Act of 1934.  That law provides in relevant part that:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or any facility of any national securities exchange –
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange Commission ("SEC")] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

25

Based on its authority under this statute, the Securities and Exchange Commission ("SEC") enacted Rule 10b-5, which provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

The following are the three elements of the crime of securities fraud.

1.  <u>First Element - Fraudulent Act</u>

The first element is that, in connection with the purchase or sale of a security, a defendant did one or more of the following:

(1) employed a device, scheme or artifice to defraud, or

(2) made an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller of any security.

In this case, the charged conspiracy to commit securities fraud related to the domestic purchase or sale of EMATUM loan participation notes and Eurobond which those notes were exchanged for, both of which are securities, and which I will refer as the "EMATUM Securities."

Let me now explain some of these terms.

26

- *Device, Scheme, or Artifice to Defraud*:  A device, scheme or artifice to defraud is a plan for the accomplishment of a fraud.  Fraud is a general term which embraces all efforts and means that individuals devise to take advantage of others. The law that the defendant is alleged to have violated prohibits all kinds of manipulative and deceptive acts.  The fraudulent or deceitful conduct alleged need not relate to the investment value of the securities involved in the case.

  Any conduct that is designed to deceive or defraud investors by controlling or artificially affecting the price of securities is prohibited.  An essential element of manipulation of securities is the deception of investors into believing that the prices at which they purchase and sell securities are determined by the natural interplay of supply and demand.

- *False Statements and Omissions*:  A statement, representation, claim, or document is false if it is untrue when made and was then known to be untrue by the person making it or causing it to be made.  A representation or statement is fraudulent if it was made with the intention to deceive.  False or fraudulent statements under the statute may include half-truth statements that omit or conceal material facts in a manner that makes what is said or represented deliberately misleading.  The deception need not be based upon spoken or written words alone.  The arrangement of the words, or the circumstances in which they are used, may convey the false and deceptive appearance.  If there is deception, the manner in which it is accomplished does not matter.

27

- *In Connection With*:  The "in connection with" aspect of this element is satisfied if there was some nexus or relation between the allegedly fraudulent conduct and the sale or purchase of securities.  Fraudulent conduct may be "in connection with" the purchase or sale of securities if the alleged fraudulent conduct "touched upon" a securities transaction.  The government need not prove that a defendant actually participated in any securities transaction if he was engaged in fraudulent conduct that was "in connection with" a purchase or sale of securities.  Again, I remind you that, in this case, the charged conspiracy to commit securities fraud relates to the domestic purchase or sale of the EMATUM Securities.  A securities transaction is domestic when a purchaser commits himself or herself to purchase a security while physically present within the United States, or when a seller commits himself or herself to sell a security while physically present within the United States.

It is no defense to an overall scheme to defraud that a defendant may not have been involved in the scheme from its inception or may have played only a minor role with no contact with the investors and purchasers of the securities in question.  Nor is it necessary for you to find that a defendant was the actual seller or offeror of the securities.  It is sufficient if a defendant participated in the scheme or fraudulent conduct that involved the purchase or sale of securities.  By the same token, the government need not prove that a defendant personally made the misrepresentation or that he omitted the material fact.  It is sufficient if the government establishes that the defendant caused the statement to be made or the fact to be omitted.  With regard to the alleged misrepresentations and omissions, you must determine whether the

28

statement was true or false when it was made, and, in the case of alleged omissions, whether the omission was misleading.

- _Material Fact_: The government must also establish that the fact or facts that were misstated or omitted in connection with the purchase or sale of any securities were material under the circumstances.  "A misrepresentation is material under Section 10(b) of the Securities Exchange Act and Rule 10b–5 where there is a substantial likelihood that a reasonable investor would find the misrepresentation important in making an investment decision."  If there was a material misrepresentation or omission of a material fact, it does not matter whether the intended victims were gullible buyers or sophisticated investors, because the securities laws protect the gullible and unsophisticated as well as the experienced investor.

It does not matter whether the alleged unlawful conduct was successful or not, or that a defendant profited or received any benefits as a result of the alleged scheme. Success is not an element of the crime charged.  It is not necessary that the government prove that the defendant actually realized any gain from the scheme or that the intended victim actually suffered any loss.

### 2.   Second Element - Knowledge, Intent and Willfulness

The second element is that a defendant acted knowingly, willfully and with intent to defraud.

As I explained before, a person acts "knowingly" if he acts purposely and voluntarily and not because of ignorance, mistake, accident, negligence, or carelessness.

"Willfully" means to act knowingly and purposely, with an intent to do something the law forbids, that is to say, with bad purpose either to disobey or to disregard the law.

"Intent to defraud" in the context of the securities laws means to act knowingly and with intent to deceive.

3.    Third Element - Instrumentality of Interstate Commerce

The third and final element is that a defendant knowingly used, or caused to be used, the mails or any means or instrumentalities of transportation or communication in interstate commerce in furtherance of the scheme to defraud.  This would include the use of a telephone, a bank wire transfer or an email sent over the Internet that traveled across state lines or between the United States and a foreign country.

It is not necessary that a defendant be directly or personally involved in any mailing, wire, or use of an instrumentality of interstate commerce.  If the defendant was an active participant in the scheme and took steps or engaged in conduct which he knew or reasonably could foresee would naturally and probably result in the use of interstate means of communication, then you may find that he caused the mails or an instrumentality of interstate commerce to be used.

When one does an act with the knowledge that the use of interstate means of communication will follow in the ordinary course of business, or where such use reasonably can be foreseen, even though not actually intended, then he causes such means to be used.

It is not necessary that the items sent through interstate means of communication contain the fraudulent material, or anything criminal or objectionable.  The interstate means of communication may be entirely innocent.

30

The use of interstate communications need not be central to the execution of the scheme, and may even be incidental to it.  All that is required is that the use of the interstate communications bear some relation to the object of the scheme or fraudulent conduct.  In fact, the actual offer or sale need not be accomplished by the use of interstate communications, so long as a defendant is still engaged in actions that are a part of the fraudulent scheme when interstate communications are used.

I remind you that the government need not prove that the defendant actually committed the substantive crime of securities fraud, the unlawful act charged as the object of the conspiracy in Count Two.

C.      <u>Venue</u>

I have explained to you the elements the government must prove beyond a reasonable doubt as to Count Two.  The government also must prove venue.  As I explained to you earlier, the government must prove venue only by a preponderance of the evidence.  I remind you that to establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not.

