# WILLKIE FARR & GALLAGHER LLP

RANDALL W. JACKSON
212 728 8216
rjackson@willkie.com

787 Seventh Avenue
New York, NY 10019-6099
Tel:   212 728 8000
Fax:   212 728 8111

September 18, 2019

**BY FEDEX AND ECF**

The Honorable William F. Kuntz II
United States District Court for the
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:     *United States v. Jean Boustani, et al. (Case No. 18-cr-681 (S-1) (WFK))*

Dear Judge Kuntz:

We respectfully submit this letter in reply to the Government's supplemental opposition to Mr. Boustani's motion to suppress.  Nowhere in the Government's submission does it offer any coherent explanation as to how the Court could appropriately resolve the pending motion to suppress without holding a hearing. In multiple filings, the Government has steadfastly refused to explain to the Court how it purportedly filtered responsive from nonresponsive documents and why that process failed. This question is at the heart of the suppression inquiry, and it must be tested at a hearing before Your Honor.  Indeed, the Government essentially concedes that a hearing is necessary, in that it acknowledges that the Government exceeded the scope of its email search warrants when it seized email communications in this case, and the Government offers no explanation whatsoever as to how or why that occurred.[1]  The Government further concedes that its standing arguments, even if accepted, cannot resolve the motion without a hearing.[2] All of this only underscores the essential point that we have made repeatedly and that the Government, ignoring the facts and the law, appears desperate to avoid: **the instant motion cannot be appropriately resolved without a hearing.**

---

[1]      *See* Gov't Opp. at 18, n.3 (acknowledging representative sample of 11 non-responsive documents was improperly seized pursuant to the search warrants);  Hr'g Tr. 108:3-5 (Aug. 21, 2019) ("We've reviewed those 11 documents, we've now marked them nonresponsive and set them aside and have no access to those documents.").

[2]      *See* Gov't Opp. at 3, n. 1 ("At no point did the government state that the standing inquiry resolved the motion.").

Indeed, the Government's Opposition brief reveals a fundamental misunderstanding on the part of the prosecutors with regard to the suppression issue. It is not the defendant that carries the burden at this stage of the proceedings of demonstrating that the Government's factual assertions are false. The Government bears the burden of demonstrating that its unsupported factual assertions can be accepted by the Court. The Court may or may not accept, after an appropriate hearing, that the Government's conceded failure to stay within the constraints of the warrant was a mere error in a process carried out in good faith. But that determination simply cannot be made without a hearing. The Government has cited no authority whatsoever that suggests that the Court can accept these types of assertions without conducting a hearing. Nothing in the Government's most recent filing resolves the contested factual issues identified in Mr. Boustani's suppression motion.

Moreover, the Government has continued to obfuscate facts surrounding its broad seizure of personal emails. Willfully ignoring the simple concept of a representative sample, the Government bases its entire argument on the idea that since it *only* exceeded the scope of the warrants on a limited number of occasions, the Court should somehow ignore this evidence and find contentment in the fact that a healthy percentage of the Government's search managed to stay roughly within the boundaries set by the Constitution. This is a lawless argument divorced from logic. The Government's Supplemental Opposition has only put *more* facts in dispute.

For all of these reasons, as explained in more detail below, the Court should promptly schedule a suppression hearing on the instant motion.

### A. *The Court Should Schedule A Prompt Suppression Hearing Based On The Evidence Mr. Boustani And His Attorneys Have Provided.*

The "normal" remedy for an inadvertent seizure of items outside the scope of a warrant is suppression and return of the specific items improperly seized. *See United States v. Matias*, 836 F.2d 744, 747 (2d Cir. 1988). But when the Government acts with "flagrant disregard" for the scope of the warrant, the Court should order the more drastic remedy of wholesale suppression. *Id.* Specifically, blanket suppression is required when law enforcement agents "effect a widespread seizure of items that were not within the scope of the warrant" and "do not act in good faith." *United States v. Shi Yan Liu*, 239 F.3d 138, 140 (2d Cir. 2000). The Government does not contest that blanket suppression should be ordered if its agents effected a widespread seizure without acting in good faith, but nevertheless argues that it is protected by the good faith exception to the exclusionary rule.[3] As

---

[3]  *See, e.g.,* Gov't Opp. at 19-22 (arguing Government agents acted in good faith when they effected seizure of personal email accounts); Gov't Supp. Opp. at 7 (responding to Mr.

