UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

UNITED STATES OF AMERICA,

   - against -

JEAN BOUSTANI, et al.,
                Defendants.

------------------------------------------------------------ X

:
:
:
:
:
:
:
:

No. 18-cr-681 (S-1) (WFK)

ECF Case

Dated:  September 25, 2019

## DEFENDANT JEAN BOUSTANI'S
## <u>PROPOSED JURY INSTRUCTIONS</u>

**WILLKIE FARR & GALLAGHER LLP**
Michael S. Schachter
Randall W. Jackson
Casey E. Donnelly
Philip F. DiSanto
787 Seventh Avenue
New York, New York 10019-6099
Phone:  (212) 728-8000
Email: mschachter@willkie.com

*Attorneys for Defendant Jean Boustani*

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ 2

**I.    GENERAL INSTRUCTIONS** ........................................................................ 4

**II.   THE CHARGES** ............................................................................................. 5

**INSTRUCTION NO. 1** ........................................................................................ 5

**Summary of the Charges** ................................................................................. 5

**INSTRUCTION NO. 2** ........................................................................................ 8

**Count One:  Conspiracy to Commit Wire Fraud** ........................................ 8

A.   First Element of Conspiracy to Commit Wire Fraud:  Existence of the
Conspiracy. ......................................................................................................... 9

1.   Wire Fraud: Element One. ................................................................ 12

2.   Wire Fraud: Element Two. ............................................................... 16

3.   Wire Fraud: Element Three. ............................................................. 16

B.   Second Element of Conspiracy to Commit Wire Fraud:  *Mens Rea* ........ 18

C.   Third Element of Conspiracy to Commit Wire Fraud:  Conspiracy Was
Reached on U.S. Soil. ........................................................................................ 24

D.   Venue for Conspiracy to Commit Wire Fraud................................................ 25

**INSTRUCTION NO. 3** ........................................................................................ 27

**Count Two:  Conspiracy to Commit Securities Fraud**................................ 27

A.   First Element of Conspiracy to Commit Securities Fraud:  Existence of
the Conspiracy. .................................................................................................. 27

1.   Securities Fraud: Element One ......................................................... 29

Requirement No. 1: A misrepresentation was made................................. 29

Requirement No. 2: The Government must prove that the
misrepresentation was material.............................................................. 30

Requirement No. 3: The Government must prove that the material
misrepresentation was made "in connection with" a purchase of the LPNs
and an exchange of those LPNs in the 2016 Eurobond Exchange. ......................... 32

Requirement No. 4: The Government Must Prove A Sufficient Nexus Between the Defendant's Conduct and the United States. ...................................... 34

2.    Securities Fraud: Element Two........................................................ 38

3.    Securities Fraud: Element Three....................................................... 38

B.    Second Element of Conspiracy to Commit Securities Fraud: *Mens Rea*................. 40

C.    Third Element of Conspiracy to Commit Securities Fraud:  Commission of an Overt Act in Furtherance of the Conspiracy's Objectives..................................... 43

D.    Venue for Conspiracy to Commit Securities Fraud.................................... 44

**INSTRUCTION NO. 4** ........................................................................ 46

**Multiple Conspiracies** .................................................................... 46

**INSTRUCTION NO. 5** ........................................................................ 48

**Count Four:  Conspiracy to Commit Money Laundering** ............................... 48

A.    First Element of Conspiracy to Commit Money Laundering:  Existence of the Conspiracy. ....................................................................... 48

1.    Method One:  Transfer of Money to Promote Wire Fraud Scheme, Securities Fraud Scheme, or Violation of Mozambican Bribery Law......................... 49

2.    Method Two: Transfer of Money to Conceal Proceeds of Wire Fraud or Securities Fraud. ..................................................................... 51

B.    Second Element of Conspiracy to Commit Money Laundering: *Mens Rea* 54

C.    Third Element of Conspiracy to Commit Money Laundering:  Conduct in the United States. .................................................................... 56

D.    Venue for Conspiracy to Commit Money Laundering. ............................ 57

## I.      GENERAL INSTRUCTIONS

Mr. Boustani respectfully requests this Court's standard instructions on Duty of the Court; Duty of the Jury; Duty of Impartiality; Presumption of Innocence and Burden of Proof; Reasonable Doubt; Direct and Circumstantial Evidence; Witness Credibility; Defendants' Right Not to Testify; Selection of Foreperson, Right to See Exhibits and Hear Testimony and Communications with the Court; and Verdict, Need for Unanimity, and Duty to Consult.

## II.      THE CHARGES

### INSTRUCTION NO. 1

#### *Summary of the Charges[1]*

Ladies and gentlemen of the jury, you are about to enter your final duty, which is to decide the factual issues in this case.  Before you do that, I will instruct you on the law.  You must pay close attention to me now.  I will go as deliberately and methodically as I can and be as clear as I possibly can be.  I told you at the very start of this trial that your principal function during the taking of testimony would be to listen carefully and to observe each witness who testified.  It has been obvious to me, to the parties, and to counsel that you have faithfully discharged this duty.  Your interest never lagged, and it is evident you followed the testimony with close attention.  I thank you for that.  I now ask you to give me that same careful attention you gave throughout the trial as I now instruct you on the law you are to apply in this case.

My instructions will be in four parts.  First, I will briefly summarize for you the charges against Mr. Boustani.  Second, I will instruct you regarding the general rules that define and govern the duties of a jury in a criminal case and the way in which you are to review the evidence.  Third, I will instruct you as to the legal elements of the claims in this case, that is, what the Government must prove beyond a reasonable doubt.  And fourth, and finally, I will give you some general rules regarding your deliberations.

I will begin with a brief summary of the charges against Mr. Boustani.  These charges were originally set forth in what is called an indictment, which is merely an accusation.

---

[1]      Adapted from the Court's Final Jury Instructions in *United States v. Pagett*, No. 17-CR-306 (WFK) (E.D.N.Y. Oct. 23, 2018) (Trial Tr. at 916:25-918:3, 930:12-19); Final Jury Instructions of Hon. Pamela K. Chen in *United States v. Napout*, No. 15-CR-252 (PKC) (E.D.N.Y. Dec. 26, 2017) (Dkt. 872 at 1-2) (hereinafter "*Napout* Jury Charge"); Sup. Ind. at ¶¶ 96, 98, 104.

I will refer to the indictment, but you will not be furnished with a copy of the indictment itself, because an indictment is merely a statement of the charge and is not itself evidence. It is not proof of a defendant's guilt. No weight or significance whatsoever is to be given to the fact that an indictment has been brought against Mr. Boustani.

The indictment in this case contains a total of four counts, and each count charges a different crime. Mr. Boustani is charged with three of the four counts. I will, for convenience, refer to each charge or count by its number as it appears in the indictment. In reaching your verdict, you must, as a matter of law, consider each Count of the indictment separately. I will describe the elements that the Government must prove with respect to each of the Counts in much more detail in a few moments and will also provide you with further instructions regarding your deliberations.

Count One alleges that from approximately January 2011 through December 2018, Mr. Boustani conspired—that is, agreed—to engage in a wire fraud scheme intended to defraud one or more of the entities that (a) purchased portions of Proindicus's debt; (b) purchased portions of MAM's debt; (c) purchased one of the loan participation notes that were created out of the debt held by EMATUM; and (d) participated in the April 6, 2016 Exchange of the LPNs for Eurobonds.

Count Two alleges that from approximately January 2013 through December 2018, Mr. Boustani is alleged to have conspired—that is, agreed—to engage in a securities fraud in connection with the purchase of the LPNs and the votes in connection with the 2016 Eurobond Exchange of the LPNs in the against one or more of the entities that purchased the LPNs or that participated in the April 6, 2016 Exchange of the LPNs for Eurobonds.

Count Three of the Indictment does not involve Mr. Boustani and therefore I will not instruct you on Count Three.

Count Four alleges that from January 2013 through December 2018, Mr. Boustani is alleged to have conspired—that is, agreed—to engage in a money laundering conspiracy. Mr. Boustani has pleaded not guilty to these charges.

Now, you have heard a lot about the various debt instruments that are at issue in this case. Some of them are complicated to describe and thus, in order to make my instructions to you a bit easier to follow, I am going to use shorthand:

When I use the word "LPN," I am referring to the loan participation notes that were created with respect to the debt held by EMATUM, the Mozambican Company.

When I use the phrase "2016 Eurobond Exchange," or the "2016 Exchange," I am referring to the April 6, 2016 Exchange in which LPNs were turned in and exchanged for Eurobonds issued by the Republic of Mozambique.

When I use the term "Mozambican Debt Instruments," I am referring to each of the different debt instruments that have been described during the course of this trial, meaning, (1) the syndicated portions of Proindicus's debt that was sold to investment entities; (2) the portions of MAM's debt that was, or could have been, sold to investment entities; (3) the LPNs; and (4) the votes that were submitted in connection with the 2016 Eurobond Exchange.

When I use the term "Investment Funds," I am referring generally to the entities that purchased the Mozambican Debt Instruments.

These terms are meant only to simplify my instructions to you. They have no other significance.

### INSTRUCTION NO. 2

### *Count One:  Conspiracy to Commit Wire Fraud*

As I have described for you, <u>Count One</u> alleges that from approximately January 2011 through December 2018, Mr. Boustani conspired to engage in a wire fraud scheme intended to defraud one or more of the Investment Funds that purchased the Mozambican Debt Instruments.  A conspiracy is an agreement or understanding between two or more people to join together to commit a specific crime – here, wire fraud.[2] In order to prove that Mr. Boustani conspired to commit the offense of wire fraud, you must find the Government has proven beyond a reasonable doubt that Mr. Boustani agreed with at least one other person to engage in each of the elements of wire fraud.[3]

In order to prove the charged wire fraud conspiracy, the Government must prove beyond a reasonable doubt that each alleged member of the conspiracy had a single, shared objective to engage in a scheme to defraud the Investment Funds that purchased the Mozambican Debt Instruments through the use of U.S. interstate wires or international wires into the U.S.  It is not enough for the Government to simply demonstrate similar or parallel objectives between similarly situated people.[4]  If you find that an alleged participant in a conspiracy had an objective that was at cross-purposes with the objectives of a different alleged participant, you may not find that a conspiracy existed between them.[5]

---

[2]     Adapted from *L. Sand,* Inst. 19-2 at 19-3.

[3]     Adapted from *L. Sand,* Inst. 19-2.

[4]     *United States v. Figueroa*, No. 08 CR 749 (ARR), 2010 WL 11463852, at *10 (E.D.N.Y. Mar. 2, 2010) ("What is required is a shared, single objective, not just similar or parallel objectives between similarly situated people.")

[5]     *United States v. Maldonado-Rivera*, 922 F.2d 934, 963 (2d Cir. 1990) ("[T]he goals of all the participants need not be congruent . . . so long as their goals are not at cross-purposes.").

In order to find Mr. Boustani guilty of conspiracy to commit wire fraud, the Government must prove each of the following three elements beyond a reasonable doubt:

First, that the specific wire fraud conspiracy charged in the Indictment existed, meaning that the Government must prove beyond a reasonable doubt that two or more persons entered into an agreement to defraud the Investment Funds that purchased the Mozambican Debt Instruments and that wires in the United States would be utilized as a core component of the scheme, meaning that the use of these wires was essential, rather than merely incidental, to the scheme to defraud the Investment Funds;[6]

Second, that Mr. Boustani knowingly and willfully joined and participated in the conspiracy against the Investment Funds, with the specific intent to defraud the Investment Funds;[7] and

Third, that Mr. Boustani joined and participated in the conspiracy while in the United States.

I will now discuss each of these elements in more detail.

**A.  First Element of Conspiracy to Commit Wire Fraud:  Existence of the Conspiracy.**

The first element of Count One that the Government must prove is that the specific wire fraud conspiracy against the Investment Funds actually existed.  Thus, the Government must prove beyond a reasonable doubt that at least two people—I will refer to them as conspirators—had a meeting of the minds and that they agreed to work together to use the interstate or international wires into the United States in order to execute a scheme to defraud the

---

[6]     Adapted from *L. Sand,* Inst. 19-3 at 19-6, 19-11; Jury Charge of the Hon. Brian Cogan in *United States v. Petrossi,* No. 16-CR-234 (E.D.N.Y. May 2, 2017) (Dkt. 290) (Trial Tr. at 1119:18-1120:4) (hereinafter "Ex. 1, *Petrossi* Jury Charge Excerpt").

