# WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue<br>
New York, NY 10019-6099<br>
Tel: 212 728 8000<br>
Fax: 212 728 8111

October 2, 2019

**BY FEDEX AND ECF**

The Honorable William F. Kuntz, II
United States District Court Judge
Eastern District of New York
225 Camden Plaza East
Brooklyn, NY 11201

Re:   *United States v. Jean Boustani, et al. (Case No. 18-cr-681 (S-1) (WFK))*

Dear Judge Kuntz:

  We represent Defendant Jean Boustani in the above-captioned case and respectfully write in opposition to the Government's September 24, 2019 letter motion (the "Gov't's R. 26.1 Motion"), filed at Dkt. 212, in which the Government argued that this Court should be burdened—two weeks before trial—with accurately interpreting seven different Mozambican statutes based solely on a translated copy of those statutes and a declaration from a European judge who has never once adjudicated, prosecuted, or defended a single case in Mozambique, much less a case involving the Mozambican statutes that the Government contends are at issue here.

  In fact, as we describe herein, the Government's arguments with respect to Mozambican law—namely, that Mr. Boustani conspired to engage in money laundering for the purpose of promoting, or concealing the proceeds of, a violation of Mozambican bribery law—should be precluded because the Government has utterly failed in its obligation to provide the Court with

Honorable William F. Kuntz, II
United States District Judge
October 2, 2019
Page 2

reliable, informed authority regarding the relevant Mozambican law. The information that the Government has provided the Court is unreliable, as its "expert," Judge Susano, is completely unqualified to offer expert testimony on these seven Mozambican statutes. Moreover, the Government's information is incorrect and incomplete in significant respects, as we explain below. At a minimum, this Court should not provide the jury with any instructions concerning Mozambican law without first permitting Mr. Boustani to file an affidavit countering Judge Susano's Declaration and holding a hearing, at which Judge Susano should be required to appear, so that Mr. Boustani (and the Court) can cross-examine her.

### A. Judge Susano Is Not a Reliable Expert on Mozambican Anti-Bribery Law.

As the party whose claim depends on foreign law, the Government has the duty to provide the Court with reliable, informed expert testimony regarding the elements of that law. *Dulles v. Katamoto*, 256 F.2d 545, 547 (9th Cir. 1958). Judge Susano did not attend law school in Mozambique; she is not a member of the Mozambican Bar Association; and she has never adjudicated, prosecuted, or defended a case in Mozambique.

In its opposition to Mr. Boustani's motion *in limine, see* Dkt. 197, the Government fails to refute any of these points, nor does it provide a single case over which Judge Susano presided involving the consideration, interpretation, or application of any of the Mozambican laws it contends are at issue here. Commonality of language is insufficient to establish Judge Susano as an expert, as the Supreme Court has long acknowledged. *See Diaz v. Gonzalez*, 261 U.S. 102, 106 (1923) ("to one brought up within the [foreign jurisdiction], varying emphasis, tacit assumptions, unwritten practices, a

Honorable William F. Kuntz, II
United States District Judge
October 2, 2019
Page 3

thousand influences gained only from life, may give to the different parts [of the statute] wholly new values that logic and grammar never could have gotten from the books."). The Government's attempt to highlight Judge Susano's ties to Mozambique is unavailing. While Judge Susano has taught local prosecutors in Maputo, the substance of her courses focused on criminal procedure and had no connection to Mozambique's anti-bribery and anti-corruption laws. *See Bostrom v. Seguros Tepayac S.A.*, 225 F. Supp. 222, 230-31 (N.D. Tex. 1963), *modified on other grounds*, 347 F.2d 168 (5th Cir. 1965) (refusing to accept proffered "expert" on Mexican law where individual was "native of Germany and studied law there" rather than in Mexico, was not licensed to practice law in Mexico, and whose "expertise" appeared to have been derived exclusively from reading the text of the statutes at issue).[1]

