```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
                v.                                          :
                                                            :
JEAN BOUSTANI,                                              :
                                                            :
                        Defendant.                          :
                                                            :
------------------------------------------------------------x
```

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ OCT 03 2019 ★

BROOKLYN OFFICE

**DECISION & ORDER**
18-CR-681-1 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

Jean Boustani ("Defendant") is charged with Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. §§ 1349 and 3552 et seq. (Count One), Conspiracy to Commit Securities Fraud in violation of 18 U.S.C. §§ 371 and 3352 et seq. (Count Two), and Conspiracy to Commit Money Laundering in violation of 18 U.S.C. §§ 1956(h) and 3552 et seq. (Count Four). *See* Superseding Indictment ("S-1"), ECF No. 137. Before the Court is Defendant's motion to dismiss the indictment,[1] ECF No. 97 ("Def. Mot. to Dismiss"), and motion for a bill of particulars, ECF No. 85 ("Def. Mot. for Bill of Particulars"). For the reasons set forth below, both motions are **DENIED**.

## BACKGROUND

The Court assumes the parties' familiarity with the factual background set forth in the Superseding Indictment, the allegations of which are assumed true solely for the purposes of this motion.[2] Briefly, the Superseding Indictment alleges Defendant was the central organizing figure of a $2 billion fraud, bribery, and money laundering scheme. *See generally* S-1. Defendant and co-conspirators created the scheme to obtain business and inflated profits for Privinvest Group ("Privinvest"), a family of companies based in the United Arab Emirates for

---

[1] Defendant's motion initially addressed the indictment filed on December 19, 2018. On August 16, 2019, the Government filed a superseding indictment, adding additional factual allegations and overt acts. In supplemental briefing, Defendant stated the arguments against the original indictment apply in equal force to the superseding indictment. *See* ECF No. 146 ("Def. Supp. Mem. of for Mot. to Dismiss").

[2] On a motion to dismiss an indictment pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, the court must accept all factual allegations in the indictment as true and may not address the "sufficiency of the evidence" at that time. *United States v. Alfonso*, 143 F.3d 772, 776-77 (2d Cir. 1998); *see also United States v. Binday*, 908 F. Supp. 2d 485, 490 (S.D.N.Y. 2012) (McMahon, J.) (noting "the Court accepts as true all allegations in the indictment" for purposes of a 12(b) motion alleging insufficiency of the indictment).

1

which Defendant was the lead salesman, and to enrich themselves, Mozambican officials, and others. *Id.* ¶¶ 9-10, 24-27. To enable and promote this scheme, Defendant and co-conspirators created three Mozambican state-owned entities—Proindicus S.A. ("Proindicus"), Empresa Mocambicana de Atum, S.A. ("EMATUM"), and Mozambique Asset Management ("MAM")—whose ostensible purpose was to borrow the funds for maritime projects in Mozambique. *Id.* ¶¶ 2, 25. Two investment banks, "Investment Bank 1" and "Investment Bank 2," arranged the loans and sold them to investors worldwide, and Defendant and co-conspirators diverted the loan proceeds to pay at least $200 million in bribes and kickbacks to themselves and others. *Id.* ¶¶ 14, 18, 25. In perpetuating the fraud, Defendant and co-conspirators extensively relied upon U.S. bank accounts and the U.S. financial system by, among other things, seeking and securing investors physically present in the United States, causing sellers physically present in the United States to sell investments in the loans, and sending and receiving U.S.–dollar denominated payments through U.S.–based wires. *Id.* ¶ 27.

On June 17, 2019, Defendant moved to dismiss the original indictment, arguing the three conspiracy counts against him were impermissibly extraterritorial. *See* ECF Nos. 87-88. After the Second Circuit issued a decision regarding the indictment's wire fraud conspiracy count, Defendant filed an amended motion to dismiss. *See* Def. Mot. to Dismiss; ECF No. 98 ("Def. Mem. for Mot. to Dismiss"). On June 17, 2019, Defendant moved for a bill of particulars claiming the allegations set forth in the initial Indictment failed to provide sufficient detail to allow him to defend himself adequately from the charges against him, principally with respect to alleged fraudulent misrepresentations he or his purported co-conspirators made in connection with the 2016 EMATUM Eurobond Exchange. *See* Def. Mot. for a Bill of Particulars; ECF No. 86 ("Def. Mem. for Bill of Particulars"). The Government filed memoranda in opposition to

both motions on July 22, 2019. *See* ECF No. 113 ("Gov't Opp. to Def. Mot. to Dismiss"); ECF No. 112 ("Gov't Opp. to Bill of Particulars"). The Court held oral argument on the motions on August 21, 2019 and permitted the parties to file supplemental briefing.

