UNITED STATES DISTRICT COURT
EASTERN DISTIRCT OF NEW YORK
-------------------------------------------------------X
                                                        :
UNITED STATES OF AMERICA,                               :
                                                        :
      v.                                              :     No. 18-CR-681 (WFK)
                                                        :
JEAN BOUSTANI,                                          :     ECF Case
                                                        :
      Defendant                                       :     **MEMORANDUM IN SUPPORT OF**
                                                        :     **MOTION TO QUASH RULE 17**
                                                        :     **SUBPOENA**
                                                        :
-------------------------------------------------------X

      NWI Management LP respectfully seeks to quash defendant Jean Boustani's (the "defendant") Federal Rule of Criminal Procedure ("Rule") Rule 17(c) subpoena dated September 25, 2019, which was served on counsel for NWI on October 1, 2019. *See* Exhibit A. Because all the relevant documents the defendant seeks likely have already been produced to the defendant by the government, the defendant should be compelled to show that the documents sought under the attached Rule 17(c) subpoena are not otherwise procurable by the exercise of due diligence. The defendant's request appears to be a "fishing expedition" designed to unreasonably expand the scope of discovery, burden a victim and unnecessarily strain NWI's resources if it were forced to comply with the rather broad terms of the attached subpoena. In addition, NWI is a victim, and although defendant Boustani previously sought leave to subpoena records from another victim, namely, Ice Canyon LLC, *see* Doc. No. *91*, the defendant did not seek such court approval this time around. For the reasons set forth below, the Court should quash defendant's Rule 17(c) subpoena.

**FACTS**

On December 19, 2018, a grand jury in the Eastern District of New York issued an indictment (the "Indictment") alleging that the defendant and his co-conspirators engaged in a fraud, bribery, and money laundering scheme to enrich themselves. As alleged in the Indictment, the defendant was the lead salesman and negotiator for Privinvest Group ("Privinvest"), the contractor that was to provide the equipment and services for a series of government-sponsored maritime projects in Mozambique that were funded by loans. The investors in those loans, including NWI, were located in the United States and elsewhere, were told that the loan proceeds would be used exclusively to fund the maritime projects. Instead, the defendant and his co-conspirators diverted a significant portion of the loan proceeds to enrich themselves and others through the payment of at least $200 million in bribes and kickbacks to themselves, Mozambican officials, and others. For these actions, the Indictment charges the defendant with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, conspiracy to commit securities fraud in violation of 18 U.S.C. § 371, and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h).

NWI is a global investment management firm located in New York, New York. NWI invested in debt instruments related to loans to a Mozambique state-owned enterprise for the purpose of carrying out one of two of the maritime projects,Empresa Moçambicana de Atum, S.A. ("EMATUM"), formed in mid-2013 by the defendant and his co-conspirators to purportedly create a tuna fleet to engage in tuna fishing. Unknown to NWI, another state-owned enterprise was known as Proindicus S.A. ("Proindicus") had been formed in early 2013 by the defendant and his co-conspirators purportedly to perform coastal surveillance.

On September 19, 2017, a grand jury in the Eastern District of New York issued a subpoena to NWI and others[1] (the "NWI GJ Subpoena") for all materials related in any way to Proindicus, EMATUM, and a third Mozambique state-owned enterprise, known as Mozambique Asset Management ("MAM"), formed in 2014 by the defendant and his co-conspirators to purportedly build and maintain shipyards. Specifically, the NWI GJ Subpoena sought:

1. All documents related in any way to ProIndicus, EMATUM, or MAM, including all documents related in any way to any loan, Loan Participation Note, bond, guarantee, derivative, insurance, or any other transaction concerning those entities.

2. Documents sufficient to track any trading activity or any profits or losses related in any way to any loan, Loan Participation Note, bond, guarantee, derivative, insurance, or any other transaction concerning the Republic of Mozambique or one of its agencies.

3. All documents related to the Republic of Mozambique or one of its agencies, including all documents related to any loan, Loan Participation Note, bond, guarantee, derivative, insurance, or any other transaction concerning those entities.

