**Exhibit B**

# WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

October 10, 2019

**BY EMAIL**

| | |
|---|---|
| Mark E. Bini | Katherine Nielsen |
| Hiral D. Mehta | Criminal Division |
| Assistant United States Attorneys | United States Department of Justice |
| United States Attorney's Office | 1400 New York Ave., NW |
| Eastern District of New York | Bond Building |
| 271 Cadman Plaza East | Washington, DC 20005 |
| Brooklyn, New York 11201 | |

Margaret A. Moeser
Money Laundering and Asset Recovery Section
United States Department of Justice
1400 New York Ave.
10th Floor
Washington, DC 20530

Re:   *United States v. Jean Boustani et al. (Case No. 18-681 (S-1) (WFK))*

Dear Counsel:

      We write in response to your letter dated October 7, 2019, which purported to identify approximately 2,000 trial exhibits that the Government intends to move into evidence during the first week of its case in chief. We wish to begin by explaining that we entered into our agreement in good faith and we endeavored to provide you, earlier this week, a good faith list of the non-impeachment documents that we are likely to offer during the first week. We had expected the Government to also engage in this exercise in good faith and we hoped to be able to have a constructive dialog with you, so that resolvable disputes, misunderstandings and necessary clarifications did not end up getting briefed to Judge Kuntz—who already has a significant burden in terms of the complex issues in this case—one business day before the start of trial.

      Contrary, we think, to the spirit of our agreement, the Government has dumped approximately 2,000 exhibits on us and indicated that all would be offered in the first week, the vast majority without even a witness on the stand. It is not conceivable that the Government could address

U.S. Department of Justice
October 10, 2019
Page 2

2000 exhibits, many of which are hundreds or even thousands of pages long, in the first week of trial. We have barely had time to even put eyes on the exhibits on the Government's list, much less had enough time to thoughtfully consider relevance, foundational, and 403 issues. This is especially unfortunate because we think there is plenty of room for discussion and if the Government was proceeding in a more reasonable fashion, we might very well have only a small number of objections to brief for the Court. Instead, it seems to us that the Government has rendered it virtually impossible for us to constructively engage in the anticipated dialogue and we wish to make clear that we do not waive our ability to object, at trial, to the admission of any of the documents on the Government's Week One list. Nevertheless, and under an extraordinarily tight time frame, we are endeavoring—in the spirit of good faith—to provide you with our general reasoning concerning our initial objections to various exhibits on Government Attachment A and Government Attachment B.

We also wish to make clear that we will object to any effort by the Government to move the "Week One" exhibits into evidence in "batches" rather than individually and would appreciate it if the Government could confirm that it will not attempt to admit exhibits in this manner during Week One. If the Government will not provide such a confirmation, we will need to brief this issue for the Court. To be clear, we are open to discussing such an approach with you in circumstances where the relevance of the exhibits has already been established and we have no 403/hearsay objections to the admission of the documents—in such instances, moving exhibits into evidence in batches may be more efficient. However, it is wholly inappropriate for the Government to attempt to move exhibits into evidence in "batches" in Week One of the trial, when the Government will have not have established a predicate foundation for why any of these documents are even relevant.

I. **Initial Defense Objections to Government Exhibits Identified on Attachment A**

You characterized the 679 exhibits listed in Attachment A to your letter as "the exhibits that the government will seek to admit through" Andrew Pearse and Jonathan Polonitza. It appears that 154 of these exhibits were not previously included on the Government's various exhibit lists, but were produced as stamped exhibits.[1] While identifying 679 documents—many of which were not previously identified on the Government's exhibit lists and some of which were only produced two days ago—as "week one" exhibits is inconsistent with the spirit of our "good faith" agreement, Dkt. 223, we have undertaken our best efforts to identify objections to these exhibits, as listed in Defense Attachment A.

We object to GX-1602, GX-1812, GX-1815 because the Government has not laid a foundation for or demonstrated the relevance of these exhibits, which also constitute hearsay. GX-1602, for example, appear to be copies of Michael Carney's credit card and Wells Fargo bank statements. Michael Carney has not been identified as a week one witness, nor has the Government provided any explanation for the relevance of his financial records. GX-1812 and GX-1815 appear to be financial records related to Proindicus, S.A. The Government must lay a foundation for and establish the relevance of these hearsay financial records before they may be admitted into evidence.

---

[1] The list of the 154 stamped trial exhibits missing from the Government's exhibit lists is attached as Exhibit 1 to this letter.

