AES:MEB/HDM/MAM/KN/AW
F. # 2016R0695

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -                                 Docket No. 18-CR-681 (S-1) (WFK)

JEAN BOUSTANI,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

# THE GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE CERTAIN TESTIMONY BY DEFENDANT EXPERT ROB J. PHILIPPA

                                              RICHARD P. DONOGHUE
                                              UNITED STATES ATTORNEY
                                              Eastern District of New York
                                              271 Cadman Plaza East
                                              Brooklyn, New York 11201

Mark E. Bini
Hiral D. Mehta
Assistant United States Attorneys

Margaret A. Moeser
Katherine Nielsen
Trial Attorneys
    (Of Counsel)

## PRELIMINARY STATEMENT

The government respectfully moves in limine to preclude certain of the proposed testimony of defense expert Rob J. Philippa. On October 4, 2019, the defendant Jean Boustani disclosed to the government that he intends to call Mr. Philippa to testify regarding Euroclear and Clearstream and the roles of those clearing houses with respect to the purchase and sale of the LPNs and the 2016 Eurobond Exchange. Some of the proposed testimony, however, is irrelevant and would confuse the issues. For the reasons discussed below, the Court should preclude Mr. Philippa from testifying about those particular issues.

## RELEVANT BACKGROUND

On October 3, 2019, the Court denied the defendant's motion to dismiss the Superseding Indictment. See ECF No. 231. In his briefing on the motion, defendant had argued that Count Two must be dismissed because it failed to allege a domestic application of the securities fraud statute, or alternatively, a permissible extraterritorial application of the statute. The Court rejected this argument, concluding that because the Superseding Indictment alleges "purchasers and sellers committed themselves to purchasing and selling, respectively, the EMATUM Securities while in the United States—such that irrevocable liability occurred on U.S. soil . . . the Government has properly charged a domestic securities transaction." Id. at 13. In reaching this conclusion, the Court acknowledged that the government has stated that "it is proceeding under a theory of irrevocable liability rather than transfer of title," such that any arguments by defendant that "Count Two fails because the title passed outside the United States" were "unavailing." Id. at 12 n.8.

On October 4, the defendant notified the government that he intended to call Rob J. Philippa to testify as an expert witness at trial, specifically referencing the Court's ruling "that the allegation that the purchase and sale of the LPNs and the exchange of those LPNs in the 2016

Eurobond Exchange occurred in domestic transactions was pled with enough sufficiency in the Superseding Indictment to defeat Mr. Boustani's Motion and proceed to trial on that issue." See ECF No. 241-1 at 1. The defendant wrote that Mr. Philippa would testify, inter alia, as to "the role that Euroclear and Clearstream played in the purchase and sale of the LPNs and the 2016 Eurobond Exchange, "that a purchase or sale of a security that is held at Euroclear or Clearstream is revocable and capable of cancellation at any time prior to settlement of those transactions," and on the settlement process in those clearing houses' systems. Id. at 2. The defendant claims that his recent notice of this expert was due to the Court's denial of his motion to dismiss. It is unclear how the Court's decision affected the defendant's ability to notice an expert on Euroclear—the defendant noticed five experts prior to the Court's decision—none of whom would have been necessary if the defendant's motion to dismiss had been granted.

## LEGAL STANDARD

Expert testimony must be both relevant to a material issue and reliable. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 598 (1993); United States v. Williams, 506 F.3d 151, 160 (2d Cir. 2007) (expert testimony must be "relevant to the task at hand"). The Federal Rules of Evidence define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. And as with all evidence, expert testimony "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R Evid. 403; see Nimely v. City of New York, 414 F.3d 381, 398 (2d Cir. 2005).

The Second Circuit has made clear that securities transactions in foreign listed securities are "domestic" transactions when either the buyer or sell incurs "irrevocable liability"

while in the United States, or, where "title is transferred in the United States." Absolute Activist Value Master Fund Ltd. v. Ficeto, 677 F.3d 60, 62 (2d Cir. 2012). Under the Second Circuit's test, irrevocable liability occurs within the United States if either "the purchaser incurred irrevocable liability within the United States to take and pay for a security," or "the seller incurred irrevocable liability within the United States to deliver a security." Id. at 68.

