**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | 18-CR-681 (WFK) (SLT) |
| v. | : | |
| JEAN BOUSTANI, | : | |
| Defendant. | : | October 11, 2019 |

**NON-PARTY MORGAN STANLEY INVESTMENT MANAGEMENT INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH DEFENDANT JEAN BOUSTANI'S RULE 17 SUBPOENA**

FINN DIXON & HERLING LLP
Six Landmark Square
Stamford, CT 06901-2689

**Attorney for Non-Party Morgan Stanley Investment Management Inc.**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1

BACKGROUND .......... 2

A. The Indictment .......... 2

B. The Subpoena .......... 3

C. The Court's August 12, 2019 Decision & Order .......... 4

ARGUMENT .......... 6

A. Relevant Law .......... 6

B. Defendant's Subpoena Requests Ignore the Court's August 12, 2019 Decision .......... 7

C. Defendant Already Possesses Morgan Stanley's Responses to Requests Numbers 5 and 7 .......... 9

D. The Remaining Requests Fail to Satisfy Rule 17's Specificity Requirement .......... 9

E. The Remaining Requests Seek Documents That Are Neither Relevant Nor Admissible .......... 11

F. The Remaining Requests Impose an Unreasonable Burden on Morgan Stanley .......... 13

CONCLUSION .......... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*McGee v. Dunn*,
940 F.Supp.2d 93 (S.D.N.Y. 2013) ....8

*United States v. Ashley*,
162 F.R.D. 265 (E.D.N.Y. 1995) ....12

*United States v. Barnes*,
2008 WL 9359654 (S.D.N.Y. Apr. 2, 2008)....7, 10, 11, 12

*United States v. Carton*,
2018 WL 5818107 (S.D.N.Y. Oct. 19, 2018) ....10, 13

*United States v. Nelson*,
2011 WL 2207584 (S.D.N.Y. June 3, 2011) ....12

*United States v. Nixon*,
418 U.S. 683 (1974)....1, 5, 6, 7, 9, 12

*United States v. Pena*,
2016 WL 8735699 (S.D.N.Y. June 3, 2011) ....10, 12

*United States v. Rivera*,
2015 WL 1540517 (E.D.N.Y. Apr. 7, 2015) ....7, 9

*United States v. Robinson*,
2017 WL 1331274 (E.D.N.Y. Apr. 10, 2017) ....9

*United States v. RW Professional Leasing Services Corp.*,
228 F.R.D. 158 (E.D.N.Y. 2005)....6, 10

*United States v. Uccio*,
940 F.2d 753 (2d Cir. 1991)....7

*United States v. Weisberg*,
2010 WL 5027537 (E.D.N.Y. Dec. 3, 2010) ....10, 11

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
956 F.2d 1245 (2d Cir. 1992)....7

**Rules**

Fed. R. Crim. P. 16 ....1, 6, 9

Fed. R. Crim. P. 17 ........................................................................................1, 2, 5, 6, 9, 11

Fed. R. Crim. P. 17(a) ........................................................................................................7

Fed. R. Crim. P. 17(c) ..........................................................................................4, 6, 7, 11

Fed. R. Crim. P. 17(c)(2) ................................................................................................6, 13

Fed. R. Evid. 802 ...............................................................................................................1

**Other Authorities**

18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 ................................8

Non-party Morgan Stanley Investment Management Inc. ("Morgan Stanley") respectfully submits this memorandum of law in support of its motion to quash the Rule 17 subpoena, dated September 30, 2019 (the "Subpoena"), served by Defendant Jean Boustani on October 3, 2019.

**PRELIMINARY STATEMENT**

Defendant's eleventh-hour Subpoena seeks multiple categories of Morgan Stanley's internal documents and communications relating to Morgan Stanley's purchase of loan participation notes of Mozambique EMATUM Finance 2020 B.V. ("EMATUM")—on behalf of its clients—on the secondary market in 2014. Defendant ignores that Morgan Stanley has already produced over fifteen hundred pages of documents to the Government over the past two years, all of which the Government produced to Defendant during Rule 16 discovery in this case. More troubling, Defendant's Subpoena flies in the face of the Court's August 12, 2019 Decision & Order (the "August 12th Decision"), in which the Court rejected Defendant's attempt to procure the same categories of documents from another victim of Defendant's alleged fraud scheme.

