**WILLKIE FARR & GALLAGHER** LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

November 5, 2019

**BY FEDEX AND ECF**

The Honorable William F. Kuntz, II
United States District Court for the
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *United States v. Jean Boustani, et al. (Case No. 18-cr-681 (S-1) (WFK))*

Dear Judge Kuntz:

We represent Defendant Jean Boustani in the above-captioned matter and write to respectfully request that the Court preclude the testimony of Denise Namburete, a witness that the Government noticed to the defense, for the first time, last week, on October 28th. This disclosure comes well after the parties' agreed-upon deadlines for the disclosure of witnesses. Ms. Namburete is a witness with no personal knowledge of the case whatsoever, but rather is the director of a Mozambique advocacy organization, the Forum de Montioria do Orcamento ("FMO"), which engages in public protest regarding various budgetary decisions of the Mozambique Parliament. Among other causes, Ms. Namburete has (a) served as an activist and litigant in support of Manual Chang's extradition to the United States, rather than to Mozambique; (b) has, along with 21 other Mozambican civil organizations, publicly argued that Credit Suisse acquiesced to Pearse's, Subeva's, and Singh's actions, in order to reap sizable profits from Mozambique, and has created "change.org" petitions

November 5, 2019
Page 2

against Credit Suisse, regarding the same; (c) has publicly opposed any restructuring of the Eurobonds in which investors are repaid using revenue from the LNG projects; (d) has filed various court documents in Mozambique claiming that the EMATUM guarantee is invalid (notwithstanding that the validity of the guarantee is an issue for the English courts); and (e) maintains an active social media presence, including on Twitter, where she frequently posts her opinions on the "secret loans" under the hashtag #ilegaldebts (sic).



November 5, 2019
Page 3





Since trial has begun, Ms. Namburete has posted long updates of the daily trial testimony, which we understand to mean that Ms. Namburete has either been present in the courtroom for the testimony of the Government's witnesses to date, or has been provided with the transcripts, or near-transcripts, of the proceedings. Although we cannot attach her entire Twitter feed, below is a screenshot of a post representative of those she has been tweeting since the trial began:

November 5, 2019
Page 4



*See, e.g.,* Exs. A (FMO, "News on the Case in New York – Day Six" (translated)), B (FMO, "News on the Case in New York – Days Seven and Eight" (translated)), C (FMO, "News on the Case in New York – Day Nine" (translated)); D (November 1, 2019 Interview of Denise Namburete) (statement by Ms. Namburete commenting on the evidence relevant to Chang that has been admitted in this trial (translated)).

      The Government's insistence on calling Ms. Namburete, despite her improper exposure to facts wholly outside her personal knowledge, is an affront to the extraordinary care that Your Honor has taken throughout this trial to ensure that no witness testimony is tainted or altered—including by ordering witnesses not to speak with anyone about their testimony once they have taken the stand, and by guarding against the presence of witnesses in the courtroom during evidentiary arguments in front

4

of Your Honor and during Your Honor's discussions with counsel concerning various legal and extra-legal issues.  Permitting an activist who has, prior to testifying, made herself deeply familiar with all of the testimony and the exhibits already offered against Mr. Boustani—which she otherwise would have no personal knowledge of—is unfair and deeply prejudicial to Mr. Boustani.

Moreover, Ms. Namburete does not have relevant testimony to offer to the jury, as she had no personal involvement with any of the factual events at issue in this case.  While FMO advocated earlier this year for the Mozambique court opinion that the EMATUM guarantee was invalid, that opinion is not being enforced by the current Government in Mozambique—which was democratically re-elected just two weeks ago—as evidenced by the fact that the Republic of Mozambique and the Eurobond holders mutually agreed upon restructured terms of the EMATUM debt last week.  **In other words, the Republic of Mozambique is not taking the position that the EMATUM guarantee is invalid, but rather has confirmed its validity by re-committing to debt repayment on favorable terms**.  Moreover, the Court has already taken judicial notice of the decision. (Dkt. 250).  As we understand it, Ms. Namburete is being called by the Government to convey to the jury that, on the basis of no personal knowledge whatsoever, there is "no benefit to Moz[ambique] from the boats," and that the loans to the Mozambican Companies were "illegal."  Beyond the taint issue, there are a litany of reasons why the Court should preclude Ms. Namburete's testimony. Testimony by Ms. Namburete is irrelevant to the elements of the offense, is based on hearsay, and is unduly prejudicial.