To establish venue for securities fraud as charged in Count Two, the government must prove that it is more likely than not that: (1) the defendant intentionally and knowingly caused an act or transaction constituting a securities fraud to occur in the Eastern District of New York, which consists of the Counties of Kings, Queens, Richmond, Nassau, and Suffolk, or (2) it was foreseeable that such an act or transaction would occur in the Eastern District of New York and it did.

The government need not prove that the defendant personally was present in the Eastern District of New York.  It is sufficient to satisfy the venue requirement if the

31

defendant intentionally and knowingly caused an act or transaction constituting a securities fraud to occur, at least in part, within the Eastern District of New York. The government also must prove that the act or transaction must be a part of the actual crime of securities fraud and not merely a step taken in preparation for the commission of the crime.

Therefore, if you find that it is more likely than not that an overt act in furtherance of the conspiracy took place in the Eastern District of New York, the government has satisfied its burden of proof as to venue as to Count Two. Again, I caution you that the preponderance of the evidence standard applies only to venue. The government must prove each of the elements beyond a reasonable doubt.

* * * * *

In sum, in order to prove that the defendant is guilty of Count Two, the government must prove, beyond a reasonable doubt: 1) that the defendant entered into an agreement with one or more individuals to commit securities fraud; 2) that the defendant knowingly and intentionally joined the conspiracy; 3) that at least one of the overt acts alleged in the Superseding Indictment was committed by at least one member of the conspiracy; and 4) that the overt act was committed specifically to further some objective of the conspiracy. In addition, the government must also establish venue for Count Two by a preponderance of the evidence.

If you find that the government has not proven any one of these elements, then you must find the defendant not guilty of Count Two. Remember, however, that the

government need not prove that the defendant actually committed securities fraud, the

unlawful acts charged as the object of the conspiracy in Count Two.

Authority

      Adapted from the Shkreli Jury Charge, instructions for Counts Three and Six, One and Four, and Eight; from the Petrossi Jury Charge, Trial Tr. at 1128-36;  United States v. Vilar, 729 F.3d 62, 76 & n.11 (2d Cir. 2013); Lange; Sand, Instrs. 57-20, 57-21, 57-25; Hon. Denny Chin, United States v. Nouri, No. 07-CR-1029 (S.D.N.Y.); Hon. Leonard B. Sand, United States v. Pignatiello, No. 96-CR-032 (S.D.N.Y.).  See United States v. Santoro, 302 F.3d 76, 81 (2d Cir. 2002) ("Unlike customers who independently find their stocks and whose brokers merely execute trades at their command, customers who rely on investment recommendations reasonably trust their brokers to fully disclose all information pertinent to the recommendation and quality of the investment."); United States v. Szur, 289 F.3d 200, 210 (2d Cir. 2002).  See also United States v. Lange, 834 F.3d 58, 69-71 (2d Cir. 2016) (citing United States v. Tzolov, 642 F.3d 314, 319 (2d Cir. 2011)); United States v. Svoboda, 347 F.3d 471, 483 (2d Cir. 2003) (securities fraud venue)).

The relevant statutes for this charge are 18 U.S.C. § 371, which provides, in relevant part:

> If two or more persons conspire either to commit any offense against the United States, . . . and one or more of such persons do any act to effect the object of the conspiracy, each shall be [punished].

And, 15 U.S.C. § 78j(b), which provides in relevant part that:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

> To use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

33

REQUEST NO. 7
(Conscious Avoidance: Securities Fraud Conspiracy)
(If Applicable)

As I explained, for purposes of Count Two, the government is required to
prove, among other things, that the defendant knowingly and intentionally became a member
of the conspiracy and that the object of the conspiracy was to commit securities fraud.  In
determining whether the defendant acted knowingly with respect to the object or objects of
the conspiracy, you may consider whether the defendant deliberately closed his eyes to what
would otherwise have been obvious to him.

If you find beyond a reasonable doubt that the defendant was aware that there
was a high probability that his co-conspirators' objective was to violate the law as charged in
Count Two but that the defendant deliberately avoided confirming this fact, you may treat
this deliberate avoidance of positive knowledge as the equivalent of knowledge of the object
of the charged conspiracy.  However, if you find that the defendant actually believed that he
or his co-conspirators were acting in a lawful manner, he may not be convicted of the charge
in Count Two.

Moreover, guilty knowledge may not be established by demonstrating that the
defendant was merely negligent, foolish, or mistaken.  There is a difference between
knowingly participating in the conspiracy and knowing the objects of the conspiracy.
"Conscious avoidance" or "willful blindness" as I have described it cannot be used as a basis
for finding that the defendant knowingly joined the conspiracy.  It is logically impossible for
a defendant to join the conspiracy unless he or she knows the fact that the conspiracy exists.

However, if you find beyond a reasonable doubt that the defendant chose to
participate in a joint undertaking, you may consider whether the defendant deliberately

34

avoided confirming an otherwise obvious fact: that the purpose of the partnership he joined

was to violate the law as charged in Count Two.

<u>Authority</u>

Adapted from the <u>Ng Lap Seng</u> Jury Charge, July 26, 2017 Trial Tr. (ECF No. 610); and from Sand, Instr. 3A-2.  <u>See id.</u> cmt. ("Instruction 3A-2 is appropriate when a defendant has claimed a . . .  lack of knowledge as to the unlawful aims of a conspiracy, but the evidence suggests deliberate ignorance.").

<u>REQUEST NO. 8</u>
(Count Four: Money Laundering Conspiracy)

Like Counts One and Two that I have already discussed with you, Count Four

charges a conspiracy to commit a federal offense, namely, the crime of money laundering.