described in Mr. Boustani's suppression motion and supplemental papers, however, the scope of the Government's improper seizure in this case is egregious and well beyond the scope of the broad search warrants it obtained.[4] The only remaining question—whether the Government acted in good faith when it effected such a wholesale seizure—is a highly fact specific inquiry that requires a suppression hearing.[5]

The Government may offer evidence concerning its purported good faith in executing the exceptionally broad email search warrants it obtained in this case. But the Court's inquiry at this stage is not whether the Government did in fact act in good faith. "A suppression hearing 'ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question.'" *United States v. Nelson*, 193 F. App'x 47, 48 (2d Cir. 2006) (quoting *United States v. Pena*, 961 F.2d 333, 339 (2d Cir.1992)). Mr. Boustani and his attorneys have provided significant evidence that the Government seized in this case the precise types of evidence it was warned against seizing in *United States v. Wey*, 256 F. Supp. 3d 355 (S.D.N.Y. 2017), which was issued just a few months before the Government in this case obtained and executed its own search warrants. Importantly, the Government incorrectly claims that Judge Nathan in *Wey* ordered a suppression hearing based solely on the defendant's assertion that the underlying warrant was issued based on a false statement in the supporting affidavit. (Gov't Supp. Opp. at 9, n.6.) The Government is wrong. The defendant in *Wey* also

---

Boustani's argument that the Government's good faith is a contested factual issue that should be resolved through an evidentiary hearing).

[4] For example, Mr. Boustani and his attorneys have provided ample evidence that the Government indiscriminately seized an immense number of highly personal documents in connection with the email search warrants, including family photographs, medical records, educational records, and deeply personal intrafamily communications. *See, e.g.*, DiSanto Decl. ¶¶ 7-19 (describing categories of documents improperly seized and attaching specific examples of highly personal documents seized from Mr. Boustani and produced in discovery). Mr. Boustani has provided two sworn declarations to support these factual contentions, whereas the Government has provided virtually no response beyond arguing nonsensically that Mr. Boustani has provided too few problematic examples to warrant a suppression hearing. *See, e.g.*, Gov't Supp. Opp. at 4.

[5] The Government claims that it is "clearly established Supreme Court and Second Circuit law that the government does not act in good faith in only four circumstances," none of which applies in this case. (Gov't Supp. Opp. at 6.) But the decisions the Government cites involve "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant," *see, e.g., United States v. Clark*, 638 F.3d 89, 99 (2d Cir. 2011), *not* evidence obtained as a result of law enforcement officers flagrantly disregarding the scope of a valid search warrant. The latter circumstance—the one assert in this case—is governed by the Second Circuit's decision in *Shi Yan Liu*.

requested an evidentiary hearing concerning the Government's lack of good faith in executing the underlying search warrants.[6]  Judge Nathan then explicitly ordered a suppression hearing to explore whether the Government acted in good faith when it executed the warrants.[7]  Accordingly, the Court should hold a suppression hearing to determine whether the Government acted in good faith when it effected that illegal seizure.

### B. The Government's Supplemental Opposition Demonstrates That The Court Must Resolve Certain Critical Contested Facts At An Evidentiary Hearing.

The Government's supplemental opposition demonstrates that certain critical contested facts cannot be resolved without an evidentiary hearing.  First, the Government has still not explained the process it used to separate documents responsive to the search warrants from documents it deemed non-responsive to the warrants.  Second, the Government has not explained why that process resulted in completely irrelevant and highly personal documents being identified as "responsive" to the warrants.  And finally, the Government has not explained why it failed to conclude its review of Mr. Boustani's personal emails within a reasonable period of time.  Each of these three issues must be explored at an evidentiary hearing.

### 1. The Government has still not explained its failure to separate responsive and non-responsive documents seized in connection with the search warrants.

The Government has steadfastly refused to explain in any detail the process it used to separate responsive and non-responsive documents, all the while claiming that it complied with Second Circuit law and the Fourth Amendment.  (Gov't Opp. at 14-16; Gov't Supp. Opp. at 6.)