[7]     *L. Sand,* Inst. 19-3 at 19-6.

Investment Funds that purchased the Mozambican Debt Instruments.  If however, you find that the conspirators were acting together for some other purpose, even for a separate criminal purpose, the Government would not have satisfied the first element and you would need to find Mr. Boustani not guilty of Count One.[8]  Instead, in order to prove the first element of conspiracy with respect to Count One, the Government must prove beyond a reasonable doubt the existence of a single agreement to engage in wire fraud against the Investment Funds who purchased the Proindicus debt, the MAM debt, the LPNs, and who also participated in the April 6, 2016 Exchange of the LPNs for Eurobonds.  If, for example, you agree that there existed an agreement to defraud the Investment Funds that purchased the Proindicus debt instruments, but not the Investment Funds that purchased the other Mozambican Debt Instruments, you must find Mr. Boustani not guilty.  Similarly, if some of you, but not all of you, agree that there existed an agreement to defraud the Investment Funds that purchased the LPNs, and others, but not all, of you agree that there existed an agreement an agreement to defraud the Investment Funds that purchased the Proindicus debt, you must find Mr. Boustani not guilty.  In order to find that the Government has satisfied this element, you must unanimously agree that there existed a conspiracy to defraud Investment Funds in connection with all four of the Mozambican Debt Instruments.

To establish a conspiracy, the Government is not required to prove that the conspirators sat around a table and entered into a solemn contract, orally or in writing, stating that they have formed a conspiracy to violate the law, setting forth details of the plans, the means by which the crime is to be carried out, or the part to be played by each conspirator.[9]  It is

---

[8]        Adapted from Ex. 1, *Petrossi* Jury Charge Excerpt at 1121:3-8.

[9]        Adapted from *Napout* Jury Charge at 20.

sufficient for the Government to prove, beyond a reasonable doubt, that the conspirators came to

a mutual understanding, even if tacitly, to use the wires in the United States in order to execute a

joint plan or common scheme to defraud the Investment Funds that purchased the Mozambican

Debt Instruments.[10]

Let me caution you:  there are no one-man conspiracies.[11]  The crime of

conspiracy has not been committed unless one conspires with at least one true co-conspirator.[12]

In addition, when one of two persons merely pretends to agree, the other party, whatever he may

believe, is not in fact conspiring with anyone.[13]

In order to prove that Mr. Boustani joined a wire fraud conspiracy, the

Government must first prove that the conspiracy existed, meaning that at least two people agreed

to engage in each of the elements of wire fraud.[14]

Wire fraud has three elements:

First**,** a scheme to defraud a victim out of money or property, executed by means

of false or fraudulent pretenses, representations, or promises;

Second, knowing and willful participation in the scheme to defraud, with

knowledge of the scheme's fraudulent nature and with the specific intent to defraud;

---

[10]     *Id.*

[11]     *Rogers v. United States*, 340 U.S. 367, 375 (1951) ("[A]t least two persons are required to constitute a conspiracy.").

[12]     *United States v. Dumeisi*, 424 F.3d 566, 580 (7th Cir. 2005) ("The elements of the crime [of conspiracy] are not satisfied unless one conspires with at least one true co-conspirator.") (quoting *United States v. Mahkimetas*, 991 F.2d 379, 383 (7th Cir. 1993)) (quotation marks omitted)).

[13]     *United States v. Valle*, 807 F.3d 508, 523 (2d Cir. 2015).

[14]     Adapted from *L. Sand,* Inst. 19-2.

Third, interstate or international wire communications involving the United States that constituted a "core component" of the scheme to defraud.

I will describe these elements for you now.

**1.   Wire Fraud: Element One.**

The first element of wire fraud that the Government must prove is a scheme to defraud the Investment Funds that purchased portions of Proindicus's debt; and MAM's debt, and one of the LPNs, and participated in the 2016 Eurobond Exchange, out of money or property by means of false or fraudulent pretenses, representations, or promises.[15]

This element breaks down into multiple requirements that the Government must prove that at least two conspirators, including Mr. Boustani, if you find that he was a conspirator, agreed to:

First, develop a plan aimed at defrauding the Investment Funds in order to obtain their money or property;[16]

Second, execute that plan by means of material misrepresentations;

*a.   Requirement No. 1:  A Scheme Against the Investment Funds to Obtain Their Money or Property*

---

[15]       *United States v. Males*, 459 F.3d 154, 157 (2d Cir. 2006) ("It is well established that the language in § 1343, 'scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises,' is not to be read in the disjunctive. …[T]he Supreme Court[] [has] command[ed] that the statute be read conjunctively to require that the defendant not only devise a scheme or artifice, but also use that scheme or artifice to obtain money or property."); *see also* the Hon. Loretta A. Preska's Final Jury Charge in *United States v. Davis*, No. 13-CR-923 (LAP) (S.D.N.Y. Sept. 1, 2016) (Dkt. 88) (Trial Tr. at 1132:1-5, 1135:10-14) (hereinafter "*Davis* Jury Charge").

[16]       18 U.S.C. § 1343 (the wire fraud statute prohibits schemes to "*obtai[n] money or property* . . . by means of false or fraudulent pretenses, representations, or promises."); *United States v. Starr*, 816 F.2d 94, 100 (2d Cir. 1987) ("the statute outlaws any scheme to obtain money by false or fraudulent pretenses").

The Government must prove that the conspirators agreed to engage in a scheme to defraud the Investment Funds out of their money or property.  The Government cannot prove the existence of a conspiracy to commit wire fraud unless it can demonstrate that the conspirators themselves sought to acquire money or property from the Investment Funds; it is not enough for you to find that some other person or company who was not a part of the conspiracy could have acquired money or property from the Investment Funds.[17]  If you find that the Government failed to prove that the conspirators schemed against the Investment Funds in order to obtain their money or property, then the Government has failed to prove the existence of the charged wire fraud conspiracy and you must find Mr. Boustani not guilty.

If you find that the Government proved beyond a reasonable doubt that such a plan was devised, then you must consider the second element, the use of misrepresentations.

    b.   *Requirement No. 2:  The Government Must Prove that the Scheme to Defraud Was Executed by Means of Material Misrepresentations*

The second requirement that the Government must prove that the scheme to defraud would be executed through misrepresentations.  A representation is false if it is untrue when made and was then known to be untrue by the person making it or causing it to be made.[18]  A representation is fraudulent if it was falsely made with the intent to deceive.[19]  However, a

---

[17]    *Honeycutt v. United States*, 137 S. Ct. 1626, 1632 (2017) (because "[n]either the dictionary definition nor the common usage of the word 'obtain' supports the conclusion than an individual 'obtains' property that was acquired by someone else," a defendant is not liable under the criminal forfeiture statute "for property that his co-conspirator derived from the crime but that the defendant himself did not acquire.").

[18]    *L. Sand,* Inst. 44-4 at 44-8; *Davis* Jury Charge at 1132:18-21.

[19]    *L. Sand,* Inst. 44-4 at 44-8; *Davis* Jury Charge at 1132:18-21.

representation, even though knowingly false, is not fraudulent unless it was made with the intent to be communicated to the persons who would act upon that representation to their detriment.[20]

A misrepresentation includes a statement that is partial or ambiguous, such that it required further disclosure in order to avoid being misleading.[21]  This type of misrepresentation is sometimes called a "half-truth."  I caution you:  just because a listener inferred more from a representation than what the representation actually said does not mean that the representation was a half-truth.[22]  Instead, you must consider whether the language of the statement was actually partial or ambiguous.

Moreover, I instruct you that revealing one fact about a subject does not trigger a duty to reveal all facts on the subject.[23]  There was no obligation on Mr. Boustani or any of his

---

[20]     *United States ex rel. O'Donnell v. Countrywide Home Loans, Inc,* 822 F.3d 650, 658-659 (2d Cir. 2016*)* ("a representation even though knowingly false does not constitute ground for an action of deceit unless made with the intent to be communicated to the persons or class of persons who act upon it to their prejudice.").

[21]     *Universal Health Services, Inc. v. United States*, 136 S. Ct. 1989, 2000 ("They fall squarely within the rule that half-truths—representations that state the truth only so far as it goes, while omitting critical qualifying information—can be actionable misrepresentations"); *United States v. Autuori*, 212 F.3d 105, 118 (2d Cir. 2000) (a "half-truth[]" for purposes of the wire fraud statute is a "partial or ambiguous statement[] that require[s] further disclosure in order to avoid being misleading."); *United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, n.18 (2d Cir. 2016) (where there is no duty to disclose, the "Government had to prove some affirmative statement—either wholly false or partially true but misleading—as to which the requisite scienter was present."); *In Re Amtrust*, Case No. 17-cv-1545 (LAK), at *34-35 (S.D.N.Y. 2018) (where statements are "accurate," they are not "misleading" unless the words used "connote" something different than they actually mean.); *see also United States v. Kasprowicz*, 447 Fed. Appx. 817, 819 (9th Cir. 2011) ("The portion of the jury instruction describing half-truths and concealment as valid forms of misrepresentation was an accurate depiction of Ninth Circuit law.").

[22]     *Spielman v. General Host Corp.,* 402 F. Supp. 190, 205 (S.D.N.Y. 1975) ("defendants cannot be held liable because of plaintiff's 'impressions' which are not fairly supported by the language of the prospectus.")

[23]     *In Re Deutsche Bank*, 2017 U.S. Dist. LEXIS 122868, *22 (S.D.N.Y. June 28, 2017).

alleged co-conspirators to disclose all known information, just because one of the Investment

Funds would have liked to know that information.  The law only requires a person to disclose

information that is necessary to make his other statements not misleading.[24]

In addition, the misrepresentation must be material.[25]  This means that if you find

a particular representation to have been false, you must then determine whether it was material

by asking whether the representation was capable of influencing the decision of the decision-

maker to whom it was addressed.[26]  Likewise, the Government must prove that the conspirators,

including Mr. Boustani, if you find that he was a conspirator, believed and intended for the

representation to influence the decision-maker to make a decision that would benefit the

conspirators.[27]

---

[24]     *In Re Xinhua Fin. Media*, 2009 U.S. Dist. LEXIS 14838 (S.D.N.Y.  Feb. 25, 2009); *see also Chiarella v. United States,* 445 U.S. 222, 228 (1980) ("[O]ne who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so."); *United States v. Brennan*, 183 F.3d 139, 149-150 (2d Cir. 1999) (describing mail fraud prosecution as "seriously problematic" where government tried to impose criminal liability for "nondisclosures to sophisticated corporations in arms-length contractual insurance relationships").

[25]     *Neder v. United States*, 527 U.S. 1, 16, 25 (1999) ("[W]e hold that materiality of falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes.").

[26]     *Id.* at 16 ("[A] false statement is material if it has 'a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed.'") (quoting *United States v. Gaudin*, 515 U.S. 506, 509 (1995)).

[27]     *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1181-82 (2d Cir. 1970) (the Government must prove that the defendant's "representations were reasonably calculated to induce [victims] of ordinary prudence to buy [defendant's] wares."); *United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 658-659 (2d Cir. 2016*)* (Government must demonstrate that the defendant made the misrepresentations "with the intent to induce harmful reliance" on the representation by the victim); *United States v. DeSantis,* 134 F.3d 760, 764 (6th Cir. 1998) (wire fraud punishes representations that "induced" a victim to "part with property or undertake some action that he would not otherwise do, absent the misrepresentation.").

If you find that the Government failed to prove that, the conspirators, including Mr. Boustani, if you find that he was a conspirator, agreed that the scheme against the Investment Funds would be executed by means of material misrepresentations, you must conclude that the Government has failed to prove the existence of the charged wire fraud conspiracy and you must find Mr. Boustani not guilty.  If you find that the Government proved that the conspirators, including Mr. Boustani, if you find that he was a conspirator, agreed that the scheme against the Investment Funds would be executed by means of a material misrepresentations, you may conclude that the Government proved that the conspirators agreed to commit the first element of wire fraud.  You must then consider whether they agreed to commit the other elements of wire fraud, which I will now discuss.

### 2.  Wire Fraud: Element Two.

The second element of wire fraud concerns intent.  However, this requirement is identical to the second element of conspiracy to commit wire fraud, which I shall discuss with you shortly, and thus, I will not instruct you on this element at this moment.