The Government's emphasis on the relationship between Mozambique and Portugal also do not qualify Judge Susano as an expert. For example, in its opposition to Mr. Boustani's motion *in limine*, the Government wrote, "The 2015 [Mozambican] Penal Code is also substantially the same as the Portuguese penal code, and judges in Mozambique rely on Portuguese jurisprudence when deciding cases." (Dkt. 197 at 6.) The Government offers ***no*** support for this claim—it has not identified a single Mozambican case in which the interpretation of Mozambican bribery law was premised on Portuguese "jurisprudence." And, as we discuss below, both the Government and the defense are in agreement that the 2015 Mozambican Penal Code does not apply here, so it makes no

---

[1] In its September 20, 2019 opposition, the Government maintains that Judge Susano is a "contributing author" of the e-book *Criminal and Procedural Law of Mozambique*. (ECF No. 197 at 5-6.) However, Judge Susano's own CV identifies her as a "coordinator" of the book. For other publications listed in her C.V., Judge Susano specifically notes if she was an author.

Honorable William F. Kuntz, II
United States District Judge
October 2, 2019
Page 4

difference whether that 2015 Penal Code was based on the Portuguese Penal Code or not. Finally, if it is true that Judge Susano used "Portuguese jurisprudence" to inform her conclusions about Mozambican bribery law, as the Government seems to suggest, the materials she relied upon should have been identified and produced to both the defense and the Court. No such materials were produced.

The Government's effort to conflate Mozambican and Portuguese law also overlooks historical reality. Mozambique has been a sovereign nation for over 40 years, having won its independence from Portugal after a roughly decade-long conflict. It has since enacted its own Constitution, legislative assembly, courts, and laws. As the Government and Judge Susano acknowledge, Mozambique annulled a vestige of its colonial rule, the 1886 Penal Code, and enacted its own criminal code. Mozambique has a professional class of legal practitioners, law professors, and judges. A simple internet search reveals a number of Mozambican attorneys and law firms that the Government could have approached.[2] In all, the Government, with its vast resources and connections, should have secured its expert on Mozambican anti-bribery law long before it even presented this case to a grand jury. The Government has been investigating this case since at least 2017 and presumably had—or should have—considered the question of how Mozambican law applied to the money laundering charges long before seeking the original Indictment, which was returned almost a year ago.

---

[2] For example, Mozambican lawyers and firms are listed on the U.S. Embassy's and the British High Commission's websites. *See* U.S. Embassy in Maputo, *Legal Assistance*, https://mz.usembassy.gov/u-s-citizen-services/attorneys/; British High Commission Maputo, *List of lawyers in Mozambique*, Foreign & Commonwealth Office, https://assets.publishing.service.gov.uk/government/uploads/system/uploads/attachment_data/file/683447/Lawyers_List_2018.pdf (last updated February 7, 2018).

Honorable William F. Kuntz, II
United States District Judge
October 2, 2019
Page 5

Certainly, there has been ample time in the ten months since Mr. Boustani's arrest for the Government to have raised these matters. In any event, for the Government to select a judge from Mozambique's former colonial master as its "expert" on Mozambican law is patronizing, Eurocentric, and, most importantly, legally flawed.

The Government does not—because it cannot—cite a single case in which any judge has been asked to accept, as an "expert" on foreign law, an individual with as little experience as Judge Susano. Because she is obviously unqualified to serve as an "expert" on Mozambican bribery law, the Court should refuse to accept her opinions.

B. **The Government's and Judge Susano's Analysis of Mozambican Law is Flawed.**

The Government's submissions concerning the Mozambican criminal offense that Mr. Boustani allegedly conspired by money laundering to promote, or to conceal the proceeds of, are mystifying and provide entirely insufficient notice to Mr. Boustani about what specific crime he is alleged to have committed. According to the Government, the predicate SUA at issue in Count Four may be any of the following, which we have listed, for clarity sake, in order of enactment:

1) A violation of **Article 321 of the 1886 Penal Code**, a translated copy of which was attached as Ex. C to the Government's R. 26.1 Motion;

2) A violation of **Article 8 of Mozambican Law 7/98**, a translated copy of which was attached as Ex. E to the Government's R. 26.1 Motion;

Honorable William F. Kuntz, II
United States District Judge
October 2, 2019
Page 6