## DISCUSSION

The Court addresses Defendant's motion to dismiss the Superseding Indictment and the motion for a bill of particulars in turn.

### I. Motion to Dismiss the Superseding Indictment

In support of his motion to dismiss the Superseding Indictment, Defendant makes three arguments: (1) Counts One, Two, and Four fail to allege conduct within the proper reach of the relevant statutes; (2) Count One is impermissibly duplicitous and sweeps multiple, time-barred conspiracies into a single count; and (3) Count Four violates Defendant's due process rights and suffers from overbreadth and vagueness. *See generally* Def. Mem. for Mot. to Dismiss. In response, the Government characterizes Defendant's motion as "a thinly-veiled effort to make a Rule 29 motion as to the sufficiency of the government's evidence," which is inappropriate at the pre-trial phase. *See* Gov't Opp. to Def. Mot. to Dismiss at 1. In the Government's view, the Superseding Indictment withstands dismissal because it sufficiently alleges the elements of the offenses charged and adequately informs Defendant of those charges. *Id.* at 1-2. The Court addresses each Count in turn.

#### A. Legal Standards

Granting a motion to dismiss an indictment is an "extraordinary remedy, reserved only for extremely limited circumstances implicating fundamental rights." *United States v. De la Paya*, 268 F.3d 157, 165 (2d Cir. 2001) (internal quotation marks and citation omitted); *see also United States v. Kerik*, 615 F. Supp. 2d 256, 262 (S.D.N.Y. 2009) (Robinson, J.) ("A defendant

seeking to dismiss counts under Rule 12 must satisfy a high standard." (internal quotation marks and citation omitted)). Under Rule 7(c)(1) of the Federal Rules of Criminal Procedure, an indictment need only contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged." "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). Generally, an indictment tracking the language of the statute is sufficient to meet these notice requirements. *United States v. Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008); *see also United States v. Middendorf*, 18-CR-36, 2018 WL 3443117, at *3 (S.D.N.Y. July 17, 2018) (Oetken, J.).

The Supreme Court has articulated a two-step framework for addressing challenges relating to the extraterritorial reach of federal statutes. First, a court must determine whether the statute, viewed in context, clearly indicates it applies extraterritorially. *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2101 (2016) (citing *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659 (2013); *Morrison v. Nat'l Aus. Bank Ltd.*, 561 U.S. 247 (2010)). Second, if the statute does not apply extraterritorially, a court must determine "whether the case involves a domestic application of the statute" by looking to the statute's "focus." *Id.* Courts have applied this test to statutes governing wire fraud, securities fraud, and money laundering. *See, e.g., Morrison*, 561 U.S. at 267-70 (securities fraud); *Pasquantino v. United States*, 544 U.S. 349, 371 (2005) (wire fraud); *United States v. All Assets Held at Bank Julius Baer & Co., Ltd., Guernsey Branch, account number 121128, in the Name of Pavlo Lazarenko ("All Assets")*, 251 F. Supp. 3d 82, 92-98 (D.D.C. 2017) (money laundering).

### B. Count One: Wire Fraud Conspiracy

Defendant argues this Court should (1) dismiss Count One because it fails to allege a domestic application of wire fraud conspiracy, (2) require the Government decouple Count One's allegations into four distinct counts because it is impermissibly duplicitous. *See* Def. Mem. for Mot. to Dismiss at 25-35. If the Government breaks down Count One into further counts, Defendant will move to dismiss any counts charging conduct it believes to be time-barred conduct. *See* ECF No. 194 ("Def. Supp. Reply for Mot. to Dismiss") at 20. The Government opposes, arguing Count One sufficiently alleges a wire fraud conspiracy using U.S. wires and properly charges a single conspiracy within the relevant five-year statute of limitation period. The Court agrees with the Government. *See* Gov't Opp. to Def. Mot. to Dismiss at 20-29.

First, Count One properly alleges a domestic application of wire fraud conspiracy. A charge of wire fraud conspiracy has a reach that extends no further than the wire fraud alleged, and the wire fraud statute[3] is limited to domestic conduct. *See European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141 (2d Cir. 2014) ("[M]ail fraud, wire fraud and Travel Act" statutes "do not apply extraterritorially."), *aff'd in part, rev'd in part on other grounds*, 136 S. Ct. 2090 (2016). But where conduct relevant to the "focus" of the charged statute "occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." *RJR Nabisco*, 136 S. Ct. at 2101. The Second Circuit has observed the wire fraud statute's "focus is upon the misuse of the wires," stressing