4. Documents sufficient to track any trading activity or any profits or losses related to any loan, Loan Participation Note, bond, guarantee, derivative, insurance, or any other transaction concerning the Republic of Mozambique or one of its agencies.

5. Documents sufficient to identify the Credit Suisse, BNP Paribus, Palomar, Privinvest, TMF Trustee, and VTB employees who communicated in any way with your members on any loan, Loan Participation Note, bond, guarantee, derivative, insurance, or any other transaction concerning EMATUM, ProIndicus, or MAM.

6. Documents sufficient to identify the Credit Suisse, BNP Paribus, Palomar, Privinvest, TMF Trustee, and VTB employees who communicated in any way with your members on any loan, Loan Participation Note, bond, guarantee, derivative, insurance, or any other transaction concerning the Republic of Mozambique or one of its agencies.

---

[1] The United States addressed September 25, 2017 subpoena to the "Global Group of Mozambique Bondholders" or "GGBH" which basically consisted of any holders of Loan Participation Notes in Mozambique EMATUM Finance 2020 B.V. or Eurobonds bondholders who are members of or associate with the "Global Group of Mozambique Bondholders," including Franklin Templeton Inc., Greylock Capital Management LLC, NWI Management LP, Mangart Capital Advisors SA, Pharo Management LLC, and others, all victims of the crimes for which the defendant and others have been indicted.

NWI produced materials in response to the NWI GJ Subpoena and all said documents are in possession of the United States and, in all likelihood, have already been produced by the Government to the defendant pursuant to Rule 16 of the Federal Rules of Criminal Procedure[2].

**LAW**

Rule 17(c) governs the issuance of subpoenas for the production of documentary evidence at trial and provides, in relevant part, that:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. . . . the court may quash or modify the subpoena if compliance would be unreasonable or oppressive. Fed. R. Crim. Pro. R.17(c)(1) and (2)

In addition, Rule 17(c)(3) specifically states:

> After a complaint, indictment, or information is filed, a subpoena *requiring the production of personal or confidential information about a victim may be served on a third party only by court order.* Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object. *Emphasis supplied.*

The Supreme Court's decision in *United States v. Nixon*, 418 U.S. 683 (1974), governs the use of Rule 17(c) subpoenas.[3] In *Nixon*, the Court instructed that Rule 17(c) subpoenas were "not intended to provide a means of discovery for criminal cases." *Id.* at 698. As such, in order to seek pre-trial production of materials via a Rule 17(c) subpoena, the party issuing a subpoena must show:

---

[2] Only the United States and counsel for the defendant know what was disclosed pursuant to Rule 16, but, in the context of this motion, the defendant has the burden to show why additional discovery of NWI is warranted.

[3] The Court should reject any argument that the more lenient standard set forth in *United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008) applies here. Multiple courts have held that Tucker is not binding authority. *See United States v. Ashburn¸* No. 11-cr-0303 (NGG), 2015 WL 1033063, at *2 (E.D.N.Y. Mar. 6, 2015) ("Tucker is not binding authority."); *See also United States v. Rivera*, No. 13-cr-149 (KAM), 2015 WL 1540517, at *4 (E.D.N.Y. Apr. 7, 2015) ("[T]his court does not apply the *Tucker* standard in deciding [a Rule 17] application"); *United States v. Khan*, No. 06-cr-255 (DLI), 2009 WL 152582, at *2 (E.D.N.Y. Jan. 20, 2009) (Rejecting *Tucker* and *United States v. Nachamie,* 91 F.Supp.2d 552 (S.D.N.Y. 2000) as standards and explaining that "[t]his court declines to break from long-standing precedent in this circuit, which holds that all subpoenas must comply with the Nixon standard."). However, even under *Tucker*, the defendant's speculative request is unduly burdensome and should be denied. *See Rivera*, 2015 WL 1540517 at *4 ("[E]ven under the T*ucker* standard, [the defendant's] request should be denied, because it is based on speculation of his counsel, rather than an articulable suspicion.").

> That the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.' *Id.* at 699-700.