U.S. Department of Justice
October 10, 2019
Page 3

We also object to the admission of Government trial exhibits marked GX-2007 through GX-6040-A because the Government is required to lay a sufficient foundation for and establish the relevance of each document before moving it into evidence. GX-2007 through GX-6040-A appear to be emails and attachments to emails, many of which contain multiple layers of hearsay, statements by individuals other than Mr. Pearse and Mr. Boustani, irrelevant information, and information that should be excluded pursuant to Fed. R. Evid. 403. GX-2507, for example, is an email from a Citigroup employee to a group of VTB employees concerning the processing of a payment instruction. Neither Mr. Pearse nor Mr. Boustani is copied on the email chain. Even if the Government has some basis to lay a foundation for this hearsay email chain, it has not established that it is remotely relevant to its case against Mr. Boustani. GX-2085, GX-2086, GX-2124, GX-2292, and GX-2309 are examples of long email chains containing multiple layers of hearsay—while such documents may be admissible for certain purposes, their admissibility hangs on the purpose for which the Government seeks to admit them into evidence. We cannot make such determinations until the Government seeks to admit such exhibits at trial. GX-3138, GX-3139, GX-3140, and GX-3141 are examples of emails concerning Palomar Natural Resources, which contain irrelevant information that is highly likely to confuse the jury and should therefore be excluded pursuant to Fed. R. Evid. 403. GX-2259-D appears to be a SWIFT record for which the Government must lay a foundation and explain its relevance. Based on our understanding of the expected witnesses, many of these documents also raise serious Rule 702 and 703 issues.

The Government may seek to admit these exhibits through an appropriate week one witness if it can lay a foundation and demonstrate that they are relevant and admissible. But Mr. Boustani reserves his right to object to all exhibits identified on Attachment A at trial.

**II.     Initial Defense Objections to Government Exhibits Identified on Attachment B**

You characterize the exhibits on Government Attachment B as "business records" and from this, we understand that the Government intends to try to move all of these documents into evidence without a witness on the stand but rather through business record certifications signed by various clerks.

First, there are multiple exhibits on Government Attachment B that are also on Government Attachment A. In many such cases, we disagree that the document is a "business record," such that it can be admitted through a business record certification, but agree that it may be proper to admit through Andrew Pearse, on other grounds, and thus, do not object to the admission of the document if offered during Pearse's testimony. In other words, for documents that are on both Gov. Attachment A and B, we assume that such exhibits will be offered through Pearse and either object to such admission for the reasons described in Part I above or we do not object. If you refuse to admit such exhibits through Pearse but insist on admission through only a business record certification, we will object.

Second, there appear to be inconsistencies between the list of documents the Government claims are supported by business records declarations and the documents that are actually

U.S. Department of Justice
October 10, 2019
Page 4

referenced by the declarations.  For example, Attachment B appears to have listed hundreds of Credit Suisse and VTB exhibits, but our analysis of these documents identified numerous exhibits on Attachment B that are not referenced by any of the business records declarations for those entities.  We do not have the resources to do the Government's work for it by identifying all of these gaps, but obviously, it would be highly improper for the Government to represent to the Court that exhibits were covered by business record certifications where that is false.  We expect the Government's accuracy on this issue—both Mr. Boustani and the Court should be entitled to rely on a Government representation on this point and it is not defense counsel's job to double-check the Government's work.

Third, there are huge numbers of duplicates on Attachment B.  Of course we understand that when an email attaches documents that otherwise have already been offered or admitted into evidence, it is appropriate for completeness sake to move such attachments into evidence.  But, beyond such instances, there are many, many duplicates on Attachment B.  This is going to be a long trial for the jurors—it is inappropriate for the Government to make the jurors' work even more difficult and time-consuming by requiring them to weed through piles of admitted exhibits that are simply duplicates.  The Government should be doing such work to cull out duplicates in advance of trial.

As noted above, we have barely had time to even put eyes on the exhibits on the Government's Week One list, much less had time to thoughtfully consider relevance, foundational, and 403 issues associated with the Government's Attachment B documents.  Nevertheless, we have prepared a list of initial objections to various exhibits on Government Attachment B and will email this list to you by 11 a.m. today.  Generally speaking, where we understood a document to be followed by its attachments, we objected to the document as a whole.  This was not necessarily easy to discern because the Government often marked attachments as standalone exhibits and in other instances, marked as attachment exhibits.  Nonetheless, we assumed that it was the Government's intention to offer parent emails and attachments together, regardless of how they are stamped and our objections reflect this understanding.  The objection list is attached and below, we explain the bases for such objections.