In 2013, the Second Circuit clarified the requirements of the "irrevocable liability" test in United States v. Vilar, 729 F.3d 62 (2d Cir. 2013). The Second Circuit explained that the inquiry into where the purchaser or seller incurred irrevocable liability does not turn on contract-law principles concerning where "a contract is said to have been executed." Id. at 77 n.11. Rather, "territoriality . . . concerns where, physically, the purchaser or seller committed him or herself." Id. The Vilar court applied the "irrevocable liability" test using the example of an overseas seller who communicated an offer to sell securities to a person located in Puerto Rico. As the Second Circuit explained, a purchaser can incur irrevocable liability in the United States even though, under Puerto Rican law, any contract resulting from the offer would be deemed as executed in the foreign country where the offer originated. Id.; see also United States v. Georgiou, 777 F.3d 125, 136 (3d Cir. 2015) (affirming trial conviction and denying appeal claiming charged securities fraud transactions were extraterritorial in case involving defendants outside the United States who engaged in market manipulation of penny stocks in the United States; holding that "territoriality . . . turns on 'where, physically, the purchaser or seller committed him or herself' to pay for or deliver a security.") (quoting Vilar, 729 F.3d at 77 n.11); Butler v. United States, 992 F. Supp. 2d 165, 178 (E.D.N.Y. 2014) (noting that under Vilar, a "defendant facing securities fraud charges may be convicted if 'he has engaged in fraud in connection with (1) a security listed on a United

4

States exchange, or (2) a security purchased or sold in the United States.'") (quoting Vilar, 729 F.3d at 67).

**ARGUMENT**

**I.  The Proposed Testimony Would Not Be Relevant to Any Material Issues**

Count Two of the Superseding Indictment charges the defendant with conspiracy to commit securities fraud in connection with EMATUM loan participation notes that were to mature in 2020, and a Eurobond issued by Mozambique maturing in 2023 for which they were exchanged in 2016 (referred to collectively as the "EMATUM Securities"). The proposed expert testimony relates to only one issue: the territoriality of the securities fraud conspiracy charge in Count Two of the Superseding Indictment. Specifically, Mr. Philippa would testify as to whether transactions involving securities held at Euroclear or Clearstream may be canceled prior to settlement, and how the settlement process works more generally. See ECF No. 241-2 at 2.

However, as the government has clearly stated, and as the Court has recognized, the government's theory of territoriality as to Count Two is based solely on counterparties having committed themselves to purchase or sell the EMATUM Securities while physically present in the United States. Because Mr. Philippa's proposed expert testimony would not relate to this theory and would only speak to passage of title, it does not appear to be relevant to any material issues at trial. To the extent that Mr. Philippa will testify that his expert opinion is that a transaction can "in theory" be revoked before settlement misconstrues the ultimate issue for the jury to determine: whether buyers and sellers of the EMATUM securities (the LPNs and the Exchange) were irrevocably committed in the United States. Moreover, even if Mr. Philippa's opinion was not confusing the issue, it is an opinion stating the ultimate legal conclusion in the case and is prohibited.

5

Securities transactions in foreign listed securities are "domestic" transactions when either the buyer or sell incurs "irrevocable liability" while in the United States, **or** where "title is transferred in the United States." Absolute Activist, 677 F.3d at 62. For example, in Atlantica Holdings v. BTA Bank JSC, the defendants, like the defendant here, argued that the transactions were not domestic because they cleared through Euroclear. No. 12-CV-8852 (JMF), 2017 WL 3731948, at *2 (S.D.N.Y. Aug. 29, 2017). Judge Furman of the Southern District of New York rejected this argument, holding that because the plaintiffs purchased the debt securities in both the primary and secondary markets by placing orders through UBS in Miami, they were irrevocably committed in the United States even though the transactions cleared and settled through Euroclear:

> Defendants consistently focus—as they did in their motions to dismiss—on the fact that Plaintiffs' transactions were cleared or settled by Euroclear in Europe. But these arguments are beside the point. As the Court noted in its earlier Opinions, the *Absolute Activist* test is in the disjunctive: *Either* the passage of title (that is, clearing and settling) *or* the incurring of irrevocable liability in the United States is sufficient to establish a domestic securities transaction.

Id.