In addition to defying the Court's August 12th Decision, the Subpoena violates Rule 17 for multiple, independent reasons. The Supreme Court set forth the strict standard for Rule 17 subpoenas in *United States v. Nixon*, 418 U.S. 683 (1974), which requires the proponent to demonstrate that the requested documents are: (i) relevant; (ii) admissible; and (iii) identified with specificity. Defendant fails to satisfy any of these elements. *First*, the Subpoena does not seek relevant, admissible evidence that would tend to prove or disprove the criminal conspiracies alleged in the Indictment. Instead of complying with the *Nixon* standards, the Subpoena seeks broad categories of inadmissible hearsay material for a nearly seven-year period. Defendant has not demonstrated how Morgan Stanley's internal due diligence and investor-related documents satisfy an exception to Federal Rule of Evidence 802's prohibition against hearsay. In the

absence of a precise theory of admissibility and relevance for the requested documents at trial, the Subpoena is improper.

*Second*, the Subpoena seeks broad categories of Morgan Stanley's internal documents for a nearly seven-year period without sufficient specificity. The Subpoena reads like an all-encompassing document request in civil litigation, rather than a narrowly targeted request for specific, relevant documents that Rule 17 requires. For example, the Subpoena requires Morgan Stanley to produce "[t]he prospectuses, offering circulars, pitchbooks, private placement memoranda, and due diligence questionnaires for any funds or related securities managed by Morgan Stanley or issued by its affiliates that invested in the Mozambique Debt Instruments," a sweeping request that would undoubtedly capture thousands of irrelevant documents. The Subpoena thus fails to meet *Nixon's* specificity requirement.

*Finally*, compliance with the Subpoena would cause Morgan Stanley to incur an unreasonable burden in terms of costs and resources, especially in light of the Subpoena's lack of specificity. Morgan Stanley estimates that its response to the Subpoena could yield tens of thousands of responsive documents, and that it would take more than one month to comply with the Subpoena. Forcing Morgan Stanley to expend significant resources to comply with a subpoena that is not targeted at relevant, admissible evidence is precisely what Rule 17 was designed to prevent.

Accordingly, Morgan Stanley respectfully requests that the Court quash the Subpoena in its entirety.

## BACKGROUND

### A. The Indictment

The Indictment charges that Defendant conspired to commit wire fraud, securities fraud, and money laundering. Indictment ¶¶ 94-98, 102-03. Specifically, the Indictment alleges that

Defendant, the lead salesman and negotiator for Privinvest Group, which was the contractor for a series of Mozambique state-owned maritime projects, was the central organizing figure in the scheme and, together with his co-conspirators, used loan proceeds to pay bribes and kickbacks to themselves, Mozambican officials, and others. Indictment ¶¶ 10, 24-25.

Morgan Stanley, an asset manager, invested in debt instruments related to loans made to a Mozambique state-owned enterprise formed to carry out certain of the maritime projects. Specifically, Morgan Stanley purchased loan participation notes issued by EMATUM on the secondary market in 2014 on behalf of its clients.

**B. The Subpoena**

Defendant's Subpoena, served on October 3, 2019 and returnable on October 15, 2019, requested eleven broadly-defined categories of documents:

1. "Documents concerning due diligence conducted by Morgan Stanley in deciding whether to invest in the Mozambique Debt Instruments;"

2. "Documents relating to the factors considered in Morgan Stanley's decisions to buy and sell the Mozambique Debt Instruments;"

3. "The 'Big Boy Letters' signed by Morgan Stanley in connection with the Mozambique Debt Instruments;"

4. "Legal opinion letters concerning the Mozambique Debt Instruments provided to Morgan Stanley by Credit Suisse, VTB, BNP Paribas, or any of their affiliates or subsidiaries;"

5. "All trade confirmations and communications concerning the purchase and sale of the Mozambique Debt Instruments;"

6. "Documents and communications relating to Morgan Stanley's account or relationship with Euroclear and Clearstream, including documents relating to the purchase and sale of the Mozambique Debt Instruments;"[1]

[1] After several meet and confer discussions, Defendant has agreed to limit Request No. 6's scope to such Euroclear and Clearstream documents relating to the purchase and sale of the Mozambique Debt Instruments and Morgan Stanley's account opening documents with Euroclear and Clearstream. *See* English Decl.