The prejudice to Mr. Boustani from the Government's untimely disclosure is serious, as it is impossible for Mr. Boustani to arrange for rebuttal witness from Mozambique to testify at this late date, given that defense counsel is in court from 9:30 to 5pm every day and Mozambique is on the

5

November 5, 2019
Page 6

other side of the world.  This is precisely the reason why the parties agreed to fact witness disclosure deadlines of September 10, 2019.  *See United States v. Gasparik*, 141 F.Supp.2d 361, 367-68 (S.D.N.Y. 2011) (precluding Government from calling witness who was not disclosed until the middle of trial due to unfair prejudice to the defendants); *Patterson v. Balsamico*, 440 F.3d 104, 117-18 (2d Cir. 2006) (holding that district court did not abuse its discretion in refusing to allow witness testimony where witnesses were disclosed only ten days before trial and challenging party had not previously received any information concerning the nature of their testimony); *Golden W. Ref. v. PriceWaterhouse*, 392 F. Supp. 2d 407, 413, n.3 (D. Conn. 2005) (plaintiffs precluded from designating two expert witnesses a month before trial as "it comes far too late in the case (well after the scheduling order calling for designation of experts), there is no good cause" for the delay, and "such a late designation…would invariably prejudice [defendant].").  Indeed, one of the reasons why the Court precluded the defense's expert witness, Rob J. Phillipa, was because the defense noticed him after the deadline for disclosure of expert witness—and that was on October 4.  Denise Namburete was not noticed as a witness until October 28, during the third week of trial.

The defense's inability to arrange for rebuttal witnesses, given the complete lack of notice until the middle of trial, is particularly problematic given the nature of Ms. Namburete's testimony.  The 3500 materials produced by the Government suggest that Ms. Namburete is being called by the Government to serve as a "representative" for all Mozambican citizens.  But, in fact, there is no reason to think that Ms. Namburete speaks "on behalf" of all of the citizens of Mozambique, and had we been given adequate notice—the notice that the Government *promised* to provide to the defense—we could have (and would have) arranged for appropriate rebuttal witnesses who could, based on their own personal knowledge and experience, explain to the jury that, in fact, the

6

November 5, 2019
Page 7

EMATUM fishing vessels are operational and actively fishing the Indian Ocean, and therefore have value; attest that previously unskilled Mozambicans have benefitted from both the technical training and the jobs provided by the three Infrastructure Projects; describe for the jury the various national security decrees passed by the Mozambican Parliament, which provided that the Proindicus Coastal Defense Project, as a national defense operation, was to remain confidential; and, explain to the jury that the loans were analyzed and approved by authorities at the Central Bank of Mozambique (an entity wholly separate from the Ministry of Finance, where Mr. Chang was employed) before any of the loan agreements were signed.

   1. <u>The Court Should Preclude Ms. Namburete's Testimony Because It Is Irrelevant to the Elements that the Jury Must Decide.</u>

Ms. Namburete's testimony will not, and cannot, assist the jury in considering whether the Government has proven the elements of the charged offenses beyond a reasonable doubt. Evidence is relevant where "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *United States v. Litvak*, 889 F.3d 56, 68 (2d Cir. 2018) (quoting Fed. R. Evid. 401). Relevance is defined in connection with the scope of the material issues to be decided, *i.e.*, the elements of the offense. *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 138 F. Supp. 2d 357, 365 (E.D.N.Y. 2001) (an "evidentiary proposition is considered 'relevant' only if it is logically related, either directly or through an inferential chain of proof, to at least one of the formal elements of the charges made or defenses raised in the case[.]").

Count One, wire fraud conspiracy, requires proof that Mr. Boustani schemed to defraud investors in the Mozambique Debt Instruments by means of allegedly material misrepresentations in

7

November 5, 2019
Page 8

the offering documents for the Debt Instruments, as well as evidence that Mr. Boustani possessed a specific intent to defraud those investors and knowingly joined the conspiracy with that aim. *See United States v. Starr*, 816 F.2d 94, 100 (2d Cir. 1987); *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1181-82 (2d Cir. 1970) (the Government must prove that the defendant's "representations were reasonably calculated to induce [victims] of ordinary prudence to buy [defendant's] wares."); *United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 658-659 (2d Cir. 2016*)* (Government must demonstrate that the defendant made the misrepresentations "with the intent to induce harmful reliance" on the representation by the victim); *United States v. DeSantis,* 134 F.3d 760, 764 (6th Cir. 1998) (wire fraud punishes representations that "induced" a victim to "part with property or undertake some action that he would not otherwise do, absent the misrepresentation."); *United States v. Ingram*, 360 U.S. 672, 678 (1959) ("Conspiracy to commit a particular substantive offense cannot exist without *at least* the degree of criminal intent necessary for the substantive offense itself."); *see also* Sup. Ind. at ¶¶ 24, 27, 72, 73.