That count reads:

> In or about and between January 2013 and December 2018, both
> dates being approximate and inclusive, within the Eastern District of
> New York and elsewhere, the defendant JEAN BOUSTANI, together
> with others, did knowingly and intentionally conspire to transport,
> transmit and transfer monetary instruments and funds to one or more
> places outside the United States from one or more places inside the
> United States, and to one or more places inside the United States from
> one or more places outside the United States, (a) with the intent to
> promote the carrying on of one or more specified unlawful activities,
> to wit: (i) a violation of the FCPA, Title 15, United States Code,
> Sections 78dd-1, 78m(b)(2)(B), 78m(b)(5) and 78ff(a); (ii) offenses
> against a foreign nation involving the bribery of a public official, in
> violation of Mozambican law, as defined in Title 18, United States
> Code, Section 1956(c)(7)(B)(iv); (iii) wire fraud, in violation of Title
> 18, United States Code, Section 1343; and (iv) fraud in the sale of
> securities, in violation of Title 15, United States Code, Sections
> 78j(b) and 78ff (collectively, the "Specified Unlawful Activities"),
> contrary to Title 18, United States Code, Section 1956(a)(2)(A); and
> (b) knowing that the monetary instruments and funds involved in the
> transportation, transmission and transfer represented the proceeds of
> some form of unlawful activity, and knowing that such transportation,
> transmission and transfer was designed in whole and in part to conceal
> and disguise the nature, location, source, ownership and control of the
> proceeds of one or more specified unlawful activities, to wit: the
> Specified Unlawful Activities, contrary to Title 18, United States
> Code, Section 1956(a)(2)(B)(i).

A.      <u>Conspiracy to Commit Money Laundering</u>

I have already explained the law of conspiracy to you in connection with

Count One.  Those instructions apply equally to Count Four.  Like Count One, no overt act is

required to prove Count Four.  Thus, in order to prove the crime of money laundering

conspiracy charged in Count Four, the government must establish the following elements of the crime beyond a reasonable doubt:

      First, that two or more persons entered into the charged agreement – to launder money.

      Second, that the defendant knowingly and intentionally became a member of the conspiracy.

      As with conspiracy to commit wire fraud or securities fraud, a defendant may be found guilty of conspiracy to commit money laundering even if he was incapable of committing the substantive crime.  Consequently, for a defendant to be guilty of conspiracy, there is no need for the government to prove that he or any other conspirator actually succeeded in their criminal goals or even that they could have succeeded.

      As I just read, Count Four charges a conspiracy with two objects; first, to transport, transmit, or transfer monetary instruments or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States, with the intent to promote the carrying on of one or more of the Specified Unlawful Activities, namely, a violation of the Foreign Corrupt Practices Act; offenses against a foreign nation involving the bribery of a public official, in violation of Mozambican law; wire fraud; and securities fraud (the "Specified Unlawful Activities"); and second, to transport, transmit or transfer monetary instruments from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States, knowing that the monetary instruments or funds involved in the transportation, transmission, or transfer represent proceeds of some form of unlawful activity and knowing the transportation is designed, in

whole or in part, to conceal or disguise the nature location, source, ownership or control of the proceeds of the Specified Unlawful Activities.

        The government does not need to prove both objects of the conspiracy in order for you to find the defendant guilty of Count Four. The government need only prove one object beyond a reasonable doubt, so long as you are unanimous as to which object has been proved.

B.    <u>Object One: Promotion</u>

        I will now discuss the objects of the money laundering conspiracy. Some of the terms I use require definition as follows:

- *Monetary Instrument*: A monetary instrument includes, among other things, coins or currency of the United States or any other country, personal checks, travelers' checks, cashier's checks, bank checks, money orders or investment securities or negotiable instruments in bearer form or otherwise in such a form that title thereto passes on delivery.

- *Specified Unlawful Activity*: A specified unlawful activity is one of a variety of offenses defined by the statute. In this case, the government has alleged that the specified unlawful activity was a violation of the Foreign Corrupt Practices Act; offenses against a foreign nation involving the bribery of a public official, in violation of Mozambican law; wire fraud; and securities fraud. I instruct you that, as a matter of law, these offenses—the Specified Unlawful Activities—each fall within the definition of specified unlawful activity. However, it is for you to determine whether the funds were the proceeds of one or more of the Specified Unlawful Activities or

whether the defendant acted with the intent to promote one or more of the Specified Unlawful Activities.

As I discussed above, the first object of the money laundering conspiracy charged in Count Four is to promote the carrying on of one or more of the Specified Unlawful Activities.

Section 1956 of Title 18, United States Code, deals, in relevant part, with participation in international money laundering. Specifically, Section 1956(a)(2)(A) provides that "Whoever, transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States . . . with the intent to promote the carrying on of specified unlawful activity . . . shall be [guilty of a crime]."

The first element that the government must prove beyond a reasonable doubt is that an individual transported, transmitted, or transferred, or attempted to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States.

The second element that the government must prove beyond a reasonable doubt is that the individual did so with the intent to promote the carrying on of one or more of the Specified Unlawful Activities, here a violation of the Foreign Corrupt Practices Act; offenses against a foreign nation involving the bribery of a public official, in violation of Mozambican law; wire fraud; and securities fraud. I have already explained to you what it means to act intentionally. Here, to act intentionally means to act deliberately and

39

purposefully, not by mistake or accident, with the purpose of promoting, facilitating, or

assisting the carrying on of the Specified Unlawful Activities.

C.     Object Two: Concealment

The second object of the money laundering conspiracy charged in Count Four

is to transport, transmit, or transfer a monetary instrument or funds from a place in the United

States to or through a place outside the United States or to a place in the United States from

or through a place outside the United States knowing that the monetary instrument or funds

involved represented the proceeds of some form of unlawful activity and knowing that such

transportation was designed in whole or in part to conceal or disguise the nature, the location,

the source, the ownership or the control of the proceeds of the specified unlawful activity.

Section 1956(a)(2)(B)(i) states that "Whoever transports, transmits, or

transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a

place in the United States to or through a place outside the United States or to a place in the

United States from or through a place outside the United States … knowing that the

monetary instrument or funds involved in the transportation, transmission, or transfer

represent the proceeds of some form of unlawful activity and knowing that such

transportation, transmission, or transfer is designed in whole or in part to conceal or disguise

the nature, the location, the source, the ownership or the control of the proceeds of the

specified unlawful activity . . . shall be [guilty of a crime]."

This object has the following elements:

The first element that the government must prove beyond a reasonable doubt is

that an individual transported, transmitted, or transferred, or attempted to transport, transmit,

or transfer a monetary instrument or funds from a place in the United States to or through a

40

place outside the United States or to a place in the United States from or through a place outside the United States.

Second, the individual did so with the knowledge that the monetary instrument or funds involved represented the proceeds of some form of unlawful activity.  This element refers to a requirement that the individual knew the property involved represented the proceeds from some form, though not necessarily which form, of activity that constitutes an offense under state, federal or foreign law.