The Government's descriptions of how it identified responsive and non-responsive documents when it executed the warrants have been varied and

---

[6]    Ex. A, Reply Br. at 23, *United States v. Wey*, No. 1:15-cr-00611 (S.D.N.Y. Aug. 12, 2016) (ECF No. 62) ("At a bare minimum, should the Court wish to entertain the Government's good faith argument, it cannot merely accept those assertions at face value and a hearing should be held to permit the defense to examine the Governments' assertions of good faith.").

[7]    Ex. B, Order at 1, *United States v. Wey*, No. 1:15-cr-00611 (S.D.N.Y. Nov. 28, 2016) (ECF No. 69) ("The Court has determined that a hearing is warranted to address whether certain evidence . . . should be suppressed. . . . The parties should be prepared to address . . . whether the Government acted reasonably and in good faith in executing off-site searches of computers and computer-related equipment seized from [Mr. Wey's office and residence].")

inconsistent.  The Government first implied in its opposition to Mr. Boustani's motion that it had previously marked search warrant materials other than those produced in the February 4 Production as "non-responsive" and set those materials aside.  (Gov't Opp. at 18, n.3.)  The Government made this claim after defense counsel provided 56 "examples of the types of documents" the Government improperly seized from Mr. Boustani and his co-defendants.  (Def. Reply at 9, n.3.)  Of the 56 documents identified, 11 had been produced in the February 4 Production and the other 45 were produced on or about February 14, 2019, and March 8, 2019 (the "Additional Warrant Productions").  The Government argued in response that "only 11 of these documents were previously identified by the government as responsive."  (Gov't Opp. at 18, n.3.)  This response strongly implied that the Government had deemed documents in the Additional Warrant Productions to be non-responsive to the warrants, except to the extent that they were duplicative of the February 4 Production.

The Government has nevertheless marked several documents from the Additional Warrant Productions as trial exhibits.  For example, the Government marked an excerpt of Mr. Boustani's SMS messages as a trial exhibit, but those messages were produced in the Additional Warrant Productions as a single 751-page document containing, among many other completely non-responsive communications, private text messages between Mr. Boustani and his wife.  (DiSanto Decl. ¶ 18.)  The Government's most recent filing contends that it never "claimed that the documents produced with the DOJSW bates prefix [i.e., documents in the Additional Warrant Productions] are all non-responsive."  (Gov't Supp. Op. at 11, n.7.)  But the Government has still not specifically identified which of the over one million documents and communications it seized have been identified as "responsive" to the warrants.  Nor has the Government explained how or to what extent it reviewed privileged spousal communications between Mr. Boustani and his wife.  These are significant contested factual issues central to Mr. Boustani's motion to suppress.

### 2. *The Government has still not explained how it seized clearly non-responsive, highly personal documents and communications from Mr. Boustani and others.*

The Government has also failed to explain how or to what extent it improperly identified irrelevant and highly personal documents as "responsive" to the warrants.  While the Government claims in its most recent filing that it achieved a "99.9%" accuracy rate when it executed the warrants, it provides no factual basis for that specious assertion.[8]  The Government claims that it calculated

---

[8]     *See* Gov't Supp. Opp. at 4-7.  Mr. Boustani has no ability to calculate his own view of the Government's "accuracy rate" because, as explained in the DiSanto Declaration, the Government has insisted that it cannot accurately determine the custodians for many of the documents in its production of the 140,000 "most relevant" search warrant documents (the

its "accuracy rate" by counting the "pages" of documents it seized from Mr. Boustani's email account that were produced in the February 4 Production, then subtracted the pages of non-responsive documents we cited as problematic examples from the February 4 Production.  Putting aside the fact that, again, the documents identified as improper were only a representative sample, the Government's ability to calculate such an "accuracy rate" is fatally undermined by the fact that the Government was previously unable to identify from whom it had seized many documents included in the February 4 Production.  (DiSanto Decl. ¶ 6.)  In addition, the Government's claimed "accuracy rate" does not account for its inaccurate responsiveness determinations with respect to documents beyond the February 4 Production, which the Government now claims may also contain documents marked "responsive" to the warrants.  Moreover, the 99% accuracy claim, even if the Court could rely upon it, is simply irrelevant. If the Government obtains warrants to search nine houses in an investigation and then improperly searches a tenth house, a motion to suppress the fruits of that search is not defeated by the claim that the Government executed 90% of the searches in the investigation appropriately. Where there was a conceded failure to stay within the boundaries set by the warrant, the Government must offer a credible explanation and the defense must be given an opportunity to test that explanation at an appropriate hearing.  Without an evidentiary hearing, Mr. Boustani simply cannot determine how—or the extent to which—the Government improperly reviewed and identified as "responsive" his irrelevant and highly personal documents and communications.