### 3.  Wire Fraud: Element Three.

The third element of wire fraud that the Government must prove is that the use of wires in the United States was a "core component" of the agreed upon scheme to defraud the Investment Funds.  The use of these wires must have been essential, rather than merely incidental, to the scheme to defraud.[28]

---

[28]      *Bascuñán v. Elsaca*, 927 F.3d 108, 122 (2d Cir. 2019) ("For this reason, the use of the mail or wires must be essential, rather than merely incidental, to the scheme to defraud.  We therefore hold that a claim predicated on mail or wire fraud involves sufficient domestic conduct when (1) the defendant used domestic mail or wires in furtherance of a scheme to defraud, and (2) the use of the mail or wires was a core component of the scheme to defraud.").

It is important for you to recognize that the regulated conduct under the wire fraud conspiracy statute is not merely agreeing to participate in a scheme to defraud, but more precisely agreeing specifically to use wires in the United States in furtherance of a the agreed-upon scheme to defraud.[29]   That is because the use of these wires must be an essential component of the agreed upon scheme.  An essential component is one that is at the heart of the conspiratorial agreement.  An incidental component, on the other hand, is something that was a part of the scheme but was not central to the illegal plan that was agreed upon by the conspirators.  That is to say, it was not a core component.

It is not necessary for the defendant to be directly or personally involved in the wire communications.  Evidence that a defendant agreed to cause the wires to be used by others is sufficient.  The use of the wires also need not itself transmit a fraudulent representation.  The use of the wires must, however, be a core component of the agreed upon scheme.  It is not necessary that all or most of the wire communications involved in the agreed upon scheme to defraud were sent to, from, or within the United States.  However, for the wire-use element to be satisfied, the agreed upon scheme to defraud must involve the core use of communications that pass between two or more states or between the United States and a foreign country.

If you find that the Government failed to prove beyond a reasonable doubt that the use of U.S. wires was a core component of the scheme against the Investment Funds, you must conclude that the Government has failed to prove the existence of the charged wire fraud conspiracy and you must find Mr. Boustani not guilty.  In addition, if you find that U.S. wires were to be used in the scheme, but this was not a core component of the scheme, but rather just

---

[29]     *Bascuñán*, 927 F.3d at 122 ("These elements make clear that the regulated conduct is not merely a "scheme to defraud," but more precisely the use of the mail or wires in furtherance of a scheme to defraud.").

an incidental part of it, then the Government has failed to prove the existence of the charged wire fraud conspiracy and you must find Mr. Boustani not guilty.

If, however, you find that the Government proved that U.S. wires were a core component of the agreed upon scheme against the Investment Funds, you may conclude that the first element of Count One, existence of the wire fraud conspiracy, has been established.[30]  You must then consider the second element of Count One.

**B.  Second Element of Conspiracy to Commit Wire Fraud:  *Mens Rea***

If you conclude that the Government has proved beyond a reasonable doubt that the conspiracy charged in Count One existed, you must then consider the *second* element of Count One, which asks whether Mr. Boustani joined that conspiracy and did so with criminal intent.

You cannot convict Mr. Boustani unless you find that he joined the wire fraud conspiracy against the Investment Funds.  You may not convict Mr. Boustani because you find that he joined some other conspiracy, such as a conspiracy to bribe Mozambican Government officials or a conspiracy to make payments to employees of Credit Suisse or VTB, because those conspiracies—if they existed—are not the conspiracies that Mr. Boustani is standing trial for.[31]

In order to prove the second element of Count One, the Government must prove beyond a reasonable doubt that when Mr. Boustani joined the wire fraud conspiracy against the

---

[30]      Ex. 1, *Petrossi* Jury Charge Excerpt at 1121:19-1122:2.

[31]      *Ingram v. United States*, 360 U.S. 672, 677 (1959) (defendant could not have entered into a "conspiracy with a purpose illegal under federal law" where defendant operated a lottery prohibited by state law, but the record contained no evidence that defendant knew the lottery was subject to federal taxes); *United States v. Hoskins*, 902 F.3d 69 (2d Cir. 2018) (establishing that an individual in Mr. Boustani's position is not subject to the Foreign Corrupt Practices Act, thus, cannot be charged under U.S. law for bribery of Mozambican Government officials).

Investment Funds, he did so knowingly, willfully, and with specific intent to defraud the

Investment Funds that purchased the Mozambican Debt Instruments.[32]

       The term "knowingly" means that you must be satisfied beyond a reasonable

doubt that in joining the conspiracy--if you find that Mr. Boustani did join the conspiracy-- Mr.

Boustani knew that he was participating in a conspiracy to defraud the Investment Funds.[33] As a

general rule, the law holds individuals accountable only for conduct in which they intentionally

engage.[34]  An act is done "knowingly" if it is done deliberately and purposefully; that is, you

must be satisfied that Mr. Boustani's alleged participation in a conspiracy to defraud the

Investment Funds was the product of his conscious decision.[35]

       To act "willfully" means to act with knowledge that one's conduct is unlawful

under U.S. law and with the intent to do something U.S. law forbids, that is to say, with the bad

---

[32]    Adapted from Ex. 1, *Petrossi* Jury Charge Excerpt at 1122:23-1123:3; *Ingram*, 360 U.S. at 678 ("Conspiracy to commit a particular substantive offense cannot exist without *at least* the degree of criminal intent necessary for the substantive offense itself."); *L. Sand,* Inst. 44-5 at 44-27 (wire fraud requires the Government to prove "beyond a reasonable doubt… that the defendant participated in the knowingly, willfully, and with the specific intent to defraud"); Hon. Lewis a. Kaplan's Final Jury Charge in *United States v. Gatto*, No. 17-CR-686 (S.D.N.Y. Oct. 22, 2018) (Trial Tr. at 1863:20-1864:4) ("If you conclude that the Government has proved beyond a reasonable doubt that the conspiracy charged in Count One existed, you must next determine whether the defendant you are considering willfully joined and participated in the conspiracy with knowledge of its unlawful purpose and with an intent to aid in the accomplishment of its unlawful objective—that is, the commission of wire fraud.  The Government must prove beyond a reasonable doubt, by evidence of each defendant's own actions and conduct, that he unlawfully, willfully, knowingly and with specific intent to defraud entered into the conspiracy.") (hereinafter "*Gatto* Jury Charge").

[33]    Adapted from Hon. Jed S. Rakoff's Final Jury Charge in *United States v. Allen*, No. 14-CR-272 (JSR) (S.D.N.Y. Nov. 4, 2015) (Dkt. 146 at 17) ("to act 'knowingly'…includes, among other things, a requirement that the defendant have knowledge that he was engaged in a fraudulent scheme.") (hereinafter "*Allen* Jury Charge").

[34]    Ex. 1, *Petrossi* Jury Charge Excerpt at 1118:18-20.

[35]    *Napout* Jury Charge at 18.

purpose to disobey or disregard the U.S. law.[36]  In order to know of an illegal purpose, a

defendant need not have known that he was breaking any particular U.S. law.[37]  But the

Government must demonstrate that the defendant was aware of the generally unlawful nature of

his actions.[38] That is to say, the Government must demonstrate that the defendant understood his

actions to, in fact, be illegal under U.S. law.[39]  However, let me be clear:  you may not find that

Mr. Boustani acted willfully simply because you find that Mr. Boustani made payments to

Mozambique Government officials, even if you conclude that Mr. Boustani knew that such

payments might have run afoul of some law somewhere.[40]  Mr. Boustani is not charged with

conspiring to commit bribery.  The Government must prove that Mr. Boustani understood the

wire fraud conspiracy and the use of U.S. wires in the manner alleged by the Government was

illegal under U.S. law.

Put another way, the question you must ask yourselves in assessing whether Mr.

Boustani acted willfully with respect to <u>Count One</u>, is whether, if you find that Mr. Boustani

---

[36]     Adapted from *Gatto* Jury Charge at 1843:25-1844:7; Hon. Judge Lewis A. Kaplan's Final
Jury Charge in *United States v. Blaszczak*, No. 17-CR-357 (S.D.N.Y. May 16, 2018) (Dkt. 331)
(Trial Tr. at 3959:6-8, 3970:2-4) (hereinafter "*Blaszczak* Jury Charge"); *L. Sand,* Inst. 44-5 at 44-
27.

[37]     *Blaszczak* Jury Charge at 3988:7-11.

[38]     *Id*.

[39]     *United States v. Golitshcek*, 808 F.2d 195, 202 (2d Cir. 1986) (noting, in context of wire
fraud prosecution brought against an Austrian citizen "for actions taken in his own country" that
even "the Government does not dispute that it was obligated to prove that [the defendant] knew
that [his conduct] was contrary to requirements of United States law," and explaining that it was
reversible error for the district judge to have "[told] the jury that the requisite knowledge could
be found simply because everyone is presumed to know the law.")

[40]     *United States v. Durham*, 825 F.2d 716, 719 (2d Cir. 1987) (reversing conviction because
district court's instructions "linked the element of specific intent only to intent to violate the law
in general, but not to intent to burn the subject building").

entered into the agreement to commit wire fraud against the Investment Funds who purchased the Mozambican Debt Instruments, the Government proved that Mr. Boustani knew that the agreement he had entered into was against U.S. law.  If yes, you may find that Mr. Boustani acted willfully with respect to Count One.  If no, you must find Mr. Boustani not guilty on Count One.

Furthermore, the Government must prove that Mr. Boustani had the "specific intent to defraud" the Investment Funds that purchased the Mozambican Debt Instruments.  In order to demonstrate that Mr. Boustani acted with a specific intent to defraud, the Government must prove, beyond a reasonable doubt, that Mr. Boustani knowingly agreed to join the wire fraud conspiracy against the Investment Funds that purchased the Mozambican Debt Instruments with the intent to deceive those Investment Funds and for the specific purpose of causing financial harm or property loss to those Investment Funds.[41]  While the Government need not prove that the Investment Funds were actually harmed, it must prove beyond a reasonable doubt that when Mr. Boustani joined the alleged wire fraud conspiracy, he did so for the purpose of causing financial harm or property loss to those Investment Funds.[42]

I wish to caution you however:  a mere finding that the Investment Funds would not have purchased the Mozambican Debt Instruments but for the alleged misrepresentations is not enough to find that Mr. Boustani contemplated harm to the Investment Funds.[43]

---

[41]    *L. Sand,* Inst. 44-5 at 44-27; *Gatto* Jury Charge at 1843:25-1844:8 ("To prove that the defendant you are considering acted with specific intent to defraud, the Government must prove that he acted with intent to deceive for the purpose of depriving [the alleged victim] of something of value."); *see also Davis* Jury Charge at 1135:10-14.

[42]    *Davis* Jury Charge at 1135:10-14.

[43]    *Id.* (to prove contemplated harm, "[i]t is not sufficient" for the Government to show "merely that the victim would not have entered into a discretionary economic transaction but for the defendant's misrepresentations"); *United States v. Novak*, 443 F.3d 150, 159 (2d Cir. 2006)

Let me further caution you:  the Government cannot satisfy its burden on this element by merely demonstrating that Mr. Boustani participated in the scheme with some knowledge or recognition of its capacity to cause harm to the Investment Funds.[44]  Instead, the Government must prove that Mr. Boustani acted with the specific purpose of causing some financial harm or property loss to the Investment Funds.[45]  The money or property deprivation must be a goal of the plot, not just an inadvertent consequence of it.[46]

Since an essential element of wire fraud is the intent to defraud, it follows that good faith on the part of a defendant is a complete defense.  Material misrepresentations do not amount to fraud unless done with fraudulent intent.[47]  However misleading or deceptive a plan

---

(where the Government elicited evidence that the alleged victims would not have acted as they did "*had they known*" that their money was going to the defendant, the defendant's wire fraud conviction were reversed as such a showing did not demonstrate fraudulent intent); *United States v. Mittelstaedt*, 31 F.3d 1208, 1218 (2d Cir. 1994) (same).

[44]   *United States v. Gabriel*, 125 F.3d 89, 96-7 (2d Cir. 1997) ("Defendants contend that because the [jury] instructions require[d] only that they have 'some realization' that the scheme was fraudulent and 'recogni[tion]' that the scheme had the capacity to cause harm, the instructions did not require the jury to find that they intended to cause harm.  We agree.") (*overruled in part on other grounds by Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005)).

[45]   *Id.* (the verb "'[c]ontemplate' is subject to at least two possible meanings—it could mean 'to think about' or it could mean 'to have in view as a purpose…to intend.'  Our prior decisions have indicated repeatedly that a defendant must have 'contemplated' harm, and when we have used that term, we have clearly meant the latter definition (to intend) rather than the former (to think about)."); *United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987) ("Although the government is not required to prove actual injury, it must, at a minimum, prove that defendants *contemplated* some actual harm or injury to their victims.  Only a showing of intended harm will satisfy the element of fraudulent intent.").