3) A violation of **Article 7 of the 2004 Anti-Corruption Law,** which is codified at Mozambican Law 6/2004, a translated copy of which was attached as Ex. D to the Government's R. 26.1 Motion;

4) A violation of **Article 8 of the 2004 Anti-Corruption Law**;

5) A violation of **Article 9 of the 2004 Anti-Corruption Law**;

6) A violation of **Article 40 of the Public Probity Law,** which is codified at Mozambican Law 16/2012, a translated copy of which was attached as Ex. F to the Government's R. 26.1 Motion;

7) A violation of **Articles 501, 502, 503 and 522 of the 2015 Penal Code** (the "2015 Penal Code Offenses"), translated copies of which were attached as Ex. B to the Government's R. 26.1 Motion.

We do not understand why the Government's submissions suggest that there are seven different "alternatives" for the Mozambican SUA at issue in Count Four. The Government would have been obligated to identify for the Grand Jury exactly what Mozambican offense is at issue in Count Four. Yet, for some reason, the Government's proposed jury instructions and its submissions on this topic suggest that this remains an open question and that the jury can decide for itself what theory of criminality Mr. Boustani was indicted for.[3] For example, the Government is apparently unsure

---

[3] The Government's apparent confusion regarding what violation of Mozambican bribery law the alleged money laundering conspiracy was supposedly established to promote suggests that the Government may not have identified any violation of Mozambican law to the Grand Jury. If the Government failed to do so, the Government may not proceed at trial on a theory that Mr. Boustani

Honorable William F. Kuntz, II
United States District Judge
October 2, 2019
Page 7

whether the conspiracy charged in Count Four was to launder money in connection with a Mozambican criminal violation by Mr. Boustani himself or whether the conspiracy charged in Count Four involved an agreement to launder money in connection with a Mozambican criminal violation by someone else—who that "someone else" is remains unclear. Likewise, the Government has asked the Court to give pages of instructions concerning a 2015 Penal Code that the Government simultaneously *agrees* post-dates the conduct in this case and is thus inapplicable. The Government also seeks instructions on a number of Mozambican offenses that obviously do not qualify as SUAs under the plain text of the money laundering statute because they are misdemeanors, not felonies.

1. ***The Mozambican Laws Cited by the Government and Discussed in Judge Susano's Declaration Are Inapplicable.***

Most, if not all, of the laws that are discussed in Judge Susano's Declaration are inapplicable, and there is no reason for the jury to be instructed on their elements. In its R. 26.1 Motion, the Government concedes that it "anticipates that all of the evidence that will be presented at trial . . . will involve conduct that occurred *prior* to June 29, 2015, and thus the Mozambican laws in place *prior to June 29, 2015 will be the applicable laws* . . .". (Dkt. 212, at 1, n.1) Thus, there is no

---

conspired to commit money laundering in order to promote, or conceal the proceeds of, a violation of Mozambican bribery law. If the Government *did* identify the Mozambican legal violation for the Grand Jury, that is the SUA that should be at issue at Mr. Boustani's trial—not some *other* violation of Mozambican law that the Government has since decided it might be able to prove more easily. Mr. Boustani hereby requests the relevant portions of the Grand Jury's minutes in order to confirm that Mr. Boustani is being tried on the same terms for which he was indicted and not a different theory of criminality that was never presented to the Grand Jury. At a minimum, the Court should review the Grand Jury minutes *in camera* to ensure that Mr. Boustani's rights under the grand jury clause of the Fifth Amendment are not being violated.

Honorable William F. Kuntz, II
United States District Judge
October 2, 2019
Page 8

reason to instruct the jury regarding the 2015 Penal Code Offenses (*i.e.*, No. 7 on the above list), because these laws did not become effective until June 29, 2015 and are therefore inapplicable.