---

[3] The substantive count of wire fraud under Section 1343 requires three elements: "(1) a scheme to defraud victims (2) by obtaining their money or property (3) furthered by the use of interstate mail or wires." *United States v. McGinn*, 787 F.3d 116, 122 (2d Cir. 2015). A charge for wire fraud conspiracy under Section 1349 requires an agreement to engage in the fraudulent scheme. *See United States v. McFadden*, 689 F. App'x 76, 79 (2d Cir. 2017) (summary order).

the statute expressly forbids "the use of the [U.S.] wires in the scheme to defraud." *United States v. Trapilo*, 130 F.3d 547, 552-53 (2d Cir. 1997) (internal quotation marks and citation omitted). For purposes of determining extraterritoriality, the use of wires must be "essential, rather than merely incidental, to the scheme to defraud." *Bascunan v. Elsaca*, 927 F.3d 108, 123 (2d Cir. 2019). Thus, "a claim predicated on mail or wire fraud involves sufficient domestic conduct when (1) the defendant used domestic mail or wires in furtherance of a scheme to defraud, and (2) the use of the mail or wires was a core component of the scheme to defraud." *Id.*

As such, an indictment charging wire fraud or wire fraud conspiracy must allege the use of U.S.–based wires in furtherance of the fraudulent scheme and such use was a core component of the scheme to constitute a proper domestic application of the wire fraud statute.[4] *See United States v. Kim*, 246 F.3d 186, 190-91 (2d Cir. 2011) (affirming wire fraud conspiracy and wire fraud convictions where defendant in Croatia personally committed no acts nor sent wires to the United States but approved fraudulent invoices transmitted and paired from a New York bank account, making use of U.S.–based wires reasonably foreseeable); *compare with United States v. Prevezon Holdings, Inc.*, 122 F. Supp. 3d 57, 71-72 (S.D.N.Y. 2015) (Griesa, J.) (holding wire fraud charge premised on a single wire transfer "was not sufficiently central to the overall fraud scheme to convert this foreign scheme into a domestic one" and overcome the presumption against the statute's extraterritorial application).

---

[4] This Court, like other courts in this circuit, analyzes a challenge to conspiracy to commit wire fraud based on extraterritorial grounds in the same manner as a challenge to the substantive wire fraud count. *See Kim*, 246 F.3d at 191 n.2 (affirming wire fraud conspiracy and wire fraud convictions challenged on jurisdictional grounds and noting "[b]ecause there was jurisdiction over the wire fraud counts against Kim, there was also jurisdiction over the conspiracy counts"). Because the "focus" of the wire fraud statute is the use of U.S wires in furtherance of the scheme to defraud, the "focus" of wire fraud conspiracy—for purposes of determining jurisdiction—is also the use of U.S.–based wires in furtherance of the scheme to defraud. Thus, the Superseding Indictment need not allege the agreement took place on U.S. soil to survive dismissal as Defendant contends. Indeed, Defendant has failed to cite a single case holding the "focus" of the wire fraud conspiracy is the agreement.

Here, Count One, in charging wire fraud conspiracy, tracks the language of the conspiracy statute, 18 U.S.C. § 1349, and the underlying substantive wire fraud statute, 18 U.S.C. § 1343. Specifically, Count One alleges approximately between January of 2011 and December of 2018, Defendant and others "did knowingly and intentionally conspire to devise a scheme and artifice to defraud . . . investors and potential investors in Proindicus, MAM, and the EMATUM securities," and in furtherance of "such scheme and artifice," transmitted or caused to be transmitted "by means of wire communication . . . writings, signs, signals, pictures and sounds." *Compare* S-1 ¶ 96, *with* 18 U.S.C. §§ 1343, 1349.[5] The Superseding Indictment also sets forth factual allegations describing the use of U.S. wires as a core component of the alleged scheme. *See* S-1 ¶¶ 52, 71-72, 82, 88 (alleging Defendant and co-conspirators used U.S.–based wires to make materially false statements to investors and potential investors in the United States to induce their investment in the Proindicus, EMATUM, and MAM loans, and in connection with the EMATUM LPN to Eurobond exchange); *id.* ¶¶ 51-52, 56-57, 71, 76, 79, 81-82 (alleging numerous wires transmitted funds through the United States as part of the fraud scheme); *id.* ¶¶ 57, 76, 79, 93-94 (alleging Defendant directed U.S.–dollar denominated bribe and kickback payments made through U.S.–dollar denominated transactions through U.S. correspondent accounts). Unlike in *Prevezon Holdings*, in which the wire fraud charge found to be

---

[5] 18 U.S.C. § 1343 states in relevant part:

Whoever, having devised . . . any scheme . . . to defraud, or for obtaining money or property by means of false or fraudulent pretenses . . . transmits or causes to be transmitted by means of wire . . . communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be [guilty of a crime.]"