To carry this burden, the moving party must "clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Id.* at 700. The Court may quash the subpoena if it is "unreasonable or oppressive" or the moving party has not satisfied the threshold for issuance. Id. at 698-99 (citing Rule 17(c)(2)). The party issuing a Rule 17 subpoena must carry the "burden of proving relevance and admissibility" of the documents sought, that the documents sought are for "a specific purpose and not as a mere expansion of discovery," and that the "documents sought are not otherwise procurable by the exercise of due diligence." *United States v. RW Prof'l Leasing Servs. Corp.,* 228 F.R.D. 158, 162-164 (E.D.N.Y. 2005). Where information sought is already in possession of the government, it is "readily obtained in the usual manner" and the moving party cannot meet its burden to show that the documents are not otherwise procurable by the exercise of due diligence. *Id. at 164; see also United States v. Brown*, No. 2:14-MJ-7258, 2015 WL 8375184 at *2 (D.N.J. Dec. 8, 2015) (items obtainable from the government through discovery are "otherwise procurable from the Government through due diligence"). In such circumstances, a Rule 17 subpoena is "unreasonable and unnecessary" and should be denied. See *RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. at 164 ("Since the information sought is apparently in the possession of the Government, it should therefore be readily obtained in the usual manner. This request is unreasonable and unnecessary.").

In addition, because NWI is a victim[4], and the attached subpoena is so broad in nature that it necessarily seeks "the production of personal or confidential information about a victim." Fed. R. Crim. P. 17(c)(3). Hence, because NWI is a victim, the issuance of the defendants Rule 17 subpoena to NWI did not follow the procedures set forth in Rule 17(c)(3) and it should be quashed for that reason too. *See United States v. Nix*, 251 F.Supp.3d 555, 560-61 (W.D.N.Y. 2017) (Rule 17 subpoenas issued to victims should only issue upon a court order). *See also United States v. Pedraza,* No. 3:17-cr-00114 (VAB), 2018 WL 6697992 at * 1 (D.Conn. Dec. 20, 2018)("A movant must obtain a court order to serve a subpoena on a third party for production of personal or confidential information about an alleged victim. FED. R. CRIM. P. 17(c)(3).").

**ARGUMENT**

The Court should quash the defendant's September 25, 2019 Rule 17 subpoena to NWI because the subpoena does not meet the standards of Rule 17(c) and *Nixon.* The defendant seeks eleven broad categories of documents from NWI, including all documents and communications concerning investments in Proindicus and EMATUM and all documents and communications concerning the country of Mozambique. The materials the defendant seeks are otherwise procurable in advance of trial by the exercise of due diligence. Any relevant and admissible materials sought by defendant's Rule 17(c) subpoena were already called for by the NWI GJ Subpoena and the government, most likely, has already produced these materials to the defendant. Thus, the Court should deny the subpoena request as unreasonable and unnecessary. *See id.*

As discussed, the NWI GJ Subpoena basically covered all of the categories of documents the defendant seeks through his Rule 17(c) subpoena. In response to the grand jury subpoena, NWI

---

[4] Because of the corrupt and fraudulent acts alleged against the defendant and others in this criminal matter, bond holders, like NWI, lost millions of dollars on the investment vehicles associated with the alleged malfeasance of the defendant and his co-conspirators. *See* Criminal allegations in Doc. Nos. 1 and 137.

produced documents to the government, which the government, in turn, likely produced to the defendant. In other words, the defendant has procured or can procure the materials he seeks through the exercise of due diligence and should have had those materials in advance of trial. As such, he cannot meet *Nixon's* standards for the issuance of a Rule 17(c) subpoena. *Nixon,* 418 U.S. at 699-700. Any argument that NWI's production to the government was "limited" because (1) there may be few documents reflecting NWI's due diligence process and internal deliberations; and (2) too much time passed between certain internal communications, is besides the point. The defendant likely is in possession of any relevant NWI communications, which include internal communications outlining deliberations related to NWI's investment in bonds that related to EMATUM[5]. If the defendant claims, without any basis, that normal gaps in work communications are actually omissions in NWI's production and that this will now be produced by the current Rule 17(c) subpoena is entirely without merit. Any unsupported speculation that there should be more or different NWI materials cannot meet *Nixon's* requirement that Rule 17(c) subpoenas seek relevant, admissible, and specific materials. *Nixon*, 418 U.S. at 700. The defendant cannot point to any specific additional relevant and admissible NWI materials that may exist, but instead will merely speculate that other materials may be available and will attempt to fish for them. In other words, speculative requests amount to nothing more than a "fishing expedition," which is ironic, as this case involves the corrupt and fraudulent financing of a tuna fleet for Mozambique that was never properly completed. Such fishing licenses are expressly prohibited under Rule 17(c). *See Rivera*, 2015 WL 1540517 at *4 (holding that defendant's "speculative requests constitute the type of 'fishing expedition[s]' which are expressly prohibited under Rule 17").