First, there are many exhibits on the Government's list, as indicated by an FRE1002 objection, that are not appropriate for admission because they are single page exhibits that say nothing other than "FILE PRODUCED NATIVELY."  If the Government wants to offer such a cover page, followed by the native, and stamp such exhibits with one exhibit number, we would withdraw our FRE1002 objection.  But obviously, standalone exhibits that are blank pages are inadmissible.  Likewise, the Government has marked certain agreements that are not the fully-executed versions, even though the Government possesses fully-executed versions.  We also object to admission of documents that are impossible to read because the quality of the exhibit is so poor.  Finally, we also object to the admission of parent emails to which documents were attached, but where the Government has not marked the attachments.

Second, the Government's apparent intention to move more than 1000 documents into evidence without a witness on the stand is unfortunate, not only because it is improper, but also because we expect that the parties will now need to ask Judge Kuntz to review substantive briefing and evaluate hundreds of exhibits that probably could be admitted without <u>any</u> defense objection, if offered

U.S. Department of Justice
October 10, 2019
Page 5

through one of the witnesses that the Government intends to call anyway.  For example, there are many documents on Government Ex. B that belong to custodians that the Government intends to call at trial—e.g., Daniel Jurkowitz, Pavel Lvov, Surjan Singh, and Detelina Subeva.  If the Government were to offer these documents after setting a proper foundation through these witnesses, such that the relevance of the exhibit was clear and the jury had enough information to actually understand the communication, we likely would not object to the exhibit's admission.  But, we certainly object to such admission into evidence on Week One—without any effort by the Government to establish relevance or to explain the exhibit's meaning, so as to prevent juror confusion—purely on the basis of a business records certification from a clerk.

       Third, we object to the admission of hundreds of thousands of computer-generated wire and correspondent bank records for at least two reasons.  First, a document is not admissible if its probative value is outweighed by the risk of juror confusion.  These wire records are incomprehensible to an ordinary person without further context and thus, any probative value they may have is entirely lost as it will be impossible for the jury to comprehend the meaning of these documents without help.  If the Government wants to admit these documents into evidence, it needs to call a witness to explain what these documents are and why they are relevant.  Moreover, even the proffered records declarations are improper, as they provide no explanation of the entity's record-keeping systems and processes.  The records the Government seeks to admit as business records—e.g., internal records from BNY Mellon, Citigroup, Bank of America, Deutsche Bank, etc.—are extraordinarily long, complicated, and varied.  Furthermore, while we have not been provided sufficient time to scrutinize all business records declarations provided, we have significant concerns about deficiencies we have identified in certain of those declarations.  For example, the business records declaration provided to the Government by BNY Mellon appears to have been signed by an individual who has not explained how that individual has knowledge of BNY Mellon's recordkeeping systems.  That same declaration is also deficient in that it does not attach the documents attested to and recites an internal BNY Mellon case reference number that is of no significance to our determining the records attested to.

       Fourth, as noted above, we object to the admission of documents whose relevance has not yet been established by the Government.  For example, the Government has marked hundreds of exhibits that show wire transfers from Privinvest/related entities to various other entities/persons, but without prior evidence in the record describing who these other entities/persons are, these records are meaningless.  Likewise, we certainly object to the Government's attempt to simply introduce giant spreadsheets produced by various banks of wire transfers and FX transfers initiated by hundreds of thousands of people and entities who have no relevance to this case.  We don't know why the Government thinks these records are relevant and there is no way the jury will either—especially since at least 10 of these exhibits are *more than 65,000 pages long each*.  Finally, it is completely inappropriate for the Department of Justice to make public the confidential bank account information of hundreds of thousands of people and entities that are of no relevance to this case.  The Government should be redacting all of that information and we anticipate that Judge Kuntz will agree that it is inappropriate for the Government to expose personal bank account information for so many innocent individuals simply because the Government has not bothered to pull out the actual information—if any—that is relevant to this case.

U.S. Department of Justice
October 10, 2019
Page 6

      Fifth, the Government's definition of business record is also far too broad. We object to the Government's attempt to move these exhibits into evidence in bulk without any attempt whatsoever to establish their relevance and admissibility. An e-mail created within a business entity does not, for that reason alone, satisfy the business records exception of the hearsay rule. *Morisseau v. DLA Piper*, 532 F. Supp. 2d 595, 621, n.163 (S.D.N.Y. 2008), *aff'd*, 355 F. App'x 487 (2d Cir. 2009). By way of one example, exhibits in which Credit Suisse employees try to gather up materials in response to questions from regulators like the FCA are by definition not business records.