Like the defendants in Atlantica, the defendant here has consistently and erroneously focused on the fact that the EMATUM debt securities "were cleared or settled by Euroclear and Clearstream." But this argument is irrelevant and unduly prejudicial. Euroclear and Clearstream, which are the European equivalents of the United States' Depository Trust & Clearing Corporation ("DTCC"), have nothing to do with irrevocable commitment. Just like the DTCC, Euroclear and Clearstream are responsible for post-trade execution – i.e., passage of title. This is not the prong upon which the government is proceeding here, which the Court recognized in its order denying defendant's motion to dismiss. The domestic securities transactions charged in the Superseding Indictment involve irrevocable commitments, made by relevant counterparties while physically in the United States, to purchase and sell the EMATUM Securities. The

6

government's theory of territoriality does not hinge on passage of title. Accordingly, Mr. Philippa's proffered testimony would not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

In addition, the Court should preclude Mr. Philippa's opinion that "purchase or sale of a security that is held at Euroclear or Clearstream is revocable and capable of cancellation at any time prior to settlement of those transactions" because it states the ultimate legal conclusion in the case. Although in complex securities cases, "expert testimony may help a jury understand unfamiliar terms and concepts," its "use must be carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991) (citing United States v. Scop, 846 F.2d 135, 139-40, modified, 856 F.2d 5 (2d Cir. 1988); Marx & Co., Inc. v. Diners' Club, Inc., 550 F.2d 505, 510-11 (2d Cir.), cert. denied, 434 U.S. 861 (1977); United States v. Thomas, 214 F. Supp. 3d 187, 192 (E.D.N.Y. 2016) (Kuntz, J.) (precluding "expert testimony because it would usurp the jury's role") (citing United States v. Duncan, 42 F.3d 97, 101 (2d Cir. 1994) (holding expert witnesses "act outside of [their] limited role" when they "attempt[] to substitute [their] judgment for the jury's")). The case law establishes that "although an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts." Bilzerian, 926 F.2d at 1294.

Here, the government anticipates that several purchasers and sellers of the EMATUM securities will testify that they were committed to the transaction when they said "done" over Bloomberg messenger or by telephone. The jury will determine, based on the

evidence at trial, including business and trading records and witness testimony, whether buyers and sellers of the EMATUM securities irrevocably committed themselves in the United States.

## II.     Any Relevant Testimony Would Be Unduly Prejudicial and Confuse the Issues

Even if relevant, defendant's proffered expert testimony should be precluded because it would be unduly prejudicial and confuse the issues. The defendant proffers that Mr. Philippa would testify that a "purchase or sale of a security that is held at Euroclear or Clearstream is revocable and capable of cancellation at any time prior to settlement of those transactions." ECF No. 241-1 at 2.  On its face, this testimony would appear to relate to where counterparties who bought or sold the EMATUM Securities incurred "irrevocable liability."  However, the defendant's proposed expert would also testify that "settlement in the Euroclear/Clearstream systems occurs at the moment in which simultaneous book entries are recorded in the Euroclear/Clearstream accounts of the two trading counterparties, in which cash is credited and the securities are debited from the seller's accounts at the exact moment in which cash is debited and the securities are credited to the purchaser's account." Id.  In other words, settlement speaks to when and where title passes.  The fact that a transaction could be canceled "in theory" prior to settlement does not control when counterparties incurred irrevocable liability, especially here, where there is no evidence that any buyers or sellers did in fact cancel their sale or purchase of the EMATUM securities after executing the trades.

Irrevocable liability and title passage are two distinct standards under Absolute Activist, and the defendant should not be allowed to confuse the issues through expert testimony. To avoid unfair prejudice and confusion of the issues, the Court should preclude defendant's proposed expert testimony regarding Euroclear and Clearstream. See Fed. R Evid. 403.  For example, wire fraud requires the use of either international or interstate wires. See 18 U.S.C. § 1343.  If the government sought to prove a wire fraud charge based solely on interstate wires, it

would be irrelevant and unduly prejudicial if the defendant called an expert who testified that there were no international wires in the case, as it would improperly suggest to the jury that the government's failure to prove the existence of an international wire was relevant — when in fact, there was no requirement that the government do so.

## CONCLUSION

For the foregoing reasons, the Court should preclude proposed defense expert witness Rob J. Philippa from testifying that "purchase or sale of a security that is held at Euroclear or Clearstream is revocable and capable of cancellation at any time prior to settlement of those transactions" and on the issue of title passage through Euroclear and Clearstream.

Dated: Brooklyn, New York
October 14, 2019

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By: /s/ Mark E. Bini
Mark E. Bini
Hiral D. Mehta
Assistant United States Attorneys
(718) 254-6418 (Mehta)

DEBORAH L. CONNOR
Chief, Money Laundering & Asset
    Recovery Section
Criminal Division
U.S. Department of Justice

By: /s/
Margaret A. Moeser
Trial Attorney
(202) 598-2345

ROBERT A. ZINK
Chief, Fraud Section
Criminal Division
U.S. Department of Justice

By: /s/
    Katherine Nielsen
    Trial Attorney
    (202) 616-5672