7. "Documents sufficient to determine Morgan Stanley's potential or actual gains or losses from investing in the Mozambique Debt Instruments. This request is explicitly limited in scope to documents *sufficient to determine* Morgan Stanley's potential or actual gains or losses from investing in the Mozambique Debt Instruments and does *not* call for all documents listing Morgan Stanley's daily holdings, for example;"

8. "The prospectuses, offering circulars, pitchbooks, private placement memoranda, and due diligence questionnaires for any funds or related securities managed by Morgan Stanley or issued by its affiliates that invested in the Mozambique Debt Instruments;"

9. "Communications with Morgan Stanley's investors relating to the Mozambique Debt Instruments;"

10. "The analyst reports received by Morgan Stanley which concern (i) Mozambique's repayment guarantees of the monies borrowed from Credit Suisse and VTB Bank by Proindicus and EMATUM; (ii) the indebtedness of Mozambique; (iii) the credit risk associated with investing in debt instruments associated with Mozambique and/or (iv) the risk of bribery, corruption, or non-transparency in Mozambique;" and

11. "Documents and communications concerning Privinvest and Jean Boustani."

A copy of the Subpoena is attached as Exhibit 1 to the accompanying Declaration of Michael Q. English ("English Decl.").[2]

**C. The Court's August 12, 2019 Decision & Order**

Defendant served a Rule 17(c) subpoena on ICE Canyon, another investor in Mozambique debt instruments, on July 23, 2019. *See* Decision and Order at 2 (ECF No. 130). On July 29, 2019, ICE Canyon moved to quash the subpoena. *Id.* The Court heard oral argument on the motion the next day, and subsequently granted ICE Canyon's motion to quash on August 12, 2019. *Id.*

[2] On October 9, 2019, after meeting and conferring with Defendant's counsel, Defendant agreed to withdraw Request Numbers 5 and 7 based on Morgan Stanley's representation that all such documents were previously produced to the Government. *See* English Decl.

The ICE Canyon subpoena sought all documents related to: (i) investments and trading activity in Mozambique Debt Instruments; (ii) due diligence relating to its investments in Mozambique Debt Instruments; (iii) internal deliberations relating to its investment in Mozambique Debt Instruments; (iv) funds that invested in the Mozambique Debt Instruments; (v) authorization for investments in the Mozambique Debt Instruments; (vi) the regulatory authority governing the Mozambique Debt Instruments and the ICE Canyon funds that invested in them; (vii) investor communications for funds that invested in the Mozambique Debt Instruments; (viii) due diligence on Mozambique; (ix) risk mitigation by funds invested in the Mozambique Debt Instruments; and (x) the Privinvest Group and Jean Boustani. *Id.* at 2-3.

This Court concluded that Defendant's ICE Canyon subpoena constituted an impermissible fishing expedition under Rule 17 given the subpoena's "nine broad categories of materials . . . over an extensive period of time." *Id.* at 7 ("[t]he sheer breadth of the subpoena suggests that Defendant intended to use the subpoena to fish for favorable evidence."). The Court found that Defendant failed to meet any of the threshold *Nixon* factors to satisfy Rule 17. Specifically, the Court held that the subpoena failed to demonstrate relevance and admissibility of the subpoenaed documents, finding that "any determinations on admissibility would be pure conjecture at this point" because defendant did not demonstrate "how each of the requested documents would be 'in fact' admissible at trial." *Id.* at 9 (internal citation omitted). Additionally, the Court quashed Defendant's ICE Canyon subpoena because Defendant failed to identify with specificity any document or discrete set of documents in the subpoena. *Id.* at 6-9 ("The subpoena is not sufficiently specific, is likely to return many irrelevant items not admissible at trial, and impermissibly amounts to a general discovery device.").

## ARGUMENT

The August 12th Decision is the law of the case and forecloses Defendant from making the same requests of Morgan Stanley that the Court explicitly held Defendant could not obtain from another similarly-situated investment manager. Moreover, Defendant cannot satisfy Rule 17's strict requirements because he cannot establish that the documents requested by the Subpoena are (i) not otherwise procurable from the Government's Rule 16 productions, (ii) identified with sufficient specificity, and (iii) relevant to the Government's allegations and admissible at trial. Given Defendant's failure to establish the relevance, admissibility, and specificity of the documents sought, compliance with the Subpoena would cause Morgan Stanley to incur an unreasonable burden. In short, the Subpoena constitutes the quintessential fishing expedition that Rule 17(c) prohibits and should therefore be quashed.

### A. Relevant Law

Rule 17(c) of the Federal Rules of Criminal Procedure permits a party to obtain by subpoena only those "books, papers, documents, data, or other objects" that are "to be offered in evidence." Fed. R. Crim. P. 17(c). "The courts have held that Rule 17(c) should not be broadly interpreted as a discovery tool in criminal cases" and the proponent of the subpoena must show that it is not being used as a "fishing expedition." *United States v. RW Professional Leasing Services Corp.*, 228 F.R.D. 158, 162 (E.D.N.Y. 2005).