Ms. Namburete does not have relevant evidence to offer the jury on these issues. Ms. Namburete does not, and has never, worked for the Investment Banks that sold the Debt Instruments, or for any of the entities that purchased the Debt Instruments, or for any of the relevant Mozambican Ministries, or for Privinvest or its affiliates. Ms. Namburete did not receive the offering documents that contained the material misrepresentations at issue—the *actus reus* of a wire fraud offense. Ms. Namburete did not send or receive any of the wires allegedly at issue, nor does she work for an organization that would have processed those wires. Simply put, Ms. Namburete can offer no helpful testimony as to Count One.

8

November 5, 2019
Page 9

For the same reasons, Ms. Namburete's testimony is also irrelevant to the charge of securities fraud. Count Two, securities fraud conspiracy, requires proof that Mr. Boustani conspired to engage in a securities fraud using material misrepresentations in connection with the domestic purchase of the LPNs and with the domestic exchange of those LPNs in the 2016 Eurobond Exchange, as well as evidence that Mr. Boustani possessed a specific intent to deceive those investors and evidence that an overt act in furtherance of such a securities fraud conspiracy occurred in this District. *United States v. Litvak*, Case No. 13-cr-19 (JCH), Dkt. 523, Jury Charge, at 50 (D. Conn. Jan. 13, 2017) ("*Litvak II*") ("The third element of the crime of securities fraud…is that [the defendant] participated in the scheme to defraud knowingly, willfully, and with intent to defraud…To act with "intent to defraud" here means to act willfully and with the specific intent to deceive. An act is intentional only if it is deliberate and purposeful. That is, to be intentional Mr. Litvak's acts must have been the product of his conscious objective, rather than the product of mistake of accident. The misrepresentation…must have had the purpose of inducing the victim of the fraud to undertake some action."); *United States v. Saavedra*, 223 F.3d 85, 93 (2d Cir. 2000) (holding "substantial contacts" required between defendant's conduct and venue of prosecution). Ms. Namburete can offer no helpful testimony as to Count Two because she had no role in the purchase or sale of the LPNs or the Eurobond Exchange.

Count Four, money laundering conspiracy, requires proof that Mr. Boustani participated in a conspiracy to launder money to or from the United States in order to promote one of the specified unlawful activities or in order to conceal the proceeds of one of the specified unlawful activities from the authorities, and, to meet the extraterritorial elements, proof that Mr. Boustani personally made one of those transfers. (Sup. Ind. ¶ 104; *United States v. Garcia*, 587 F.3d 509, 517 (2d Cir. 2009)

9

November 5, 2019
Page 10

(explaining, in the context of concealment money laundering, that the "purpose—not merely the effect—of the transportation [must] be to conceal or disguise a listed attribute."); *United States v. Trejo*, 610 F.3d 308, 314–15 (5th Cir. 2010) (emphasis in original) ([t]he 'specific intent to promote requirement' has been called the 'gravamen' of a § 1956(a)(1)(A)(i) violation. To prove it, the government must satisfy a stringent *mens rea* requirement. Essentially, the government must show the transaction at issue was conducted with the intent to promote the carrying on of a specified unlawful activity. It is not enough to show that a money launderer's actions *resulted* in promoting the carrying on of specified unlawful activity. Nor may the government rest on proof that the defendant engaged in 'knowing promotion' of the unlawful activity. Instead, there must be evidence of *intentional* promotion. In other words, the evidence must show that the defendant's conduct not only promoted a specified unlawful activity but that he engaged in it "*with the intent* to further the progress of that activity.") (citations omitted).) Ms. Namburete also has no factual knowledge as to any of these issues. Ms. Namburete does not work for a bank that was involved in any of the wire transfers at issue and has no personal knowledge about any payments sent by Mr. Boustani or anyone else.

  2. The Court Should Preclude Ms. Namburete's Testimony Because It Would Be Based On Hearsay

The Court should also preclude Ms. Namburete's testimony because, given her lack of personal knowledge of the events, it appears to be based entirely on hearsay, namely, what she has read in the newspapers. The purpose of the rule against hearsay is to "prevent[] the admission of unreliable evidence at trial." *Chambo v. Time Warner Cable*, No. 11 Civ. 09555, 2013 U.S. Dist. LEXIS 185966, at \*23, n.3 (S.D.N.Y. Dec. 20, 2013); see also *Davis v. City of N.Y.*, 959 F. Supp. 2d 427, 438 (S.D.N.Y. 2013) (Reliability is of "central importance" to the admissibility of hearsay evidence.)