Third, the individual did so with the knowledge that the transportation was designed in whole or in part to disguise or conceal the nature, location, source, ownership or control of the proceeds of one or more of the Specified Unlawful Activities, namely, a violation of the Foreign Corrupt Practices Act; offenses against a foreign nation involving the bribery of a public official, in violation of Mozambican law; wire fraud; and securities fraud.

Authority

Adapted from 18 U.S.C. §§ 1956(h), 1956(a)(2); United States v. Joaquin Archivaldo Guzman Loera, No. 09-cr-466 (BMC) (E.D.N.Y. Feb. 4, 2019), as reflected in the trial transcript for proceedings on Feb. 4, 2019; Sand, Instr. 50A-11, 50A-12, 50A-15, 50A-16.

REQUEST NO. 9
(Specified Unlawful Activities)

As I explained before, Count Four charges a money laundering conspiracy in connection with one or more of the Specified Unlawful Activities, namely, (1) violations of the anti-bribery provisions and/or the internal controls provisions of the Foreign Corrupt Practices Act (the "FCPA"), (2) offenses against a foreign nation involving the bribery of a public official, in violation of various Mozambican laws; (3) wire fraud; and (4) securities fraud.  I have already explained the elements of wire fraud to you (at pages 10 to 15), and the elements of securities fraud (at pages 25 to 31).  I will now explain to you the elements of the other two Specified Unlawful Activities alleged.  As I discussed earlier, you need not find that the defendant acted to conceal or disguise the proceeds of or promote all of these Specified Unlawful Activities; you need only find that the defendant acted to conceal or disguise the proceeds of or promote one of these Specified Unlawful Activities.

A.    Violations of the FCPA

The first specified unlawful activity charged in Count Four is a violation of the FCPA.  I will now explain two separate sets of FCPA provisions, the anti-bribery provisions and the internal controls provisions.  A violation of either provision is a violation of a specified unlawful activity.

1.    Violations of the FCPA's Anti-Bribery Provisions (15 U.S.C. § 78dd-1)

For an individual to be found guilty of a violation of the anti-bribery provisions of the FCPA, the government must prove the following seven elements beyond a reasonable doubt:

First: that the individual was an officer, director, employee, or agent of an

42

"issuer," or a stockholder thereof acting on behalf of such an issuer;

Second: that the individual acted corruptly and willfully;

Third: that the individual made use of or caused another to make use of the mails or any means or instrumentality of "interstate commerce," such as an email, in furtherance of the offense;

Fourth: that the individual offered, paid, promised to pay, or authorized the payment of money or gift or anything of value;

Fifth: that the offer, promise to pay, or authorization of the payment of money or a gift or anything of value was either (a) to a foreign official, or (b) to any person or entity while the individual knew that all or a portion of the payment would be offered, given, or promised, directly or indirectly, to a foreign official;

Sixth: that the payment was intended for any one of three purposes relevant to this action:(a) to influence any act or decision of a foreign public official in his official capacity; (b) to induce such a foreign official to do or omit to do any act in violation of the lawful duty of such foreign official; or (c) to secure any improper advantage; and

Seventh: that the payment was to assist the issuer in obtaining or retaining business for or with, or directing business to, any person or company.

a.      First Element – Issuer

The first element that the Government must prove beyond a reasonable doubt is that the individual was an officer, director, employee, or agent of an issuer, or a stockholder of an issuer who was acting on behalf of that issuer.

An "issuer" is defined to include any entity which has a class of securities registered pursuant to section 78l of Title 15 of the United States Code or which is required

to file reports under section 78o(d) of Title 15.  An entity that has common stock registered with the Securities & Exchange Commission pursuant to Section 12(b) of the Securities Exchange Act of 1934 ("Exchange Act") or American Depository Shares trade on the a U.S. stock exchange, like the New York Stock Exchange, is an issuer under the FCPA. Likewise, an entity that files periodic reports, including Form 20-F with the SEC pursuant to Section 13 or 15(d) of the Exchange Act and related rules thereunder is an issuer under the FCPA.

The words "officer," "director," and "employee" have their ordinary meanings.  An agent is a person who by express or implicit agreement with another person or entity, called the principal, undertakes to represent, or act on behalf of, the principal in performing some service for the principal.  Joint participation in a partnership or joint venture, whether formal or informal, suffices to make each partner or joint venturer an agent of the others.

An agent is acting within the scope of the agent's authority if the agent is engaged in the performance of duties that were expressly or implicitly assigned to the agent by the principal.

Proof of agency need not be in the form of a formal agreement between agent and principal; rather, it may be inferred circumstantially and from the words and actions of the parties involved.

b.      Second Element – Corruptly and Willfully

The second element that the government must prove beyond a reasonable doubt is that the individual acted "corruptly" and "willfully."

A person acts "corruptly" if he or she acts voluntarily and intentionally, with

44

a bad purpose or evil motive of accomplishing either an unlawful end or result, or a lawful

end or result by some unlawful method or means.  The term "corruptly" in the FCPA

means that the offer, payment, or promise was intended to induce or influence the foreign

official to misuse his or her official position.

I have already instructed you regarding the term "willfully" (at pages 4-5.).

That instruction applies here.

### c.      Third Element – Interstate Commerce

The third element that the government must prove beyond a reasonable

doubt is that the individual or someone acting at his direction or with his authorization

made use of the mails or any means or instrumentality of "interstate commerce" in

furtherance of the offense.

The term "interstate commerce" means trade, commerce, transportation, or

communication among the several States, or between any foreign country and any State or

between any State and any place or ship outside thereof.  The term includes the interstate

use of a telephone, email service provider, or other interstate means of communication, or

any other interstate instrumentality, such as a fax machine, car, or plane. I instruct you that

sending wire transfers through a bank in the United States constitutes the use of a means or

instrumentality of interstate commerce.

### d.      Fourth Element – Promise or Authorization to Pay

The fourth element that the government must prove beyond a reasonable doubt

is that the individual offered, paid, promised to pay, or authorized the payment of money or

gift or anything of value.  A "thing of value" can take any form, whether cash, check, wire

transfer, gift, donation, contribution, or anything else.

It is not necessary that the bribe, or offer or promise of a bribe, was intended to be made directly by the individual to the foreign official.  A person who engages in bribery of a foreign official indirectly through any other person or entity is liable under the FCPA, just as if the person had engaged in bribery directly.  Thus, if the person authorizes another to pay or promise a bribe, that authorization alone is sufficient for you to find that this element has been proven.