### 3. *The Government has still not explained its failure to conclude reviewing Mr. Boustani's personal emails promptly.*

The Government has also provided no reasonable explanation for delaying or prolonging its review of Mr. Boustani's personal emails.  The Government's supplemental opposition claims that it began reviewing the search warrant returns immediately upon receiving them from Gmail in March 2018, citing to Paragraph 4 of the Supplemental Affidavit of Allison Kirshner.  But Paragraph 4 of the Kirshner Supplemental Affidavit does not mention the Government's review of Mr. Boustani's personal emails, nor does it claim that the Government began reviewing his emails in March 2018.  The Kirshner Supplemental Affidavit simply states that the Government received no return from Gmail for an alleged co-conspirator's account because the Government's warrant contained a typographical error:

> "On or about March 6, 2018, Gmail produced documents from the requested email accounts in response to the warrant.  In reviewing the response, I noticed that, as a result of a typographical error, the account name [Redacted] was misspelled [Redacted] in the caption of the affidavit and on the search warrant to Gmail.  (The account name was

---

"February 4 Production").  *See* DiSanto Decl. ¶¶ 5-6.  If the Government now has that custodial metadata, it should produce it promptly.

spelled correctly in the probable cause portion of the affidavit.) Gmail produced no documents for the misspelled account, presumably because the account does not exist. I am aware that, after the error was detected, a preservation request for the account [Redacted] was sent to Gmail on or about March 27, 2018."

(Kirschner Supp. Aff. ¶ 4.)

Even if the Court accepts the Government's claim that it began reviewing Mr. Boustani's emails immediately, the current record indicates that the Government is either still reviewing or only recently completed its review of Mr. Boustani's emails.[9] On July 23, 2019, for example, the Government stated that its "screening process" for Mr. Boustani's emails was ongoing, and that at least 7,000 documents had not yet been cleared through that process.[10] On September 16, 2019, the Government's "filter team" also produced an additional 16,980 potentially privileged documents, many of which were seized from Mr. Boustani's email account.[11] These ongoing productions demonstrate that the Government either unreasonably delayed or prolonged its review of Mr. Boustani's personal emails well beyond the date of the Indictment. The Court cannot make a determination as to whether the Government's claims regarding the timeline of the search can be credited without a hearing.

As explained above, the Government has also identified documents on its exhibit list that were not among the "most relevant" produced with the February 4 Production. If those documents were produced as a result of an ongoing review of

---

[9]     As explained in Mr. Boustani's reply memorandum of law in support of this suppression motion, the fact that the Government started reviewing documents promptly does not resolve the reasonableness of its delayed and/or prolonged review. In *United States v. Mendlowitz*, which the Government cited in its opposition, another court found the timing of a review to be reasonable because the Government "complet[ed] the review before the return of the Indictment in April 2017." No. 17 CR. 248 (VSB), 2019 WL 1017533, at *12 (S.D.N.Y. Mar. 2, 2019). The Government here does not claim to have completed its review of Mr. Boustani's personal emails before seeking an indictment from the grand jury—it states only in its most recent filing that it "completed its review of the search warrants on the Defendant's Gmail Account and has completed its production of returns from the First and Second Warrants." (Gov't Supp. Opp. at 6.) On July 22, 2019, the date of its opposition, the Government could claim only that it had "substantially completed" its review of Mr. Boustani's personal emails. (Gov't Opp. at 21-22.)

[10]     Ex. C, Email from M. Moeser to M. Schachter, Re: United States v. Boustani – Production Gaps (July 23, 2019).

[11]     Ex. D, Letter from R. Polemeni to M. Schachter, Re: Filter Production 03 (Sept. 16, 2019).

the search warrant materials, Mr. Boustani must be permitted to explore this issue at an evidentiary hearing.

\*\*\*

For the foregoing reasons and the reasons stated previously, Mr. Boustani respectfully requests that the Court schedule an evidentiary hearing as soon as practicable.

Respectfully submitted,

Randall W. Jackson
Michael S. Schachter


cc: (by ECF)

AUSA Mark E. Bini
AUSA Hiral Mehta