[46]   *Regan*, 713 F. Supp. at 637 (Government must prove that wire fraud defendants "intended to deprive their victims of money or property, not just that such a deprivation could be theoretically characterized as a necessary consequence of their scheme.").

[47]   *L. Sand,* Inst. 44-5 at 44-27.

may be, it is not fraudulent if it was devised or carried out in good faith.[48]  In other words, the law is not violated if the defendant held an honest belief that his actions were not in furtherance of any unlawful scheme to defraud the Investment Funds.[49] Mr. Boustani, however, has no burden to establish a defense of good faith.  The burden is on the government to prove that Mr. Boustani intended to defraud Investment Funds.

It is also important for you to note that Mr. Boustani's participation in the conspiracy must be established by independent evidence of his own acts or statements, as well as those of the other alleged co-conspirators, and the reasonable inferences that may be drawn from them.[50]  However, the defendant need not have known the identities of each and every other member of the conspiracy, nor need he have been apprised of all of their activities.[51]

I want to caution you that the mere association by Mr. Boustani with someone that you find to be a member of the conspiracy does not make Mr. Boustani a member of the conspiracy, even if you find that Mr. Boustani knew of the conspiracy.[52]  A person may know or be friendly with a criminal without being a criminal himself.[53]  Mere similarity of conduct, the fact they may have assembled together and discussed common aims and interests, does not necessarily establish membership in a conspiracy.[54]

---

[48]     *L. Sand,* Inst. 44-5 at 44-27.

[49]     *Blaszczak* Jury Charge at 3965:4-6, 3970:11-13.

[50]     *Id.*

[51]     *Id.*

[52]     *L. Sand,* Inst. 19-6 at 19-33.

[53]     *L. Sand,* Inst. 19-6 at 19-33.

[54]     *L. Sand,* Inst. 19-6 at 19-33.

I also want to caution you that mere knowledge or acquiescence without participation in the unlawful plan is not sufficient to find a defendant guilty.[55]  Moreover, the fact that the acts of a defendant merely happened to further the purposes or objectives of the conspiracy does not make the defendant a member of the conspiracy.[56]  More is required under the law.  What is necessary is that Mr. Boustani participated in the conspiracy to defraud the Investment Funds with knowledge of at least some of the purposes or objectives of the conspiracy and with the intent of aiding in the accomplishment of those unlawful ends.[57]

### C.  Third Element of Conspiracy to Commit Wire Fraud:  Conspiracy Was Reached on U.S. Soil.

The third element that the Government must prove with respect to Count One is that Mr. Boustani joined the wire fraud conspiracy while in the United States.[58]  If you find that the agreement was reached while in a foreign country, you must find Mr. Boustani not guilty on Count One.

---

[55]    *Id*.

[56]    *Id*.

[57]    *Id*; *Davis* Jury Charge at 1146:5-14.

[58]    *European Cmty v. RJR Nabisco, Inc.*, 764 F.3d 129, 141 (2d Cir. 2014) ("mail fraud, wire fraud and Travel Act" statutes "do not apply extraterritorially."), *aff'd in part, rev'd in part on other grounds*, 136 S. Ct. 2090 (2016); *United States v. Vilar*, 729 F.3d 62, 67 (2d Cir. 2013) ("Section 10(b) and its implementing regulation, Rule 10b–5, do not apply to extraterritorial conduct, regardless of whether liability is sought criminally or civilly"); *Bascuñan v. Elsaca*, 927 F.3d 108, 122 (2d Cir. 2019) (a court should look to the "essential elements" of the offense in order to determine a statute's "focus" for purposes of determining what conduct must take place domestically in order to avoid an impermissible extraterritorial application of the statute).

### D.  Venue for Conspiracy to Commit Wire Fraud.[59]

I have explained to you the elements the Government must prove beyond a reasonable doubt as to Count One.  In addition to these elements of the office, you must consider whether any act in furtherance of the wire fraud conspiracy alleged in Count One occurred within the Eastern District of New York.

The Eastern District of New York includes the boroughs of Brooklyn, Queens, and Staten Island, as well as Nassau and Suffolk Counties on Long Island.  The Eastern District of New York does not include the borough of Manhattan or any location outside of the Eastern District of New York.

The Government need not prove that the crimes themselves were committed in this District or that Mr. Boustani himself was physically present here.  The Government may prove venue by establishing that an overt act in furtherance of the wire fraud conspiracy occurred within this District.  An overt act is any step, action, or conduct taken to achieve, accomplish, or further the goals of the conspiracy that was undertaken knowingly and willfully by either Mr. Boustani or one of his alleged co-conspirators.  If you find that the Government has failed to prove that an overt act in furtherance of the wire fraud conspiracy occurred within the Eastern District, then you must acquit on Count One.

---

[59]     Adapted from the Hon. Nicholas G. Garaufis's Final Jury Charge in *United States v. Gasperini*, No. 1:16-cr-00441-NGG (E.D.N.Y. Aug. 2, 2017) (Dkt. 150 at 62-63) (hereinafter "*Gasperini* Jury Charge"); Hon. Kiyo A. Matsumoto's Final Jury Instructions in *United States v. Shkreli*, No. 1:15-cr-00637 (E.D.N.Y. July 28, 2017) (Dkt. 295 at 59-61) (hereinafter "*Shkreli* Jury Charge"); Hon. Dora L. Irizarry's Final Jury Instructions in *United States v. Lange*, No. 1:10-cr-00968 (E.D.N.Y. Mar. 4, 2014) (Dkt. 301 at 43-44) (hereinafter "*Lange* Jury Charge"); Hon. Frederic Block's Final Jury Instructions in *United States v. Cioffi*, No. 1:08-cr-00415 (E.D.N.Y. Mar. 20, 2013) (Dkt. 279 at 44-46) (hereinafter "*Cioffi* Jury Charge"); Hon. Brian M. Cogan's Final Jury Charge in *United States v. Nadeem*, No. 1:13-cr-00424 (E.D.N.Y. May 9, 2016) (Dkt. 283) (Trial Tr. at 2528-29) (hereinafter "*Nadeem* Jury Charge"); *United States v. Saavedra*, 223 F.3d 85, 93 (2d Cir. 2000) (holding "substantial contacts" required between defendant's conduct and venue of prosecution).

In addition, the Government may only prosecute Mr. Boustani in the Eastern District if his conduct in connection with the alleged wire fraud conspiracy formed substantial contacts with the Eastern District.  If you determine that Mr. Boustani's conduct did not form substantial contacts with the Eastern District, you must acquit on Count One.

Unlike the other elements of this offense, the Government must prove that venue is proper by a preponderance of the evidence.  A preponderance of the evidence means the greater weight of evidence, both direct and circumstantial.  This means that you should consider the quality and persuasiveness of the Government's evidence, not the quantity of its evidence. Again, I caution you that the preponderance of the evidence standard applies only to venue.  The Government must prove every other element of Count One beyond a reasonable doubt.

<u>**INSTRUCTION NO. 3**</u>

***Count Two:  Conspiracy to Commit Securities Fraud***

As I have described for you, <u>Count Two</u> alleges that from approximately January 2013 through December 2018, Mr. Boustani is alleged to have conspired to engage in a securities fraud in connection with the purchase of the LPNs to the Investment Funds and with the exchange of those LPNs in the 2016 Eurobond Exchange.  To prove this allegation, the Government must prove, beyond a reasonable doubt:

<u>First</u>, that a conspiracy, executed through material misrepresentations and intended to defraud the Investment Funds in connection with a domestic purchase of the LPNs and a domestic exchange of those LPNs in the 2016 Eurobond Exchange, existed;

<u>Second</u>, that Mr. Boustani joined that securities fraud conspiracy knowingly, willfully, and with the specific intent of deceiving the Investment Funds that purchased the LPNs and exchanged them in the 2016 Eurobond Exchange, and

<u>Third</u>, that at least one overt act, aimed at furthering the objectives of the securities fraud conspiracy against the Investment Funds, was committed by one of the conspirators while in the Eastern District of New York.

I will instruct you as to each of these elements.

**A.  First Element of Conspiracy to Commit Securities Fraud:  Existence of the Conspiracy.**

I have already given you general instructions concerning conspiracy when instructing you regarding Count One.  Those instructions may also guide you here.

In order to prove the existence of the alleged securities fraud conspiracy against the Investment Funds, the Government must prove, beyond a reasonable doubt, that at least two

people, including Mr. Boustani if you find that he was a member of the conspiracy agreed to

commit all the elements of the crime of securities fraud.[60]  Securities fraud has three elements:

        First**,** a material misrepresentation made in connection with a domestic securities

transaction;[61]

        Second, knowing and willful participation in the securities fraud scheme, with the

specific intent of deceiving the participants in the securities transaction;[62]

        Third, use of means or instruments of transportation or communication in

interstate commerce, or the use of the mails in furtherance of the fraudulent conduct.

        I will now describe these elements for you, one at a time.

---

[60]    *See United States v. Coplan*, 703 F.3d 46, 66 (2d Cir. 2012) (in the Second Circuit, "the intended future conduct the conspirators agreed upon" must "include[] all the elements of the substantive crime."); *see also United States v. Foote*, 413 F.3d 1240, 1250 (10th Cir. 2005) (if the alleged agreement is to undertake actions that, if accomplished, would not constitute a substantive crime, no conspiracy exists).

[61]    Adapted from Ex. 1, *Petrossi* Jury Charge Excerpt at 1128:16-22; *Morrison v. National Australia Bank Ltd*., 561 U.S. 247, 266-67 (2010) ("It is, in our view, only transactions in securities listed on domestic exchanges and domestic transactions in other securities to which [Section] 10(b) applies."); *see also* Aug. 21, 2019 Oral Argument Tr. at 93:1-4 (representation from Government that its prosecution against Mr. Boustani "is not a[n] omissions case," but is instead "a misrepresentation case" or a "half-truth" case.)

[62]    *L. Sand,* Inst. 57-20 at 57-60 (securities fraud requires the Government to establish "beyond a reasonable doubt… that the defendant acted willfully, knowingly and with the intent to defraud."); *United States v. Litvak*, Case No. 13-cr-19 (JCH), Dkt. 523, Jury Charge, at 50 (D. Conn. Jan. 13, 2017) ("*Litvak II*") ("The third element of the crime of securities fraud…is that [the defendant] participated in the scheme to defraud knowingly, willfully, and with intent to defraud…To act with "intent to defraud" here means to act willfully and with the specific intent to deceive.  An act is intentional only if it is deliberate and purposeful.  That is, to be intentional Mr. Litvak's acts must have been the product of his conscious objective, rather than the product of mistake of accident.  The misrepresentation…must have had the purpose of inducing the victim of the fraud to undertake some action.")

### 1.  Securities Fraud: Element One

The first element of securities fraud that the Government must prove is that in connection with a domestic purchase of the LPNs and a domestic exchange of those LPNs in the 2016 Eurobond Exchange, a material misrepresentation would be made.  This element breaks down into four requirements:

One, a misrepresentation would be made;

Two, that the misrepresentation was material;

Three, the material misrepresentation would be made "in connection with" a purchase of the LPNs and the exchange of those LPNs in the 2016 Eurobond Exchange; and finally,

Four, that there is a sufficient nexus between the conduct and the United States, meaning that the particular LPN purchase and exchange of the LPNs in the 2016 Eurobond Exchange that the material misrepresentation was made "in connection with" was a domestic transaction and also that the conduct was not predominately foreign.

Requirement No. 1: A misrepresentation was made.

In my instructions to you regarding wire fraud, I described for you what a "misrepresentation" is.  You should use those same definitions here.[63]  Moreover, I instruct you that if you find that the Government has proven, beyond a reasonable doubt, that a misrepresentation would be made, all of you must be unanimous as to the particular

---

[63]     Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 200 n.19 (3d Cir. 1990) ("Nondisclosures, as opposed to affirmative misrepresentations and misleading half-truths (i.e. failures to disclose sufficient information to render statements actually made not misleading), ordinarily are not actionable under section 12(2) or rule 10b–5.").

misrepresentation at issue.[64]  If six of you are in agreement that the conspirators agreed to make a particular misrepresentation, but the other six of you believe that a different misrepresentation was agreed to by the conspirators, you must conclude that the Government has failed to prove the existence of the charged wire fraud conspiracy and you must find Mr. Boustani not guilty on Count Two.[65]  And, if you do not unanimously agree that the Government proved beyond a reasonable doubt that the conspirators agreed to make any misrepresentations to the Investment Funds, you must conclude that the Government has failed to prove the existence of the charged wire fraud conspiracy, and you must find Mr. Boustani not guilty on Count Two.  If, however, you find that the Government has proven that the conspirators agreed that a misrepresentation would be made, you may consider the next element, materiality.