Second, a violation of Article 8 or Article 9 of the Anti-Corruption Law (*i.e.*, No. 4 and No. 5 on the above list) cannot constitute an SUA because such violations are misdemeanors. Where an underlying foreign offense qualifies as a misdemeanor, it may not serve as a predicate SUA for purposes of the money laundering statute. *See* 18 U.S.C. § 1956(c)(1) (identifying an SUA as an activity that "constitutes a *felony* under State, Federal, or foreign law, regardless of whether or not such activity is specified in paragraph (7)") (emphasis added). The penalties for violating Article 8 and Article 9 are "a prison sentence of up to one year and a fine of up to two months" and thus are classified as misdemeanors, not felonies. (Dkt. 212-4 (Gov. Ex. D) at 5-6; *see also* 18 U.S.C. § 3559(a)(6) (identifying an offense of "one year or less but more than six months" as a Class A misdemeanor). Because neither a violation of Article 8 nor a violation of Article 9 constitutes an SUA, there is no basis for instructing the jury regarding the elements of these laws.

Third, although the Government glosses over this point, in fact, there are *three* ways to violate Article 8 of Mozambican Law 7/98 (*i.e.*, No. 2 on the above list) and *two* of them constitute misdemeanors that cannot possibly serve as a predicate SUA for Count Four. According to the Government's translation, *see* Dkt 212-5 (Gov. Ex. E) at 4, Article 8 prohibits "Ministers" and "Deputy Ministers" of Mozambique from "receiving a kickback or gift, personally or through an intermediary…[in order to] perform an act of their duties… [I]f this act is unfair and committed, [the Minister] shall be punished with a maximum prison sentence of two to eight years, or alternatively, with long-term temporary imprisonment…[but] if it is a fair act that [the Minister] is required to

Honorable William F. Kuntz, II
United States District Judge
October 2, 2019
Page 9

perform, then [the Minister] will be suspended for up to one year…[and] [i]f the purpose of the corruption was for the [Minister] to abstain from fulfilling his duties, the penalty shall be dismissal or suspension [from his position] for one to three years and a corresponding fine." (Dkt 212-5 (Gov. Ex. E) at 4 (referring to Article 318 of the 1886 Penal Code, which is found at Dkt. 212-3 (Gov. Ex. C), at 2-3.) In other words, when a Minister or Deputy Minister of Mozambique accepts a kickback in order to perform an act that was part of his duties to begin with, or which merely caused him to abstain from completing one of his duties, such conduct constitutes a misdemeanor and cannot serve as an SUA for purposes of Count Four. The jury should be instructed regarding only those violations of Article 8 that can actually constitute an SUA, that is, when the Minister has accepted a kickback in order to perform an act that is contradictory to the duties of his office.

Finally, the Government mischaracterizes the Public Probity Law (No. 6 on the above list). As Judge Susano implicitly admits, there is no criminal sanction for violating the Public Probity law—it is a wholly civil statute. The Government, however, has asked the Court to instruct the jury that a violation of Article 40 of the Public Probity Law constitutes an SUA for purposes of Count Four. (*See* Dkt. 157 (Gov't Proposed Inst.) at 56.) That is obviously wrong, as the money laundering statute does not permit the Government to charge a civil violation—*i.e.,* an act that is not a crime at all—as a predicate SUA for a money laundering charge. See 18 U.S.C. § 1956(c)(1) (identifying an SUA as an activity that "constitutes a *felony* under State, Federal, or foreign law, regardless of whether or not such activity is specified in paragraph (7)") (emphasis added).

Honorable William F. Kuntz, II
United States District Judge
October 2, 2019
Page 10

Thus, at best, the only Mozambican legal violations that could even arguably apply to Count Four are:

1)   A violation of Article 321 of the 1886 Penal Code (*i.e.*, No. 1 on the above list) which prohibits, according to the Government's translation, "any person" from "corrupt[ing] by kickbacks, gifts, offers or promises" a civil servant, in exchange for "requesting injustice, buying votes, or seeking to obtain or ensure the result of any claims." (Dkt. 212-3 (Gov. Ex. C) at 3.)

2)   A <u>felony</u> violation of Article 8 of Mozambican Law 7/98, which, as discussed above, applies when "Ministers" and/or "Deputy Ministers" of Mozambique "receiv[e] a kickback or gift, personally or through an intermediary" in exchange for performing an act that is contradictory to the duties of their office. (Dkt 212-5 (Gov. Ex. E) at 4 (referring to Article 318 of the 1886 Penal Code, which is found at Dkt. 212-3 (Gov. Ex. C), at 2-3).)