18 U.S.C. § 1349 states: "Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

7

extraterritorial was premised on a single U.S.–based wire transfer, here, the Superseding Indictment has provided a fulsome description of a fraud scheme involving numerous wires soliciting investment and moving funds into and out of the United States. Because Count One "track[s] the language of the statute[s] charged[,] state[s] the time and place (in approximate terms) of the alleged crime," and alleges the use of U.S.–based wires was crucial in developing the scheme to defraud, the Court finds the Superseding Indictment properly states a claim for wire fraud conspiracy. *Yannotti*, 541 F.3d at 127.

Second, Count One is not duplicitous, as Defendant contends, but appropriately charges a single, ongoing conspiracy from the period of 2011 to 2018. "An indictment is impermissibly duplicitous where: 1) it combines two or more distinct crimes into one count in contravention of [Federal Rule of Criminal Procedure] 8(a)'s requirement that there be 'a separate count for each offense,' and 2) the defendant is prejudiced thereby." *United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001) (quoting *United States v. Murray*, 618 F.2d 892, 896 (2d Cir. 1980)). Duplicity inherently exposes a defendant to a number of dangers: (1) a general guilty verdict will not reveal if the jury found the defendant guilty of one crime and not the other, or guilty of both; (2) a guilty verdict will not indicate whether the jury found the defendant guilty without having reached an unanimous verdict on the commission of a particular offense; (3) the defendant will not have adequate notice of the charges against him; (4) the duplicitous indictment will interfere with appropriate sentencing; and (5) the defendant may be unable to protect against double jeopardy in a subsequent prosecution. *See Murray*, 618 F.2d at 896; *see also United States v. Helmsley*, 941 F.2d 71, 91 (2d Cir. 1991).

A count is not duplicitous if it charges a single crime committed by more than one means. *See* Fed. R. Crim. P. 7(c). In the Second Circuit, the allegation in a single count of a conspiracy

8

to commit several crimes is not duplicitous because "the conspiracy is the crime and that is one, however diverse its objects." *United States v. Aracri*, 968 F.2d 1522, 1528 (2d Cir. 1992) (internal quotation marks, alteration, and citation omitted); *see also United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989) (noting "acts that could be charged as separate counts" may be charged "in a single count if those acts could be characterized as part of a single continuing scheme"). Ultimately, the question of whether the charged conspiracy is a single conspiracy or constitutes multiple conspiracies "is a question of fact for a properly instructed jury." *United States v. Berger*, 224 F.3d 107, 114 (2d Cir. 2000) (internal quotation marks and citation omitted).

If a court finds an indictment is duplicitous, "courts can employ alternatives that are less drastic than dismissal," including reformulation at the pre-trial stage. *See United States v. Barret*, 10-CR-809, 2011 WL 6780901, at *2, 5 (E.D.N.Y. Nov. 27, 2011) (Matsumoto, J.). And the Government may elect to proceed on one of the charged crimes and redact the indictment accordingly, or the court may remove the potential prejudice through a curative jury instruction. *See Helmsley*, 941 F.2d at 91.

Here, Count One appropriately charges Defendant with participation in a single, ongoing conspiracy to defraud investors and potential investors in Proindicus, EMATUM, and MAM through the use of U.S. wires. As alleged in the Superseding Indictment, Defendant was at the center of the conspiracy and helped orchestrate it, coordinating with bankers responsible for obtaining financing for the conspiracy (co-conspirators Pearse, Singh, and Subeva) and Mozambican officials involved in the approval of the projects and financing in Mozambique (co-defendants Chang and Do Rosario). Although there may have been changes in operative personnel, and a variety of means of carrying out the conspiracy, the overarching scheme was a

9

unified one: a core group of defendants was continuously involved for the purposes of defrauding investors to enrich themselves and others by making similar misrepresentations on investment products. The Court finds the Count One is not duplicitous and will not require the Government to decouple Count One into four distinct counts.[6]

### C. Count Two: Securities Fraud Conspiracy

Defendant argues dismissal of Count Two is required because the Superseding Indictment fails to allege a domestic application of the securities fraud statute or in the alternative, a permissible extraterritorial application of the statute under Section 929(b) of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank"), Pub. L. No. 111-203, 124 Stat. 1376. Def. Mem. for Mot. to Dismiss at 18-25. The Government opposes. Gov't Opp. to Mot. to Dismiss at 13-20. The Court agrees with the Government and finds Count Two has sufficiently alleged a domestic securities fraud conspiracy to withstand dismissal.