---

[5] NWI did not knowingly invest in the loans made to Proindicus and MAM, but, rather, only knowingly invested in the original EMATUM bonds.

The defendant may argue that the Rule 17 subpoena in part may establish that certain documents do not exist. However, the existence or lack thereof of such communications should be evident from the materials already in the defendant's possession, as communications with Privinvest employees—a category that includes the defendant—should have been included in the materials sought by the NWI GJ Subpoena. Moreover, to the extent the defendant may seek such materials as impeachment evidence, such materials are not "evidentiary and relevant" and thus would not be a proper basis for a Rule 17(c) subpoena. *See Khan*, 2009 WL 152582, at *4 ("Impeachment evidence fails the relevance requirement of *Nixon*."); *United States v. Cherry*, 876 F. Supp. 547, 553 (S.D.N.Y. 1995) ("[D]ocuments are not evidentiary for Rule 17(c) purposes if their use is limited to impeachment.").

The Rule 17 subpoena is also "unreasonable or oppressive" as it seeks so much information that, if NWI were to respond in full, it would be overly burdensome to NWI. NWI has less than 25 employees most of whom are serving the needs of their investors by making complex investment decisions virtually every minute of the day. NWI cannot ask several key employees to divert their sole attention to sifting through haystacks that have no pins in them. Nor can NWI be expected to spend tens of thousands of dollars on outside auditors. NWI has been victimized once by the defendant and his cohorts. That should be enough.

Finally, undersigned counsel scanned the docket and finds no order by this honorable court permitting the defendant to issue a Rule 17 subpoena to victim NWI. This is curious, as the defendant previously did seek such permission vis-a-vis and other victim, namely, Ice Canyon LLC. *See* Doc. No. 91. In addition, the defendant has spilled much ink and argument, rejected by this court, that there are no victims in this criminal case. *See* Doc. No. 230. Not only were the People of Mozambique victims, because the defendant and his co-conspirators diverted a

significant portion of the loan proceeds to enrich themselves and others through the payment of at least $200 million in bribes and kickbacks to themselves, Mozambican officials, and others, rather than building what was called for, they are not the only victims. Investors in the underlying government bonds, like NWI, also lost significant amounts of money. These losses occurred when the coupon payments on the underlying government bonds held by NWI and others were not paid in a timely manner, entirely due to the malfeasance of the defendant and his co-conspirators. This resulted in "creative financing," using funds from new bonds to pay off the coupons on old bond, which almost caused a total government bond default, which, naturally, significantly increased the risks associated with the relevant government bonds NWI and others held and, hence, devalued them. The broad requests made in the Rule 17 implicate victim NWI's "personal and confidential" information. Thus, the defendant should have asked this court's permission to issue the Rule 17 subpoena. The defendant did not seek such judicial approval, the Rule 17 subpoena should be quashed for that reason as well.

**CONCLUSION**

For the reasons set forth above, the NWI respectfully submits that the Court should quash defendant's Rule 17(c) subpoena to NWI dated September 25, 2019, attached hereto as Exhibit A.

Dated: October 10, 2019                             Respectfully submitted,

**BAKER DE KLUIVER PLLC**

_____/s/_____
Addy J. "Jack" de Kluiver
LA Bar #20163 and DC Bar #1046349
20 F Street NW, Seventh Floor
Washington, D.C., 20001
jackdekluiver@bakerdekluiver.com
(202) 873-4008

*ATTORNEY FOR INTERESED PARTY*