      Finally, we object to the Government's late attempt to admit a large number of foreign business records pursuant to 18 U.S.C. § 3505. 18 U.S.C. § 3505 requires that a party seeking to enter foreign business records into evidence give written notice "[a]t the arraignment or as soon after the arraignment as practicable." Here, notice was not given at the arraignment, or even in the weeks and months that followed—it was given ten months after the arraignment, five business days before trial is scheduled to begin. This last-minute attempt to enter hundreds of foreign business records into evidence, in violation of § 3505's notice requirement, is prejudicial to Mr. Boustani's defense. Prejudice is grounds for exclusion of such evidence. *See United States v. Gasperini*, No. 16-CR-441 (NGG), 2017 WL 3140366, at *10 (E.D.N.Y. July 21, 2017), aff'd, 729 F. App'x 112 (2d Cir. 2018) ("The remedy for a violation of Section 3505(b) is to object at trial on the ground of prejudice resulting from the violation.") (quoting *United States v. Newell*, 239 F.3d 917, 921 (7th Cir. 2001)); *United States v. Khatallah*, 278 F. Supp. 3d 1, 9 (D.D.C. 2017) ("Exclusion of the evidence may be appropriate nevertheless if the Government's delay in providing notice has prejudiced the defendant.").

      Very truly yours,

      */s/ Randall W. Jackson*

      Michael S. Schachter
      Randall W. Jackson

# Exhibit 1

| Documents Missing from GX Lists: |
| --- |
| GX-2729-C |
| GX-2729-D |
| GX-2729-E |
| GX-2729-G |
| GX-2943 |
| GX-2943-A |
| GX-2943-B |
| GX-2945 |
| GX-2946 |
| GX-2947 |
| GX-2947-A |
| GX-2948 |
| GX-2950 |
| GX-2979 |
| GX-2979-A |
| GX-2979-C |
| GX-2980 |
| GX-3000 |
| GX-3000-A |
| GX-3022 |
| GX-3023 |
| GX-3024 |
| GX-3026 |
| GX-3027 |
| GX-3028 |
| GX-3030 |
| GX-3031 |
| GX-3032 |
| GX-3033 |
| GX-3034 |
| GX-3036 |
| GX-3037 |
| GX-3041 |
| GX-3043 |
| GX-3044 |
| GX-3045 |
| GX-3047 |
| GX-3048-A |
| GX-3048-B |
| GX-3048-C |
| GX-3048-D |
| GX-3051 |
| GX-3052 |
| GX-3052-A |
| GX-3052-B |
| GX-3055 |

| |
|---|
| GX-3056 |
| GX-3057 |
| GX-3058 |
| GX-3059 |
| GX-3061 |
| GX-3061-A |
| GX-3063 |
| GX-3067 |
| GX-3069 |
| GX-3070 |
| GX-3070-A |
| GX-3070-B |
| GX-3070-C |
| GX-3071 |
| GX-3072 |
| GX-3074 |
| GX-3074-A |
| GX-3075 |
| GX-3081 |
| GX-3083 |
| GX-3093 |
| GX-3097 |
| GX-3103 |
| GX-3105 |
| GX-3105-A |
| GX-3105-B |
| GX-3106 |
| GX-3111 |
| GX-3112 |
| GX-3113 |
| GX-3114 |
| GX-3115 |
| GX-3116 |
| GX-3117 |
| GX-3118 |
| GX-3119 |
| GX-3120 |
| GX-3121 |
| GX-3122 |
| GX-3123 |
| GX-3124 |
| GX-3125 |
| GX-3126 |
| GX-3126-A |
| GX-3127 |
| GX-3128 |
| GX-3129 |

| |
|---|
| GX-3129-A |
| GX-3130 |
| GX-3131 |
| GX-3131-A |
| GX-3131-B |
| GX-3132 |
| GX-3133 |
| GX-3133-A |
| GX-3134 |
| GX-3135 |
| GX-3136 |
| GX-3136-A |
| GX-3137 |
| GX-3138 |
| GX-3139 |
| GX-3140 |
| GX-3141 |
| GX-3141-A |
| GX-3142 |
| GX-3143 |
| GX-3144 |
| GX-3145 |
| GX-3145-A |
| GX-3146 |
| GX-3146-A |
| GX-3147 |
| GX-3148 |
| GX-3148-A |
| GX-3148-B |
| GX-3148-C |
| GX-3149 |
| GX-3150 |
| GX-3151 |
| GX-3151-A |
| GX-3152 |
| GX-3153 |
| GX-3154 |
| GX-3155 |
| GX-3156 |
| GX-3157 |
| GX-3158 |
| GX-3159 |
| GX-3159-A |
| GX-3160 |
| GX-3161 |
| GX-3162 |
| GX-3163 |

| |
|---|
| GX-3164 |
| GX-3165 |
| GX-3166 |
| GX-3167 |
| GX-3168 |
| GX-3169 |
| GX-3170 |
| GX-3171 |
| GX-3172 |
| GX-3173 |
| GX-3174 |
| GX-3175 |
| GX-3176 |
| GX-3177 |