To ensure that parties do not abuse Rule 17, courts may quash or modify subpoenas issued under that section if "compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). In *United States v. Nixon*, the Supreme Court held that a court must quash a Rule 17 subpoena unless the moving party establishes:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare

> for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*Nixon*, 418 U.S. at 699-700 (internal citation and footnote omitted).

Where, as here, a party moves to quash a defendant's subpoena as "unduly 'unreasonable or oppressive,'" the defendant "must make a preponderance showing that the materials requested are relevant, specifically identified, admissible, and not otherwise procurable by the exercise of due diligence." *United States v. Barnes*, 560 F. App'x 36, 39-40 (2d Cir. 2014) (summary order) (citing *Nixon*, 418 U.S. at 699-700); *see also United States v. Rivera*, 2015 WL 1540517, *3 (E.D.N.Y. Apr. 7, 2015).

**B. Defendant's Subpoena Requests Ignore the Court's August 12, 2019 Decision**

The Subpoena ignores that the Court categorically rejected Defendant's attempt to obtain these same categories of documents from another victim of the alleged scheme charged in the Indictment. To be sure, the Court's August 12th Decision is the law of the case relating to Defendant's ability to obtain due diligence and investor-related documents from EMATUM purchasers. And Defendant has presented no reason for this Court to revisit its prior ruling.[3]

The Second Circuit has long held, under the law-of-the-case doctrine, "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case." *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991); *see also Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) ("[W]here litigants

[3] Defendant failed to seek the Court's imprimatur to issue the Subpoena (as it did with ICE Canyon). While the Subpoena was technically issued under Federal Rule of Criminal Procedure 17(a), it is effectively a Rule 17(c) subpoena because it requests documents and admits that "personal appearance may be excused if the requested documents are produced by the return date[.]" Given the Subpoena's similarity to the ICE Canyon subpoena, Defendant's failure to obtain the Court's permission to issue the Subpoena further underscores the dubious enforceability of the Subpoena.

have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.") (internal quotations omitted). Absent a change of intervening law or the Court's belief that it committed clear error, the Court should not revisit its prior decisions during the pendency of an action. *See*, *e.g.*, 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478. "The objective of the law of the case doctrine includes promoting efficiency and avoiding endless litigation by allowing each stage of the litigation to build on the last and not afford an opportunity to reargue every previous ruling." *McGee v. Dunn*, 940 F.Supp.2d 93, 100 (S.D.N.Y. 2013) (internal quotations, citations, and alterations omitted)).

Here, the Court decisively quashed Defendant's attempt to obtain all documents related to ICE Canyon's (i) due diligence for its EMATUM investment; (ii) internal deliberations relating to its EMATUM investment; (iii) EMATUM trading activity; (iv) funds that invested in EMATUM; (v) investor communications relating to EMATUM; (vi) and documents concerning the Privinvest Group and Jean Boustani. Defendant has conspicuously repackaged these same requests in the Subpoena, which seeks Morgan Stanley's:

- "[D]ue diligence" and "analyst reports" considered in deciding whether to invest in the Mozambique Debt Instruments (Request Nos. 1 and 10);
- "Documents relating to the factors considered in Morgan Stanley's decisions to buy and sell the Mozambique Debt Instruments" (Request No. 2);
- "Big Boy Letters" and legal opinions in connection with the Mozambique Debt Instruments (Requests Nos. 3 and 4);
- Fund-related documents for Morgan Stanley's funds that invested in the Mozambique Debt Instruments (Request 8);
- Investor communications relating to the Mozambique Debt Instruments (Request No. 9); and
- Documents concerning Privinvest and Jean Boustani (Request No. 11).

The Court categorically rejected Defendant's efforts to obtain these exact documents from ICE Canyon in the August 12th Decision. The Court's August 12th Decision contained no error, and no intervening change in the law has arisen in the seven weeks between the Court's August 12th Decision and Defendant's issuance of the Subpoena. Under the law-of-the-case doctrine, Defendant is foreclosed from seeking from Morgan Stanley the same categories of documents that it sought from ICE Canyon. Accordingly, the Court should enforce its August 12th Decision against Defendant and quash the Subpoena in its entirety.