November 5, 2019
Page 11

Except in a few delineated instances, the Federal Rules of Evidence preclude hearsay statements from being admitted into evidence, because hearsay statements lack any "indicia of trustworthiness." *Amerisource Corp. v. RxUSA Int'l Inc.*, No. 02 Civ. 2514, 2009 WL 235648, at *8 (E.D.N.Y. Jan. 30, 2009) (citing *U.S. v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000)). "The principal vice of hearsay evidence is that it offers the opponent no opportunity to cross examine the declarant on the statement that establishes the declared fact." *United States v. Reyes*, 18 F.3d 65, 69 (2d Cir. 1994).

Under the Federal Rules of Evidence, only experts are permitted to base their testimony on hearsay sources. Fed. R. Evid. 703. Ms. Nambuerte, however, is not an expert. To the contrary, she is an activist who was not present for any of the relevant events. Indeed, Ms. Namburete's proffered testimony that "none of the companies are operational," the companies have generated "no revenue" and that there has been "no benefit to Moz[ambique] from the boats" does not appear to be based on any sort of empirical data and is actually contrary to established fact. *See*, *e.g.*, *United States v. Tin Yat Chin*, 371 F.3d 31, 40-41 (2d Cir. 2004) (upholding exclusion of expert testimony not supported by data or facts in the evidentiary record); *United States v. Sayre*, 434 F. App'x 622, 624 (9th Cir. May 23, 2011) (unpublished) (upholding exclusion of expert testimony not based upon any empirical data or methodology, but mere knowledge and experience).

Finally, testimony by Ms. Namburete concerning the legality of the EMATUM loan will lead only to a time-consuming and unnecessary mini-trial on the legality of the loans. As Ms. Leemhuis testified, the guarantee was governed by English law, and Ms. Namburete is not an English lawyer. (Tr. 1979.) For that reason as well, she is not qualified to testify regarding the legality of the guarantee. Furthermore, the Republic of Mozambique has explained publicly that it believes the EMATUM guarantee is binding and reached agreement with Eurobond holders this week, on very

11

November 5, 2019
Page 12

favorable terms, in which the maturity of the loan was extended to 2031 (8 years longer than the existing Eurobond) and the interest rate was lowered to 5% until September 2023, and 9% thereafter. Ms. Namburete's testimony would serve only to confuse the jurors in that it suggests the Guarantee is invalid, when in fact, the Republic of Mozambique is proceeding on the basis that it is valid.

3. <u>The Court Should Preclude Ms. Namburete's Testimony Because It Would Be Unduly Prejudicial.</u>

Finally, the Court should preclude Ms. Namburete's testimony under Rule 403. As described above, Ms. Namburete's testimony has no probative value, but even if it held some marginal value, it is unduly prejudicial. The likelihood that it would unfairly prejudice Mr. Boustani's defense and mislead the jury about what this case is actually about—alleged deception of sophisticated Investment Funds—far outweighs whatever marginal value the testimony might possess—especially given that Mr. Boustani has no ability, given the lack of disclosure, to call appropriate rebuttal witnesses to counter Ms. Nambuete's testimony with alternative opinions. Although we agree that victim impact testimony of the type that the Government apparently intends to elicit through Ms. Namburete could be appropriate at the sentencing phase of a trial, it is not appropriate at this stage, when the question for the jury is whether the Government has proven the statutory elements of the charged offenses beyond a reasonable doubt. Moreover, introducing such testimony at this time would threaten to usurp the role of Your Honor in this trial phase – the prosecutor's attempts to introduce Ms. Namburete's testimony will undoubtedly confuse the jury as to the appropriate authority **in this trial** on the law of Mozambique. The only appropriate authority is Your Honor, but Ms. Namburete's testimony would improperly confuse that question and usurp the role of the Court.

November 5, 2019
Page 13

       For all of these reasons, we respectfully request that the Court preclude Ms. Namburete's testimony and thank the Court for its consideration of this issue.

Respectfully submitted,

_____/s/_____
Randall W. Jackson
Michael S. Schachter

cc: (by ECF)

AUSA Mark E. Bini
AUSA Hiral Mehta