Further, it is not necessary that the payment actually take place or that the gift actually be given.  Instead, it is the offer, promise, or authorization of the bribe that completes the crime.  Thus, this element is satisfied if the person offered, promised, or authorized an unlawful payment or gift, even if the payment was not actually made or the gift was not actually given.

e.   <u>Fifth Element – Payment to a Foreign Official</u>

The fifth element that the government must prove beyond a reasonable doubt is that the offer, payment, promise to pay, or authorization of the payment of money or anything of value was either (a) to a foreign official, or (b) to any other person or entity, while the individual knew that all or a portion of the payment or gift would be offered, given, or promised, directly or indirectly, to a foreign official.

The term "foreign official" means any officer or employee of a foreign government or any department, agency, or instrumentality thereof, or any person acting in an official capacity for or on behalf of any such government or department, agency, or instrumentality.  As a matter of law, the government of the Republic of Mozambique qualifies as a foreign government.

With respect to the directors and employees of Proindicus, Ematum or MAM, in order for you to find them to be foreign officials, you must find that Proindicus, Ematum or MAM was a government instrumentality.  An "instrumentality" of a foreign government is an entity controlled by the government of a foreign country that performs a function the controlling government treats as its own.  State-owned or state-controlled companies that provide services to the public may meet this definition.

To decide if Proindicus, Ematum and/or MAM is an "instrumentality" of the government of Mozambique, you may consider the following factors as they existed during the relevant time period:

a) whether the government of Mozambique had a majority interest in Proindicus, Ematum and/or MAM;

b) the circumstances surrounding Proindicus, Ematum and/or MAM's creation;

c) whether Proindicus, Ematum and/or MAM provided services to the citizens and inhabitants of Mozambique;

d) the degree to which the government of Mozambique effectuated certain national policies or priorities through Proindicus, Ematum and/or MAM;

e) whether Proindicus, Ematum and/or MAM's key officers or directors were government officials or are appointed by government officials;

f) whether the government had the power to fire key officers or directors for any of these entities;

g) whether Proindicus, Ematum and/or MAM had a monopoly over the functions it exists to carry out;

47

h)      the degree to which Proindicus, Ematum and/or MAM was subject to government controls and oversight, including with regard to fiscal matters and conduct of public officials;

i)      Proindicus, Ematum and/or MAM's obligations and privileges under the law of Mozambique;

j)      the characterization of Proindicus, Ematum and/or MAM and their directors and employees by the government of Mozambique;

k)      whether Proindicus, Ematum and/or MAM was widely perceived and understood to be performing official or government functions; and

l)      the length of time these indicia have existed.

These factors are not exclusive, and no single factor will determine whether Proindicus, Ematum and/or MAM was an instrumentality of Mozambique.  In addition, you do not need to find that all the factors listed above weigh in favor of Proindicus, Ematum and/or MAM being an instrumentality in order to find that Proindicus, Ematum and/or MAM was an instrumentality.

The individual's offer, payment, promise to pay, or authorization of payment to a recipient who is not a foreign official is sufficient only if the individual acted while knowing that all or some of the payment would be offered, given, or promised, directly or indirectly, to a foreign official.

For purposes of the FCPA, a person's state of mind is "knowing" with respect to conduct, a circumstance or a result if (a) such person is aware that such person is engaging in such conduct, that such circumstance exists, or that such result is substantially certain to occur; or (b) such person has a firm belief that such circumstance exists or that

48

such result is substantially certain to occur.

For purposes of the FCPA, a person is deemed to have knowledge of a circumstance if the evidence shows that he or she was aware of a high probability of the existence of such circumstance, unless he or she actually believes that such circumstance does not exist.

### f. Sixth Element – Purpose of the Payment or Offer

The sixth element that the government has to prove beyond a reasonable doubt is that the payment or offer was intended for one of three purposes relevant to this action: (a) to influence any act or decision of a foreign official in his official capacity; (b) to induce such a foreign official to do or omit to do any act in violation of the lawful duty of such foreign official; or (c) to secure any improper advantage.

The government need not prove that the offer to pay, payment, promise to pay, or authorization of payment was for all of these purposes. If the government proves that the offer to pay, payment, promise to pay, or authorization of payment was for any one of these purposes, or more than one, this element has been met. However, one of these purposes must have been the reason for the offer, payment, gift, or promise.

### g. Seventh Element - Obtaining or Retaining Business

The seventh element that the government must prove beyond a reasonable doubt is that the payment was made to assist the issuer, referenced in connection with the first element, in obtaining or retaining business for or with, or directing business to, any person or company.

It is not necessary that the government prove that any person or company actually obtained or retained any business whatsoever as a result of an unlawful offer,

payment, promise, or gift, only that the individual intended to assist in obtaining or retaining business for or with any person or company.  Moreover, this element is not limited to obtaining or renewal of contracts or other business, but also includes the execution or performance of contracts, or the carrying out of existing business.

### h.   Solicitation of Bribe Not a Defense

It does not matter who suggested that a corrupt offer, payment, promise, or gift be made.  The FCPA prohibits any corrupt offer or payment or gift, if made for one of the purposes I described, regardless of who first suggested it.  It is not a defense if the offer or payment or gift was first suggested or requested by someone other than the individual, or demanded on the part of a foreign official as a price for continuing to do business or other benefit, or that the business may have been harmed if the payment was not made.  That the offer to pay, payment, promise to pay, or authorization of payment may have been first suggested by the recipient is not deemed an excuse for an individual's decision to make a corrupt payment, nor does it alter the corrupt purpose for which the offer to pay, payment, promise to pay, or authorization of payment was made.

### 2.   Violations of the FCPA's Internal Controls Provisions (15 U.S.C. § 78m)

In order to prove an individual guilty of this offense, the Government must prove the following two elements beyond a reasonable doubt.

First: that the individual circumvented a system of internal accounting controls of an issuer; and

Second: that the individual acted knowingly and willfully.

a.    First Element – Internal Accounting Controls

The first element that the Government must prove beyond a reasonable doubt is that the individual circumvented a system of internal accounting controls of an issuer.