> ### Requirement No. 2: The Government must prove that the misrepresentation was material.

In addition to proving the existence of a misrepresentation, the Government must also prove, beyond a reasonable doubt, that the misrepresentation was material.  The definition of material in the context of securities fraud is close, but not quite the same, as the definition of materiality that I gave you with respect to wire fraud.  For purposes of securities fraud, a material misrepresentation is one that would have assumed actual significance in the deliberations of a reasonable investor's investment decision.[66]  I will first describe what I mean by a reasonable investor and then I will instruct you further regarding materiality.

---

[64]     Adapted from Final Jury Charge of Hon. Robert Chatigny in *United States v. Shapiro*, No. 15-CR-00155 (RNC) (D. Conn. June 1, 2017) (Dkt. 462) (Trial Tr. at 2645:18-24).

[65]     *Id*.

[66]     Adapted from Ex. 1, *Petrossi* Jury Charge Excerpt at 1131:10-21;

For purposes of this case, a reasonable investor is not an ordinary investor. Rather, you must consider the misrepresentation from the standpoint of an institutional investor in the highly specialized market for bonds issued by frontier market countries.[67]  You should consider the evidence that you have heard relating to the sophistication of the investors in the frontier country bond market, their objectives, the information available to them, the analyses they employed and the way the frontier country market worked.[68]  You may assess whether the misrepresentation would be material to a reasonable investor in the frontier market bond market in light of the norms and practices in the frontier market bond market that existed at the time of the transaction.[69]  You may not assess materiality from the perspective of hindsight.[70]

Accordingly, in deciding whether a false statement was material, you should consider whether, in the context of the operations of the frontier market bond market at the pertinent time, as shown by the evidence, a reasonable institutional investor would consider the statement at issue as significantly altering the total mix of information available, or whether the reasonable institutional investor would discount the statement as unreliable.[71] To significantly alter the total mix of information available means to meaningfully affect a reasonable investor's consideration about whether it should buy the security and at what price.[72]  In this context, a

---

[67]     Adapted from *Shapiro*, at 2648:2-11, 2648:24-2649:14.

[68]     *Id.*

[69]     *Id.*

[70]     *Id.* at 2648:24-2649:14; *Spielman v. General Host Corp.*, 402 F. Supp. 190, 194 (S.D.N.Y. 1975) ("The determination of materiality is to be made upon all the facts as of the time of the transaction and not upon a 20-20 hindsight view long after the event.").

[71]     *Id.*

[72]     Ex. 1, *Petrossi* Jury Charge Excerpt at 1131:17-20; *see also Blaszczak* Jury Charge at 3955:8-15.

misrepresentation is not material simply because it may have been "important" to an investor.[73] However, a misstatement need not determine any particular outcome in order to be material.[74]  If you find that the Government has not proven beyond a reasonable doubt that the misrepresentation was material to a reasonable investor in the frontier market bond market, you must conclude that the Government has failed to prove the existence of the charged securities fraud conspiracy and you must find Mr. Boustani not guilty on Count Two.  If, however, you find that the Government has proven that the misrepresentation was material to a reasonable investor in the frontier market bond market, you must then consider the next element, that is, whether the material misrepresentation was made "in connection with" a purchase of the LPNs and an exchange of the LPNs in the 2016 Eurobond Exchange.

> ### Requirement No. 3: The Government must prove that the material misrepresentation was made "in connection with" a purchase of the LPNs and an exchange of those LPNs in the 2016 Eurobond Exchange.

A material misrepresentation does not violate the securities laws unless it was made "in connection with" a securities transaction.  In this case, the Government must prove that the material misrepresentation was to be made "in connection with" the purchase of the LPNs and the exchange of those LPNs in the 2016 Eurobond Exchange.[75] In order to demonstrate that a misrepresentation is made "in connection with" a securities transaction, the Government must show two things:  first, that the securities transaction was an integral component of the intended

---

[73]     Ex. 1, *Petrossi* Jury Charge Excerpt at 1131:17-20; *see also City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 185 (2d Cir. 2014) ("while importance is undoubtedly a necessary element of materiality, importance and materiality are not synonymous."); *Ganino v. Citizens Utils. Co*., 228 F.3d 154, 162 (2d Cir. 2000)("it is not sufficient to allege that the investor might have considered the misrepresentation or omission important.")

[74]     Ex. 1, *Petrossi* Jury Charge Excerpt at 1131:20-21.

[75]     Adapted from *Litvak II*, at 45; Adapted from *Shapiro*, at 2644:12-20.

fraud;[76] and second, that the subject of the misrepresentation pertained to the fundamental

characteristics of the LPN and the Eurobond.[77]  Thus, if you find that the Government failed to

prove beyond a reasonable doubt that the purchase of the LPNs and the exchange of the LPNs in

the 2016 Eurobond Exchange was integral to the objectives of the conspirators, you must find

Mr. Boustani not guilty on Count Two.

However, if you find that the purchase of LPNs and the exchange of the LPNs in

the 2016 Eurobond Exchange was integral to the conspirators' objectives, you must then decide

whether the misrepresentation made pertained to the fundamental characteristics of the LPNs and

the Eurobond or if the misrepresentation pertained to something else.[78]  A fundamental

characteristic is a characteristic or attribute of the security that would induce a reasonable

investor in the frontier country bond market to buy or sell the particular security.[79]  If you find

---

[76]     See Perez v. Wyckoff, 718 F. Supp. 217, 236 (S.D.N.Y. 1989) ("Thus, the in connection
with requirement is satisfied where accomplishment of the alleged scheme is directly related to
the trading process[;]…[the] connection element requires that the securities transaction was an
integral or helpful component of the fraudulent scheme.") (citing United States v. Newman, 664
F.2d 12, 18 (2d Cir. 1981)); Department of Economic Dev. v. Arthur Anderson & Co., 683 F.
Supp. 1463, 1479 (S.D.N.Y. 1988); see also L. Sand, Inst. 57-21 at 57-66 ("There must,
however, be more than an incidental involvement between the fraud and the trading activity.").

[77]     Chemical Bank v. Arthur Anderson & Co., 726 F.2d 930, 943 (2d Cir. 1983) ("We are
here compelled to decide" the "question" of "whether misrepresentations or omissions involved
in a securities transaction but not pertaining to the securities themselves can form the basis of a
violation" with respect to Section "10(b) and Rule 10b-5" and "our answer is in the negative.");
see also Abrash v. Fox, 805 F. Supp. 206, 208 (S.D.N.Y. 1992) ("Moreover, even where there is
a clear causal connection between the misrepresentations and the investment decision, there is
no securities violation unless the misrepresentation or omissions involved in a securities
transaction pertain to the securities themselves.  The "in connection with" requirement is not satisfied unless
the alleged fraud concerns the fundamental nature of the securities, namely, characteristics and
attributes that would induce an investor to buy or sell the particular securities.")

[78]     Id.

[79]     United States v. Coriaty, Case No. 99-cr-1251 (NT), 2001 U.S. Dist. LEXIS 9870 at *21-
23 (S.D.N.Y. July 17, 2001) (granting defendant's Rule 29 motion and reversing securities fraud
conviction because the defendant's misrepresentation did not "relate to the nature or value of the

that the agreed-upon misrepresentation did not pertain to the fundamental characteristics of the LPNs and the Eurobond, you must find Mr. Boustani not guilty on Count Two.

However, if you find that the agreed upon misrepresentation did pertain to the fundamental characteristics of the LPNs and the Eurobonds, you may conclude that the Government satisfied its obligation to prove that the agreed upon misrepresentation was "in connection with" the purchase of the LPNs and the exchange of the LPNs in the 2016 Eurobond Exchange.  You must then consider the next element, which is whether those securities transactions took place in the United States.

> *Requirement No. 4: The Government Must Prove A Sufficient Nexus Between the Defendant's Conduct and the United States.*

It is a basic premise of our legal system that, in general, United States law governs domestically but does not rule the world.[80]  For this reason, the Government has the obligation to establish a sufficient connection between the defendant's alleged conduct and the United States.  In order to make this showing for Count Two, the Government must prove the following two requirements beyond a reasonable doubt:  *first*, that the securities transaction at issue was a domestic U.S. transaction,[81] and *second,* that the defendant's conduct was not predominately foreign.[82]

---

securities" bought by the alleged victim); Bernstein v. Misk, 948 F. Supp. 228, 243 (E.D.N.Y. 1997) ("while the [defendants'] statements and omissions may in a broad sense be related to the transaction, they do not in any way implicate the characteristics or attributes of the [securities at issue] and hence were not made "in connection with" the purchase or sale of [those] securities."); *Abrash*, 805 F. Supp. at 208 (The "in connection with" requirement is not satisfied unless the alleged fraud concerns the fundamental nature of the securities, namely, characteristics and attributes that would induce an investor to buy or sell the particular securities.).

[80]     *RJR Nabisco, Inc. v.  European Cmty.*, 136 S. Ct. 2090, 2100 (2016).

[81]     *Parkcentral Global Hub Ltd. v. Porsche Automobile Holdings*, 763 F.3d 198, 214-216 (2d Cir. 2014) ("we conclude that, while a domestic transaction or listing is necessary to state a claim under [Section] 10(b), a finding that these transactions were domestic would not suffice to

With respect to the first requirement—the Government's obligation to prove that the particular purchase of the LPNs and exchange of the LPNs in the 2016 Eurobond Exchange that you found the material misrepresentation to be "in connection with" was a <u>domestic</u> U.S. transaction—I instruct you that it does not matter whether the purchaser of the LPN or the holder of the LPN at the time of the 2016 Eurobond Exchange was a U.S. entity or person.[83]  The fact that a purchaser is American is irrelevant to the question of whether a transaction is domestic.

Instead, a transaction is domestic if it was executed through a U.S. exchange or if was made in the United States.[84]  I direct you that you may <u>not</u> find that a purchase was made in the United States where the investment fund that purchased the security was incorporated offshore, regardless of whether the actual person who decided to purchase the security, on behalf

compel the conclusion that plaintiffs' invocation of [Section] 10(b) was appropriately domestic.") (emphasis in original); *see also Prime Int'l Trading Ltd. v. BP P.L.C.*, No. 17-cv-2233, 2019 WL 4062219, at *7 (2d Cir. Aug. 29, 2019) (a "domestic securities transaction is necessary but *not sufficient* to state a claim under Section 10(b).").

[82]    *Parkcentral*, 763 F.3d at 216 ("Although we recognize that the plaintiffs allege that the [defendants'] false statements may have been intended to deceive investors worldwide, we think that the relevant actions in this case are so predominately German as to compel the conclusion that the complains fail to invoke [Section] 10(b) in a manner consistent with the presumption against extraterritoriality."); *Prime*, 2019 WL 4062219, at *8 (explaining that where defendant's "conduct" is "predominately foreign," Section 10(b) does not apply); *United States v. Vilar*, 729 F.3d 62, 67 (2d Cir. 2013) (the extraterritorial reach, or lack thereof, of "Section 10(b) and its implementing regulation, Rule 10b-5" are the same, "regardless of whether liability is sought criminally or civilly.")

[83]    *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 181, n.32 (2d Cir. 2014) (a "purchaser's citizenship or residency does not affect where a transaction occurs. . .a foreign resident can make a purchase within the United States, and a United States resident can make a purchase outside the United States."); *Vilar*, 729 F.3d at 77 n.10 (the fact that the securities at issue were "sold to customers based in the United States" is "insufficient to demonstrate a purchase or sale of a security in the United States for the purposes of Section 10(b)".)