3)   A violation of Article 7 of the 2004 Anti-Corruption Law (*i.e.,* No. 3 on the above list), which prohibits, according to the Government's translation, any "public official or employee" who has been "appointed…by law, by election or by the determination of competent authority" to his/her public office, from "request[ing] or receiv[ing] money…or any economic advantage that is not due to them, to perform…an act implicating [the] violation of the duties of their office." (Dkt. 212-4 (Gov. Ex. D) at 5.)

In fact, however, even these three offenses fail under the money laundering statute's definition of an SUA. The Government has failed to bring to the Court's attention the fact that none of

Honorable William F. Kuntz, II
United States District Judge
October 2, 2019
Page 11

the offenses discussed in Judge Susano's Declaration—including the three violations just described—constitute offenses against the Republic of Mozambique. Crimes against the Mozambican state are expressly listed in a chapter within the Penal Code, and the anti-bribery offenses are not included. *Cf.* 18 U.S.C. § 1956(c)(7)(B)(iv) (defining "specified unlawful activity" in part as an "*offense against a foreign nation* involving [ . . .] bribery of a public official, or the misappropriation, theft or embezzlement of public funds by or for the benefit of a public official") (emphasis added).

> 2. *Judge Susano's Description of Mozambican Law Is Incomplete and Therefore Inaccurate.*

Judge Susano's lack of experience with Mozambican bribery law is further revealed by the many critical elements of Mozambican law that are left out of her analysis. Most obviously, Judge Susano has failed to explain that the Government holds the burden of proving, beyond a reasonable doubt, *first*, the particular duties or responsibilities that were assigned to the Mozambican Government Official who allegedly accepted the bribe; *second*, that the Government Official accepted the bribe as a *quid pro quo* in exchange for agreeing to perform an act that the Government Official believed violated his particular responsibilities; and *third*, that the act performed by the Government official did, in fact, violate those particular responsibilities.[4] A payment to a government official, on its own, does not

---

[4] Indeed, Judge Susano and the Government have failed to provide the Court—and apparently intend to hide from the jury—the actual facts concerning the legality of the Mozambican Infrastructure Projects and the associated loans. The Government must prove that bribes were accepted by Mozambican Government officials as a *quid pro quo* for pushing through Projects that were unlawful under Mozambican law. In fact, in 2013, Proindicus applied, in writing, to the Bank of Mozambique, which is the central bank of the country, for permission to take out the loans from Credit Suisse and VTB. The Bank of Mozambique, in writing, responded that such loans were approved and that Proindicus was permitted to borrow the monies. That same approval process took place in connection with the loans

Honorable William F. Kuntz, II
United States District Judge
October 2, 2019
Page 12

violate Mozambique's anti-bribery laws. And, Judge Susano's analysis omits the fact that a prosecutor must provide direct evidence to establish a defendant's guilt; inferences are not permitted. In order to sustain a bribery charge, the prosecutor must present direct evidence that a payment was made in exchange for a particular action. Inference that corruption occurred is not permitted.

Judge Susano also neglects to describe what *is* legal in Mozambique. For example, Judge Susano's analysis and the Government's requested instructions omit the fact that Mozambican public officials are permitted to own, or invest in, private businesses so long as there is no conflict of interest (*i.e.*, an official overseeing Mozambique's agriculture could not simultaneously own or invest in a cashew farm). Mozambican law does not prohibit a public official from requesting that a foreign company make a particular investment, and there are no prohibitions on foreign companies investing in local Mozambican businesses. Likewise:

- There are no limitations on payments to lobbyists or political contributions.

- While there is no requirement that a foreign company enter into a joint venture with a local Mozambican business, it is a *de facto* practice.

---

taken out by both EMATUM and MAM; the Government has *produced* the written permissions from the Bank of Mozambique and so is obviously aware of these facts. In light of these approvals, the debts incurred by Proindicus, EMATUM, and MAM were approved and recognized by the Assembly of the Republic (the Mozambican Parliament). EMATUM was included in the state budget via resolution in 2014, and Proindicus and MAM were included via resolutions in 2015.