Like the conspiracy statute charged in Count One, Count Two has a reach that extends no further than that of the substantive offense alleged as the object of the conspiracy. *See United States v. Hoskins*, 902 F.3d 69, 96-97 (2d Cir. 2018). Section 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act") and its implementing regulation, Rule 10b-5, apply to domestic transactions—not to extraterritorial conduct. *United States v. Vilar*, 729 F.3d 62, 67

---

[6] Defendant clarified he has not moved to dismiss Count One on limitations grounds. *See* Def. Supp. Reply for Mot. to Dismiss at 18. As such, the Court does not address any timeliness arguments in the instant motion. Indeed, a pre-trial motion to dismiss based on statute of limitations grounds is premature if the indictment is facially sufficient, and the defendant's argument in favor of dismissal requires a determination of factual issues, as is the case here. *See United States v. Kogan*, 283 F. Supp. 3d 127, 134-35 (S.D.N.Y. 2017) (Sweet, J.); *United States v. FNU LNU*, 06-CR-846, 2007 WL 1149261, at *2 (S.D.N.Y. Apr. 12, 2007) (Batts, J.). An assertion of the statute of limitations is an affirmative defense to be raised at trial. *Kogan*, 283 F. Supp. 3d at 135; *see also United States v. Levine*, 249 F. Supp. 3d 732, 738 (S.D.N.Y. 2017) ("[T]he Government need not have alleged in the Indictment facts that would defeat an affirmative defense based on the statute of limitations.") (Rakoff, J.).

(2d Cir. 2013). Securities transactions involving securities listed on foreign exchanges may be considered "domestic" under § 10(b) if either irrevocable liability is incurred or title passes within the United States. *See Absolute Activist Value Master Fund Ltd. v. Ficeto ("Absolute Activist")*, 677 F.3d 60, 68 (2d Cir. 2012); *see also Vilar*, 729 F.3d at 76 ("[A] domestic transaction has occurred when the purchaser has incurred irrevocable liability within the United States to take and pay for a security, or the seller has incurred irrevocable liability within the United States to deliver a security." (internal quotation marks, alterations, emphasis, and citation omitted)). As the Second Circuit explained, "territoriality under *Morrison* concerns where, physically, the purchaser or seller committed him or herself, not where, as a matter of law, a contract is said to have been executed." *Id.* at 77 n.11 (citing *Morrison*, 561 U.S. at 268 (noting "it is the foreign location of the transaction that establishes (or reflects the presumption of) the Act's inapplicability")). In *Parkcentral Global HUB Ltd. v. Porsche Automobile Holdings SE ("Park Central")*, the Second Circuit qualified the scope of the *Absolute Activist* decision, holding the presence of a "domestic transaction" in a security, through a necessary element of a section 10(b) claim, is not necessarily sufficient to make the invocation of section 10(b) appropriately domestic. 763 F.3d 198, 215 (2d Cir. 2014). "In certain cases, the facts may be so predominantly foreign as to render the application of 10(b) impermissibly extraterritorial." *Giunta v. Dingman*, 893 F.3d 73, 82 (2d Cir. 2018). The Court cautioned, however, it does not "purport to proffer a test that will reliably determine when a particular invocation of §10(b) will be deemed appropriately domestic or impermissibly extraterritorial." *Parkcentral*, 763 F.3d at 217. Rather, "courts must carefully make their way with careful attention to the facts of each case and to combinations of fact." *Id.*

Here, Count Two tracks the language of the relevant conspiracy statute, 18 U.S.C. § 371, and the implementing regulation of the substantive securities fraud statute, 17 C.F.R. 240.10b-5, and alleges irrevocable liability to purchase and sell foreign securities occurred on U.S. soil. Count Two alleges approximately between January of 2013 and December of 2018, Defendant and others "did knowingly and willfully conspire to use and employ one or more manipulative and deceptive devices and contrivances contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5" and committed or caused to be committed several overt acts in furtherance of the conspiracy. *Compare* S-1 ¶¶ 98-99, *with* 18 U.S.C. § 371, *and* 17 C.F.R. 240.10b-5.[7] The Superseding Indictment clearly identifies the securities at issue—the EMATUM loan participation notes ("LPNs") and the EMATUM Eurobond for which they were exchanged (the "Exchange") (collectively, the "EMATUM Securities")—and details the false statements made in connection with the sale of those securities. In addition, the Superseding Indictment alleges investors in the United States incurred "irrevocable liability" in the United States by purchasing EMATUM LPNs while physically present in the United States, *see* S-1 ¶¶ 24, 27, 73, and has set forth facts that go beyond the requirements of Rule 7(c).[8] For example, the Superseding

---

[7] 18 U.S.C. § 371 states in pertinent part: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States . . . for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both."

Rule 10b-5 provides: "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud . . . in connection with the purchase or sale of any security." 17 C.F.R. 240.10b-5.