### C. Defendant Already Possesses Morgan Stanley's Responses to Requests Numbers 5 and 7

Morgan Stanley previously produced to the Government all trade confirmations and communications concerning its purchase and sale of EMATUM (Request No. 5), as well as documents sufficient to determine Morgan Stanley's losses from investing in EMATUM (Request No. 7). The Government has assured Morgan Stanley that Defendant received these documents during Rule 16 discovery. Accordingly, there are no additional documents that Morgan Stanley possesses concerning Requests Numbers 5 and 7. Morgan Stanley's remaining arguments focus on Requests 1-4, 6, and 8-11 (the "Remaining Requests").

### D. The Remaining Requests Fail to Satisfy Rule 17's Specificity Requirement

Defendant fails to satisfy *Nixon's* requirement that the documents sought are specifically identified. The party issuing the subpoena must "reasonably specify the information contained or believed to be contained in the documents sought rather than merely hope that something useful will turn up." *United States v. Robinson*, 2017 WL 1331274, *3 (E.D.N.Y. Apr. 10, 2017) (internal citations and quotations omitted); *see also Rivera*, 2015 WL 1540517, at *4 (conjecture that requested materials will contain relevant information is insufficient to satisfy the *Nixon* standard). Applying this standard, courts routinely quash Rule 17 subpoenas that seek all

documents related to a broad topic. *See e.g.*, *United States v. Weisberg*, 2010 WL 5027537, *1-2 (E.D.N.Y. Dec. 3, 2010) (quashing subpoena that sought "all documents" on expansive subjects rather than "specific documents or sufficiently narrow categories of specific documents"); *United States v. Pena*, 2016 WL 8735699, *3 (S.D.N.Y. June 3, 2011) (quashing request for "any and all" records "relating to" an inmate cooperating witness). Similarly, subpoenas that do not limit requests to a reasonable time period are not sufficiently specific. *See, e.g.*, *RW Professional Leasing Services Corp.*, 228 F.R.D. at 164 ("A request is considered sufficiently specific where it states with reasonable particularity the subjects to which the documents relate and limits documents to a reasonable period of time."); *United States v. Carton*, 2018 WL 5818107, *3 (S.D.N.Y. Oct. 19, 2018) (finding that "the nearly three-year temporal breadth of these requests alone shows that they are broad fishing expeditions, not narrowly targeted subpoenas.").

For example, in *United States v. Barnes*, the defendant requested "[a]ll disciplinary records, booking records, inmate records, transfer movement records, and telephone call recordings and log for . . . an inmate at the Metropolitan Detention Center Brooklyn from about April 2006 to the Present." 2008 WL 9359654, *1 (S.D.N.Y. Apr. 2, 2008). The court quashed the subpoena, reasoning that:

> The Defendant blindly seeks "all" documents and recordings that fall into several categories for an approximate 23-month period rather than identifiable pieces of evidence. The fact that the subpoena is crafted to encompass such a broad swath of items indicates that the subpoena was intended as a discovery device rather than as a mechanism for obtaining specific admissible evidence. Moreover, the Defendant apparently does not know whether or not [] some of the documents requested even exist. . . . This, in conjunction with the breadth of the request, evinces that the Defendant seeks through the subpoena to acquire voluminous materials in the hope that a review of them will uncover some evidence that will be helpful to his defense. Such a blanket request

> implicates all of the problems associated with a classic "fishing expedition."

*Id.* at *4.

Here, Defendant's Remaining Requests are similarly overbroad and should likewise be quashed. The Remaining Requests seek documents from a nearly seven-year time period. And while Defendant avoids the phrase "all documents," the requests—in effect—still seek all documents relating to a given topic, without further specifying the admissible evidence required for trial. For example, Defendants seek "documents concerning due diligence conducted by Morgan Stanley in deciding whether to invest in the Mozambique Debt Instruments." To properly comply, Morgan Stanley would need to produce *any and all due diligence documents* regarding the Mozambique Debt Instruments regardless of their relevance to Defendant's case. Moreover, Defendant merely speculates that the requested documents, such as "documents and communications concerning Privinvest and Jean Boustani," will contain potentially relevant information without any showing as to how Defendant will use these specific documents at trial. In short, the Remaining Requests "resemble[] civil discovery requests, rather than the specific requests for actual evidence that are allowed under Rule 17(c)." *Weisberg*, 2010 WL 5027537, at *1 (quashing overbroad subpoena). Such requests are not permitted under Rule 17, and this Court should quash the Remaining Requests.