Every issuer, which I have defined already for you in relation to the previous violation of the FCPA, is required by law to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that, among other things, transactions of the issuer are executed in accordance with management's general or specific authorization.  A person circumvents such a system by evading these controls.

b.    Second Element – Knowingly and Willfully

The second element that the Government must prove beyond a reasonable doubt is that the individual acted knowingly and willfully. I have previously instructed you regarding these terms and the same instructions apply here.

B.    Bribery of Foreign Officials in Violation of the Laws of Mozambique

As noted above, the second specified unlawful activity charged in Count Four is an offense against a foreign nation involving the bribery of a public official, in violation of the laws of the Republic of Mozambique.  The laws of Mozambique outlaw bribery and corruption involving public officials.  Specifically, two legal regimes under the laws of Mozambique prohibit bribery or attempted bribery of public officials: (1) the 2015 Penal Code prohibits bribery for acts that occurred after June 29, 2015; and (2) additional laws prohibit certain conduct that occurred before June 29, 2015.  A violation of any one of the laws detailed below is violation of a specified unlawful activity.

51

1.      Articles 501 of the 2015 Penal Code

Article 501 prohibits someone from giving or promising a bribe or other advantage to a public official in return for an act or omission.  In order for a person to be found to be in violation of Article 501 of the 2015 Penal Code, the following two elements must be proven:

First, the individual, either himself or through an intermediary, gave or promised to give to a public official, money or any undue material or immaterial advantage.

Second, the money or promise to be given money or other undue material or immaterial advantage must have been given for the purpose of performing either (1) an act in violation of the duties of the public official's position, or an omission or delay in doing an act he/she is required to perform, or (2) an act that was not a violation of the duties of the public official's position.

2.      Articles 502 and 503 of the 2015 Penal Code

Articles 502 and 503 of the 2015 Penal Code, prohibit a public official from soliciting or receiving a bribe or other advantage in return for an act or omission.  In order for an individual to violate Article 502 or 503, the following two elements must be proven:

First, the public official, either himself or through an intermediary, solicited or received money or a promise to be given money or any undue material or immaterial advantage.

Second, the money or promise to be given money or other undue material or immaterial advantage must have been solicited or received either 1) with the intention of the public official doing any act in violation of the duties of his/her position, or omitting an act

52

he/she is required to perform; or 2) for the purpose of performing any act that is not in violation of the duties of his/her position.

3.  Articles 7 and 8 of Law 6/2004

Articles 7 and 8 of Law 6/2004 prohibited the solicitation of bribes or other advantages by public officials prior to June 29, 2015.  In order for an individual to be found to be in violation of Article 7 or 8 of Law 6/2004, the following three elements must be proven:

First, at the time of the offense, the violator was either 1) a public official or employee, or 2) any person who brought about, contributed to, or profited from the violation by a public official or employee.

Second, the violator himself/herself or through an intermediary, with his/her consent and approval, requested or received money, or the promise of money, or any monetary or non-monetary benefit that is not due them.

Third, the purpose of the request for money, the promise of money, or other benefit was for the public official or employee to perform or fail to perform either 1) an act in violation of the duties of his/her office, or 2) an act that did not violate the duties his/her office.

4.  Article 9 of Law 6/2004

Article 9 of Law 6/2004 prohibited someone from giving a bribe or other benefit to a public official in return for an act or omission that did not violate his/her duties prior to June 29, 2015.  In order for an individual to be found to be in violation of Article 9 of Law 6/2004, the following two elements must be proven:

First, an individual, either himself or through an intermediary, gave or promised to give money or any undue material or immaterial benefit to a public official or employee.

Second, the purpose of giving or promising to give money or undue material or immaterial benefit was for the public official or public employee to perform or fail to perform an act that did not violate the duties of his/her office.

5.    Article 321 of the 1886 Penal Code

Article 321 of the 1886 Penal Code prohibited someone from giving a bribe to a public official in return for an act or omission that violated his/her duties prior to June 29, 2015.  In order for an individual to be found to be in violation of Article 321 of the 1886 Penal Code, the following two elements must be proven:

First, an individual gave, offered or promised a kickback or gift to a public employee.

Second, the purpose of giving, offering or promising the kickback or gift was for the public employee to perform or fail to perform an act that violated the duties of his/her office.

6.    Public Officials and Employees

The terms "public official" and "public employee," as they are used in the laws about which I have just advised you, include: the President of the Republic of Mozambique; any officer or employee of the government of Mozambique; and any director or employee of a government agency or publicly-owned company.  These terms also include any Minister, including the Minister of Finance, and any Vice-Minister, including the Vice-Minister of Finance, unless the public official or employee is the violator, in which case Law

7/98 applies to all conduct during the relevant time period indicated in the indictment.  I will explain Law 7/98 in a moment.  However, if it is another individual who is bribing a Minister of Vice-Minister, then the laws I have just explained apply.

       7.    <u>Article 8 of Law 7/98</u>

Article 8 of Law 7/98 prohibits individuals holding specifically identified positions in the government of Mozambique, including Ministers and Vice-Ministers, from giving, soliciting or receiving bribes or other benefits.  Where individuals holding these specific positions, like the Minister or Vice-Minister of Finance, are the violators, then Law 7/98 would apply instead of those I have previously described.   In order for a Minister or Vice-Minister to be found to be in violation of Article 8 of Law 7/98, the following three elements must be proven:

<u>First</u>, at the time of the offense, the violator was either a Minister or Vice-Minister.

<u>Second</u>, the Minister or Vice-Minister either 1) received a kickback or gift, personally or through an intermediary; or 2) or gave, offered or promised a kickback or gift to another public employee.

<u>Third</u>, the kickback or gift, or offer or promise of a kickback or gift, was for one of the following purposes: 1) in the case of the Minister or Vice-Minister receiving the kickback or gift, it was in return for the Minister or Vice-Minister performing or failing to perform an act that was either consistent with or that violated the duties of his/her office; or 2) in the case of the Minister or Vice-Minister giving, offering or promising a kickback or gift to another public employee, it was in return for that public employee performing or

failing to perform an act that was either consistent with or that violated the duties of his/her office.

        8.    <u>Article 40 of Law 16/2012</u>

        Article 40 of Law 16/2012 states that, among other duties, public employees and officials have a duty not to use their office or position for their own unjust enrichment by receiving money or other advantage from anyone who has an interest in an act or omission attributable to the public employee's job attributes.  This provision applies to all public employees or officials that I have described, including the President of the Republic, Ministers, Vice-Ministers, any officer or employee of the government of Mozambique, and any director or employee of a government agency or publicly-owned company.