[84]    *Morrison,* 561 U.S. at 266-67 ("It is, in our view, only transactions in securities listed on domestic exchanges and domestic transactions in other securities to which [Section] 10(b) applies.");  *Cornwell v. Credit Suisse Grp.*, 729 F. Supp. 2d 620 at 623 (S.D.N.Y. 2010) (same).

of the offshore entity, was a U.S. citizen, or worked for a U.S. entity, or was physically present in the United States when he or she came to the decision, or placed the order, to buy the security on behalf of the offshore fund.[85]  If the transaction that you found the misrepresentation to be "in connection with" was such a transaction by an offshore fund, you must find Mr. Boustani not guilty of Count Two. [86]

         If the transaction that you found the misrepresentation to be "in connection with" was <u>not</u> such a transaction by an offshore fund, then you must determine whether the Government proved, beyond a reasonable doubt, that the transaction at issue was a United States transaction. To determine whether the transaction was a United States transaction, you must decide whether title to the security passed within the United States or whether irrevocable liability to carry out the transaction occurred within the United States.[87]  In assessing whether irrevocable liability for the security was incurred in the United States, you may take into account a range of factors, including the formation of the contracts, the placement of purchase orders, the

---

[85]      Where these circumstances are present, the transaction is "foreign" as a matter of law, under Regulation S.  A "sale of securities" pursuant to Regulation S is "deemed to occur outside the United States." 17 C.F.R. § 230.901.  A Regulation S "sale" is an "offshore transaction," *id.*, in which all "buyer[s] [are] outside the United States." 17 C.F.R. § 230.902(h)(1)(ii)(A) (defining offshore transaction).  Under Regulation S, no "directed selling efforts are made in the United States."  While some U.S. investors may be "contacted" with respect to a Regulation S offering, that list is limited to investors who hold discretionary *offshore* accounts and they are contacted and purchase Regulation S securities "solely" in their capacity as the holder of the offshore account.  § 230.901(a)(2); § 230.902(c)(3)(ii), (k)(2)(i).

[86]      *Stackhouse v. Toyota Motor Co*., No. 10-cv-0922, 2010 WL 3377409, at *1-2 (C.D. Cal. July 16, 2010) (Regulation S "offshore transactions" are excluded from Section 10(b) by *Morrison*).

[87]      *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012) (a security may have been "purchased or sold in the United States" when "title [to the security was] passed within the United States" or that "the parties incur[red] irrevocable liability to carry out the [securities] transaction within the United States.")

place where title to the securities passed and the location in which money was exchanged.[88]

However, I instruct you that you may not find that the Government proved that irrevocable

liability for the transaction was incurred in the United States solely on the basis that a person or

entity in the United States placed a buy order for the security with a broker-dealer while in the

United States.[89]  That is insufficient to satisfy the Government's burden.

        If you find that the Government failed to prove, beyond a reasonable doubt, that

the particular purchase of LPNs and exchange of the LPNs in the 2016 Eurobond Exchange that

you previously found the misrepresentation to have been "in connection with," were both U.S.

transactions, you must find Mr. Boustani not guilty of Count Two.  If, however, that you find

that the Government did so demonstrate, then you must consider the next element, which is

whether Mr. Boustani's conduct was "predominately foreign."[90]

---

[88]     *Id.* at 70.

[89]     *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 181 (2d Cir. 2014) (the fact that a U.S. investor "placed a buy order in the United States" for a security does *not* establish that the security was purchased in the United States); *In re Satyam Computer Servs. Sec. Litig.*, 915 F. Supp. 2d 450, 473-74 (S.D.N.Y. 2013) (the fact that "buy orders were placed from the United States" and U.S. investors were affected does not establish a domestic securities transaction); *Plumbers' Union Local No. 12 Pension Fund v. Swiss Reinsurance Co.*, 753 F. Supp. 2d 166, 175-76 (S.D.N.Y. 2010) (rejecting argument that a "purchase occurs when and where an investor places a buy order," and explaining that the "place" where a trader is located when he submits an "electronic order" to his broker "does not affect the location" of the securities transaction); *In re Societe Generale Sec. Litig.*, No. 08-cv-2495 (RMB), 2010 WL 3910286, at *6 (S.D.N.Y. Sept. 29, 2010) (dismissing Section 10(b) claims as extraterritorial where plaintiffs asked the court to look to the location of the "act of placing a buy order").

[90]     *Parkcentral*, 763 F.3d at 216 ("Although we recognize that the plaintiffs allege that the [defendants'] false statements may have been intended to deceive investors worldwide, we think that the relevant actions in this case are so predominately German as to compel the conclusion that the complains fail to invoke [Section] 10(b) in a manner consistent with the presumption against extraterritoriality."); *Prime*, 2019 WL 4062219, at *8 (explaining that where defendant's "conduct" is "predominately foreign," Section 10(b) does not apply); *Gasperini* Jury Charge at 40-41, 47 (instructing the jury that one element of the offense that the Government had to satisfy beyond a reasonable doubt was that "substantial conduct" occurred in the United States).

If you find that the defendant's conduct was predominately foreign, you must find

Mr. Boustani not guilty on Count Two.  However, if you find that the Government proved,

beyond a reasonable doubt, that the defendant's conduct was not predominately foreign, but

rather domestic, you may conclude that the Government satisfied its burden with respect to the

first element of securities fraud.

### 2.   Securities Fraud: Element Two.

The second element of securities fraud concerns intent.  However, this

requirement is identical to the second element of conspiracy to commit securities fraud, which I

shall discuss with you shortly, and thus, I will not instruct you on this element at this moment.

### 3.   Securities Fraud: Element Three.

The third element of securities fraud that the government must prove is the agreed

use of the mails or any means or instrumentalities of transportation or communication in

interstate commerce, including telephones in furtherance of a scheme to defraud.[91]  It's not

necessary that a defendant be directly or personally involved in any mailing, emailing, telephone

calls or telephone messages.[92]  If the defendant was an active participant in the scheme and took

steps or engaged in conduct which he knew or reasonably could have foreseen would naturally

and probably result in the use of the mails or the internet or telephone lines, then you may find

that he caused the mails or these other instrumentalities of interstate commerce to be used.[93]

When one does an act with the knowledge that the use of interstate means or communication will

follow in the ordinary course of business, or where such use reasonably can be foreseen, even

---

[91]      Ex. 1, *Petrossi* Jury Charge Excerpt at 1134:20-1136:2.

[92]      *Id.*

[93]      *Id.*

though not actually intended, then he causes such means to be used.[94]  It's not necessary that the items sent through the mails or over the internet or communicated by telephone contain the fraudulent material or anything criminal or objectionable.[95]  The matter mailed or communicated by telephone may be entirely innocent.[96] The use of telephones, the internet or the mail need not be central to the execution of the scheme and may even be incidental to it.[97] All that is required is that the use of the telephones, the internet or the mail bears some relation to the object of the scheme or fraudulent conduct.[98] In fact, the actual offer or sale need not be accomplished or accompanied by the use of telephone or internet or the mail so long as the defendant is still engaged in actions that are part of a fraudulent scheme.[99]

Count Two charges Mr. Boustani with conspiring to commit securities fraud, so the Government must show that Mr. Boustani was one of the conspirators that agreed to engage in each of the elements I have described for you.[100]  If upon consideration of all the evidence, you're satisfied that the Government has proven beyond a reasonable doubt that the minds of at least two of the alleged conspirators met and they agreed to work together to engage in each of the elements I have just discussed, then the first element of Count Two, conspiracy to commit securities fraud has been met.  If, however, you find that the Government has not proven beyond

---

[94]  *Id.*

[95]  *Id.*

[96]  *Id.*

[97]  *Id.*

[98]  *Id.*

[99]  *Id.*

[100]  Ex. 1, *Petrossi* Jury Charge Excerpt at 1136:3-8.

a reasonable doubt that the securities fraud conspiracy charged in Count Two existed, then you must find Mr. Boustani not guilty of Count Two.

**B.  Second Element of Conspiracy to Commit Securities Fraud:  *Mens Rea***

If you conclude that the Government has proven beyond a reasonable doubt that the securities fraud conspiracy charged in Count Two existed, you must then consider the *second* element of a securities fraud conspiracy offense, which asks whether Mr. Boustani joined that conspiracy and did so with criminal intent.  In order to prove this second element of conspiracy, the Government must prove beyond a reasonable doubt that when Mr. Boustani joined the conspiracy, he did so knowingly, willfully, and with intent to deceive the Investment Funds and for the purpose of inducing them to buy LPNs and to vote in favor of the 2016 Eurobond Exchange.[101]

The term 'knowingly' means that you must be satisfied beyond a reasonable doubt that in joining the conspiracy—if you find that Mr. Boustani did join the conspiracy--that Mr. Boustani knew that he was participating in a conspiracy to deceive the Investment Funds and for the purpose of inducing them to buy LPNs and to vote in favor of the 2016 Eurobond

---

[101]    *Ingram*, 360 U.S. at 678 ("Conspiracy to commit a particular substantive offense cannot exist without *at least* the degree of criminal intent necessary for the substantive offense itself."); *L. Sand,* Inst. 57-20 at 57-60 (securities fraud requires the Government to establish "beyond a reasonable doubt… that the defendant acted willfully, knowingly and with the intent to defraud."); *Litvak II* at 50 ("The third element of the crime of securities fraud…is that [the defendant] participated in the scheme to defraud knowingly, willfully, and with intent to defraud…To act with "intent to defraud" here means to act willfully and with the specific intent to deceive.  An act is intentional only if it is deliberate and purposeful.  That is, to be intentional Mr. Litvak's acts must have been the product of his conscious objective, rather than the product of mistake of accident.  The misrepresentation…must have had the purpose of inducing the victim of the fraud to undertake some action.")

Exchange.[102] As a general rule, the law holds individuals accountable only for conduct in which they intentionally engage. [103]  An act is done "knowingly" if it is done deliberately and purposefully; that is, you must be satisfied that Mr. Boustani's alleged participation in a conspiracy to deceive the Investment Funds was the product of his conscious decision.[104]

As I instructed you previously, to act "willfully" means to act with knowledge that one's conduct is unlawful under U.S. law and with the intent to do something U.S. law forbids, that is to say, with the bad purpose to disobey or disregard U.S. law.[105]  In order to know of an illegal purpose, a defendant need not have known that he was breaking any particular U.S. law.[106]  But the Government must demonstrate that the defendant was aware of the generally unlawful nature of his actions.[107] That is to say, the Government must demonstrate that the defendant understood his actions to, in fact, be illegal under U.S. law.[108]  Put another way, the question you must ask yourselves in assessing whether Mr. Boustani acted willfully with respect to Count Two, is whether, if you find that Mr. Boustani entered into the agreement to commit

---

[102]     Adapted from *Allen* Jury Charge at 17 ("to act 'knowingly'…includes, among other things, a requirement that the defendant have knowledge that he was engaged in a fraudulent scheme.").

[103]     Ex. 1, *Petrossi* Jury Charge Excerpt at 1118:18-20.

[104]     *Napout* Jury Charge at 18.

[105]     *Gatto* Jury Charge at 1843:25-1844:7; *Blaszczak* Jury Charge at 3959:6-8, 3970:2-4; *L. Sand,* Inst. 44-5 at 44-27.

[106]     *Blaszczak* Jury Charge at 3988:7-11.

[107]     *Id*.

[108]     *United States v. Golitshcek*, 808 F.2d 195, 202 (2d Cir. 1986) (noting, in context of wire fraud prosecution brought against an Austrian citizen "for actions taken in his own country" that even "the Government does not dispute that it was obligated to prove that [the defendant] knew that [his conduct] was contrary to requirements of United States law," and explaining that it was reversible error for the district judge to have "[told] the jury that the requisite knowledge could be found simply because everyone is presumed to know the law.")

securities fraud against the Investment Funds that purchased the LPNs and exchanged the LPNs in the 2016 Exchange, the Government proved that Mr. Boustani knew that the agreement he had entered into was against the law of the United States.  If yes, you may find that Mr. Boustani acted willfully with respect to Count Two.  If no, you must find Mr. Boustani not guilty on Count Two.

In addition to proving that Mr. Boustani joined the conspiracy knowingly and willfully, the Government must also prove that Mr. Boustani joined the securities fraud conspiracy with the intent of deceiving the Investment Funds into purchasing the LPNs and voting in favor of the 2016 Eurobond Exchange.[109]  If you find that Mr. Boustani did not possess such an intent, you must find Mr. Boustani not guilty of Count Two.  In addition, good faith is a complete defense.  I instructed you regarding good faith when I gave you my instructions concerning wire fraud.  You should apply that law here.  If you find that Mr. Boustani was acting in good faith, you must find him not guilty of Count Two.