Honorable William F. Kuntz, II
United States District Judge
October 2, 2019
Page 13

- For some sectors of the Mozambican economy, a foreign company must partner with a state entity. As an example, within the hydrocarbons sector, a foreign corporation must partner with ENH, Mozambique's national oil company.

- There are no prohibitions on foreign companies utilizing local agents; such a practice is customary.

- There are no limitations on how much a local agent can be paid. It is common in Mozambique for agents to receive a success fee, which is often a percentage of the contract price.

These errors and omissions matter. According to annual reports published by the Mozambican Attorney General's Office, since 2006 *no* foreign national has been convicted on corruption charges by a Mozambican court, because Mozambique's bribery law is, in fact, quite narrow. Moreover, these errors and omissions in analyzing Mozambican law further demonstrate the need to preclude Judge Susano from testifying as an expert.

C. **The Government Failed to Provide Reasonable Written Notice to the Court**

The plain language of FRCP 26.1 is clear: "A party intending to raise an issue of foreign law must provide the *court* and all parties with *reasonable written notice*." Here, the Government filed its Requests to Charge on September 9, 2019, but it did not provide the Court with the underlying Mozambican statutes referenced in the Requests to Charge until September 24, roughly two weeks later. The Government has had more than a year to prepare. It obviously understood that elements of Mozambican law would be at issue. The misconduct in Mozambique alleged in the

Honorable William F. Kuntz, II
United States District Judge
October 2, 2019
Page 14

Superseding Indictment forms the core of the Government's case. And, the Government repeatedly stressed the complex nature of the multi-year, multi-national conspiracy that allegedly occurred. Yet, despite all of this, the Government, on effectively the eve of trial, has just provided the Court with written notice of the elements of foreign law at issue. For the Government to now request that the Court make a determination regarding the applicability of Mozambican law the week before trial hardly qualifies as "reasonable written notice" under FRCP 26.1.

### D. What Mozambican Law Proscribes is a Question for the Jury

Although federal courts have held that the applicability of foreign law is a question of law, the draftsmen of FRCP 26.1 "carefully sidestep[ed] the issue of who [judge or jury] is to decide the question." *United States v. McClain*, 593 F.2d 658, 669 (5th Cir. 1979); *see also* Benjamin Kaplan, *Continuing work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (II)*, 81 HARV. L. REV. 591, 617 (1968) (noting that the "question [of] whether the jury is . . . to find out what the precept [of the foreign law]" entails is "ultimately a constitutional question which the rule-makers did not attempt to decide."). As *United States v. McClain* acknowledged, "Rule 26.1 does not itself mandate that the judge rather than the jury decide all questions of foreign law . . . But it does not necessarily following that putting the matter [the applicability of foreign law] to the jury is reversible error. There is no automatic prejudice to the substantial rights of a defendant inherent in letting the jury decide the question on the basis of expert testimony." 593 F.2d at 669-70. Effectively, FRCP 26.1 does not prohibit the jury from hearing witnesses on a foreign nation's law and then determining, based on its assessment of the witnesses' credibility and testimony, which interpretation

Honorable William F. Kuntz, II
United States District Judge
October 2, 2019
Page 15

of that foreign country's law should apply. The question of what Mozambican law proscribes is, under constitutional principles, one for the jury to decide.

### E. Conclusion

As indicated by the errors and omissions in the analysis of Mozambican law described above, the Government has failed to provide reliable, informed expert testimony on Mozambican anti-bribery law. This Court should, therefore, preclude the designation of Judge Susano as an expert. If, however, the Court is inclined to agree with Judge Susano's analysis of Mozambique's anti-bribery law and the relevant statutes, Mr. Boustani requests leave to file an affidavit countering Judge Susano's Declaration. Finally, to the extent that the Court believes that this issue constitutes a question of law, Mr. Boustani requests for a hearing to be scheduled.


Respectfully Submitted,

/s/ Michael S. Schachter

Michael S. Schachter
Randall W. Jackson

cc: (by ECF)

AUSA Mark E. Bini
AUSA Hiral Mehta