[8] The Government stated it is proceeding under a theory of irrevocable liability rather than transfer of title. *See* ECF No. 166 ("Gov't Supp. Opp. to Mot. to Dismiss") at 18. To the extent Defendant argues Count Two fails because title passed outside the United States, those arguments are unavailing.

Indictment alleges, *inter alia*, Defendant and co-conspirators caused materially false statements to be made to investors and potential investors located in the United States to induce their investment in connection with the securities at issue. *Id.* ¶¶ 27, 72-73, 88-90. Based upon false statements in the loan agreements and offering documents, co-conspirators caused sellers in the United States to sell the investments, and investors in the United States irrevocably committed themselves to invest in more than $100 million in the EMATUM and Proindicus loans. *Id.* ¶¶ 24, 27. The Superseding Indictment further alleges United States investors purchased significant interests in the EMATUM Securities, *id.* ¶¶ 85-89, co-defendants and co-conspirators traveled to New York City to promote the Exchange to investors, *id.* ¶¶ 89-90, 99(v)-(w), and investors consented to the Exchange while on United States soil, *id.* ¶ 90. Because the Superseding Indictment alleges purchasers and sellers committed themselves to purchasing and selling, respectively, the EMATUM Securities while in the United States—such that irrevocable liability occurred on U.S. soil, *id.* ¶ 73—the Government has properly charged a domestic securities transaction.[9] Moreover, the Superseding Indictment has alleged substantial domestic contacts to withstand dismissal. Ultimately, Count Two makes clear the nature of the criminal conduct, the time span, and the location where the conduct occurred. "Since Rule 7(c) requires no more," this Court declines to dismiss Count Two. *Yannotti*, 541 F.3d at 127.

### D. Count Four: Money Laundering Conspiracy

Defendant argues Count Four is defective because it: (1) improperly charges an extraterritorial money laundering conspiracy; (2) violates due process. *See* Def. Mem. for Mot.

---

[9] Because the Court finds Defendant has properly alleged a domestic application of securities fraud conspiracy, this Court need not address whether Count Two charges a proper extraterritorial application of the statute under Dodd-Frank.

to Dismiss at 35-39; Def. Supp. Reply for Mot. to Dismiss at 20-22.  Both arguments are without merit.

First, the Court finds Count Four properly charges conspiracy to violate the money laundering statute under 18 U.S.C. § 1956(a)(2), often referred to as the international money laundering statute.  The money laundering statute provides for "extraterritorial jurisdiction over the conduct prohibited by [§ 1956]," reaching money laundering conduct involving non–U.S. citizens where "the conduct occurs in part in the United States[] and . . . the transaction or series of related transactions involves funds or monetary instruments of a value exceeding $10,000." 18 U.S.C. § 1956(f); *see also All Assets*, 251 F. Supp. 3d at 92 (noting Section 1956 "explicitly provide[s] for extraterritorial application, with certain limitations").  A wire transfer that begins or ends in the United States constitutes such "conduct," even where a U.S. financial institution acts as a pass through or "correspondent account." *See All Assets*, 251 F. Supp. 3d at 95-96; *see also, e.g., United States v. Approximately $25,829.681.80 in Funds (Plus Interest) In The Court Registry Investment System*, 98-CV-2682, 1999 WL 1080370, at *3-4 (S.D.N.Y. Nov. 30, 1999) (McKenna, J.); *cf Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 600 (S.D.N.Y. 2014) (Kaplan, J.) (holding money laundering overcomes the presumption against extraterritoriality because the statute "by its terms applies to money sent to and from the United States").  To invoke properly the extraterritorial reach of § 1956(f), an indictment need only allege participation in either sending funds or receiving funds in the United States.

Here, Count Four, like Counts One and Two, tracks the language of the relevant conspiracy statute, 18 U.S.C. § 1956(h), and the underlying money laundering statute, 18 U.S.C. § 1956(a), and has properly alleged an extraterritorial application of the statute.  Specifically, Count Four alleges between approximately January of 2013 and December of 2018, Defendant

and others "did knowingly and intentionally conspire to transport, transmit and transfer monetary instruments and funds" into, out of, or through the United States with the intent to carry on the "specified unlawful activities" ("SUAs") of violations of the Foreign Corrupt Practices Act ("FCPA"), violations of Mozambique law, wire fraud, and securities fraud, "knowing that the monetary instruments and funds involved . . . represented the proceeds of some form of unlawful activity, and . . . was designed in whole and in part to conceal and disguise" the proceeds of the SUAs. S-1 ¶ 104. *Compare with* 18 U.S.C. §§ 1956(a) and 1956(h).[10] The Superseding Indictment sets forth ample factual allegations alleging U.S. individuals and entities purchased interests in the fraudulent Proindicus, EMATUM, and MAM loans using wires originating in the United States to locations outside the United States. *See* S-1 ¶¶ 51, 71, 82 (alleging Defendant and co-conspirators initiated and concluded transactions in the United States through U.S.–based wires). It further alleges Defendant personally directed the payment of bribe transactions to co-conspirators in U.S. dollars through the United States. *See id.* ¶¶ 75-79, 91-93 (describing Defendant directing bribe payments to co-conspirators in U.S. dollars through the United States). These allegations describe the transmission of monetary instruments and funds into, out of, or through the territory of the United States—precisely the type of conduct Congress focused on