### E. The Remaining Requests Seek Documents That Are Neither Relevant Nor Admissible

Defendant also fails to satisfy *Nixon's* requirement that the documents sought are relevant and admissible at trial. *See Weisberg*, 2010 WL 5027537 at *2 (quashing subpoena where defendant did not establish that the subpoena sought "evidence that would tend to prove a material issue of the case or would be admissible at trial."). It is well settled that "[r]elevance cannot be established merely by asserting that the documents are relevant or, moreover, by

merely asserting that they must be produced." *Barnes*, 2008 WL 9359654, at *3 (quashing subpoena where nature of subpoenaed materials was indeterminate and defendant failed to articulate a reason for why evidence sought would be relevant or admissible). Defendant cannot demonstrate how Morgan Stanley's (i) internal deliberations and due diligence regarding its EMATUM investment (Requests Nos. 1-4, 10), (ii) communications relating to its relationship with Euroclear and Clearstream (Request No. 6); (iii) investor-related documents and communications (Requests Nos. 8-9); or (iv) documents concerning Privinvest and Jean Boustani (Request No. 11) are relevant to the Defendant's alleged conspiracy. Stated simply, Morgan Stanley's internal documents appear entirely collateral to the charges in the Indictment.

Nor has Defendant offered a plausible theory of admissibility for Morgan Stanley's internal documents and communications, and Morgan Stanley cannot conceive of one. *See United States v. Ashley*, 162 F.R.D. 265, 267 (E.D.N.Y. 1995) ("Defendant has made no attempt to show that each of the documents he seeks will be admissible at his trial . . . it is not the Court's responsibility to propose and evaluate grounds of admissibility for each document at issue."). To clear the hurdle of admissibility, Defendant must show that its internal documents and communications constitute an exception to the bar against the admission of hearsay. Likewise, Defendant must demonstrate that the documents are not being sought merely for use as impeachment material. *See Nixon*, 418 U.S. at 701 ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."). Courts routinely quash subpoenas where the only evidentiary use of the responsive documents is for impeachment. *See, e.g.*, *Pena*, 2016 WL 8735699, at *2 (quashing subpoena seeking cooperating witness's recorded phone calls and communications); *United States v. Nelson*, 2011 WL 2207584, *4 (S.D.N.Y. June 3, 2011) (quashing subpoena seeking CCRB complaint file

concerning arresting officer's conduct in unrelated incident, since its sole use would be for impeachment). If Defendant seeks such documents to demonstrate, for example, that Morgan Stanley was aware of the risk of corruption in Mozambique, such evidence would be inadmissible because it has no bearing on whether Defendant conspired to commit securities fraud, wire fraud and money laundering. *See, e.g.*, *United States v. Carton*, 2018 WL 5818107 (S.D.N.Y. Oct. 19, 2018). Accordingly, this Court should quash the Remaining Requests on relevance and admissibility grounds alone.

### F. The Remaining Requests Impose an Unreasonable Burden on Morgan Stanley

In addition to Defendant's failure to establish that the documents requested are relevant, admissible, and identified with sufficient specificity, the Court should also quash the Remaining Requests because they are "unreasonable" and "oppressive." Fed. R. Crim. P. 17(c)(2) ("the court may quash or modify the subpoena if compliance would be unreasonable or oppressive"). Compliance with the Remaining Requests would require Morgan Stanley to collect and review nearly seven years' worth of communications, due diligence materials, analyst reports, and fund and securities documents relating to the Mozambique Debt Instruments. Morgan Stanley estimates the review will take more than one month and result in a production of tens of thousands of responsive documents. The amount of time and resources that would be spent in complying with the Remaining Requests far outweigh the use of these documents at trial given that they are irrelevant and inadmissible. Accordingly, Defendant cannot satisfy *Nixon's* requirements and this Court should quash the Remaining Requests.

## CONCLUSION

For the reasons set forth above, Morgan Stanley respectfully requests that the Court grant its motion to quash the Subpoena in its entirety.

MORGAN STANLEY INVESTMENT MANAGEMENT INC.

By: /s/ Michael Q. English
Michael Q. English
Finn Dixon & Herling LLP
Six Landmark Square
Stamford, CT 06901-2704
Tel: (203) 325-5000
Fax: (203) 325-5001
E-mail: menglish@fdh.com

**CERTIFICATION**

I hereby certify that on October 11, 2019, a copy of the foregoing was served by electronic mail on all counsel of record.

By: /s/ Michael Q. English

Michael Q. English
FINN DIXON & HERLING LLP
Six Landmark Square
Stamford, CT 06901-2704
Tel: (203) 325-5000
Fax: (203) 325-5001
E-mail: menglish@fdh.com