Authority

        Request 9(A.1) adapted from the <u>Ng Lap Seng</u> Jury Charge, July 26, 2017 Trial Tr. (ECF No. 610); as reflected in the trial transcript for proceedings on July 26, 2017 (ECF Dkt. No. 610); and from the charge given by the Hon. Loretta A. Preska in <u>United States v. Chi Ping Patrick Ho</u>, No. 17-CR-779 (LAP) (S.D.N.Y. Nov. 26, 2018) as reflected in the trial transcript for proceedings on Nov. 26, 2018; and from <u>United States v. Esquenazi</u>, 752 F.3d 912 (11th Cir. 2014).

        Request 9(A.2) was adapted from 15 U.S.C. §§ 78m(b)(2) & (5) and 15 U.S.C. § 78ff(a).

        Request 9(B) was adapted from the laws of the Republic of Mozambique, including: Law 35/2014, published on December 31, 2014 in Boletim da República, I Série, 14.º Suplemento, Número 105, effective June 29, 2015 (the "2015 Penal Code"); Executive Order of September 16, 1886, published in Diario do Governo (the "1886 Penal Code"); Law 16/2012, published on August 14, 2012 in Boletim da República, I Série, 4.º Suplemento Número 32, effective November 11, 2012; Law 6/2004, published on June 17, 2004 in Boletim da República, I Série, Suplemento, Número 24, effective June 17, 2004; Law 7/98 published on June 15, 1998 in  Boletim da República, I Série, Suplemento, Número 23, effective June 30, 1998.

<u>REQUEST NO. 10</u>
(Co-Conspirator Statements and Liability)

The charges against the defendant allege that he participated in a conspiracy. In that regard, I admitted into evidence against the defendant the acts and statements of others because these acts and statements were committed by persons who, the government charges, were also confederates or co-conspirators of the defendant on trial.

The reason for allowing this evidence to be received against the defendant has to do with the nature of the crime of conspiracy. A conspiracy is often referred to as a partnership in crime. Thus, as in other types of partnerships, when people enter into a conspiracy to accomplish an unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy.

Accordingly, the reasonably foreseeable acts, declarations, statements and omissions of any member of the conspiracy and in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be the acts of all of the members, and all of the members are responsible for such acts, declarations, statements and omissions.

Thus, if you find that the defendant was a member of a criminal conspiracy charged, then any acts done or statements made in furtherance of the conspiracy by persons also found by you to have been members of that conspiracy, may be considered against the defendant. This is so even if such acts were done and statements were made in the defendant's absence and without his knowledge.

Before you may consider the statements or acts of a co-conspirator in deciding the issue of the defendant's guilt, you must first determine that the acts and statements were

57

made during the existence, and in furtherance, of the unlawful scheme.  If the acts were done

or the statements made by someone whom you do not find to have been a member of the

conspiracy, or if they were not done or said in furtherance of that conspiracy, they may not

be considered by you as evidence against the defendant as to that conspiracy.

<u>Authority</u>

Adapted from the charge of the Honorable Kiyo A. Matsumoto in <u>United States v. Rivera</u>, 13-CR-149 (E.D.N.Y.); from the charge of the Honorable Sterling Johnson in <u>United States v. Scalisi</u>, 10-CR-46 (E.D.N.Y.); and from the charge of the Honorable Kiyo A. Matsumoto in <u>United States v. Barret</u>, 10-CR-806 (KAM) (E.D.N.Y.)

REQUEST NO. 11
(Character Evidence)
(If Applicable)

The defendant called as a witness [Name], who gave his/her opinion of his good character.  This testimony is not to be taken by you as the witness's opinion as to whether the defendant is guilty or not guilty.  That question is for you alone to determine. You should, however, consider this character evidence together with all the other facts and all the other evidence in the case in determining whether the defendant is guilty or not guilty of the charges.

Accordingly, if after considering all the evidence, including testimony about the defendant's good character, you find a reasonable doubt has been created, you must acquit him of all the charges.

On the other hand if, after considering all the evidence, including that of the defendant's character, you are satisfied beyond a reasonable doubt that the defendant is guilty, you must not acquit him merely because you believe him to be a person of good character.

Authority

Adapted from the charge of the Hon. Dora L. Irizarry in United States v. Lange, E.D.N.Y., 10 CR 968.

<u>REQUEST NO. 12</u>
(Uncharged Persons)

You may not draw any inference, favorable or unfavorable, toward the government or the defendant on trial from the fact that certain persons were not named as defendants in the Superseding Indictment.  You should draw no inference from the fact that any other person is not present at this trial.  Your concern is solely the defendant on trial before you.

That other individuals are not on trial before you is not a matter of concern to you.  You should not speculate as to the reasons these individuals are not on trial before you. The fact that these individuals are not on trial before you should not control or influence your verdict with reference to the defendant who is on trial.

<u>Authority</u>

Adapted from Sand, Instr. 3-4.

## REQUEST NO. 13
(Accomplice Testimony)

You have also heard testimony from government witnesses who pled guilty to charges arising out of the same or related facts to this case. You're instructed that you are to draw no conclusions or inferences of any kind about this defendant's guilt from the fact that any of the prosecution witnesses themselves pled guilty to similar charges. Those witnesses' decisions to plead guilty were personal decisions about their own guilt. You may not use it in any way as evidence against this defendant.

You also heard from witnesses who testified that they were themselves involved in many of the charged crimes with the defendant.  Experience will tell you that the government sometimes must rely on the testimony of witnesses who admit participating in criminal activity.  Otherwise, it would be difficult or impossible to detect and prosecute wrongdoers.  The government argues, as it is permitted to do, that it must take the witnesses as it finds them and that people who themselves take part in criminal activity have the knowledge required to show criminal behavior by others.  For that reason, the law allows the use of such testimony.  It is the law in the federal courts that such testimony may be enough, standing alone, for conviction if the jury finds that the testimony establishes guilt beyond a reasonable doubt.

However, because of the interest a cooperating witness may have in testifying, the testimony should be scrutinized with special care and caution.  The fact that the witness may benefit from his cooperation may be considered by you as bearing upon his credibility.

Like the testimony of any other witness, cooperating witness testimony should be given such weight as it deserves in light of the facts and circumstances before you, taking

into account the witness's demeanor and candor, the strength and accuracy of the witness's recollection, his background and the extent to which his testimony is or is not corroborated by other evidence in the case.