To conclude on this second element of securities fraud conspiracy, if you find that Mr. Boustani was not a knowing and willful participant in the securities fraud conspiracy against the Investment Funds or that he lacked the specific intent to deceive the Investment Funds into purchasing LPNs and exchanging the LPNs in the 2016 Eurobond Exchange, you should find Mr. Boustani not guilty.  On the other hand, if you find that the Government has established beyond a reasonable doubt not only the first element, namely, the existence of the securities

---

[109]     *Litvak II* at 50 ("*Litvak II*") ("The third element of the crime of securities fraud…is that [the defendant] participated in the scheme to defraud knowingly, willfully, and with intent to defraud…To act with "intent to defraud" here means to act willfully and with the specific intent to deceive.  An act is intentional only if it is deliberate and purposeful.  That is, to be intentional Mr. Litvak's acts must have been the product of his conscious objective, rather than the product of mistake of accident.  The misrepresentation…must have had the purpose of inducing the victim of the fraud to undertake some action.")

fraud conspiracy, but also the second element, <u>mens rea</u>, then you may consider whether the Government has established the third element, which I will instruct you about now.

### C. Third Element of Conspiracy to Commit Securities Fraud:  Commission of an Overt Act in Furtherance of the Conspiracy's Objectives.

In order to prove the third element of Count Two, the Government must prove beyond a reasonable doubt that one of the conspirators knowingly and willfully committed an overt act in furtherance of the conspiracy in the Eastern District of New York.[110]  An "overt act" is any action intended to help achieve the object of the agreed upon conspiracy.[111]  An overt act need not itself be a criminal act, but it must contribute to furthering the conspiracy.[112]

The indictment alleges the following overt acts:

[**Insert List Prior to Charge**.]

The Government does not need to prove that every one of the actions that I just read to you occurred or that any of the actions were committed at precisely the time alleged, nor do you all have to agree on the same overt act.[113] It's sufficient if each one of you is convinced beyond a reasonable doubt that at least one overt act occurred, and that it occurred at about the time and place stated.[114]  In other words, in order to prove the securities fraud conspiracy charged in the Count Two, there has to be something more than just an agreement to engage in securities fraud against the Investment Funds, and some overt step or action must have been taken by the defendant, or one of the conspirators, in furtherance of the conspiracy to commit

---

[110]    Adapted from *L. Sand et al.* Modern Fed. Jury Inst. – Crim., Inst. 19.

[111]    Id.

[112]    *Id*.

[113]    Adapted from Ex. 1, *Petrossi* Charge Excerpt at 1125:14-1127:25.

[114]    *Id.*

securities fraud against the Investment Funds that purchased the LPNs and exchanged the LPNs in the 2016 Eurobond Exchange.

Thus, although it is not necessary for the Government to prove that every conspirator committed or participated in the overt act, the Government does need to prove, beyond a reasonable doubt, that at least one person, who was a conspirator in the securities fraud conspiracy against the Investment Funds, committed one of the overt acts and did so in order to further the objectives of the securities fraud conspiracy against the Investment Funds.[115]  In addition, if you have determined an act that meets all of those requirements took place, you must then determine whether that overt act took place in the Eastern District of New York, which includes the Counties of Kings, Queens, Richmond, Nassau and Suffolk.[116]

If you determine that the Government failed to prove, beyond a reasonable doubt, that one of the overt acts I described for you was committed, by either by the defendant or by a conspirator who had joined the securities fraud conspiracy knowingly and willfully and with specific intent to deceive the Investment Funds, for the purpose of advancing the objectives of the securities fraud conspiracy against the Investment Funds and while in the Eastern District of New York, then you must find Mr. Boustani not guilty of Count Two.

## D.  Venue for Conspiracy to Commit Securities Fraud.[117]

I have explained to you the elements the Government must prove beyond a reasonable doubt as to Count Two.  In addition to these elements of the office, you must consider

---

[115]    *Id.*

[116]    L. Sand, at Instruction 19-7, at 19-51.

[117]    Adapted from *Gasperini* Jury Charge at 62-63; *Shkreli* Jury Charge at 59-61; *Lange* Jury Charge at 43-44; *Cioffi* Jury Charge at 44-46; *Nadeem* Jury Charge at 2528-29; *United States v. Saavedra*, 223 F.3d 85, 93 (2d Cir. 2000) (holding "substantial contacts" required between defendant's conduct and venue of prosecution).

whether any act in furtherance of the securities fraud conspiracy alleged in Count Two occurred within the Eastern District of New York.

As I explained to you earlier, the Eastern District of New York includes the boroughs of Brooklyn, Queens, and Staten Island, as well as Nassau and Suffolk Counties on Long Island.  The Eastern District of New York does not include the borough of Manhattan or any location outside of the Eastern District of New York.

The Government need not prove that the crimes themselves were committed in the Eastern District or that the defendant himself was physically present here.  The Government may prove venue by establishing that an overt act in furtherance of the securities fraud conspiracy occurred within the Eastern District.  An overt act is any step, action, or conduct taken to achieve, accomplish, or further the goals of the conspiracy that is undertaken knowingly and willfully by either the Defendant or one of his alleged co-conspirators.  If you find that the Government has failed to prove that an overt act in furtherance of the securities fraud conspiracy occurred within the Eastern District, then you must acquit on Count Two.

In addition, the Government may only prosecute the Defendant in the Eastern District if his conduct in connection with the alleged securities fraud conspiracy formed substantial contacts with the Eastern District.  If you determine that the Defendant's conduct did not form substantial contacts with the Eastern District, you must acquit on Count Two.

Unlike the other elements of this offense, the Government must prove that venue is proper in the Eastern District of New York by a preponderance of the evidence.  A preponderance of the evidence means the greater weight of evidence, both direct and circumstantial.  This means that you should consider the quality and persuasiveness of the Government's evidence, not the quantity of its evidence.  Again, I caution you that the

preponderance of the evidence standard applies <u>only</u> to venue.  The Government must prove

every other element of Count Two beyond a reasonable doubt.

## INSTRUCTION NO. 4

### *Multiple Conspiracies*[118]

In this case, Mr. Boustani contends that the Government's proof fails to show the

existence of the single overall conspiracy charged in Count One and the single overall conspiracy

charged in Count Two.  Whether there existed a single unlawful agreement, or many such

agreements, or indeed, no agreement at all, is a question of fact for you, the jury, to determine in

accordance with the instructions I am about to give you.

When two or more people join together to further one common unlawful design or

purpose, a single conspiracy exists.  By way of contrast, multiple conspiracies exist when there

are separate unlawful agreements to achieve distinct purposes.  Proof of several separate and

independent conspiracies is not proof of the single, overall conspiracy charged in the indictment,

unless one of the conspiracies proved happens to be the single conspiracy described in the

indictment.

In order to prove a single conspiracy, the prosecution must show that each alleged

member agreed to participate in what he knew to be a collective venture directed towards a

common goal.[119]  If you find that the single conspiracy charged in Count One or charged in

Count Two did not exist, you cannot find any defendant guilty of the single conspiracy charged

in that Count.  This is so even if you find that some conspiracy other than the one charged in this

---

[118]      Adapted from *L. Sand et al.* Modern Fed. Jury Inst. – Crim., Inst. 19-5.

[119]      *United States v. McDermott*, 245 F.3d 133, 137 (2d Cir. 2001) (defendant insider tipper
could not have rationally been member of conspiracy with tippee who, unbeknownst to
defendant, was simultaneously passing along defendant's insider information to another tippee,
whose identity and existence was unknown to defendant).

indictment existed, even though the purposes of both conspiracies may have been the same and even though there may have been some overlap in membership.  Similarly, if you find that a particular defendant was a member of another conspiracy, and not the one charged in the Count you are considering, then you must acquit the defendant of that conspiracy charge.

Therefore, what you must do is determine whether the conspiracies charged in Counts One and Two existed.  If it did, you then must determine the nature of the conspiracy and who were its members.

**INSTRUCTION NO. 5**

***Count Four:  Conspiracy to Commit Money Laundering***

As I have described for you, <u>Count Four</u> alleges that from January 2013 through December 2018, Mr. Boustani is alleged to have conspired to engage in a money laundering conspiracy.  To prove this allegation, the Government must prove, beyond a reasonable doubt:

<u>First</u>, that the alleged money laundering conspiracy existed;

<u>Second</u>, that Mr. Boustani joined that money laundering conspiracy knowingly, and intentionally and with the intent of either promoting wire fraud or securities fraud, or alternatively, with the intent of concealing the proceeds of wire fraud or securities fraud.

I will instruct you as to each of these elements.

**A.  First Element of Conspiracy to Commit Money Laundering:  Existence of the Conspiracy.**

I have already given you general instructions concerning conspiracy when instructing you regarding Count One.  Those instructions may also guide you here.

In order to prove the existence of the alleged money laundering conspiracy, the Government must prove, beyond a reasonable doubt, that the conspirators, including Mr. Boustani--if you find that he is a conspirator--agreed to commit money laundering.  The Government has alleged that the conspirators agreed to commit money laundering via two different methods:

First, by transporting, transferring, or transmitting money from the United States or into the United States, in order to promote a wire fraud or a securities fraud.[120]

---

[120]     While the Indictment alleges that a violation of Mozambican bribery law is also one of the crimes Mr. Boustani conspired to promote through money laundering, the Government has not met its burden of demonstrating what Mozambican bribery law provides and thus, the jury should not be instructed on that offense.  Likewise, as described more fully in our objections to

Second, by transporting, transferring, or transmitting the proceeds of wire fraud violations and securities fraud violations from the United States or into the United States in order to conceal or disguise the proceeds' nature, location, source, ownership, or control.

If you find that the conspirators agreed to commit money laundering through only one of these methods, you may find that the money laundering conspiracy existed and that this first element is satisfied.  If you find that the conspirators did not agree to commit money laundering or did not agree to commit money laundering through these two methods, you must find Mr. Boustani not guilty on Count Four.

### 1.  Method One:  Transfer of Money to Promote Wire Fraud Scheme, Securities Fraud Scheme, or Violation of Mozambican Bribery Law.

In order to prove a conspiracy to transport, transfer, or transmit money from the United States or into the United States in order to promote a wire fraud or a securities fraud, which is the first method I discussed, the government must prove, beyond a reasonable doubt, that the conspirators agreed to commit all elements of that type of money laundering.  I will describe those elements for you now.

### a.  *First Element.*

The first element that the Government must prove beyond a reasonable doubt is that a monetary instrument or funds was transported or transferred or transmitted from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States.[121]  The term "monetary instrument" means

the Government's Requests to Charge, the Court should not instruct the jury that an FCPA violation was one of the crimes that Mr. Boustani is alleged to have conspired to promote through money laundering, as the FCPA violation described in the Indictment fails as a matter of law.

[121]    Adapted from L. Sand, Instruction 50A-12.

coins or currency of the United States or any other country, personal checks, travelers' checks, cashier's checks, bank checks, money orders or investment securities or negotiable instruments in bearer form or otherwise in such a form that title thereto passes on delivery.

If you find that the Government failed to prove, beyond a reasonable doubt that the conspirators agreed that a monetary instrument or funds would be transported or transferred or transmitted from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States, you must find Mr. Boustani not guilty.  If you find that the Government did so prove, you must then consider the second element.

### b.  *Second Element.*

The second element that the Government must prove beyond a reasonable doubt is that the conspirators agreed that the monetary instrument or funds would be transmitted from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States for the purpose of promoting wire fraud or securities fraud.[122]  I have already instructed you regarding the elements of wire fraud and securities fraud.  The Government must prove, beyond a reasonable doubt, that the purpose behind the transfer of the money was to promote wire fraud or securities fraud, not just that the transfer had the effect of promoting wire fraud or securities fraud.[123]  In other words, if

---

[122]      *Id.*

[123]      *United States v. Trejo*, 610 F.3d 308, 314–15 (5th Cir. 2010) (emphasis in original) ([t]he 'specific intent to promote requirement' has been called the 'gravamen' of a § 1956(a)(1)(A)(i) violation.  To prove it, the government must satisfy a stringent *mens rea* requirement.  Essentially, the government must show the transaction at issue was conducted with the intent to promote the carrying on of a specified unlawful activity.  It is not enough to show that a money launderer's actions *resulted* in promoting the carrying on of specified unlawful activity.  Nor may the government rest on proof that the defendant engaged in 'knowing promotion' of the unlawful activity.  Instead, there must be evidence

you find that the funds were transferred for a reason other than to promote wire fraud or securities fraud, you must find Mr. Boustani not guilty on Count Four.  In considering whether the purpose of the transfer was to promote wire fraud or securities fraud, I caution you that it is insufficient to find that the purpose was to promote only a wire fraud conspiracy or a securities fraud conspiracy.  If you determine that the Government proved only that the funds were transferred in order to promote a criminal conspiracy, you must find Mr. Boustani not guilty.