---

[10] The international money laundering statute, 18 U.S.C. § 1956(a)(2), states:

Whoever transports, transmits, or transfers, . . . a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States—(A) with the intent to promote the carrying on of specified unlawful activity; or (B) knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part—(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . . shall be [guilty of a crime].

18 U.S.C. § 1956(h) for money laundering conspiracy states: "Any person who conspires to commit any offense defined in this section . . . shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."

prohibiting when enacting the money laundering provisions with which Defendant is charged. *See, e.g.*, *United States v. Bodmer*, 342 F. Supp. 2d 176, 191 (S.D.N.Y. 2004) (Scheindlin, J.) (finding § 1956(a)(2) "clearly penalizes the transportation of monetary instruments in promotion of unlawful activity, not the underlying unlawful activity" (emphasis omitted)). Because Count Four alleges Defendant and others conspired to execute prohibited transmissions into or out of the United States, Count Four meets the Second Circuit's minimal criminal pleading requirements. *See United States v. Flaherty*, 295 F.3d 182, 198 (2d Cir. 2002) ("[A]n indictment need only track the language of the statute and, if necessary to apprise the defendant of the nature of the accusations against him, . . . state time and place in approximate terms." (internal quotation marks and citation omitted)).

Finally, the Court finds Defendant's due process arguments are without merit. The extraterritorial application of the money laundering statute is not unreasonable because "Congress expressly commanded such an application." *United States v. Hawit*, 15-CR-252, 2017 WL 663542, at *9 (E.D.N.Y. Feb. 17, 2017) (Chen, J.); *see also United States v. Al Kassar*, 680 F.3d 109, 118 (2d Cir. 2011) (application of statutes, including money laundering, with explicitly extraterritoriality provisions did not violate due process where scheme threatened U.S. citizens.) Count Four is neither overbroad nor vague. To the contrary, it clearly charges Defendant with conspiracy to move funds to commit and to promote four distinct crimes: violation of the FCPA, offenses against a foreign nation involving the bribery of a public official in violation of Mozambican law, wire fraud, and securities fraud. S-1 ¶ 104. To the extent Defendant argues the Superseding Indictment violates due process because it fails to explain "what [Defendant] did to 'promote' a violation of [those laws.]," that argument is unavailing. *See* Def. Supp. Reply for Mot. to Dismiss at 21. As previously noted, an indictment need only apprise the defendant of the

nature of the criminal conduct, the time span, and the location where the conduct occurred. Count Four meets those requirements. Accordingly, the Court declines to dismiss Count Four on due process grounds.

\* \* \*

The Court finds Defendant's arguments fail to overcome the high standard for dismissing an indictment. Although Defendant contends each of the counts charged constitutes an impermissible application of federal law to extraterritorial conduct, Defendant has failed to cite a single case dismissing a criminal indictment based on territoriality grounds. The Court declines to do so in this case. The motion to dismiss the indictment is denied.

## II.     Motion for a Bill of Particulars

Defendant asks this Court to order the Government to produce a bill of particulars regarding the misrepresentations the Government alleges he or his co-conspirators made in connection with the 2016 Exchange. Def. Mem. for Bill of Particulars at 1. Specifically, Defendant asks the Court to impose the following requirements:

> [T]he Government should be required to file a bill of particulars identifying each of the false statements, if any, that are contained in the "[E]xchange documents," as well as the location of those false statements, since the Indictment's generic reference to unspecified "[E]xchange documents" is of limited utility. The Government should also be required to explain why it believes the representations in the "[E]xchange documents" are false or misleading, so that Mr. Boustani is not confronted at trial with a theory of criminality previously unknown to him. To the extent the Government's theory is that the representations contained in the "[E]xchange documents" are true, but that additional disclosure was required, the Government should be ordered to identify the additional information that it contends was required to be disclosed, along with the specific disclosure rule or duty that it contends was violated. In addition, the Government should be required to identify statements made by Defendant Do Rosario at the March 16, 2016 meeting that the Government is contending were "false or misleading" and should also identify the source of that information, since no transcript of that meeting has been produced. The Government should also be required to explain why it believes Defendant Do Rosario's statements were either "false" or "misleading" so that Mr.