You may consider whether a cooperating witness has an interest in the outcome of the case and, if so, whether that interest has affected his testimony.  You should ask yourselves whether the witness would benefit more by lying or by telling the truth.  Was his testimony made up in any way because he believed or hoped that he would somehow receive favorable treatment by testifying falsely, or did he believe that his interest would be best served by testifying truthfully? If you believe that that witness was motivated by hopes of personal gain, was the motivation one that would cause him to lie or was it one that would cause him to tell the truth?  Did this motivation color his testimony?  You are the ones to decide that. You are the deciders of the facts.

You've already heard testimony that these cooperating witnesses pled guilty after entering into an agreement with the government to testify. There's also evidence that the government agreed to dismiss some charges against those witnesses or agreed not to prosecute them on other charges in exchange for the witness's agreement to plead guilty and testify against the defendants or otherwise agreed to testify.

The government is allowed to enter into these agreements, and it is not your concern why the government made an agreement with a particular witness or whether you approve or disapprove of the government's tactics. You may, however, consider the effect, if any, that the existence or terms of the agreement may have on the witness's credibility.

The government has also promised to bring the witness's cooperation to the attention of the sentencing Court.  When someone cooperates with the government, the

government does not determine what sentence they are going to get.  Nor does the

government typically make a recommendation to the sentencing judge as to how much time

they're going to get.  What the government will do, if it is satisfied with the level of

cooperation, is write to the sentencing judge what is known as a 5K letter.  The 5K letter sets

forth the cooperating witness' criminal acts as well as the substantial assistance the witness

has provided.  I instruct you that the 5K letter does not guarantee the cooperating witness a

lower sentence. This is because the sentencing Court may, but is not required, to take the 5K

letter into account when imposing sentence on the cooperating witness. The Court has

discretion, whether or not a 5K letter is written, to impose any reasonable sentence the Court

deems appropriate up to the statutory maximum. The final determination as to the sentence to

be imposed rests with the Court, not with the government. In sum, you should look at all the

evidence in deciding what credence and what weight, if any, you want to give the

cooperating witness and the 5K.

Authority

Adapted from the charge of the Hon. William F. Kuntz, II, <u>United States v. Pagett</u>, 17-CR-306 (E.D.N.Y. 2019) (hereinafter, the "<u>Pagett</u> Jury Charge"), Trial Tr. 940:23-942:2; and from the charge of the Hon. Brian M. Cogan, <u>United States v. Joaquin Archivaldo Guzman Loera</u>, 09-CR-466 (S-4) (E.D.N.Y. 2019), Trial Tr. 6974:7-6978:9

REQUEST NO. 14
(Testimony of Defendant)
(If Applicable)

The defendant in a criminal case never has any duty to testify or come forward with any evidence.  This is because, as I have told you, the burden of proof beyond a reasonable doubt remains on the government at all times, and the defendant is presumed innocent.  In this case, the defendant did testify and he was subject to cross examination like any other witness.  You should examine and evaluate the testimony just as you would the testimony of any witness with an interest in the outcome of the case.

Authority

United States v. Brutus, Cr. No. 06-2710, 2007 WL 2828690, n.7 (2d Cir. Oct. 2, 2007), adapting charging language from United States v. Gaines, 457 F.3d 238, 249 n.9 (2d Cir. 2006).

<u>REQUEST NO. 15</u>
(Defendant's Right Not to Testify)
(If Applicable)

The defendant did not testify in this case.  Under our Constitution, a defendant has no obligation to testify or to present any evidence, because it is the government's burden to prove the defendant guilty beyond a reasonable doubt.  That burden remains with the government throughout the entire trial and never shifts to the defendant.  A defendant is never required to prove that he is innocent.

You may not attach any significance to the fact that the defendant did not testify.  No adverse inference against him may be drawn by you because he did not take the witness stand.  You may not consider this against the defendant in any way in your deliberations in the jury room.

<u>Authority</u>

Adapted from the <u>Pagett</u> jury charge, Trial Tr. 925; Sand, Instr. No. 5-21.

REQUEST NO. 16
(Uncalled Witnesses Equally Available)
(If Applicable)

There are several persons whose names you have heard during the course of the trial but who did not appear here to testify.  I instruct you that each party had an equal opportunity or lack of opportunity to call any of these witnesses.  Therefore, you should not draw any inferences or reach any conclusions as to what they would have testified to had they been called.  Their absence should not affect your judgment in any way.

However, you also should remember my instruction that the law does not impose on a defendant in a criminal case the burden or duty of calling any witness or producing any evidence.  The burden of proof to prove the charges beyond a reasonable doubt remains with the government at all times.

Authority

Adapted from the Pagett Jury Charge, Tr. 934; from the charge of the Hon. Dora L. Irizarry in United States v. Lange, E.D.N.Y., 10 CR 968.

<u>REQUEST NO. 17</u>
(Summary Evidence)

Some exhibits were admitted into evidence in the form of charts and summaries.  Those charts and summaries were admitted in order to save the time of reviewing voluminous records and to avoid inconvenience.  You should consider these charts and summaries the same way you would any other evidence.

<u>Authority</u>

Adapted from the <u>Pagett</u> Jury Charge, Trial Tr. at 932; from the charge of the Hon. Brian M. Cogan in <u>United States v. Nadeem</u>, E.D.N.Y., 13 CR 424.

<u>CONCLUSION</u>

The government respectfully requests that the Court include the foregoing in

its instructions to the jury.  The government also requests the opportunity to submit further

instructions or amend those submitted, as may become appropriate during the course of the

trial.

Dated:     Brooklyn, New York
            September 9, 2019

Respectfully submitted,


RICHARD M. DONOGHUE
United States Attorney
Eastern District of New York


By:        _____/s/_____
Mark E. Bini
Hiral D. Mehta
Assistant United States Attorneys
(718) 254-8761

DEBORAH L. CONNOR
Chief, Money Laundering & Asset Recovery
Section
Criminal Division
U.S. Department of Justice

By:        _____/s/_____
Margaret A. Moeser
Sean O'Donnell
Trial Attorneys
(202) 598-2345

ROBERT A. ZINK
Chief, Fraud Section
Criminal Division
U.S. Dept. of Justice

By:        _____/s/_____

Katherine Nielsen
Trial Attorney
(202) 616-5672