### 2. Method Two: Transfer of Money to Conceal Proceeds of Wire Fraud or Securities Fraud.

In order to prove that the conspirators knew that certain money was the proceeds of wire fraud or securities fraud and agreed to transport, transfer, or transmit that money from the United States or into the United States in order to conceal or disguise its nature, location, source, ownership, or control, which is the second method I discussed, the Government must prove, beyond a reasonable doubt, that the conspirators agreed to commit all elements of that type of money laundering.  I will describe those elements for you now.

#### a. *First Element.*[124]

The first element that the government must prove beyond a reasonable doubt is that the conspirators agreed that a monetary instrument or funds would be transported or

---

of *intentional* promotion.  In other words, the evidence must show that the defendant's conduct not only promoted a specified unlawful activity but that he engaged in it "*with the intent* to further the progress of that activity.") (citations omitted); *see also United States v. Faulkenberry*, 614 F.3d 573, 586 (6th Cir. 2010) (holding, in the context of concealment money laundering, that "the government must prove more than that the transaction is structured to conceal; it must show that the concealment is one of the purposes that drove [the defendant] to engage in the transaction in the first place."); *United States v. Garcia*, 587 F.3d 509, 517 (2d Cir. 2009) (explaining, in the context of concealment money laundering, that the "purpose—not merely the effect—of the transportation [must] be to conceal or disguise a listed attribute.")

[124]     Adapted from L. Sand at Instruction 50A-13.

transferred or transmitted from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States. If you find that the Government failed to prove, beyond a reasonable doubt, that the conspirators agreed that a monetary instrument or funds would be transported or transferred or transmitted from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States, you must find Mr. Boustani not guilty. If you find that the Government did so prove, you must then consider the second element.

b. *Second Element.*[125]

The second element that the Government must prove beyond a reasonable doubt is that the funds transmitted from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States were the proceeds of wire fraud or securities fraud and that the conspirators knew that to be the case. The term "proceeds" means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity. Proceeds can be any kind of property, not just money. However, in order to be considered proceeds of specified unlawful activity, the property has to represent the profits of the underlying crime, not just its gross revenue. In other words, proceeds means net proceeds derived from a crime and not simply all the money that may have been received during the course of a commission of a crime. If a person uses the money derived from a crime to defray the expenses of the same crime, you cannot find that person was using proceeds to do so. Until a person pays the expenses of his or her crime, there are no profits.

---

[125]     Adapted from *Gasperini* Jury Charge at 49-51; Adapted from L. Sand at Instruction 50A-18.

The Government has the burden of proving beyond a reasonable doubt that the funds involved in each of the financial transactions alleged in the indictment constituted the "proceeds" of wire fraud or securities fraud, as opposed to being funds derived from some other source.  If you find that the Government failed to prove, beyond a reasonable doubt, that the funds transferred were proceeds of wire fraud or securities fraud, you must find Mr. Boustani not guilty.  If you find that the Government did prove, beyond a reasonable doubt, that the funds transferred were the proceeds of wire fraud or securities fraud, you must then consider whether the conspirator knew the funds were proceeds from criminal activity.

The Government does not have to prove that the conspirators knew that the funds involved in the transaction represented the proceeds of wire fraud or securities fraud specifically, but the Government does need to prove that the conspirators knew the monies represented the proceeds of illegal activity.  If you find that the Government failed to prove, beyond a reasonable doubt that conspirators knew the monies transferred were proceeds of criminal activity, you must find Mr. Boustani not guilty.  If you find that the Government did so demonstrate, you must then consider the third element.

### c.   *Third Element.*

The third element that the Government must prove beyond a reasonable doubt is that the conspirators agreed that the funds would be transferred from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States, for the purpose of concealing or disguising the nature, location, source, ownership, or control of the funds.  The transaction must have been designed to conceal or disguise these facts.  If the transaction simply had the effect of concealing or disguising these facts, but such concealment was not the purpose of the transaction, you must find Mr. Boustani

not guilty.[126]  However, if you find that the transaction was designed to conceal or disguise the nature, location, source, ownership, or control of the funds, you must then consider whether the conspirators knew that was the case.[127]  If you find they did not know, you must find Mr. Boustani not guilty.[128]

If you find that the conspirators agreed to commit all of the elements of one, or both, of these methods of money laundering, you may find that the Government satisfied the first element Count Four and has proven the existence of the money laundering conspiracy charged in Count Four.  You must then consider the second element of a money laundering conspiracy, which is *mens rea*.

## B. Second Element of Conspiracy to Commit Money Laundering:  *Mens Rea*

If you conclude that the Government has proved beyond a reasonable doubt that the money laundering conspiracy charged in Count Four existed, you must then consider the *second* element of Count Four, which asks whether Mr. Boustani joined that conspiracy and did so with criminal intent.  In order to prove this second element, the Government must prove beyond a reasonable doubt that when Mr. Boustani joined the money laundering conspiracy, if you find that he did so, he did so knowingly and intentionally.

---

[126]    *United States v. Faulkenberry*, 614 F.3d 573, 586 (6th Cir. 2010) (holding, in the context of concealment money laundering, that "the government must prove more than that the transaction is structured to conceal; it must show that the concealment is one of the purposes that drove [the defendant] to engage in the transaction in the first place."); *United States v. Garcia*, 587 F.3d 509, 517 (2d Cir. 2009) (explaining, in the context of concealment money laundering, that the "purpose—not merely the effect—of the transportation [must] be to conceal or disguise a listed attribute.")

[127]    Adapted from *Gasperini* Jury Charge at 49-51.

[128]    Adapted from *Gasperini* Jury Charge at 49-51.

I have previously defined "knowingly" for you and you should apply that definition here.  The term intentionally means to act willfully, not by mistake or accident, and with deliberate purpose.[129]

Thus, if you found that the objective of the money laundering conspiracy was to transfer money from the United States or into the United States in order to promote a wire fraud or a securities fraud, which I have previously described as the "first method" of money laundering, the Government must prove that Mr. Boustani joined the money laundering conspiracy in order to promote wire fraud or securities fraud.  If you find that Mr. Boustani did not join the money laundering conspiracy in order to promote wire fraud or securities fraud, you must find Mr. Boustani not guilty.  I caution you, it is insufficient for you to find that Mr. Boustani's intent was to promote a wire fraud conspiracy or a securities fraud conspiracy.  If you determine that the Government proved only that Mr. Boustani joined the conspiracy in order to promote a criminal conspiracy, you must find Mr. Boustani not guilty of Count Four.

If you found that the objective of the money laundering conspiracy was to transfer the proceeds of wire fraud or securities fraud from the United States or into the United States for the purpose of concealing or disguising the nature, location, source, ownership, or control of those funds, which I have described as the "second method" of money laundering, the Government must prove that Mr. Boustani joined the money laundering conspiracy in order to conceal or disguise the true nature of the funds.  If you find that the Government failed to prove beyond a reasonable doubt that Mr. Boustani joined the money laundering conspiracy for the purpose of concealing the proceeds of criminal activity through transfers to or from the United States, you must find Mr. Boustani not guilty of Count Four.

---

[129]    Adapted from L. Sand at Instruction 50A-14.

To conclude on this second element of money laundering conspiracy, if you find that Mr. Boustani was not a knowing and intentional participant in the money laundering conspiracy, you should find Mr. Boustani not guilty.  On the other hand, if you find that the Government has established beyond a reasonable doubt not only the first element, namely, the existence of the money laundering conspiracy, but also the second element, <u>mens</u> <u>rea</u>, then you may consider whether the Government has established the third element, which I will instruct you about now.

**C. Third Element of Conspiracy to Commit Money Laundering:  Conduct in the United States.**[130]

The third element that the Government must prove beyond a reasonable doubt is that Mr. Boustani initiated, concluded, or participated in initiation or concluding a transaction in the United States.  In other words, if you find that the Government failed to prove that Mr. Boustani himself sent or received funds in the United States, you must find Mr. Boustani not guilty of Count Four.  If you find that the Government did prove that Mr. Boustani initiated, concluded, or participated in initiation or concluding a transaction in the United States, you may then consider the next element, which concerns Mr. Boustani's aim in joining the money laundering conspiracy.

---

[130]    Adapted from 18 U.S.C. §§ 1956(a)(2), 1956(f); *United States v. Al Kassar*, 660 F.3d 108, 119 (2d Cir. 2011) ("In order to apply extraterritorially a federal criminal statute to a defendant consistently with due process, there must be a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair. For non-citizens acting entirely abroad, a jurisdictional nexus exists when the aim of that activity is to cause harm inside the United States or to U.S. citizens or interests.") (internal quotation marks and citations omitted); *Gasperini* Jury Charge at 53-54; *United States v. Hawit*, No. 1:15-CR-00252, 2017 WL 663542 at *8, n.12 (E.D.N.Y. Feb. 17, 2017) ("[W]here, as here, the government seeks to charge a Section 1956(a)(2) money laundering offense against a foreign defendant, the application of the statute is extraterritorial and the charging instrument must include allegations that meet all of the elements of the charged offense under the section [allegedly violated], as well as subsection (f).").

If you find that Mr. Boustani's aim in connection with the money laundering conspiracy was not to cause harm inside the United States or to U.S. citizens or interests, then he may not be convicted of Count Four.  This is so even if you find that the other elements of Count Four are satisfied.

**D.  Venue for Conspiracy to Commit Money Laundering.[131]**

I have explained to you the elements the Government must prove beyond a reasonable doubt as to Count Four.  In addition to these elements of the offense, you must consider whether the Government has proven that venue is appropriate in the Eastern District of New York.  As I explained previously, the Eastern District of New York includes the boroughs of Brooklyn, Queens, and Staten Island, as well as Nassau and Suffolk Counties on Long Island. The Eastern District of New York does not include the borough of Manhattan or any location outside of the Eastern District of New York.

A special venue instruction also applies for Count Four.  The Government must prove venue for money laundering conspiracy in the Eastern District in one of three ways:

First, the Government may prove venue by establishing that the financial or monetary transactions you are considering with respect to Count Four were conducted in the Eastern District.

Second, the Government may prove venue by establishing both that a prosecution for one of the underlying specified unlawful activities could be brought in the Eastern District and that Mr. Boustani participated in transferring the proceeds of that specified unlawful activity to another district where the financial or monetary transaction was conducted.

---

[131]     Adapted from 18 U.S.C. § 1956(i); *Lange* Jury Charge at 43-44; *Nadeem* Jury Charge at 2528-29; *United States v. Saavedra*, 223 F.3d 85, 93 (2d Cir. 2000) (holding "substantial contacts" required between defendant's conduct and venue of prosecution).

Third, the Government may prove venue by establishing that an overt act in furtherance of the money laundering conspiracy took place in the Eastern District.  An overt act is any step, action, or conduct taken to achieve, accomplish, or further the goals of the conspiracy that is undertaken knowingly and willfully by either the Defendant or one of his alleged co-conspirators.

If you find that the Government has failed to prove venue in the Eastern District in one of these three ways, then you must acquit on Count Four.  In addition, the Government may only prosecute the Defendant in the Eastern District if his conduct in connection with the alleged money laundering conspiracy formed substantial contacts with the Eastern District.  If you determine that the Defendant's conduct did not form substantial contacts with the Eastern District, you must acquit on Count Four.

Unlike the other elements of this offense, the Government must prove that venue is proper by a preponderance of the evidence.  A preponderance of the evidence means the greater weight of evidence, both direct and circumstantial.  This means that you should consider the quality and persuasiveness of the Government's evidence, not the quantity of its evidence. Again, I caution you that the preponderance of the evidence standard applies only applies to venue.  The Government must prove every other element of Count Four beyond a reasonable doubt.

<u>**CONCLUSION**</u>

Mr. Boustani respectfully requests that the Court include the foregoing in its

instructions to the jury.  Mr. Boustani also requests the opportunity to submit further instructions

or amend those submitted, as may become appropriate during the course of the trial.


Dated:   New York, New York
             September 25, 2019


**WILLKIE FARR & GALLAGHER LLP**

By: /s/ Michael S. Schachter
Michael S. Schachter
Randall W. Jackson
Casey E. Donnelly
Philip F. DiSanto
787 Seventh Avenue
New York, New York 10019
Phone:  (212) 728-8000
Email:  mschachter@willkie.com

*Attorneys for Defendant Jean Boustani*