>Boustani is not confronted for the first time at trial with a theory of criminality previously unknown to him.

*Id.* at 3-4. Defendant argues this information is necessary to his defense because: (1) he "cannot defend himself against the Government's fraud conspiracy charges without knowing what gave rise to any disclosure duty the Government alleges he has violated"; and (2) he cannot defend himself against his alleged co-conspirator's purported fraudulent statements or omissions without knowing what those statements or omissions are. ECF No. 123 ("Def. Reply for Bill of Particulars") at 1.

The Government, on the other hand, argues: (1) it has provided sufficient information to allow Defendant to defend against the charges; and (2) Defendant's motion is "nothing more than a veiled attempt to receive 'a preview of the Government's evidence or legal theories.'" Gov't Opp. to Bill of Particulars at 9-10 (quoting *United States v. Sattar*, 314 F. Supp. 2d 279, 318 (S.D.N.Y. 2004) (Koeltl, J.)). The Court agrees.

### A. Legal Standard

Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to move for a bill of particulars to provide him with additional information about the details of the charges against him. *See United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). Such necessary facts enable a defendant to prepare for trial, prevent surprise, and "'interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.'" *United States v. Shkreli*, 15-CR-637, 2016 WL 8711065, at *4 (E.D.N.Y. Dec. 16, 2016) (Matsumoto, J.) (quoting *Bortnovsky*, 820 F.2d at 574).

The decision to grant or deny a motion for a bill of particulars rests in the sound discretion of the trial court. *Bortnovsky*, 820 F.2d at 574. A bill of particulars is "required only where the charges of the indictment are so general that they do not advise the defendant of the

18

specific acts of which he is accused." *United States v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987) (Brieant, J.), *aff'd,* 875 F.2d 857 (2d Cir. 1989) (mem.). It is not required, however, where the defendant has already been given adequate notice of the charges against him, whether in the indictment, through discovery, or some other form. *United States v. Pimentel*, 99-CR-1104, 2001 WL 185053, at *4 (E.D.N.Y. Jan. 22, 2001) (Johnson, J.); *see also Bortnovsky*, 820 F.2d at 574. "The ultimate test in determining whether a bill of particulars is appropriate is whether the information is necessary, not whether it is helpful to the defendant." *United States v. Rivera*, 09-CR-619, 2011 WL 1429125, at *8 (E.D.N.Y. Apr. 13, 2011) (Feuerstein, J.) (internal quotation marks and citation omitted). Thus, "the defendant bears the burden of showing 'the information sought is necessary,' and that he will be prejudiced without it." *Shkreli*, 2016 WL 8711065, at *4 (quoting *United States v. Fruchter*, 104 F. Supp. 2d 289, 312 (S.D.N.Y. 2000) (Batts, J.)).

### B. Analysis

The Government has elicited ample information about the charges Defendant faces to allow Defendant to consider a plea of double jeopardy, to avoid unfair surprise at trial, and to permit Defendant to prepare his defense. The charges against Defendant are set forth in significant detail throughout both the original 47-page speaking Indictment and the 49-page Superseding Indictment. The Government has further supplemented the Superseding Indictment with extensive discovery, its memorandum in opposition to the instant motion, *see* Gov't Opp. to Bill of Particulars at 1-7, and its statements at oral argument. These materials fully apprise Defendant—who is represented by experienced counsel—of the nature of the charges against him, including the alleged misstatements and misrepresentations in the 2016 Exchange documents and the New York meetings. Nothing further is required in this case.

Ultimately, Defendant's motion is nothing more than a fishing expedition to determine the means and methods by which the Government will prove its case. Indeed, at oral argument, defense counsel conceded Defendant seeks legal theories in connection with his motion. *See* Tr. at 85:9–88:14. This is improper: a defendant may not seek a bill of particulars merely to flush out the Government's legal theories or methods of proof in advance of trial. *See Pimentel*, 2001 WL 185053, at *4 (collecting cases). Nor is it proper for a defendant use a bill of particulars as an investigative tool or pre-trial discovery device. *See id.* Defendant is not entitled to the "evidentiary detail" he seeks through his motion, *see United States v. Bonventre*, 646 F. App'x 73, 79 (2d Cir. 2016) (summary order), and Defendant has not met his burden of demonstrating the information he seeks is necessary to his defense and he would be prejudiced without it. This is not a case in which the charges in the indictment are "so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004). Accordingly, Defendant's motion for a bill of particulars is denied.

## CONCLUSION

For the reasons stated herein, the Court denies the motion to dismiss the indictment (ECF No. 97) and the motion for a bill of particulars (ECF No. 85) in their entirety.

**SO ORDERED.**

s/WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge

Dated: October 3, 2019
       Brooklyn, New York