1370

1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2    ------------------------------x
                                      18-CR-681(WFK)
3    UNITED STATES OF AMERICA,
                                      United States Courthouse
4              Plaintiff,            Brooklyn, New York

5              -against-            October 25, 2019
                                     9:30 a.m.
6    JEAN BOUSTANI,

7              Defendant.

8    ------------------------------x

9            TRANSCRIPT OF CRIMINAL CAUSE FOR TRIAL
            BEFORE THE HONORABLE WILLIAM F. KUNTZ, II
10                UNITED STATES DISTRICT JUDGE

11
     APPEARANCES
12
     For the Government:       UNITED STATES ATTORNEY'S OFFICE
13                             Eastern District of New York
                               271 Cadman Plaza East
14                             Brooklyn, New York 11201
                               BY:  MARK E. BINI
15                                  HIRAL D. MEHTA
                                    MARGARET MOESER
16                             Assistant United States Attorneys

17
     For the Defendant:        WILLKIE FARR & GALLAGHER LLP
18                             787 Seventh Avenue
                               New York, New York 10019-6099
19                             BY:  MICHAEL STEVEN SCHACHTER, ESQ.
                                    CASEY ELLEN DONNELLY, ESQ.
20                                  PHILIP FRANK DiSANTO, ESQ.
                                    RANDALL WADE JACKSON
21

22   Court Reporter:          LINDA D. DANELCZYK, RPR, CSR, CCR
                               Phone:  718-613-2330
23                             Email:  LindaDan226@gmail.com

24

25   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                    1371

1          (In open court; Jury not present.)

2          THE COURTROOM DEPUTY:  All rise.

3          The Honorable William F. Kuntz, II is now presiding.

4    Criminal cause for Trial, Docket Number 18-CR-681, USA versus

5    Boustani.

6          Counsel, please state your appearances for the

7    record.

8          MR. BINI:  Mark Bini, Hiral Mehta, Margaret Moeser,

9    Lillian DiNardo, and Special Agent Angela Tassone for the

10   United States.  Good morning, Your Honor.

11         THE COURT:  Good morning, Counsel.

12         MR. MEHTA:  Good morning, Your Honor.

13         THE COURT:  You may be seated.  We have your

14   appearances.

15         Ladies and gentlemen, in the public, you may be

16   seated as well.

17         MR. JACKSON:  Good morning, Your Honor.  Randall

18   Jackson on behalf of Mr. Boustani.

19         THE COURT:  Good morning.  You may be seated,

20   Mr. Jackson.

21         MR. SCHACHTER:  Good morning, Your Honor.  Michael

22   Schachter on behalf of Mr. Boustani.

23         THE COURT:  Good morning, Mr. Boustani.  Welcome

24   back.

25         MR. BOUSTANI:  Good morning, Your Honor.

*David R. Roy, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                          1372

1          THE COURT:  You may be seated.

2          MR. BOUSTANI:  Thank you, Your Honor.

3          MS. DONNELLY:  Good morning, Your Honor.  Casey

4   Donnelly on behalf of Mr. Boustani.

5          THE COURT:  Good morning, Ms. Donnelly.

6          MR. DISANTO:  Good morning, Your Honor.  Philip

7   DiSanto on behalf of Mr. Boustani.

8          THE COURT:  Good morning.  You may be seated.

9          MR. DISANTO:  Thank you.

10          MR. MCLEOD:  Good morning, Your Honor.  Ray McLeod

11   on behalf of Mr. Boustani.

12          THE COURT:  Good morning, sir.  You may be seated.

13          All right.  Do we have any procedural issues to

14   address before we bring in the jury?

15          MR. BINI:  No, Your Honor.

16          One-- actually one question, which is at this time

17   when the jury comes in, Trial Attorney Margaret Moeser will

18   seek to admit a number of certified business records and then

19   we'll call or next witness.

20          May she take the podium in order to seek the

21   admission of the business records?

22          THE COURT:  Yes, of course.

23          MS. MOESER:  Thank you, Your Honor.

24          MR. BINI:  Okay.  Thank you, Your Honor.

25          THE COURT:  Thank you.

PROCEEDINGS                    1373

1     Are these, hopefully being admitted without

2  opposition, or have you shared them with your adversary, or

3  are we just going to wait and find out how they feel about it?

4     MS. MOESER:  Your Honor, we have shared them with

5  our adversary.  There are a few objections.  We'll go through

6  the ones that are not objected to first, and deal with the

7  objections, Your Honor.

8     THE COURT:  At a sidebar?

9     MS. MOESER:  Yes, Your Honor.

10     THE COURT:  Okay.  Thank you.

11     Is that acceptable?

12     MR. JACKSON:  Yes, Your Honor.

13     THE COURT:  All right.  Thank you.

14     MR. BINI:  Thank you.

15     THE COURT:  All right.  Now, if there is nothing

16  else, we'll now bring the jury in.

17     MR. BINI:  Thank you, Your Honor.

18     THE COURT:  Thank you.

19     (Pause in proceedings.)

20     (Jury enters the courtroom.)

21     (Jury present.)

22     THE COURT:  Good morning, Ladies and Gentlemen of

23  the Jury.  Welcome back.  Again, thank you for your

24  promptness.  For Friday, I assure you we'll really have a hard

25  stop at 5:00 o'clock on Friday, so no worries.  Please be

PROCEEDINGS                          1374

1    seated.

2              Ladies and Gentlemen the public, you may be seated

3    as well.

4              While you were waiting in jury room, Ladies and

5    Gentlemen of the Jury, to, shall we say, expedite and make a

6    bit more efficient the introduction of some documents, the

7    lawyers and I, as my Texas partners used to say when I was in

8    private practice, "conducted some business together."

9              And we're now going to have Counsel introduce a

10   number of agreed-upon certified business records and other

11   documents.  And then there are a few that, alas, we will have

12   to have a sidebar on.  But we are mindful of your time, as I

13   told you we would be, and so some of the time you are spending

14   in the jury room, we are helping to move matters along.

15             So with that, Counsel, would you please state your

16   name for the jury.

17             MS. MOESER:  Yes, sir.

18             THE COURT:  This is your first time up and then

19   proceed with the documents.

20             MS. MOESER:  Good morning.

21             THE JURY:  Good morning.

22             MS. MOESER:  I'm Margaret Moeser, trial attorney for

23   the Department of Justice.

24             At this time, Your Honor, the Government would seek

25   to offer a number of exhibits pursuant to Federal Rule of

PROCEEDINGS                                    1375

 1   Evidence 8036 and 90211 and 18 U.S.C. 3505.

 2              THE COURT:  And just so the jury understands, tell

 3   them what 80 --

 4              MS. MOESER:  Your Honor, 8036 is the business

 5   records exception to hearsay; 90211 is the self-authenticated

 6   documents; and 18 U.S.C. 3505 are foreign business records.

 7              THE COURT:  Very good.  So let's do them one at a

 8   time.

 9              MS. MOESER:  Yes, Your Honor.  The Government seeks

10   to admit Government's Exhibit Number 1.

11              THE COURT:  Any objection?

12              MS. DONNELLY:  No objection.

13              THE COURT:  Admitted.

14              (Government Exhibit 1, was received in evidence.)

15              MS. MOESER:  The Government seeks to admit

16   Government's Exhibit Number 8.

17              THE COURT:  Any objection?

18              MS. DONNELLY:  No objection.

19              THE COURT:  Admitted.

20              (Government Exhibit 8, was received in evidence.)

21              MS. MOESER:  Government's Exhibit Number 10.

22              THE COURT:  Any objection?

23              MS. DONNELLY:  No objection.

24              THE COURT:  Admitted.

25              (Government Exhibit 10, was received in evidence.)

PROCEEDINGS                        1376

1        MS. MOESER:  Government's Exhibit Number 29.

2        THE COURT:  Any objection?

3        MS. DONNELLY:  No objection.

4        THE COURT:  Admitted.

5        (Government Exhibit 29, was received in evidence.)

6        MS. MOESER:  Government's Exhibit Number 31.

7        THE COURT:  Any objection?

8        MS. DONNELLY:  No objection.

9        THE COURT:  Admitted.

10       (Government Exhibit 31, was received in evidence.)

11       MS. MOESER:  Government's Exhibit 37.

12       THE COURT:  Any objection?

13       MS. DONNELLY:  No objection.

14       THE COURT:  Admitted.

15       (Government Exhibit 37, was received in evidence.)

16       MS. MOESER:  Government's Exhibit Number 38.

17       THE COURT:  Any objection?

18       MS. DONNELLY:  No objection.

19       THE COURT:  Admitted.

20       (Government Exhibit 38, was received in evidence.)

21       MS. MOESER:  Government's Exhibit Number 48.

22       THE COURT:  Any objection?

23       MS. DONNELLY:  No objection.

24       THE COURT:  Admitted.

25       (Government Exhibit 48, was received in evidence.)

PROCEEDINGS                        1377

1          MS. MOESER:  Government's Exhibit Number 50.

2          THE COURT:  Any objection?

3          MS. DONNELLY:  No objection.

4          THE COURT:  Admitted.

5          (Government Exhibit 50, was received in evidence.)

6          MS. MOESER:  Government's Exhibit 57.

7          THE COURT:  Any objection?

8          MS. DONNELLY:  No objection.

9          THE COURT:  Admitted.

10         (Government Exhibit 57, was received in evidence.)

11         MS. MOESER:  Government's Exhibit Number 58.

12         THE COURT:  Any objection?

13         MS. DONNELLY:  No objection.

14         THE COURT:  Admitted.

15         (Government Exhibit 58, was received in evidence.)

16         MS. MOESER:  Government's Exhibit Number 79.

17         THE COURT:  Any objection?

18         MS. DONNELLY:  No objection.

19         THE COURT:  Admitted.

20         (Government Exhibit 79, was received in evidence.)

21         MS. MOESER:  Government's Exhibit Number 115.

22         THE COURT:  Any objection?

23         MS. DONNELLY:  No objection.

24         THE COURT:  Admitted.

25         (Government Exhibit 115, was received in evidence.)

PROCEEDINGS                    1378

1        MS. MOESER:  Government's Exhibit Number 117.

2        THE COURT:  Any objection?

3        MS. DONNELLY:  No objection.

4        THE COURT:  Admitted.

5        (Government Exhibit 117, was received in evidence.)

6        MS. MOESER:  Government's Exhibit Number 118.

7        THE COURT:  Any objection?

8        MS. DONNELLY:  No objection.

9        THE COURT:  Admitted.

10       (Government Exhibit 118, was received in evidence.)

11       MS. MOESER:  Government's Exhibit Number 119.

12       THE COURT:  Any objection?

13       MS. DONNELLY:  No objection.

14       THE COURT:  Admitted.

15       (Government Exhibit 119, was received in evidence.)

16       MS. MOESER:  Government's Exhibit Number 207.

17       THE COURT:  Any objection?

18       MS. DONNELLY:  No objection.

19       THE COURT:  Admitted.

20       (Government Exhibit 207, was received in evidence.)

21       MS. MOESER:  Government's Exhibit Number 211.

22       THE COURT:  Any objection?

23       MS. DONNELLY:  No objection.

24       THE COURT:  Admitted.

25       (Government Exhibit 211, was received in evidence.)

PROCEEDINGS                              1379

1           MS. MOESER:  Government's Exhibit Number 212.

2           THE COURT:  Any objection?

3           MS. DONNELLY:  No objection.

4           THE COURT:  Admitted.

5           (Government Exhibit 212, was received in evidence.)

6           MS. MOESER:  Government's Exhibit Number 215.

7           THE COURT:  Any objection?

8           MS. DONNELLY:  No objection.

9           THE COURT:  Admitted.

10          (Government Exhibit 215, was received in evidence.)

11          MS. MOESER:  Government's Exhibit Number 216.

12          THE COURT:  Any objection?

13          MS. DONNELLY:  No objection.

14          THE COURT:  Admitted.

15          (Government Exhibit 216, was received in evidence.)

16          MS. MOESER:  Government's Exhibit Number 222.

17          THE COURT:  Any objection?

18          MS. DONNELLY:  No objection.

19          THE COURT:  Admitted.

20          (Government Exhibit 222, was received in evidence.)

21          MS. MOESER:  Government's Exhibit Number 241.

22          THE COURT:  Any objection?

23          MS. DONNELLY:  No objection.

24          THE COURT:  Admitted.

25          (Government Exhibit 241, was received in evidence.)

PROCEEDINGS                                    1380

1              MS. MOESER:  Government's Exhibit Number 249.

2              THE COURT:  Any objection?

3              MS. DONNELLY:  No objection.

4              THE COURT:  Admitted.

5              (Government Exhibit 249, was received in evidence.)

6              MS. MOESER:  Government's Exhibit Number 250.

7              THE COURT:  Any objection?

8              MS. DONNELLY:  No objection.

9              THE COURT:  Admitted.

10             (Government Exhibit 250, was received in evidence.)

11             MS. MOESER:  Government's Exhibit Number 251.

12             THE COURT:  Any objection?

13             MS. DONNELLY:  No objection.

14             THE COURT:  Admitted.

15             (Government Exhibit 251, was received in evidence.)

16             MS. MOESER:  Government's Exhibit Number 252.

17             THE COURT:  Any objection?

18             MS. DONNELLY:  No objection.

19             THE COURT:  Admitted.

20             (Government Exhibit 252, was received in evidence.)

21             MS. MOESER:  Government's Exhibit Number 303.

22             THE COURT:  Any objection?

23             MS. DONNELLY:  No objection.

24             THE COURT:  Admitted.

25             (Government Exhibit 303, was received in evidence.)

PROCEEDINGS                                   1381

1          MS. MOESER:  Government's Exhibit Number 304.

2          THE COURT:  Any objection?

3          MS. DONNELLY:  No objection.

4          THE COURT:  Admitted.

5          (Government Exhibit 304, was received in evidence.)

6          MS. MOESER:  Government's Exhibit Number 306.

7          THE COURT:  Any objection?

8          MS. DONNELLY:  No objection.

9          THE COURT:  Admitted.

10         (Government Exhibit 306, was received in evidence.)

11         MS. MOESER:  Government's Exhibit Number 308.

12         THE COURT:  Any objection?

13         MS. DONNELLY:  No objection.

14         THE COURT:  Admitted.

15         (Government Exhibit 308, was received in evidence.)

16         MS. MOESER:  Government's Exhibit Number 310.

17         THE COURT:  Any objection?

18         MS. DONNELLY:  No objection.

19         THE COURT:  Admitted.

20         (Government Exhibit 310, was received in evidence.)

21         MS. MOESER:  Government's Exhibit Number 314.

22         THE COURT:  Any objection?

23         MS. DONNELLY:  No objection.

24         THE COURT:  Admitted.

25         (Government Exhibit 314, was received in evidence.)

PROCEEDINGS                          1382

1           MS. MOESER:  Government's Exhibit Number 315.

2           THE COURT:  Any objection?

3           MS. DONNELLY:  No objection.

4           THE COURT:  Admitted.

5           (Government Exhibit 315, was received in evidence.)

6           MS. MOESER:  Government's Exhibit Number 1401.

7           THE COURT:  Any objection?

8           MS. DONNELLY:  Just one second.

9           (Pause in proceedings.)

10          MS. DONNELLY:  No objection.

11          THE COURT:  Admitted.

12          (Government Exhibit 1401, was received in evidence.)

13          MS. MOESER:  Government's Exhibit Number 1402.

14          THE COURT:  Any objection?

15          MS. DONNELLY:  No objection.

16          THE COURT:  Admitted.

17          (Government Exhibit 1402, was received in evidence.)

18          MS. MOESER:  Government's Exhibit Number 1834.

19          THE COURT:  Any objection?

20          MS. DONNELLY:  No objection.

21          THE COURT:  Admitted.

22          (Government Exhibit 1834, was received in evidence.)

23          MS. MOESER:  Government's Exhibit Number 1836.

24          THE COURT:  Any objection?

25          MS. DONNELLY:  No objection.

PROCEEDINGS                          1383

1          THE COURT:  Admitted.

2          (Government Exhibit 1836, was received in evidence.)

3          MS. MOESER:  Government's Exhibit Number 1840.

4          THE COURT:  Any objection?

5          MS. DONNELLY:  No objection.

6          THE COURT:  Admitted.

7          (Government Exhibit 1840, was received in evidence.)

8          MS. MOESER:  Government's Exhibit Number 1842.

9          THE COURT:  Any objection?

10         MS. DONNELLY:  No objection.

11         THE COURT:  Admitted.

12         (Government Exhibit 1842, was received in evidence.)

13         MS. MOESER:  Government's Exhibit Number 2404-D.

14         THE COURT:  Any objection?

15         MS. DONNELLY:  No objection.

16         THE COURT:  Admitted.

17         (Government Exhibit 2404-D, was received in

18    evidence.)

19         MS. MOESER:  Government's Exhibit 2433.

20         THE COURT:  Any objection?

21         MS. DONNELLY:  Objection.

22         THE COURT:  And what's the number again on that one?

23         MS. MOESER:  2433.

24         THE COURT:  2433?

25         MS. MOESER:  Yes, Your Honor.

PROCEEDINGS                          1384

1          THE COURT:  After we do the collective, we'll

2   discuss each of these over at sidebar.

3          MS. MOESER:  Yes.

4          THE COURT:  The ones that has been admitted, Ladies

5   and Gentlemen of the Jury, when it comes time for you to see

6   them, they won't have to ask for permission to publish them,

7   they won't have to have a discussion, they won't have to lay

8   foundation, you will just see it.

9          All right.  Go ahead.

10          MS. MOESER:  Government's Exhibit 2732B.

11          MS. DONNELLY:  No objection.

12          THE COURT:  It's admitted.

13          (Government Exhibit 2732B, was received in

14   evidence.)

15          MS. MOESER:  Government's Exhibit 3013B, 3013C, and

16   3013D.

17          MS. DONNELLY:  No objection.

18          THE COURT:  They're admitted.

19          (Government Exhibit 3013B, 3013C, and 3013D, were

20   received in evidence.)

21          MS. MOESER:  Government's Exhibit 3016B.

22          MS. DONNELLY:  No objection.

23          THE COURT:  Admitted.

24          (Government Exhibit 3016B, was received in

25   evidence.)

PROCEEDINGS                                    1385

1          MS. MOESER:  Government's Exhibit 5103.

2          MS. DONNELLY:  Objection.

3          THE COURT:  Again, the number?

4          MS. MOESER:  5103, Your Honor.

5          THE COURT:  All right.  We'll talk about that at

6    sidebar.

7          MS. MOESER:  Government's Exhibit 5104.

8          MS. DONNELLY:  Objection.

9          THE COURT:  Sidebar.

10         MS. MOESER:  Okay.

11         Government's Exhibit 401A.

12         MS. DONNELLY:  Objection.

13         THE COURT:  Sidebar.

14         MS. MOESER:  Government's Exhibit 501.

15         MS. DONNELLY:  Objection.

16         THE COURT:  Sidebar.

17         MS. MOESER:  Government's Exhibit 506.

18         MS. DONNELLY:  Objection.

19         THE COURT:  Sidebar.

20         MS. MOESER:  Government's Exhibit 510.

21         MS. DONNELLY:  Objection.

22         THE COURT:  Sidebar.

23         MS. MOESER:  Government's Exhibit 510A.

24         MS. DONNELLY:  Objection.

25         THE COURT:  Sidebar.

PROCEEDINGS                                    1386

1           MS. MOESER:  Government's Exhibit 511.

2           MS. DONNELLY:  Objection.

3           THE COURT:  Sidebar.

4           MS. MOESER:  Government's Exhibit 511A.

5           THE COURT:  Sidebar.

6           MS. MOESER:  Government's Exhibit -- Your Honor, I

7    believe the rest are exhibits that the defendant has

8    objections to, if you would like to go to sidebar now, or

9    would you like me to read them?

10          THE COURT:  No.  I would like for you to read them

11   out, so they can state their objections on the record for my

12   friends on the 17th floor, and then we will talk about it over

13   at the sidebar and then we will rule with respect to each of

14   them.

15          MS. MOESER:  Of course, Your Honor.

16          THE COURT:  But go ahead.

17          MS. MOESER:  Government's Exhibit 511.

18          MS. DONNELLY:  Objection.

19          MS. MOESER:  Government's Exhibit 511A.

20          MS. DONNELLY:  Objection.

21          MS. MOESER:  Government's Exhibit 512.

22          MS. DONNELLY:  Objection.

23          MS. MOESER:  Government's Exhibit 512A.

24          MS. DONNELLY:  Objection.

25          MS. MOESER:  Government's Exhibit 514.

PROCEEDINGS                                    1387

1          MS. DONNELLY:  Objection.

2          MS. MOESER:  Government's Exhibit 515.

3          MS. DONNELLY:  Objection.

4          MS. MOESER:  Government's Exhibit 516.

5          MS. DONNELLY:  Objection.

6          MS. MOESER:  Government's Exhibit 517.

7          MS. DONNELLY:  Objection.

8          MS. MOESER:  Government's Exhibit 317A.

9          MS. DONNELLY:  Objection.

10         MS. MOESER:   Government's Exhibit 518.

11         MS. DONNELLY:  Objection.

12         MS. MOESER:  Government's Exhibit 519.

13         MS. DONNELLY:  Objection.

14         MS. MOESER:  Government's Exhibit 520.

15         MS. DONNELLY:  Objection.

16         MS. MOESER:  Government's Exhibit 523.

17         MS. DONNELLY:  Objection.

18         MS. MOESER:  Government's Exhibit 529.

19         MS. DONNELLY:  Objection.

20         MS. MOESER:  Government's Exhibit 530.

21         MS. DONNELLY:  Objection.

22         MS. MOESER:  Government's Exhibit 531.

23         MS. DONNELLY:  Objection.

24         MS. MOESER:  Government's Exhibit 532.

25         MS. DONNELLY:  Objection.

PROCEEDINGS                          1388

1        MS. MOESER:  Government's Exhibit 533.

2        MS. DONNELLY:  Objection.

3        MS. MOESER:  Government's Exhibit 534.

4        MS. DONNELLY:  Objection.

5        MS. MOESER:  Government's Exhibit 535?

6        MS. DONNELLY:  Objection.

7        MS. MOESER:  Government's Exhibit 536.

8        MS. DONNELLY:  Objection.

9        MS. MOESER:  Government's Exhibit 537.

10        MS. DONNELLY:  Objection.

11        MS. MOESER:  Government's Exhibit 538.

12        MS. DONNELLY:  Objection.

13        MS. MOESER:  Government's Exhibit 539.

14        MS. DONNELLY:  Objection.

15        MR. MEHTA:  Government's Exhibit 540.

16        MS. DONNELLY:  Objection.

17        MS. MOESER:  Government's Exhibit 541.

18        MS. DONNELLY:  Objection.

19        MS. MOESER:  Government's Exhibit 542.

20        MS. DONNELLY:  Objection.

21        MS. MOESER:  Government's Exhibit 545.

22        MS. DONNELLY:  Objection.

23        MS. MOESER:  Government's Exhibit 546.

24        MS. DONNELLY:  Objection.

25        MS. MOESER:  Government's Exhibit 547.

PROCEEDINGS                                    1389

1              MS. DONNELLY:  Objection.

2              MS. MOESER:  Government's Exhibit 548.

3              MS. DONNELLY:  Objection.

4              MS. MOESER:  Government's Exhibit 549.

5              MS. DONNELLY:  Objection.

6              MS. MOESER:  Government's Exhibit 550.

7              MS. DONNELLY:  Objection.

8              MS. MOESER:  Government's Exhibit 601.

9              MS. DONNELLY:  Objection.

10             MS. MOESER:  Government's Exhibit 610.

11             MS. DONNELLY:  Objection.

12             MS. MOESER:  Government's Exhibit 651.

13             MS. DONNELLY:  Objection.

14             MS. MOESER:  Government's Exhibit 901.

15             MS. DONNELLY:  Objection.

16             MS. MOESER:  Government's Exhibit 951.

17             MS. DONNELLY:  Objection.

18             MS. MOESER:  Government's Exhibit 1108.

19             MS. DONNELLY:  Objection.

20             MS. MOESER:  Government's Exhibit 1111.

21             MS. DONNELLY:  Objection.

22             MS. MOESER:  Government's Exhibit 1112.

23             MS. DONNELLY:  Objection.

24             MS. MOESER:  Government's Exhibit 1120.

25             MS. DONNELLY:  Objection.

PROCEEDINGS                                    1390

1              MS. MOESER:  Government's Exhibit 1123.

2              MS. DONNELLY:  Objection.

3              MS. MOESER:  Government's Exhibit 1127.

4              MS. DONNELLY:  Objection.

5              MS. MOESER:  Government's Exhibit 1134.

6              MS. DONNELLY:  Objection.

7              MS. MOESER:  Government's Exhibit 1136.

8              MS. DONNELLY:  Objection.

9              MS. MOESER:  Government's Exhibit 1301.

10             MS. DONNELLY:  Objection.

11             MS. MOESER:  Government's Exhibit 1301A.

12             MS. DONNELLY:  No objection.

13             (Government Exhibit 1301A, was received in

14     evidence.)

15             MS. MOESER:  Government's Exhibit 1386.

16             MS. DONNELLY:  Objection.

17             MS. MOESER:  1387.

18             MS. DONNELLY:  Objection.

19             MS. MOESER:  1388.

20             MS. DONNELLY:  Objection.

21             MS. MOESER:  1389.

22             MS. DONNELLY:  Objection.

23             MS. MOESER:  1390.

24             MS. DONNELLY:  Objection.

25             MS. MOESER:  Government's Exhibit 1201.

*David R. Roy, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                          1391

1          MS. DONNELLY:  Objection.

2          MS. MOESER:  Government's Exhibit 1201-1.

3          MS. DONNELLY:  Objection.

4          MS. MOESER:  Government's Exhibit 1201-2.

5          MS. DONNELLY:  Objection.

6          MS. MOESER:  Government's Exhibit 1201-3.

7          MS. DONNELLY:  Objection.

8          MS. MOESER:  Government's Exhibit 1201-4.

9          MS. DONNELLY:  No objection.

10          (Government Exhibit 1201-4, was received in

11     evidence.)

12          Received in evidence.)

13          MS. MOESER:  Government's Exhibit 1201A1 through

14     1201A14.

15          MS. DONNELLY:  No objection to any of those.

16          (Government Exhibit 1201A1 through 1201A14, were

17     received in evidence.)

18          MS. MOESER:  Government's Exhibit 1201B1 through

19     1201B6.

20          MS. DONNELLY:  No objection.

21          (Government Exhibit 1201B1 trough 1201B6, were

22     received in evidence.)

23          MS. MOESER:  Government's Exhibit 1201C1 through

24     1201C14.

25          MS. DONNELLY:  No objection.

PROCEEDINGS                          1392

1          (Government Exhibit 1201C1 through 1201C14, were

2    received in evidence.)

3          MS. MOESER:  Government's Exhibit 1201D1 through

4    1201D3.

5          MS. DONNELLY:  No objection.

6          (Government Exhibit 1201D1 through 1201D3, were

7    received in evidence.)

8          MS. MOESER:  Government's Exhibit 1201E1 through

9    1201E22.

10         MS. DONNELLY:  No objection.

11         (Government Exhibit 1201E1 through 120E22, were

12   received in evidence.)

13         Government's Exhibit 1201F1 through 1201F9.

14         MS. DONNELLY:  No objection.

15         (Government Exhibit 1201F1 through 1201F9, were

16   received in evidence.)

17         MS. MOESER:  Government's Exhibit 1201G1 through

18   1201G2.

19         MS. DONNELLY:  No objection.

20         (Government Exhibit 1201G1 through 1201G2, were

21   received in evidence.)

22         MS. MOESER:  Government's Exhibit 1201H1 through

23   1201H7.

24         MS. DONNELLY:  No objection.

25         (Government Exhibit 1201H1 through 1201H7, were

PROCEEDINGS                           1393

1    received in evidence.)

2            MS. MOESER:  Government's Exhibit 2001I1 through

3    1201I18.

4            MS. DONNELLY:  No objection.

5            (Government Exhibit 1201I1 through 1201I18, were

6    received in evidence.)

7            MS. MOESER:  And Government's Exhibit 1201J1 through

8    1201J28.

9            MS. DONNELLY:  No objection.

10           (Government Exhibit 1201J1 through 1201J28, were

11   received in evidence.)

12           MS. MOESER:  And Government's Exhibit 714.

13           MS. DONNELLY:  No objection.

14           (Government Exhibit 714, was received in evidence.)

15           MS. MOESER:  Your Honor, may we approach?

16           THE COURT:  Yes.  We will do at sidebar.  And then,

17   ladies and gentlemen -- I take it these documents will be

18   relevant to the next witness the Government is calling?

19           MS. MOESER:  Yes, they will, Your Honor.

20           THE COURT:  So you will be able to sort out which

21   ones you can and which ones you cannot have before the jury.

22           Is that right?

23           MS. MOESER:  Yes, Your Honor.

24           THE COURT:  All right.

25           So that's what we're going to do, Ladies and

PROCEEDINGS                                    1394

1  Gentlemen of the Jury.  I will try to be both accurate and

2  prompt, and then we will get the next witness in and the

3  testimony will continue smoothly, rather than breaking for

4  every other document, which I think you would probably find

5  annoying, at best.

6            Okay.  White noise machine, please.

7            Sidebar.

8            (Continued on the next page.)

SIDEBAR CONFERENCE                          1395

1      (The following occurred at sidebar.)

2      THE COURT:  Okay.  I believe the first document that

3  was objected to, and hopefully we'll take these seriatim,

4  you'll lead me through, it was 2433; is that correct?

5      MS. MOESER:  Yes, Your Honor.  And --

6      THE COURT:  All right.  Why don't we just do them

7  one at a time for my friends the 17th floor.

8      To the extent that you agree that there's

9  commonality with respect to what they're being offered for and

10 what the objection is, I will make the ruling and then we

11 can -- discuss more about it.  But why don't you start with

12 2433, what is the document?

13     MS. MOESER:  Your Honor, I apologize.  I thought

14 that there was no objection to that.  So if we can put a pin

15 in that and perhaps discuss it with Counsel?

16     THE COURT:  Okay.  So we will put 2433 to the side

17 for now?

18     MS. MOESER:  Yes, that will be great, Your Honor.

19     THE COURT:  All right.  So then the first one will

20 be 5103; is that right?

21     MS. MOESER:  And those as well, Your Honor.  If I

22 can discuss those with Counsel, perhaps we can --

23     THE COURT:  All right.  5103.

24     MS. MOESER:  And 5104, Your Honor.

25     THE COURT:  All right.

*David R. Roy, RPR, CSR, CCR*
*Official Court Reporter*

SIDEBAR CONFERENCE                          1396

1          So then the first one we need to talk about is

2     1401A; is that correct?

3          MS. MOESER:  Yes, Your Honor.

4          MS. DONNELLY:  1401A --

5          THE COURT:  Let me see it.

6          MS. MOESER:  Yes, Your Honor.  I have it right here.

7          THE COURT:  Please just presume that I will to see

8     them --

9          MS. MOESER:  Of course, Your Honor.

10         I have the first page as an example for you.

11         THE COURT:  All right.  Hang on.  Let me take a look

12    at it.

13         MS. MOESER:  All right.  And I have the remainder of

14    the two.

15         MS. DONNELLY:  I have the full one.

16         THE COURT:  Okay.

17         (Pause in proceedings.)

18         THE COURT:  All right.  So what I am looking at is a

19    document, being old school, that bears production numbers DOJ

20    production numbers, VTB 37066.  And it's DOJ Number the last

21    four digits are 7480.  It's from --

22         MS. MOESER:  And it's --

23         THE COURT:  Hang on.

24         MS. MOESER:  I'm sorry, Your Honor.

25         THE COURT:  Hang on.  I used to do this for a

SIDEBAR CONFERENCE                1397

1    living.

2              MS. MOESER:  I apologize.

3              THE COURT:  I promised my law clerks that I wouldn't

4    burden them with much discovery.  That's why God made

5    magistrate judges.

6              It's from someone named Alexis Vaughan and it says,

7    (bloomberg.net), it's a two-paged document.

8              MS. DONNELLY:  Yes.

9              THE COURT:  All right.  Tell me what this document

10   is and why you want it, and then you tell me why you object to

11   it.

12             MS. MOESER:  So, Your Honor, it is a multiple-page

13   document --

14             THE COURT:  Whoa.  Vader.

15             MS. MOESER:  I apologize, Your Honor.

16             THE COURT:  Not Annie Hall, Chris Rock.  Slow it

17   down, Counsel.

18             MS. MOESER:  Of course.

19             It's a multiple-page document.  The remainder of the

20   pages are right here.  They are also DOJ VTB documents and DOJ

21   Bates Numbered documents.

22             THE COURT:  Let me stop you right there.

23             MS. MOESER:  Yes.

24             THE COURT:  What is a DOJ VTB document?

25             MS. MOESER:  I was just reading the Bates Number at

SIDEBAR CONFERENCE                         1398

1    the bottom, Your Honor.  These are documents from VTB Bank.

2              THE COURT:  Okay let me stop you right there.

3              MS. MOESER:  Yes, Your Honor.

4              THE COURT:  The jury's heard a lot about VTB Bank.

5    What is the objection to VTB Bank records coming in, other

6    than we need to have someone with VTB Bank here to

7    authenticate that these are from the files of VTB Bank and

8    maintained in the ordinary course, which I take it the

9    Government would do, thereby lengthening the trial by a day or

10   two.

11             But other than that, is there any objection to the

12   VTB documents?

13             MS. DONNELLY:  Yes.

14             THE COURT:  Okay.  And keep your voice up for the

15   reporter.

16             MS. DONNELLY:  The objection is to the relevancy.

17   These are all trade tickets from VTB salespeople to various

18   traders at various firms selling at -- selling the LPN and

19   OPN.

20             THE COURT:  LPN being?

21             MS. DONNELLY:  The loan participation notes at both

22   the initial offering and then throughout the next three years

23   in the secondary market trades.

24             THE COURT:  Right.

25             MS. DONNELLY:  It's our view that unless we

SIDEBAR CONFERENCE                    1399

1   understand why the particular trader bought or sold the loan

2   purchase agreement, it has no relevance to the this case.

3   There is -- as Your Honor knows, there are 15 million reasons

4   why a trader decides to buy or sell a security on a given day.

5   That is especially true in the secondary market where, you

6   know, they are just trading over-the-counter prices and so

7   they may flip a trade to make a quick 1 million-dollar profit,

8   it has nothing to do with what's in the offerings circular.

9   And if we admit these, we are concerned about the prejudicial

10  impact that the jury is going to assume that all of these

11  trades were somehow prompted by the offerings circular.

12          THE COURT:  Stop right there.  What's your response

13  to that argument?

14          MS. MOESER:  Your Honor, these are the trades that

15  the victims made in the securities.  They are certified

16  business records.  They are not prejudicial in any way, they

17  simply are a record of trading activity.  They have no

18  prejudicial value to the defendant.  They're activity in

19  regularly conducted business and we have some witnesses who

20  will explain these various documents, what they did with these

21  documents.  But the records themselves come in because they

22  are certified business records of regularly conducted

23  activity.

24          THE COURT:  Your concern is that they're going to

25  argue that everyone who traded in these securities read the

SIDEBAR CONFERENCE                    1400

1    allegedly flawed and charitable disclosure statements.

2             Their argument is going to be whether or not they

3    read the documents that was, to use the old school phrase, at

4    a minimum of fraud on the market that is perpetrated by the

5    failures to properly disclose the alleged and admitted, by at

6    least three of the participants, the bribes or kickbacks.  Is

7    that basically what we're talking about?

8             MS. DONNELLY:  Well, it's slightly more complicated

9    than that.

10            Because there have been numerous cases that have

11   said that that fraud on the market theory is not applicable in

12   criminal cases.

13            THE COURT:  Right.

14            MS. DONNELLY:  And so if that's their argument, then

15   for that reason as well, we think these documents --

16            THE COURT:  Is your argument part of the market

17   theory?

18            MR. MEHTA:  No, Your Honor.  Really the purpose of

19   this, as you know, defense counsel has argued that they should

20   not be in the United States of America.  That's been their

21   theme.

22            THE COURT:  These are offshore trades.

23            MR. MEHTA:  Exactly.  These show that these are

24   actually not for trade.

25            THE COURT:  Hang on.  You're offering them to show

SIDEBAR CONFERENCE                    1401

1    that they were transactions in the United States of America?

2              MR. MEHTA:  Right.

3              THE COURT:  And transactions through credit

4    facilities and bank wire facilities in the United States.

5              MR. MEHTA:  Yes, Your Honor, for wire fraud.

6              THE COURT:  All right.  Well, what's your response

7    to the wire fraud argument as opposed to the fraud on the

8    market.

9              MS. DONNELLY:  I think these trade tickets are

10   misleading.

11             THE COURT:  Well, forget about misleading.  But do

12   they show that they were trades through U.S. wire and credit

13   facilities?  For example, let's just talk about this one, be

14   JS418.  What's the U.S. contact on this one?

15             MS. MOESER:  Your Honor, and pardon me for looking

16   over your shoulder.  But this is evidence of a trade executed

17   by people who are in the United States.

18             THE COURT:  Well, show me one that's showing -- in

19   this particular Document 401A, show me the U.S. presence that

20   replaces these.

21             MS. MOESER:  Your Honor, any transaction that goes

22   through a bloomberg.net address, we have a witness who will

23   testify that's it's the transaction that goes through New York

24   and New Jersey.

25             THE COURT:  Okay.  Stop right there.  What's your

SIDEBAR CONFERENCE                1402

1  response to that?

2         MS. DONNELLY:  Well, I guess --

3         THE COURT:  Is that true?

4         MS. DONNELLY:  I don't know that to be true, so --

5         THE COURT:  Well, then, you'll get to challenge it.

6  But the Government is asserting that the bloomberg.net

7  establishes the U.S. trade locus and unless you're telling me

8  that you have reason to believe this is the Lichtenstein

9  bloomberg.net address you can certainly challenge their

10 argument, but I'm going to overrule the objection with respect

11 to the VTB trade.  They're being offered to show U.S.

12 connection wire transfer, so they're going to come in.

13        MS. MOESER:  This is the 401A.

14        THE COURT:  Okay.

15        MR. MEHTA:  They are all contained within 401A.

16        THE COURT:  Okay.  What's next is 401A -- so the

17 objection's overruled.  You have record preserved on that.

18        The next I've got is 501.

19        MR. MEHTA:  Yes, Your Honor, this is Exhibit 501.

20        THE COURT:  Keep your voice up.

21        MS. MOESER:  Yes, Your Honor.  This is a record of

22 trading activity.

23        THE COURT:  What is it being offered for?

24        MS. MOESER:  It is being offered as a business

25 record to show trading activity of one of the investors,

SIDEBAR CONFERENCE                    1403

1    Your Honor, and this record is a certified business record.

2              THE COURT:  Okay.  But where were the trading done?

3              MS. MOESER:  The trades were done in the

4    United States, Your Honor.

5              THE COURT:  Okay.  So again to show U.S. trades.

6              MR. MEHTA:  Yes, Your Honor.

7              THE COURT:  What's the response?

8              MS. DONNELLY:  Where does it say that on this

9    document?

10             THE COURT:  Okay.  Let's see Exhibit GX501.  What

11   shows that this is a U.S. trade?

12             MS. MOESER:  Your Honor, we will have witnesses who

13   will say it's a U.S. trade.

14             THE COURT:  Is there anything on the document that

15   would support that view?

16             MS. MOESER:  Your Honor, that information I believe

17   is not ascertainable from the document itself, but it will

18   come from witness testimony in conjunction with the document.

19             THE COURT:  What witness will you have and what will

20   he or she say?  I want a proffer.  What are they going to say

21   about this document showing that this is a U.S. trade?

22             MR. MEHTA:  Your Honor, these are documents from ICE

23   Canyon.

24             THE COURT:  From ICE Canyon.

25             MR. MEHTA:  We're going to have witnesses Aneesh

SIDEBAR CONFERENCE                    1404

1   Partap and Nathan Sandlin who are going to testify that they

2   were in Los Angeles.

3           THE COURT:  Okay.  So these were through the

4   ICE Canyon Los Angeles folks that subpoenas were dropping all

5   over the place --

6           MR. MEHTA:  Yes, Your Honor.

7           THE COURT:  -- that Magistrate Judge Tiscione was

8   kind enough to point that out.  So, again, ICE Canyon

9   California.  Any response?  Last time I looked my son works or

10  the LASD and they came and went to the Galaxy the other night

11  so I know that was in LA and my wife was even there.  I

12  wasn't.

13          MS. DONNELLY:  I get the two response.

14          THE COURT:  Yes.

15          MS. DONNELLY:  The first is that we don't -- let's

16  hear the testimony where they say that these documents

17  actually came in or that they were actually traded for --

18          THE COURT:  No, no, let me stop you there.

19          The reason we're doing this and not wasting the

20  jury's time is that we have people from ICE Canyon say, hi,

21  I'm ICE Canyon and these are trades.  Either they are U.S.

22  trades or they're not.

23          So if you are telling me you have no reason to say

24  these are not U.S. trades, they're going to come in.

25          MS. DONNELLY:  It's our understanding that the

SIDEBAR CONFERENCE                1405

1   trades were made through an Irish entity.

2           THE COURT:  Well, this is why I'm asking the

3   question.

4           MS. DONNELLY:  Right.

5           THE COURT:  Can you the Government, can you

6   establish that these trades went through the ICE Canyon

7   facility in Los Angeles as opposed to ICE Canyon in Ireland?

8           MS. MOESER:  Yes, Your Honor.  There are traders in

9   Los Angeles who made these trades.

10          THE COURT:  Okay.  I am going to overrule the

11  objection.  It's noted for the record.

12          I used to represent international banks so I get it.

13  Okay?

14          Next.

15          MS. MOESER:  Okay, Your Honor.

16          THE COURT:  The next one I have got is 506.

17          MS. DONNELLY:  So, Your Honor, 506 --

18          THE COURT:  Go ahead.

19          MS. DONNELLY:   -- this would be an example of the

20  further objection, the same objection.

21          THE COURT:  All right.  Then I will make the same

22  ruling on the same basis and you have your record preserved

23  for 506.

24          510.

25          MS. MOESER:  All right.  So, Your Honor, I think

SIDEBAR CONFERENCE                    1406

1    this goes for Exhibits 510 through 550.

2              THE COURT:  Okay.  Hang on.  510, same objection?

3              MS. DONNELLY:  Give me one moment.  We're going to

4    do this chronologically.

5              So you have --

6              THE COURT:  Well, what is 510.

7              Let's do it old school.

8              MS. MOESER:  510, Your Honor, I have it right here.

9    Here's 510.

10             THE COURT:  Okay.  What is it?

11             MR. MEHTA:  It is a document, a communication

12   between Credit Suisse and ICE Canyon, Your Honor.

13             THE COURT:  Did it come through the U.S.?

14             MS. MOESER:  Yes, it did, Your Honor, and Ms. Partap

15   is located in Los Angeles and Dan Jurkowicz is located in

16   New York.

17             THE COURT:  All right.  New York, Los Angeles, I'm

18   going to let it in.

19             MS. MOESER:  Okay.

20             THE COURT:  Objection preserved.

21             That's 510.  510A.

22             MS. MOESER:  510A is the attachment, Your Honor.

23             THE COURT:  Okay.  Same objection, same ruling,

24   record preserved.

25             MS. MOESER:  Right.

SIDEBAR CONFERENCE                    1407

1              THE COURT:  All right.  511.

2              MS. MOESER:  511 is a similar communication,

3    Your Honor.

4              THE COURT:  Through a state facility --

5              MS. MOESER:  Yes.

6              THE COURT:  -- a United States facility?

7              MS. MOESER:  Yes, it's an e-mail.  Yes, Your, Honor.

8              THE COURT:  Okay.

9              MS. MOESER:  From Dominic Schultens.

10             THE COURT:  Same objection, same ruling.

11             512?

12             MS. MOESER:  512, Your Honor, is the same kind of

13   document.

14             THE COURT:  U.S. connection?

15             MS. MOESER:  Yes, Your Honor.

16             THE COURT:  Same objection, same ruling.

17             514 -- 512A.

18             MS. MOESER:  512A is the attachment, Your Honor.

19   It's quite a lengthy document.

20             THE COURT:  Okay.  Same objection and same ruling.

21             14.

22             MS. MOESER:  514, Your Honor, is the same situation,

23   Your Honor.

24             THE COURT:  All right.

25             MS. MOESER:  It's an e-mail from ICE Canyon.

SIDEBAR CONFERENCE                    1408

1          THE COURT:  Same objection, same ruling.

2          MS. MOESER:  515.  Give me a moment.

3          (Pause in proceedings.)

4          THE COURT:  515, same objection?

5          MS. MOESER:  Same objection.

6          THE COURT:  What is 515.

7          MS. MOESER:  515, Your Honor, is a communication

8    again through the United States again through ICE Canyon.

9          THE COURT:  Okay.  Same ruling.

10          517.

11          MS. MOESER:  517, Your Honor.

12          THE COURT:  Same.

13          MS. MOESER:  Same.

14          MS. DONNELLY:  The ruling is the same.

15          MS. MOESER:  Yeah.

16          THE COURT:  Same objection.

17          MS. MOESER:  I think, Your Honor, Your Honor as

18    Ms. Donnelly suggested all the way through 550.

19          THE COURT:  All right.  Just so the record is clear

20    517, 517A, 518, 519, 520, 523, 529, same objections, same

21    ruling.

22          MS. DONNELLY:  There's one --

23          THE COURT:  I'm sorry.

24          MS. DONNELLY:  -- exception.  520 that's a 403

25    objection, too.

*David R. Roy, RPR, CSR, CCR*
*Official Court Reporter*

SIDEBAR CONFERENCE                    1409

1          MR. BINI:  520?

2          MS. DONNELLY:  520.

3          THE COURT:  You've got a 403 objection to 520?

4          MS. DONNELLY:  Yes.

5          THE COURT:  What is your objection?

6          MS. DONNELLY:  Forwarding a translation, even in the

7    body of the e-mail they said this is not a good translation,

8    it's just Google translate.  So in our view that should not

9    come in unless it's a certified translation.

10         THE COURT:  This is not been certified?

11         MS. MOESER:  Your Honor, we're happy to prepare a

12   certified translation to 520 to resolve any concern by

13   Counsel.

14         THE COURT:  Okay.  Once we have that then I will

15   admit it over the objection.

16         MS. MOESER:  Great.

17         THE COURT:  Now next.

18         MS. MOESER:  I think we continue the 500 series,

19   Your Honor, with the same objection.

20         THE COURT:  Same objection, same ruling.  So that's

21   529, 530, 531, 532, 533, 534, 535, 536, 537, 538, 539, 540,

22   541, 542, 545, 546, 547, 548, 549, 550; same objection, same

23   ruling.

24         MS. MOESER:  Yes.

25         Your Honor, I think you may have missed 523.

*David R. Roy, RPR, CSR, CCR*
*Official Court Reporter*

SIDEBAR CONFERENCE                    1410

```
 1              THE COURT:  Yes.  523.  Yes, same objection.

 2              MS. MOESER:  Okay.

 3              THE COURT:  Same ruling.

 4              So now we're up to?

 5              MS. MOESER:  601, I believe, Your Honor.

 6              THE COURT:  Yes.

 7              MS. MOESER:  So here is 601, Your Honor.

 8              THE COURT:  Is this ICE Canyon?

 9              MS. MOESER:  This is not ICE Canyon, Your Honor,

10      this is for Lazard -- I'm sorry, Alliance Bernstein,

11      Your Honor.

12              THE COURT:  I'm sorry.  U.S. entity?

13              MR. MEHTA:  Yes, Your Honor, U.S. entity in

14      New York.

15              THE COURT:  Okay.  U.S. entity in New York, that's

16      601 same objection?

17              MR. SCHACHTER:  Was this prepared for the

18      Government?

19              MS. DONNELLY:  May I?

20              MS. MOESER:  I'm sorry, Your Honor, this is

21      Alliance.

22              THE COURT:  So what is 601?

23              MS. MOESER:  It is a record of trading activity by

24      Alliance Bernstein showing trades in the United States through

25      United States facilities.
```

SIDEBAR CONFERENCE                    1411

1           THE COURT:  Same objection, same ruling.

2           MS. DONNELLY:  Slightly different objection.

3           THE COURT:  Yes.

4           MS. DONNELLY:  We don't believe this is a business

5    record.  We think this was prepared at the request of

6    the Government.

7           THE COURT:  Let me stop you right there.

8           Is this a business record or did you guys -- the

9    Government request --

10          MS. MOESER:  We subpoenaed records of trade,

11   Your Honor, and we received this from record from Alliance

12   Bernstein, and then we received this certification of the

13   record.

14          THE COURT:  Certification.  This is an affidavit by

15   a person named T-Y-E-N-A, Glacias.  It states that she is a

16   legal assistant for Alliance Bernstein, has personal knowledge

17   of the matters set forth.  Alliance Bernstein received this

18   subpoena from the United States Government on May 28th of 2019

19   in this case, that pursuant to the subpoena Alliance Bernstein

20   produced, attached a spreadsheet through its counsel.  The

21   responsive documents were maintained by Alliance Bernstein in

22   the ordinary course of business and it's the ordinary course

23   of Alliance Bernstein to make such records.  The document

24   produced were exact duplicates of the originals.  But see

25   that, I think that that qualifies as a business record so

SIDEBAR CONFERENCE                    1412

1    unless there's something else in light of that affidavit from

2    the in-house legal assistant, I will overrule the objection.

3    It's not as if the Government directed or the litigation

4    attorney directed the creation of this document.

5           MS. DONNELLY:  So it's our understanding that the

6    subpoena asked Alliance Bernstein to prepare the summary chart

7    as part of the subpoena returns.

8           THE COURT:  Yes, but the point is rather than come

9    in with a million pieces of paper, isn't it more effective for

10   both prosecution and defense to have a summary where you have

11   the indicia of reliability from the company, not a party to

12   the litigation, that this was a fair and accurate compilation

13   of their business records.

14          I mean, I could, I suppose, to no one advantage

15   require the company to bring in a truck load of documents but

16   I used to review that as a first year associate while the

17   partners I worked for got very wealthy by doing that, and then

18   I became a partner, so I'm not complaining about that.

19          MR. SCHACHTER:  Your Honor, just one note on this.

20   What's inaccurate about this is it does not reflect the

21   interest payments that were received.  So it is an inaccurate

22   and misleading description of the --

23          THE COURT:  I'll let you get in the weeds on that in

24   terms of pointing out the limitations.  This isn't a damages

25   case, to be blunt.  This isn't about whether or not the exact

SIDEBAR CONFERENCE                          1413

1   interest amounts are reflected and being that I would expect

2   the Government to point out on this chart that as far as you

3   know they're not talking about a financial recovery.  If it's

4   a different kind of case, I might be a little more

5   sympathetic.  I'm going to overrule the objection on that

6   basis.  If you have your exception.  What are we up to?

7            MS. MOESER:  We're up to 610.

8            THE COURT:  Well, let's make sure.  529, 530, 531.

9            MS. MOESER:  We went through all of these.

10           THE COURT:  All right.  So we are up to what?

11           MS. MOESER:  610, Your Honor.  It's a very lengthy

12   request, if I could, bring it up on the street for you.

13           THE COURT:  What is it?

14           MS. MOESER:  It is another record of Alliance

15   Bernstein.  I thinks defense has the lengthy spreadsheets.

16           THE COURT:  Okay.  All right.  Bottom line, what's

17   the objection to it?

18           MS. DONNELLY:  It's lengthy, it's filled with trades

19   that there will be no testimony on.  It's not clear to me that

20   any of these trades are predicated by -- I'm not sure where

21   these trades were made.

22           THE COURT:  Hang on.  Where were they made?

23           MR. MEHTA:  New York, Your Honor.

24           THE COURT:  Now you know.

25           MR. MEHTA:  And we'll have a witness to testify to

SIDEBAR CONFERENCE                    1414

1    that.

2            THE COURT:  They're made in New York.

3            MS. DONNELLY:  We wouldn't have an objection to this

4    document coming in as soon as that testimony is established.

5            THE COURT:  Well, you will lay that as a foundation,

6    you'll say here's a document that's been marked and you're X,

7    Y, Z, the banker, and are these documents that look like

8    trades were made in New York, right?  We'll do it that way.

9            MR. MEHTA:  Yes, Your Honor, but we submit that this

10   should come into evidence right now because we would like to

11   be able to use it with expert witnesses they were trades --

12   use this with an expert who is going to come in before the

13   banker comes in.

14           THE COURT:  All right.  Let me shop you right there.

15   I don't know the sequence.

16           MS. MOESER:  Of course.

17           THE COURT:  Is there any reason to question the

18   legitimacy of what the Government has represented that these

19   are New York trade record and that the banker will come

20   forward in the course of the trial to say these are New York

21   records; is there any good faith basis to challenge that?

22           MS. DONNELLY:  Could I have one moment?

23           THE COURT:  Sure.

24           (Pause in proceedings.)

25           THE COURT:  Yes, Counsel.

SIDEBAR CONFERENCE                    1415

1          MS. DONNELLY:  It's our position that these trades

2     even if the trader discussed it, even if the trader is based

3     in New York, the trades themselves are actually happening

4     abroad.

5          THE COURT:  Okay.  Let me stop you right there.

6          Did these trades go through New York?

7          MR. MEHTA:  Trades went through New York,

8     Your Honor.

9          THE COURT:  I'm going to overrule the objection.

10     You have your exception.

11          Okay.  What's the next objection?

12          MS. MOESER:  Your Honor, I believe it's 651.

13          THE COURT:  Okay.  What's the objection -- what is

14     651.

15          MS. MOESER:  651 a trade spreadsheet from Lazard.

16          THE COURT:  Lazard.

17          MR. MEHTA:  It's a New York entity, Your Honor.

18          THE COURT:  I know.

19          Trades made in New York?

20          MR. MEHTA:  Yes, Your Honor.

21          MS. MOESER:  Yes, Your Honor.

22          THE COURT:  The same objection.

23          MS. DONNELLY:  The same as --

24          THE COURT:  Okay.  Overruled on the same basis.

25          901.

SIDEBAR CONFERENCE                          1416

1          MS. MOESER:  Your Honor, yes, 901.  901 is a record

2    from Greylodk.  It is a similar record, Your Honor.

3          THE COURT:  I'm sorry, would you spell that.

4          MS. MOESER:  G-R-E-Y-L-O-D-K.

5          THE COURT:  What is that entity?

6          MS. MOESER:  It is the same thing an investor,

7    Your Honor.

8          THE COURT:  Located where?

9          MS. MOESER:  Greylodk is located in New York as

10   well, I believe, Your Honor.

11         THE COURT:  Well, let's not believe.

12         MS. MOESER:  I'm sorry, Your Honor, Greylodk, we

13   have a certification from Greylodk they are located in

14   New York.

15         THE COURT:  Okay.  Any objection to that?

16         MS. DONNELLY:  There won't even be a witness from

17   Greylodk, as we understand it.  There's not one noticed on our

18   witness list.

19         THE COURT:  Well, suppose they bring in a custodian

20   of records from Greylodk to say, Hi, I'm Greylodk from

21   New York.  Is that what you're requiring?

22         MS. DONNELLY:  No.  In our view and nothing on the

23   face of the document says --

24         MS. MOESER:  I'm sorry, this is 651.

25         THE COURT:  I'm sorry.  Don't talk over each other.

*David R. Roy, RPR, CSR, CCR*
*Official Court Reporter*

SIDEBAR CONFERENCE                          1417

1        MS. DONNELLY:  I apologize, Your Honor.

2        THE COURT:  Okay.  We're at 901?

3        MS. MOESER:  We're at 901, Your Honor.

4        THE COURT:  Let me see it.

5        MS. MOESER:  901 is a lengthy spreadsheet,

6   Your Honor, I have it here.

7        THE COURT:  Do you have it here?

8        MS. MOESER:  I do, Your Honor.

9        THE COURT:  Bottom line what is the 901.

10       MS. MOESER:  It's similar to 651, Your Honor.  It's

11   a trading record.

12       THE COURT:  We didn't have -- okay.  So were these

13   trades done in New York?

14       MS. MOESER:  Yes, Your Honor.

15       MS. DONNELLY:  But my understanding is that the

16   other entities that we've discussed the Government will be

17   calling a witness who will eventually give that testimony.

18       With respect to Greylodk there will not be any --

19       THE COURT:  All right.  Why isn't there a Greylodk

20   person coming in?

21       MR. MEHTA:  We can call someone, Your Honor.

22       THE COURT:  Do you want them to bring in a Greylodk

23   person?  Greylodk is here in New York, you have the documents.

24   If you require a person from Greylodk I will order the

25   Government to drop a subpoena on the custodian of records from

SIDEBAR CONFERENCE                          1418

1   Greylodk to come in and say, I'm from Greylodk, New York,

2   these are our records maintained in the ordinary course.  Do

3   you want me to do that?  I'll do it if you want.

4              MR. JACKSON:  Yes, Your Honor.

5              THE COURT:  Okay.  I'll do it.  Should have done it

6   before.  It's a criminal case.

7              MS. MOESER:  So, Your Honor, if I may 1108, 1111,

8   1112, 1120, are all similar documents.

9              THE COURT:  From Greylodk?

10             MS. MOESER:  No, they're not from Greylodk,

11  Your Honor?

12             THE COURT:  Where are --

13             MS. MOESER:  1108 is from Eaton Vance.

14             THE COURT:  Eaton Vance, do you have a

15  certification.

16             MS. MOESER:  We do.  We have certification for all

17  of these but not a witness, that's why I am lumping them

18  together, Your Honor.

19             THE COURT:  Okay.  Let's do it one on one.

20             MS. DONNELLY:  Yes, Your Honor.

21             THE COURT:  1101 is which company?

22             MR. JACKSON:  Eaton Vance, Your Honor.

23             MR. SCHACHTER:  They're in the UK.

24             THE COURT:  What have they got?

25             MR. MEHTA:  The point of the ruling, Your Honor, as

SIDEBAR CONFERENCE                    1419

1   Your Honor is aware amended in the year 2000 this should not

2   have to have custodians come up and waste the jury's time

3   saying I'm in New York, these are business records.

4            THE COURT:  Look, I understand it is ethics, but I

5   wasn't on the committee but some of my colleagues were.  The

6   bottom line is the defense is insisting that we have the

7   bankers come in and say, these are our documents.

8            But what I will allow you to do is to have the

9   documents come in subject to the connection by the bankers

10  coming in and justifying it so that defense -- excuse me -- as

11  long as there's no legitimate question about the authenticity,

12  the accuracy, of the documents.  So I will let you, for

13  example, have your expert witness, which I assume is related

14  to your expert.

15           MS. MOESER:  Yes, Your Honor.

16           THE COURT:  Relates to your cooperating witness or

17  other witnesses.  So your experts can say they've looked at it

18  and then to the extent the defense wants to have the banker

19  come in and say, hi, remember those documents that shows all

20  these trades were done in New York that you heard about from

21  the expert?  Well, now I'm from Greylodk and I want to tell

22  you ladies and gentlemen of the jury, I guarantee, I'm right

23  down the block with Greylodk.  If that's what the defense

24  wants, you can have it.  You may want the rethink that.

25           MR. SCHACHTER:  But just to be clear, Eaton Vance, I

SIDEBAR CONFERENCE                    1420

1    believe, is in the United Kingdom so that's why it's not clear

2    what the Government is saying.

3            MS. MOESER:  Your Honor, let me pull up the

4    certification for you.

5            THE COURT:  Do they have a New York office?

6            MS. MOESER:  I believe they're in Boston,

7    Your Honor.

8            THE COURT:  Boston, London, they talk funny but

9    there you go.

10           Okay.  Take a look at that.

11           MR. SCHACHTER:  Your Honor, my understanding is

12   Eaton Vance is a UK fund.  Whether the certification --

13   whether they have an office here or not --

14           THE COURT:  Well, do they have an office in Boston?

15           MS. MOESER:  Yes.

16           THE COURT:  Hang on.  Is that where the trades went

17   on?

18           MS. MOESER:  Your Honor --

19           THE COURT:  Did the trades go through Boston or did

20   the trades go through London?

21           MS. MOESER:  Your Honor, I didn't have that but I

22   can find out.  This, I believe, is covered in the same

23   objection that defense counsel has for a witness appearing.

24   While we don't believe that that objection is appropriate for

25   business records, we understand your ruling on the 1108 951 to

*David R. Roy, RPR, CSR, CCR*
*Official Court Reporter*

SIDEBAR CONFERENCE                    1421

1   produce a witness so this may be subject to the same ruling,

2   Your Honor.

3            THE COURT:  Well, my question is does the document

4   show -- we have a document show that the trade went through

5   the United States?

6            MR. MEHTA:  On this document, Your Honor, let's see,

7   why don't we come back to this one, Your Honor.

8            THE COURT:  This is.

9            MS. MOESER:  1108, Your Honor, yeah, we're putting a

10  pen in 1108.  1111 this is a Fidelity record, Your Honor.  We

11  believe that counsel will have the same --

12           THE COURT:  They're based in Boston, right?

13           MR. MEHTA:  Yes, Your Honor.

14           MS. MOESER:  That's 1111.

15           THE COURT:  That's going to come in other the same

16  objection.

17           1112, what is that?

18           MS. MOESER:  1112 is a First Trust document

19  Your Honor.

20           THE COURT:  Where are they located?

21           MS. MOESER:  First Trust is located in Wheaton,

22  Illinois.

23           THE COURT:  All right.  Same ruling.  It's subject

24  to connection.

25           MS. MOESER:  1120, Your Honor -- I apologize, go

SIDEBAR CONFERENCE                    1422

1     ahead.

2             MS. DONNELLY:  The document that we have as 1112 is

3     from a fund called Aberdeen, which we understand to be from

4     Europe and does not have a --

5             THE COURT:  Let me see the document.

6             MS. DONNELLY:  It does not say the name of fund,

7     Your Honor.

8             THE COURT:  Okay.  Where is this --

9             MS. MOESER:  Your Honor, this is a First Trust

10    document.  This has First Trust right here, Your Honor.  They

11    are base in Wheaton, Illinois.

12            THE COURT:  Okay.  First Trust document, Wheaton,

13    Illinois, it comes in subject to connection and subject to the

14    same objection, same ruling.

15            Okay.

16            MS. MOESER:  1120, Your Honor.  1120 is Goldman

17    Sachs document.

18            THE COURT:  I know they're here.

19            MR. MEHTA:  Yes, Your Honor.

20            THE COURT:  Okay.  Are you really going to object to

21    Goldman Sachs?

22            MS. DONNELLY:  We are objecting to the idea that

23    Goldman Sachs was trading these securities in New York.

24            THE COURT:  Well, let me see the document.

25            MS. MOESER:  1120 is a lengthy document, Your Honor,

SIDEBAR CONFERENCE                    1423

1    I'm sorry.

2            THE COURT:  What shows that Goldman Sachs is in New

3    York as opposed to Goldman Sachs offshore?

4            MR. MEHTA:  Your Honor, basically the way it works,

5    Your Honor, is that all these trades with executed by traders

6    in New York.

7            THE COURT:  Stop right there.

8            MR. MEHTA:  Yes.

9            THE COURT:  All these trades were executed by

10   traders in New York.  Do you hear that?

11           MS. DONNELLY:  I hear him saying that.

12           THE COURT:  And you're objecting to that?

13           MS. DONNELLY:  It's my understanding they are not

14   calling a witness from Goldman --

15           THE COURT:  Okay.  Overruled on the same basis.

16           Next?

17           MS. MOESER:  1123 which is a Morgan Stanley record.

18           THE COURT:  Same ruling, same objection, preserved.

19           MS. MOESER:  A Prudential record, Your Honor.

20           THE COURT:  Same ruling, preserved.

21           MS. MOESER:  I apologize.

22           1134, Your Honor, is a Thrivent record.

23           THE COURT:  What?

24           MS. MOESER:  Thrivent.

25           THE COURT:  Spell that, please.

SIDEBAR CONFERENCE                    1424

1              MS. MOESER:  T-H-R-I-V-E-N-T.

2              THE COURT:  Where are they located.

3              MS. MOESER:  Thrivent, Your Honor, is located in

4    Minneapolis, Minnesota.

5              THE COURT:  Any objection to Minneapolis being part

6    of the United States?  Same ruling.

7              36.

8              MS. MOESER:  36, Your Honor, is a Van F record.

9              THE COURT:  Where are they located?

10             MS. MOESER:  Van F is located in New York,

11   Your Honor.

12             THE COURT:  Same ruling, same objection.

13             1301.

14             MS. MOESER:  1301, Your Honor, a bank record from

15   JPMorgan Chase.

16             THE COURT:  Same ruling.

17             MS. MOESER:  Your Honor, 1301 is slightly different,

18   if I may.

19             THE COURT:  Go ahead.

20             MS. MOESER:  1301 is a record of transactions, it's

21   not a trading record.  It's simply a record we subpoenaed from

22   JPMorgan Chase that shows various transactions to various

23   defendants, co-defendants and coconspirators in the scheme, so

24   it is a pure business record.  The transactions go through the

25   U.S. and we will have a --

SIDEBAR CONFERENCE                    1425

1          THE COURT:  What did you not understand that I'm

2    ruling in your favor?

3          MS. MOESER:  Oh, I'm sorry.  Well, Your Honor, I

4    wanted to clarify whether it was subject to connection because

5    we do not plan on calling JPMorgan witness about the right of

6    a transaction.

7          THE COURT:  Understood.

8          1386.

9          MS. MOESER:  1386 is a record from Key Bank.  Again,

10   this shows transactions, it's not a trading record,

11   Your Honor.

12         THE COURT:  That's a New York bank.

13         MS. MOESER:  That's a New York bank.  These records

14   are from Colorado, Your Honor.

15         THE COURT:  Same ruling.

16         87?

17         MS. MOESER:  Key Bank record, Your Honor.

18         THE COURT:  Same ruling.

19         88.

20         MS. MOESER:  Key Bank record, Your Honor.

21         THE COURT:  Same ruling.

22         89.

23         MS. MOESER:  Key Bank record, Your Honor.

24         THE COURT:  Same ruling.

25         .

SIDEBAR CONFERENCE                    1426

1              MS. MOESER:  Key Bank, Your Honor.

2              THE COURT:  Same ruling.

3              MR. MEHTA:  1201 is a Bank of New York Mellon

4    record.

5              THE COURT:  Same ruling.

6              MS. MOESER:  Great.  And the reminder, 1201-1 is a

7    subset of the Bank of New York Mellon record.

8              THE COURT:  Same ruling.

9              1201, 1202, 1203.

10             MS. MOESER:  1201, 1202, 1203 --

11             THE COURT:  1201 no objection to, right?

12             MR. JACKSON:  Correct.

13             MS. MOESER:  2 and 3 are standard subsets

14   Your Honor.

15             THE COURT:  Okay.  That's it?

16             MS. MOESER:  I think that's it.

17             THE COURT:  You have your rulings.

18             MR. JACKSON:  Your Honor, can we clarify one thing

19   before we go on.

20             THE COURT:  Yes.

21             MR. JACKSON:  There were a few references made to

22   the expect that they expect to call with regard to these

23   witnesses --

24             THE COURT:  With regard to the documents.

25             MR. JACKSON:  To these documents.  I'm unclear what

SIDEBAR CONFERENCE                    1427

1    expert they are talking about.

2            THE COURT:  They'll let us know.

3            MR. JACKSON:  I am a little concerned --

4            THE COURT:  They'll let us know and I'm not going to

5    force them to force you to tell them what the order of your

6    witnesses is.

7            MR. JACKSON:  Of course not, Your Honor, we fully

8    agree.

9            My concern is if they're talking about

10   Ms. Spaulding.  She's going to be the very next witness.  She

11   is not an expert witness.  She has not been noted to --

12           THE COURT:  Well, she is if I say she is.

13           MR. JACKSON:  Well, of course, Your Honor.

14           THE COURT:  I don't know that they're offering her

15   as an expert and if you have an objection to what she is being

16   offered to testify to or her expertise, we'll make it and I'll

17   rule with respect to that, but this sidebar is to address the

18   documents.

19           MR. JACKSON:  Of course, Your Honor.

20           THE COURT:  Little steps for my little feet.

21           Anything else?

22           MS. MOESER:  No, Your Honor.

23           THE COURT:  Okay.  Step back.  Thank you.

24           (Continued on next page.)

25

PROCEEDINGS                          1428

1        (Sidebar ends; in open court.)

2        THE COURT:  Believe it or not, Ladies and Gentlemen

3   of the Jury, we just saved about eight weeks of trial time.

4        Okay.  Ms. Moeser, are you ready to call your next

5   witness?

6        MS. MOESER:  Yes, Your Honor.  The Government calls

7   Wendy Spaulding.

8        THE COURT:  Please have the witness brought forward,

9   and Mr. Jackson, you will --

10        MS. MOESER:  May I take the podium, Your Honor.

11        THE COURT:  -- administer the oath.

12        You may.  Absolutely.

13        MS. MOESER:  Thank you.

14        THE COURT:  Please come forward, Ms. Spaulding up

15   here to the front.

16        THE WITNESS:  (Complies.)

17        THE COURTROOM DEPUTY:  Good morning.

18        THE WITNESS:  Good morning.

19        THE COURTROOM DEPUTY:  Just rest your bag here on

20   the chair and I'll swear you in.

21        (The witness takes the witness stand.)

22        THE COURTROOM DEPUTY:  Please raise your right.

23        You do solemnly swear or affirm the answers you are

24   about to give to the Court are the truth, the whole truth, and

25   nothing but the truth so help you God.

1              THE WITNESS:  I do.

2              THE COURT:  Thank you, Ms. Spaulding.  Please be

3    seated.

4              THE WITNESS:  (Complies.)

5              THE COURT:  You have a microphone in front of you

6    once you sit down.

7              I'm Judge William Kuntz.  I sound a little like

8    James Earl Jones.  I look exactly like Denzel Washington.

9    You're welcome to laugh.  It's the only joke I tell in the

10   courtroom.

11             Okay.  Please, you'll see that this microphone in

12   front of you swivels and you will be heard much more clearly

13   when you swivel it.  It goes up and down, as well as side by

14   side.  If you speak directly into it when you answer the

15   questions, as long as the green light is lit, you will be well

16   heard.

17             Is that all right?

18             MS. DONNELLY:  Yes, Your Honor.

19             THE COURT:  Okay.  Thank you.

20             (Witness takes the witness stand.)

21   **WENDY SPAULDING,** called as a witness, having been first duly

22   sworn/affirmed, was examined and testified as follows:

23             THE COURT:  You may inquire, Counsel.

24   DIRECT EXAMINATION

25   BY MS. MOESER:

SPAULDING — DIRECT — MS. MOESER          1430

1    Q     Good morning.

2    A     Good morning.

3    Q     Would you state your name and spell it for the court

4    reporter, please.

5    A     Wendy Spaulding, W-E-N-D-Y; Spaulding, S-P-A-U-L-D-I-N-G.

6    Q     Are you employed, Ms. Spaulding?

7    A     Yes.

8    Q     How are you employed?

9    A     I work for my own company.

10   Q     What does your company do?

11   A     Provides financial consulting to the Federal Government.

12   Q     How long have you done this work?

13   A     Since approximately 1989.

14   Q     Have you always worked for yourself?

15   A     No.

16   Q     Have you held other jobs?

17   A     Yes.

18   Q     What other jobs?

19   A     I was the financial administrator for the sheriff's

20   department in Tucson, Arizona.  I also was the controller for

21   several prior companies, and I worked for several accounting

22   firms.

23   Q     What do you do as a financial analyst for government

24   agencies?

25   A     Analyze financial records.

SPAULDING – DIRECT – MS. MOESER          1431

1    Q     Okay.  Who provides you with the records that you

2    analyze?

3    A     The Government.

4    Q     Do you work alone or with others?

5    A     With others.

6    Q     What's your role in this work?

7    A     My role is to manage and supervise the work of the

8    others.

9    Q     And what is their role?

10   A     Their role is to analyze the financial records and assist

11   me in my analysis.

12   Q     Can you can please describe your educational background?

13   A     Yes.  I have a Bachelor's of Business Administration with

14   a comprehensive public accounting major.  I have a Masters's

15   of Education.

16   Q     Where did you go to school?

17   A     My Bachelor's Degree is from the University of Wisconsin

18   – Eau Claire.  And my Master's Degree is from Northern Arizona

19   University in Arizona.

20   Q     Do you hold any professional licenses?

21   A     Yes.  I'm a CPA, a Certified Public Accountant.

22   Q     What's a CPA?

23   A     A CPA is an accountant that has passed the education

24   requirements and experience requirements and taken an exam and

25   certified by the State.

SPAULDING – DIRECT – MS. MOESER            1432

1    Q     When did you get your CPA license?

2    A     In 1983.

3    Q     What state gave you that license?

4    A     Arizona.

5    Q     Were you retained by the Government in connection with

6    the criminal case involving the Defendant John Boustani?

7    A     Yes.

8    Q     Do you know the Defendant John Boustani?

9    A     No.

10   Q     Were you paid for the work you did in connection with the

11   case?

12   A     Yes.

13   Q     What's your hourly rate?

14   A     $100.

15   Q     How much has your company billed on this case?

16   A     Approximately $5,000.

17   Q     Have you been paid for all the hours you have billed to

18   date?

19   A     No.

20   Q     Do you expect to be paid for your work?

21   A     Yes.

22   Q     Are you the only person who has worked on this matter for

23   your company?

24   A     No.

25   Q     How many other people worked on this matter?

SPAULDING – DIRECT – MS. MOESER          1433

1    A     One other person.

2    Q     What was their role?

3    A     To review the financial records and assist me in my

4    analysis.

5    Q     And what was your role?

6    A     To review the financial records and prepare a summary

7    schedules.

8    Q     What were you asked to do on this matter?

9    A     Review financial records.

10   Q     Who asked you to do that?

11   A     The Government.

12   Q     Did the Government ask you to create summaries of

13   financial records for particular entities or individuals?

14   A     Yes.

15   Q     What kind of records did you review?

16   A     I reviewed bank statements, wire transfer records, and

17   SWIFT messages.

18   Q     What's a SWIFT message?

19   A     A SWIFT message is a transmission, a message sent from

20   one bank to another with instructions for a financial

21   transaction.

22   Q     Did you review any other kinds of documents?

23   A     Yes.

24   Q     What other kinds of documents?

25   A     I reviewed emails.

SPAULDING – DIRECT – MS. MOESER          1434

1              MS. MOESER:  Your Honor, at this time, may I ask

2    Mr. Jackson to hand the witness a few exhibits?

3              THE COURT:  Yes, you may.

4              Mr. Jackson, do that, please.

5              THE COURTROOM DEPUTY:  Yes, Judge.

6              MS. MOESER:  Government's Exhibits 1519 through 1531

7    for identification purposes, Your Honor.

8              THE COURT:  Thank you.

9              MS. MOESER:  Thank you, Mr. Jackson.

10   BY MS. MOESER:

11   Q    Ms. Spaulding, what bank records did you rely on to

12   prepare your summary reports?

13   A    Bank records from the Bank of New York Mellon and from

14   JPMorgan Chase Bank.

15             MS. MOESER:  Your Honor, may I publish

16   Government's Exhibit 1201 already in evidence?

17             THE COURT:  You may publish.

18             (Government's Exhibit Number 1201 is published to

19   the jury.)

20   BY MS. MOESER:

21   Q    Ms. Spaulding, what is this?

22   A    This is a page from the Bank of New York Mellon bank

23   records.

24   Q    Are these records voluminous?

25   A    Yes.

SPAULDING - DIRECT - MS. MOESER          1435

1    Q    About how many pages?

2    A    Approximately 30,000 pages.

3    Q    Did you focus your review on a particular portion of the

4    Bank of New York Mellon records?

5    A    Yes.

6         MS. MOESER:  Your Honor, may I publish

7    Government's Exhibit 1201-1 already in evidence?

8         THE COURT:  You may.

9         (Pause in proceedings.)

10        MS. MOESER:  I think we may be having technical

11   difficulties, Your Honor.  I will return to 1201-1.

12   BY MS. MOESER:

13   Q    Ms. Spaulding, Government's Exhibit 1201-1, which we will

14   publish in a moment, about how many pages was that?

15   A    Approximately 3500 page.

16   Q    And what did it consist of?

17   A    The wire transfer records.

18   Q    For which bank?

19   A    For the Bank of New York Mellon.

20   Q    And Ms. Spaulding, did you review JPMorgan Chase records

21   as well?

22   A    Yes.

23   Q    And did those records contain many tabs of financial

24   information?

25   A    Yes.

SPAULDING - DIRECT - MS. MOESER                    1436

1   Q    And were those records also voluminous?

2   A    Yes.

3   Q    Did you prepare summary reports in connection with your

4   review of the Bank of New York Mellon and JPMorgan Chase

5   records?

6   A    Yes.

7   Q    What type of summary reports did you prepare?

8   A    Spreadsheets and the flowchart.

9   Q    What was the process that you used to create the summary

10  reports?

11  A    I reviewed the financial records and put information on

12  spreadsheets.

13  Q    Did you do multiple drafts of some of these reports?

14  A    Yes.

15  Q    Did you make any changes between the drafts?

16  A    Yes.

17  Q    Why did you make changes?

18  A    I made cosmetic changes.

19  Q    Did you make any other changes to the drafts?

20  A    Yes.

21  Q    What other kinds of changes did you make?

22  A    Information was added to this -- to this -- excuse me, to

23  the spreadsheets.

24  Q    And are your reports summarizing the Bank of New York

25  Mellon and JPMorgan Chase records, Government's Exhibit 1519

SPAULDING – DIRECT – MS. MOESER          1437

1   through 1531 in the folder in front of you?

2   A    Yes.

3          MS. MOESER:  And, Your Honor, we are able to publish

4   Government's Exhibit 1201-1 already in evidence.

5          (Government's Exhibit Number 1201-1 is published to

6   the jury.)

7   BY MS. MOESER:

8   Q    Ms. Spaulding, what is Government's Exhibit 1201-1?

9          THE COURT:  Beside sideways, you mean?

10          MR. MOESER:  Besides sideways.

11   A    This is the wire transfers from the Bank of New York

12   Mellon bank records.

13   Q    Are those the records you were referring to being

14   approximately 3500 pages?

15   A    Yes.

16          MS. MOESER:  And, Your Honor, may we publish

17   Government's Exhibit 1301 already in evidence?

18          THE COURT:  You may.

19          (Pause in proceedings.)

20          MS. MOESER:  We're having technical difficulties

21   with 1301, Your Honor.

22          THE COURT:  The jury has noticed that.

23          MS. MOESER:  Yes.

24          Apologies to Your Honor and to the jury.

25

SPAULDING – DIRECT – MS. MOESER          1438

1   BY MS. MOESER:

2   Q     Ms. Spaulding, you mentioned the JPMorgan Chase records.

3   Are those Government's Exhibit 1301?

4   A     Yes.

5   Q     Ms. Spaulding, did the individual transactions you

6   reviewed have a number of details?

7   A     Yes.

8   Q     Did you include every detail on the reports you created?

9   A     No.

10   Q     Did you use any other records, besides the

11   Bank of New York Mellon and JPMorgan Chase records to create

12   Government's Exhibits 1519 through 1531?

13   A     Yes.

14   Q     What other records did you use?

15   A     The SWIFT messages.

16          MS. MOESER:  Your Honor –– oh.

17          You Honor, if I may publish

18   Government's Exhibit 1301 we now have on the screen.

19          THE COURT:  It seems to be dancing, but all right.

20          (Government's Exhibit Number 1301 is published to

21   the jury.)

22          MS. MOESER:  It is dancing, Your Honor.

23          THE COURT:  Could you get it –– maybe get it so that

24   the jury can see it without whiplash?

25          MS. MOESER:  There we go.

SPAULDING – DIRECT – MS. MOESER                1439

1          Apologies, Your Honor and apologies to the jury.

2          THE COURT:  Okay.

3          (Continued on the next page.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SPAULDING – DIRECT – MOESER                1440

1    DIRECT EXAMINATION(Continued)

2    BY MS. MOESER:

3    Q    Ms. Spaulding, what is Government's Exhibit 13801?

4    A    The JP Morgan Chase records.

5    Q    Thank you.  Now let's see if our technology works.  If I

6    may publish Government's Exhibit 58; if it doesn't work I'll

7    move to the Elmo, your Honor.

8              Your Honor, if I may switch to the Elmo?

9              THE COURT:  You may.

10             MS. MOESER:  Thank you, your Honor.

11   Q    Ms. Spaulding, is this Government's Exhibit 58?

12   A    Yes.

13   Q    And what is Government's Exhibit 58?

14   A    It is a SWIFT message.

15   Q    This is one of the documents you relied on to create your

16   summary reports?

17   A    Yes.

18   Q    Ms. Spaulding, did you rely on other SWIFT messages to

19   create your summary reports?

20   A    Yes.

21             MS. MOESER:  Your Honor, if I may publish

22   Government's Exhibit 1401 already in evidence?

23             THE COURT:  You may.

24   Q    Ms. Spaulding, what is Government's Exhibit 1401?

25   A    This is also a SWIFT message.

SPAULDING – DIRECT – MOESER                    1441

1        MS. MOESER:  Your Honor, if I may publish

2   Government's Exhibit 1402 already in evidence?

3        THE COURT:  You may.

4   Q    Ms. Spaulding, what is Government's Exhibit 1402?

5   A    A SWIFT message.

6   Q    Is this another record you relied on to create your

7   summary reports?

8   A    Yes.

9   Q    Do your summary reports in Government's Exhibit 1519

10  through 1531 fairly and accurately represent the particular

11  transactions you reviewed in Government's Exhibit 1201,

12  1201-1, 1301, 58, 1401, and 1402?

13  A    Yes.

14       MS. MOESER:  Your Honor, the Government would seek

15  to admit Government's Exhibit 1519.

16       THE COURT:  Any objection, other than previously

17  stated?

18       MR. JACKSON:  No objection.

19       THE COURT:  Admitted.  You may publish.

20       (Government Exhibit 1519, was received in evidence.)

21       MS. MOESER:  If I may seek to admit a number of

22  exhibits.

23       THE COURT:  You may.

24       MS. MOESER:  We seek to admit Government's Exhibit

25  1520.

*Rivka Teich CSR, RPR, RMR, FCRR*
*Official Court Reporter*

SPAULDING – DIRECT – MOESER                    1442

1            THE COURT:  Any objection?

2            MR. JACKSON:  Yes, we have an objection, Your Honor.

3            THE COURT:  This is something in addition to

4    whatever was previously noted at sidebar?

5            MS. MOESER:  Yes, your Honor.

6            THE COURT:  All right, sorry.

7            (Continued on the next page.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SIDEBAR CONFERENCE                    1443

1              (Sidebar conference.)

2              THE COURT:  Welcome back.

3              MS. MOESER:  Good morning, your Honor.

4              THE COURT:  The jury is wondering if they are going

5     to hear this case, but that's okay.

6              MS. MOESER:  1520 is in front of you, your Honor a

7     summary exhibit that our financial analyst created from

8     records from JP Morgan Chase.

9              THE COURT:  The witness created this document?

10             MS. MOESER:  Yes.

11             THE COURT:  I'm going to allow it over objection.

12    She can testify to what she made.

13             You can certainly voir dire her with respect to the

14    creation of document.  I will allow you to voir dire on that.

15             MR. JACKSON:  I appreciate that, Judge.  You'll

16    allow me to voir dire on the creation of the document?

17             THE COURT:  Absolutely.

18             MR. JACKSON:  Thank you.

19             MS. MOESER:  Thank you.

20             THE COURT:  The objection is overruled, but you can

21    voir dire on it.

22             (End of sidebar conference.)

23             (Continued on the next page.)

24

25

SPAULDING – DIRECT – MOESER                1444

1            (In open court.)

2            THE COURT:  The objection is overruled.  The

3    document is admitted.

4            (Government Exhibit 1520, was received in evidence.)

5            MS. MOESER:  Your Honor, I'd like to seek to admit

6    Government 1521.

7            THE COURT:  Any objection?

8            MR. JACKSON:  No objection, your Honor.

9            THE COURT:  Admitted.

10           (Government Exhibit 1521, was received in evidence.)

11           MS. MOESER:  Seek to admit Government's Exhibit

12   1522.

13           THE COURT:  Any objection?

14           MR. JACKSON:  No objection, your Honor.

15           THE COURT:  Admitted.

16           (Government Exhibit 1522, was received in evidence.)

17           MS. MOESER:  Government's Exhibit 1523.

18           THE COURT:  Any objection?

19           MR. JACKSON:  No objection, your Honor.

20           THE COURT:  Admitted.

21           (Government Exhibit 1523, was received in evidence.)

22           MS. MOESER:  Government's Exhibit 1524.

23           THE COURT:  Any objection?

24           MR. JACKSON:  No objection.

25           THE COURT:  Admitted.

SPAULDING - DIRECT - MOESER          1445

1     (Government Exhibit 1524, was received in evidence.)

2     MS. MOESER:  Government's Exhibit 1525.

3     THE COURT:  Any objection?

4     MR. JACKSON:  No objection, your Honor.

5     THE COURT:  Admitted.

6     (Government Exhibit 1525, was received in evidence.)

7     MS. MOESER:  Government's Exhibit 1526.

8     THE COURT:  Any objection?

9     MR. JACKSON:  No objection, your Honor.

10    THE COURT:  Admitted.

11    (Government Exhibit 1526, was received in evidence.)

12    MS. MOESER:  Government's Exhibit 1527.

13    THE COURT:  Any objection?

14    MR. JACKSON:  No objection.

15    THE COURT:  Admitted.

16    (Government Exhibit 1527, was received in evidence.)

17    MS. MOESER:  Government's Exhibit 1528.

18    THE COURT:  Any objection?

19    MR. JACKSON:  No objection, your Honor.

20    THE COURT:  Admitted.

21    (Government Exhibit 1528, was received in evidence.)

22    MS. MOESER:  Government's Exhibit 1529.

23    THE COURT:  Any objection?

24    MR. JACKSON:  No objection.

25    THE COURT:  Admitted.

SPAULDING – DIRECT – MOESER                  1446

1              (Government Exhibit 1529, was received in evidence.)

2              MS. MOESER:  Government's Exhibit 1530.

3              THE COURT:  Any objection?

4              MR. JACKSON:  No objection, your Honor.

5              THE COURT:  Admitted.

6              (Government Exhibit 1530, was received in evidence.)

7              MS. MOESER:  Government's Exhibit 1531.

8              THE COURT:  Any objection?

9              MR. JACKSON:  No objection, your Honor.

10             THE COURT:  Admitted.

11             (Government Exhibit 1531, was received in evidence.)

12             MS. MOESER:  Your Honor, may I publish Government's

13     Exhibit 1519 in evidence?

14             THE COURT:  You may.

15     BY MS. MOESER:

16     Q    Ms. Spaulding, do you have a copy of Government's Exhibit

17     1519 in front of you?

18     A    Yes.

19     Q    Let's see if I can zoom in.  What is Government's Exhibit

20     1519?

21     A    Exhibit 1519 is the schedule showing Proindicus wire

22     transfers.

23     Q    Which bank records did you use to compile this

24     information?

25     A    Bank of New York Mellon bank records.

SPAULDING - DIRECT - MOESER                1447

1   Q     On this first line here, what does this show?

2   A     A wire transfer on March 21, 2013 of $328 million from CS

3   International Bank of New York Mellon account number ending in

4   0968 to Credit Suisse AG Bank of New York Mellon account

5   number ending in 1034.

6           MS. MOESER:  Your Honor, may I publish Government's

7   Exhibit 1201-2 already in evidence?

8           THE COURT:  You may.  Any document already in

9   evidence you can publish without seeking, that will speed

10  things up.

11          MS. MOESER:  Thank you, your Honor.

12  Q     Ms. Spaulding, what is Government's Exhibit 1201-2?

13  A     It is a bank statement.

14  Q     Which bank is it the bank -- where is the bank account

15  located?

16  A     Bank of New York Mellon.

17  Q     Where is the Bank of New York Mellon located?

18  A     New York.

19  Q     What is the account number?

20  A     8900329165.

21  Q     Who is the account holder?

22  A     First Gulf Bank.

23  Q     Ms. Spaulding, 1201-3, already in evidence, what is

24  Government's Exhibit 1201-3?

25  A     A Bank of New York Mellon bank statement.

SPAULDING – DIRECT – MOESER            1448

1    Q    Where is Bank of New York Mellon located?

2    A    New York.

3    Q    Who is the account holder?

4    A    CSFB International Boston International.

5    Q    What is the account number?

6    A    8900360968.

7    Q    Ms. Spaulding, showing you 1201-4, already in evidence.

8    What is Government's Exhibit 1201-4?

9    A    A Bank of New York Mellon bank statement.

10   Q    Where is Bank of New York Mellon located?

11   A    New York.

12   Q    Who is the account holder?

13   A    Credit Suisse AG.

14   Q    What is the account number?

15   A    8900361034.

16   Q    Returning to Government's Exhibit 1519, let me zoom in,

17   the first line, Ms. Spaulding, you testified the transaction

18   was from CS International with the bank account number 60968,

19   is that the bank account that we just saw in Government's

20   Exhibit 1201-3?

21   A    Yes.

22   Q    And you said it was sent to Credit Suisse AG bank account

23   number 61034, is that the bank account that we just saw in

24   Government's Exhibit 1201-4?

25   A    Yes.

SPAULDING - DIRECT - MOESER                    1449

1    Q    So where are these two bank accounts located what bank?

2    A    Bank of New York Mellon.

3    Q    Can you tell the jury what the second line of 1519 shows?

4    A    A wire transfer on March 21, 2013 of $327,900,000 from

5    Credit Suisse AG Bank of New York Mellon account number 61034

6    to the First Gulf Bank Bank of New York Mellon account number

7    29165.

8    Q    Are those the two bank account numbers that we just saw

9    Bank of New York Mellon?

10   A    Yes.

11   Q    Who is the beneficiary of this transaction?

12   A    Privinvest Ship Building SAL account number ending in

13   00028.

14   Q    The bank account for First Gulf Bank, is that the bank

15   account Bank of New York Mellon that we saw in 1201-2?

16   A    Yes.

17          MS. MOESER:  I believe our technology is back up, if

18   we can switch to the computer at the table.

19          THE COURT:  Yes, of course.

20   BY MS. MOESER:

21   Q    If we can publish 1519.

22          Ms. Spaulding, the first transaction you described

23   in the first line, did that go through the United States?

24   A    Yes.

25   Q    The second transaction to Privinvest, did that go through

SPAULDING - DIRECT - MOESER                    1450

1    the United States?

2                MR. JACKSON:  Objection.

3                THE COURT:  Overruled.  If you know.

4    A    Yes.

5    Q    Ms. Spaulding, looking at your summary what happened

6    on -- what happened in June?

7                THE COURT:  June of what year, counsel?

8    Q    June 2013, Ms. Spaulding.

9    A    On June 25, 2013, there was a wire transfer of

10   $90,190,000 from CS International Bank of New York Mellon

11   account number 60968 to Credit Suisse AG Bank of New York

12   Mellon account number 61034.

13   Q    Did this transaction go through the United States?

14   A    Yes.

15   Q    Was there another transaction on June 25, 2013?

16   A    Yes.  A wire transfer of $90,190,000 from Credit Suisse

17   AG Bank of New York Mellon account number 61034 to First Gulf

18   Bank Bank of New York Mellon account number 29165.

19   Q    Ms. DiNardo, if we can go to the right a little more

20   please.

21               Ms. Spaulding, who was the beneficiary of this

22   transaction on June 25, 2013?

23   A    Privinvest Ship Building SAL account number ending in

24   0028.

25   Q    Ms. Spaulding, what happened on July 9, 2013 in your

1    summary chart?

2    A    On July 9, 2013, there was a wire transfer of $6,160,000

3    from Citibank New York.

4    Q    And who was the sender of that transaction?

5    A    I can't see the top of the schedule anymore.

6    Q    Ms. DiNardo, if you can show the top half of the

7    schedule.

8             I believe, Ms. Spaulding, you also have a hard copy

9    in front of you if that's helpful.  Who is the ordering

10   customer of that transaction of $6 million on July 9?

11   A    ICE Global Credit CLO Limited.

12   Q    Who was the receiver of that transaction?

13   A    CS International Bank of New York Mellon account number

14   60968.

15   Q    Is there a second transaction on July 9, 2013?

16   A    Yes.  There was a wire transfer of $7,040,000 from

17   Citibank New York to CS International Bank of New York Mellon

18   account number 60968.

19   Q    And did both these transactions on July 9, 2013 go

20   through the United States?

21   A    Yes.

22   Q    And what was the -- what were the details of payment

23   referenced in the first July 9, 2013 transaction?

24   A    ICE Global Credit CLO Limited REF Proindicus USD372M28

25   Feb 13CSI.

SPAULDING - DIRECT - MOESER                1452

1   Q    How about the second transaction on July 9, 2013?

2   A    ICE Global Credit CLO Ltd REF Proindicus USD372M28

3   Feb 13CSI.

4   Q    What happened on August 14, 2013?

5   A    On August 14, 2013, there was a wire transfer of

6   $20,860,800 from CS International Bank of New York Mellon

7   account number 60968 to Credit Suisse AG Bank of New York

8   Mellon account number 61034.

9   Q    Did this transaction go through the United States?

10  A    Yes.

11  Q    Is there a second transaction on August 14, 2013?

12  A    Yes.

13  Q    What is the second transaction?

14  A    Wire transfer of $28,860,800 from Credit Suisse AG Bank

15  of New York Mellon account number 61034 to First Gulf Bank

16  Bank of New York Mellon account number 29165.

17  Q    Ms. DiNardo, if we can go down a little.

18       Who is the beneficiary of the transaction, the

19  second transaction on August 14?

20  A    Privinvest Ship Building SAL.

21       THE COURT:  Make that larger for the jury, it's hard

22  to read.

23  Q    Ms. Spaulding, who is the beneficiary of the August 14,

24  2013, $20 million transaction?

25  A    Privinvest Ship Building SAL account number ending 0028.

SPAULDING – DIRECT – MOESER                    1453

1    Q    What is the detail payment information?

2    A    BNF Proindicus SA.

3    Q    What happened in November of 2013 on your spreadsheet?

4    A    A wire transfer of $100,512,400 was sent from Credit

5    Suisse AG Bank of New York Mellon account number 61034 to

6    First Gulf Bank Bank of New York Mellon account number 29165.

7    Q    Who was the beneficiary of that transaction?

8    A    Privinvest Ship Building SAL account number ending 0028.

9    Q    Did this transaction go through the United States?

10   A    Yes.

11   Q    Ms. Spaulding, on the second half of Government's Exhibit

12   1519, beginning in March 2014 there are a series of

13   transactions between March 2014 and March 2016.  Who is the

14   sender of these transactions between March 2014 and

15   March 2016?

16   A    Credit Suisse AG.

17   Q    Who is the receiver of these transactions?

18   A    Citibank New York.

19   Q    What is the beneficiary or account bank for these

20   transactions?

21   A    ICE Global Credit Limited and ICE 3 Global Credit

22   Limited.

23   Q    Does the bank to bank information for each of these

24   reference Proindicus?

25   A    Yes.

SPAULDING - DIRECT - MOESER                    1454

1    Q    Do each of these transactions go through the United

2    States?

3    A    Yes.

4    Q    Ms. Spaulding, showing you what is marked Government's

5    Exhibit 1520, what is that?

6    A    Exhibit 1520 is the flow chart summarizing several of the

7    transactions from the previous spreadsheet.

8    Q    What records did you rely on to create this chart?

9    A    The Bank of New York Mellon records.

10   Q    Did you rely on any other records?

11   A    Yes.

12   Q    What other records did you rely on?

13   A    The SWIFT message records.

14   Q    Is that Government's Exhibit 58 that we just saw?

15   A    Yes.

16            THE COURT:  To be clear you created this chart,

17   correct?

18            THE WITNESS:  Yes.

19            THE COURT:  After reviewing those documents that you

20   had talked about, the records?

21            THE WITNESS:  Yes, your Honor.

22            THE COURT:  Go ahead.

23   Q    Does this chart accurately reflect the information that

24   you identified in the bank records?

25   A    Yes.

*Rivka Teich CSR, RPR, RMR, FCRR*
*Official Court Reporter*

SPAULDING – DIRECT – MOESER                    1455

1    Q     Looking at this chart, what is the first line of the flow

2    chart?

3    A     The first line shows a wire transfer from CS

4    International of $328 million on March 21, 2013.  And a wire

5    transfer from Credit Suisse AG of $327,900 on March 21, 2013

6    to Privinvest Ship Building.

7    Q     These are reflected in the first two lines of

8    Government's Exhibit 1519?

9    A     Yes.

10   Q     What is the second line of the flow chart?

11   A     A wire transfer from CS International of 90,190,000 on

12   June 25, 2013 to Credit Suisse AG.  And a wire transfer of

13   90,190,000 on June 25, 2013 from Credit Suisse AG to

14   Privinvest Ship Building.

15   Q     Same as the June transaction we were looking at on your

16   previous spreadsheets?

17   A     Yes.

18   Q     What is the third line?

19   A     July 9, 2013, there was a wire transfer of $6,160,000

20   from ICE Global Credit CLO Limited to CS International.  And a

21   wire transfer of $7,040,000 on July 9, 2013 from ICE 3: Global

22   Credit CLO Limited.  There was a wire transfer from CS

23   International of $28,860,800 on August 14, 2013 to Credit

24   Suisse AG.  And a wire transfer of $28,860,800 on August 14,

25   2013 from Credit Suisse AG to Privinvest Ship Building.

SPAULDING – DIRECT – MOESER                    1456

1   Q     Is that reflected in the July and August transactions we

2   looked at Government's Exhibit 1519?

3   A     Yes.

4   Q     What is the fourth line of this flow chart?

5   A     A wire transfer from VTB Capital PLC of $100,512,400 on

6   November 15, 2013 to Credit Suisse AG.  And a wire transfer

7   from Credit Suisse AG of $100,512,400 on November 15, 2013 to

8   Privinvest Ship Building.

9   Q     Did each of the transactions represented on this chart go

10  through the United States?

11  A     Yes.

12  Q     Showing you Government's Exhibit 1521.  What is

13  Government's Exhibit 1521?

14  A     Exhibit 1521 is a schedule a spreadsheet of the EMATUM

15  wire transfers.

16  Q     What records did you use to create to Exhibit 1521.

17  A     The Bank of New York Mellon bank records.

18  Q     Does Government's Exhibit 1521 accurately represent the

19  financial information you identified in the Bank of New York

20  Mellon records?

21  A     Yes.

22  Q     Looking at the first line of 1521, what does this show?

23  A     A wire transfer on September 11, 2013 of $446,900,000

24  from Credit Suisse AG Bank of New York Mellon account number

25  61034 to First Gulf Bank Bank of New York Mellon account

1    number 9165.

2    Q    Who is the beneficiary of this transaction?

3    A    Abu Dhabi MAR LLC.

4    Q    Are the Credit Suisse and First Gulf Bank accounts the

5    same accounts we saw earlier at Bank of New York Mellon?

6    A    Yes.

7    Q    Did this transaction go through the United States?

8    A    Yes.

9    Q    Can you describe to the jury the transaction on

10   October 11, 2013?

11   A    On October 11, 2013, there was a wire transfer of

12   $312,900,000 from Credit Suisse AG Bank of New York Mellon

13   61034, to First Gulf Bank Bank of New York Mellon account

14   number 2965.

15   Q    Who is the ultimate beneficiary of this transaction?

16   A    Abu Dhabi MAR LLC.

17   Q    Did this transaction go through the United States?

18   A    Yes.

19   Q    On the second half of this chart, Ms. Spaulding, there

20   are a number of transactions from March 2014 to March 2016.

21   What is the -- did each of these transactions between

22   March 2014 and March 2016 go through the United States?

23   A    Yes.

24   Q    Showing you what is marked as Government's Exhibit 1522.

25   What is Government's Exhibit 1522?

SPAULDING - DIRECT - MOESER                1458

1    A    Exhibit 1522 is a spreadsheet showing MAM wire transfers.

2    Q    What records did you rely on to create this spreadsheet?

3    A    The SWIFT messages.

4    Q    Does this spreadsheet accurately identify information

5    from the SWIFT messages?

6    A    Yes.

7    Q    Can you tell the jury about the first transaction?

8    A    Yes, on May 23, 2014, there was a wire transfer of

9    $406,542,056.07.  The sender was VTB Capital PLC London.  The

10   receiver was Deutsche Bank Trust Company New York.  The

11   ordering company was Mozambique Asset Management SA.

12   Q    Did this transaction go through the United States?

13   A    Yes.

14   Q    Can you tell the jury about the second transaction --

15   sorry.  Who is the beneficiary of the first transaction?

16   A    Privinvest Ship Building Investments LLC account number

17   0028.

18   Q    The same Privinvest account number that we saw in your

19   summaries?

20   A    Yes.

21   Q    Tell the jury about the second transaction.

22   A    June 11, 2014, there was a wire transfer of

23   $93,457,943.93.  The sender of the transaction was VTB Capital

24   PLC London.  The receiver was Deutsche Bank Trust Company

25   Americans New York.  Ordering customer Mozambique Asset

1   Management SA.  And the beneficiary customer Privinvest Ship

2   Building Investments LLC account number ending 0028.

3   Q    Did each of these transactions go through the United

4   States?

5   A    Yes.

6   Q    Ms. Spaulding, showing you Government's Exhibit 1524.

7   What is 1524?

8   A    Exhibit 1524 is a schedule showing wires to Jean

9   Boustani.

10  Q    Did the Government ask you to compile a summary of

11  transactions for Jean Boustani?

12  A    Yes.

13  Q    What records did you use to compile your summary in 1524?

14  A    The Bank of New York Mellon bank records and the JP

15  Morgan Chase bank records.

16  Q    Ms. DiNardo, if we can show more of the spreadsheet,

17  maybe the transaction section.  That's fine, thank you.

18          How many transactions to Jean Boustani did you find?

19  A    Fifteen.

20  Q    What was the value for each transaction?

21  A    $1 million.

22  Q    How much money did Jean Boustani receive in total?

23  A    $15 million.

24  Q    Who was the sender of the payments to Jean Boustani?

25  A    Privinvest Ship Building SAL Holding account 0028, and

SPAULDING - DIRECT - MOESER                    1460

1    Logistics International SAL offshore AUH.

2    Q    The Privinvest received from the Credit Suisse AG?

3    A    Yes.

4    Q    And Ms. DiNardo, scroll a little to the right; that's

5    perfect.

6            And Ms. Spaulding, did these transactions go through

7    the United States?

8    A    Yes.

9    Q    Which banks in the United States did these transactions

10   go through?

11   A    The Bank of New York Mellon and JP Morgan Chase.

12   Q    Ms. Spaulding, if we can show you 1201-C-1.

13           You can blow up the middle section, Ms. DiNardo, so

14   they can see the information.

15           THE COURT:  If you can darken it a bit.

16           MS. MOESER:  I don't think we can do.

17           THE COURT:  Anything you can do on your end,

18   Mr. Jackson?

19           COURTROOM DEPUTY:  I'll try.

20   BY MS. MOESER:

21   Q    What is Government's Exhibit 1201-C-1?

22   A    This is one of the wire transfers that I used to prepare

23   the schedule.

24   Q    From what bank records is this wire transfer?

25   A    From the Bank of New York Mellon.

SPAULDING – DIRECT – MOESER                    1461

1   Q     Looking at Government's Exhibit 1201-C-1, where is

2   Mr. Boustani's name?

3   A     It is under on the bottom, right there, under ultimate

4   beneficiary.

5   Q     And where is the sender information from Privinvest that

6   you identified?

7   A     Over to the left where it says ordering customer.

8   Q     Can you take that down, Ms. DiNardo.  If we can put up

9   1524 again -- I apologize, can you bring up 1201-C-1 one more

10  time.

11        Ms. Spaulding, you testified that these transactions

12  went through the Bank of New York Mellon and JP Morgan Chase,

13  can you tell the jury where JP Morgan Chase is located?

14  A     Yes, in Brooklyn, Brooklyn New York.

15  Q     Thank you.  Going back to Government's Exhibit 1524.  How

16  many -- what was the total value of payments you traced to

17  Jean Boustani?

18  A     $15 million.

19  Q     Showing you Government's Exhibit 1523.  What is

20  Government's Exhibit 1523, Ms. Spaulding?

21  A     A schedule of wire transfers to Andrew Pearse.

22  Q     Did the Government ask you to create a summary of a

23  schedule of payments to Andrew Pearse?

24  A     Yes.

25  Q     What records did you use to create?

SPAULDING – DIRECT – MOESER                1462

1    A    Bank of New York Mellon bank records and the JP Morgan

2    Chase bank records.

3    Q    Ms. DiNardo, if can you blow up a little bit of this

4    information, thank you.

5             Who sent payments to Andrew Pearse?

6    A    Privinvest Ship Building SAL Holding and Palomar Holdings

7    Limited.

8    Q    What account did Privinvest use?

9    A    The account ending 0028.

10   Q    The same account number we saw receiving funds in earlier

11   summaries?

12   A    Yes.

13   Q    What is the total value of payment that you traced to

14   Andrew Pearse?  Go to the bottom of the total, Ms. DiNardo.

15   A    $45,200,000.

16   Q    Did each of the transactions to Andrew Pearse go through

17   the United States?

18   A    Yes.

19   Q    Through which banks?

20   A    The Bank of New York Mellon and JP Morgan Chase.

21   Q    Did some the transactions go through different banks?

22   A    Yes, and Citibank New York and Bank of America New York.

23   Q    Did you review any other records related to Andrew

24   Pearse?

25   A    Yes.

SPAULDING - DIRECT - MOESER                    1463

1   Q    Showing you Government's Exhibit 1818 and 1819.

2        Could we show those side by side, Ms. DiNardo?

3        Ms.Spaulding, what are these records?

4   A    The bank records for the account of Andrew Pearse at Abu

5   Dhabi Commercial Bank.

6   Q    What did you do with these account statements?

7   A    I took the wire transfers that were on the schedule

8   prepared from the Bank of New York Mellon and Chase Bank

9   records and saw that those transactions were reflected on

10  Pearse's bank statements at Abu Dhabi Commercial Bank.

11  Q    Ms. DiNardo, can we show Government's Exhibit 1818 and

12  Government's Exhibit 1523 side by side.  If we can blow up the

13  first two lines of 1523, and blow up the first few lines of

14  1818.

15       Ms. Spaulding, can you point out for the jury one of

16  the transactions that matched between the Bank of Mellon and

17  JP Morgan Chase records and the Andrew Pearse account at Abu

18  Dhabi Commercial Bank?

19  A    Yes.  If you see the transaction, the top, on April 24,

20  2013, on the bank statement you can see a credit of $2,500,000

21  into the account and the description references Privinvest

22  Ship Building SAL Holding.

23  Q    Which transaction does that match?

24  A    The first transaction.

25  Q    The dates on those transactions are a little bit

1   different, is there any reason why the dates may be different?

2   A     Yes, they can reflect sometimes one day different as far

3   as the date that the bank credited the transaction.

4   Q     Did you find every transaction to Andrew Pearse in your

5   summary within the Abu Dhabi bank records?

6   A     Yes.

7   Q     Did you review any bank records related to Andrew Pearse

8   and Privinvest?

9   A     Yes.

10  Q     Showing you Government's Exhibit 1386 and 1387.  If we

11  can show those side by side, Ms. DiNardo.

12         What other records did you review, Ms. Spaulding?

13  A     Key Bank records, Key Bank of Colorado.

14  Q     Ms. DiNardo, if we show Government's Exhibit 1387, page

15  five.

16         Ms. Spaulding, what did the Government you ask to

17  look for in the Key Bank records?

18  A     Transfers from Andrew Pearse and transfers from

19  Privinvest.

20  Q     Did you identify any transfers from Andrew Pearse or

21  transfers from Privinvest?

22  A     Yes.

23  Q     Looking at 1387, page five, the last two portions, blow

24  up the left side only, thank you, Ms. DiNardo, the other left

25  side, there we go.

SPAULDING – DIRECT – MOESER                    1465

1    Ms. Spaulding, can you explain to the jury, are

2    these the transactions you identified in the Key Bank records?

3    A    Yes.

4    Q    What do these transactions show?

5    A    There was a wire transfer on April 24, 2014 that shows

6    the originator as Andrew Pearse, the dollar amount is

7    $1,329,962.

8    Q    Is there another transaction from Andrew Pearse in the

9    Key Bank records?

10   A    On April 28, 2014, a wire transfer the amount shown is

11   $339,962.

12   Q    Ms. DiNardo, can we go to the right on these records.

13       Ms. Spaulding, where were these transfers sent?

14   A    To Palomar Natural Resources LLC.

15   Q    Ms. DiNardo, go to page 12 of 1387.  Can we blow up the

16   left side, the top part and middle?

17       Did you identify other transactions from Privinvest

18   for Andrew Pearse in the Key Bank records?

19   A    Yes.

20   Q    What other transactions?

21   A    Wire transfer on August 29, 2014 the originator

22   Privinvest Development SAL Holding for the amount of

23   $2,240,000.  And a wire transfer on September 3rd, 2014 from

24   Andrew Pearse in the amount of $1,120,000.

25   Q    If we can scroll to the right, Ms. DiNardo.

*Rivka Teich CSR, RPR, RMR, FCRR*
*Official Court Reporter*

SPAULDING – DIRECT – MOESER                    1466

1          Where do these transactions go?

2     A    To Palomar Natural Resources LLC.

3     Q    Did these transactions go through the United States?

4     A    Yes.

5     Q    Ms. Spaulding, where is Palomar Natural Resources

6     located, if you look at the second transaction?

7     A    Littleton.

8     Q    What is the third line?

9     A    United States.

10    Q    Where is Key Bank, where were the Key Bank records from?

11    What was the address of the account statements from earlier,

12    what state was that located in?

13    A    Colorado.

14    Q    Showing you Government's Exhibit 1525.  What is

15    Government's Exhibit 1525?

16    A    A schedule of wire transfers to Surjan Singh.

17    Q    What records did you create to create this schedule?

18    A    Bank of New York Mellon and the JP Morgan Chase records.

19    Q    How many transactions did you find for Surjan Singh?

20    A    Five transactions.

21    Q    What is the total amount that was sent to Surjan Singh?

22    A    $3,699,960.

23    Q    Did these each of these transactions go through the

24    United States?

25    A    Yes.

SPAULDING - DIRECT - MOESER                    1467

1  Q    There is a sixth transaction on the spreadsheet, what is

2  that, on the bottom?

3  A    There was a wire transfer on January 27, 2014, $800,000,

4  that the records show did not clear the bank.  And the wire

5  was then resent on January 28, 2014, same amount less than the

6  $40 service charge, $799,960, which is reflected in the top

7  part of the schedule.

8  Q    Did that payment reach Surjan Singh, the Surjan Singh

9  account?

10 A    Yes.

11          THE COURT:  What do you mean did not clear the bank?

12          THE WITNESS:  The transaction did not go all the way

13 through for some reason, your Honor.

14          THE COURT:  It was resubmitted a day or so later, is

15 that what the records show?

16          THE WITNESS:  Yes, your Honor.

17          THE COURT:  We'll take a 15-minute comfort break now

18 and be back here at 12:30.

19          Do not talk about the case.  I'll ask the witness

20 not to talk to anyone during the break.

21          THE WITNESS:  Yes.

22          THE COURT:  Thank you, ladies and gentlemen of the

23 jury.

24          (Jury exits the courtroom.)

25          THE COURT:  You may step down as well.

SPAULDING – DIRECT – MOESER                    1468

1              (Whereupon, the witness steps down.)

2              THE COURT:  Any issues to discuss in the absence of

3    the jury while all parties are present and the defendant is

4    present?

5              MR. BINI:  Not from the Government, your Honor.

6              MR. JACKSON:  No, your Honor.

7              THE COURT:  Enjoy your 15-minute break.

8              (Brief recess.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PROCEEDINGS                              1469

1              (In open court; jury not present.)

2              THE COURTROOM DEPUTY:  All rise.  Judge Kuntz

3    presiding.

4              THE COURT:  We have all counsel present and we are

5    having the defendant presented.

6              Do we have any issues to discuss before the jury

7    comes back?

8              MR. BINI:  None from the Government, Your Honor.

9              MR. JACKSON:  No, Your Honor.

10             THE COURT:  Mr. Jackson, would you get the CSO when

11   we have the defendant come back in?

12             Witness, please come back to the witness stand.

13   Thank you.

14             (Defendant enters the courtroom.)

15             THE COURT:  Hello, Mr. Boustani.  How are you today?

16             THE DEFENDANT:  All right, Judge.

17             THE COURT:  Good.

18             (Witness resumes the stand.)

19             MS. MOESER:  May I go back to the podium, Your

20   Honor?

21             THE COURT:  Yes, of course.

22             (Pause.)

23             (Jury enters.)

24             THE COURT:  Welcome back.  Thank you, ladies and

25   gentlemen of the jury.  Please be seated.

SPAULDING – DIRECT – MS. MOESER          1470

1          Please be seated.

2          I'm going to ask you, ma'am, did you discuss your

3   testimony with anyone during the break?

4          THE WITNESS:  No, Your Honor.

5          THE COURT:  Thank you.

6          You may continue your examination, Counsel.

7          MS. MOESER:  Thank you, Your Honor.

8          Welcome back, Ms. Spaulding.

9          If we can go back to Government's Exhibit 1525,

10  please, Ms. DiNardo.

11  DIRECT EXAMINATION (Continued)

12  BY MS. MOESER: (Continued.)

13  Q    Ms. Spaulding, did you review any other records related

14  to transactions to Surjan Singh?

15  A    Yes.

16         MS. MOESER:  Your Honor, the Government would seek

17  to admitted, subject to connection, Government's Exhibit 1843.

18         THE COURT:  Any objection other than previously

19  noted.

20         MR. JACKSON:  No, Your Honor.

21         THE COURT:  Admitted.  You may publish.

22         (Government Exhibit 1843, was received in evidence.)

23         (The above-referred to exhibit was published.)

24  BY MS. MOESER:

25  Q    What is Government's Exhibit 1843, Ms. Spaulding?

1   A    Government's Exhibit 1843 is the bank statements for

2   Surjan Singh at Abu Dhabi Commercial Bank.

3              MS. MOESER:  Ms. DiNardo, can we show Government's

4   Exhibit 1843 side by side with Government's Exhibit 1525?

5   Q    Ms. Spaulding, what did you look for in Government's

6   Exhibit 1843?

7   A    I looked at transactions to Surjan Singh's bank account

8   that would match the transactions that I had already found in

9   the Bank of New York Mellon and JPMorgan Chase records that I

10  reflected on the schedule.

11  Q    And what did you find, Ms. Spaulding?

12  A    I found all of the transactions except for the $800,000

13  transaction at the bottom of my schedule.

14  Q    That's the transaction that you testified did not go

15  through?

16  A    Yes.

17             MS. MOESER:  And we can take down those callouts,

18  Ms. DiNardo.

19             Could you show Government's Exhibit 1843 and

20  Government's Exhibit 1818, Ms. DiNardo?

21  Q    Ms. Spaulding, did you look for transactions between the

22  account in Government's Exhibit 1818 and the account in

23  Government's Exhibit 1843?

24  A    Yes.

25  Q    What did you find?

SPAULDING – DIRECT – MS. MOESER                    1472

1    A    I did find transactions between the two accounts.

2    Q    How many transactions?

3    A    Two.

4    Q    What was the value of each of those transactions?

5    A    $1 million.

6    Q    Showing you Government's Exhibit 1526.

7              MS. MOESER:  Excuse me, Ms. DiNardo.

8              The Government would actually seek to admit

9    Government's Exhibit 2462.

10             THE COURT:  Any objection?

11             MR. JACKSON:  No objection, Your Honor.

12             THE COURT:  Admitted.  You may publish it.

13             (Government Exhibit 2462, was received in evidence.)

14             (The above-referred to exhibit was published.)

15   BY MS. MOESER:

16   Q    Ms. Spaulding, who is this -- what is Government's

17   Exhibit 2462?

18   A    This is an email.

19   Q    Who is it from?

20   A    From Jean Boustani.

21   Q    Who is it to?

22   A    Najib Allam.

23   Q    What's the subject?

24   A    EMATUM.

25   Q    What's the date?

SPAULDING - DIRECT - MS. MOESER          1473

1    A     September 16, 2013.

2    Q     Can you read the first sentence?

3    A     All these are for Rosario.

4          MS. MOESER:  Your Honor, the Government seeks to

5    admit Government's Exhibit 2613 and 2613A.

6          THE COURT:  Any objection?

7          MR. JACKSON:  No objection.

8          THE COURT:  Admitted.  You may publish it.

9          (Government Exhibit 2613 and 2613A, were received in

10   evidence.)

11         (The above-referred to exhibit was published.)

12         MS. MOESER:  Can we show those side by side,

13   Ms. DiNardo?  Can we blow up the top of 2613, Ms. DiNardo?

14   BY MS. MOESER:

15   Q     Ms. Spaulding, what is Government's Exhibit 2613?

16   A     An email.

17   Q     Who is it from?

18   A     Antonio Do Rosario.

19   Q     Who is it to?

20   A     Mago2025@yahoo.com.

21   Q     What's the date?

22   A     December 10, 2013.

23         MS. MOESER:  Ms. DiNardo, can we blow up 2613A?

24   Q     What's the information on 2613A, Ms. Spaulding?

25   A     A list of dates and entities and dollar amounts.

1    Q    Now, showing you, Ms. Spaulding, Government's

2    Exhibit 1526.  What is Government's Exhibit 1526?

3    A    A schedule showing wire transfers to the entities that

4    were shown in Exhibits 2613A and the other two exhibits shown

5    at the top of the schedule.

6    Q    These are transactions to the entities in the emails we

7    just reviewed, Ms. Spaulding?

8    A    Yes.

9    Q    What records did you rely on to create this schedule?

10   A    The Bank of New York Mellon records.

11            MS. MOESER:  Ms. DiNardo, can you blow up the top

12   portion of the schedule, please?

13   Q    About how many -- well, how many transactions in total,

14   Ms. Spaulding, did you identify to these entities?

15   A    Twenty-one.

16   Q    Who sent these transactions?

17   A    Logistics International SAL Offshore AUH and Privinvest

18   Shipbuilding SAL Holding.

19   Q    What's the Privinvest account number?

20   A    The account number ending in 0028.

21   Q    Is that the same account number we saw on the previous

22   summary spreadsheets?

23   A    Yes.

24   Q    What's the total value of the transactions you

25   identify?

SPAULDING - DIRECT - MS. MOESER                1475

1    A    11,971,000.

2    Q    Did each of the transactions in the summary go through

3    the United States?

4    A    Yes.

5          MS. MOESER:   Ms. DiNardo, can we show Government's

6    Exhibit 1526 side by side with Government's Exhibit 2462?  Can

7    we blow up the top of 2462, Ms. DiNardo?  Can we also blow up

8    the top portion of 2462, Ms. DiNardo?

9          Ms. Spaulding, can you read the portion of the 2462

10   that's on the screen?

11   A    All these are for Rosario.  Amount:  1,175,000 U.S.

12   Dollars.  Name:  Walid Construcoes LDA.

13         THE COURT:  Would you spell that, please?

14         THE WITNESS:  Yes.  W-A-L-I-D C-O-N-S-T-R-U-C-O-E-S

15   L-D-A.

16   BY MS. MOESER:

17   Q    Did you find a transaction matching this information in

18   the Bank of New York Mellon records, Ms. Spaulding?

19   A    Yes.

20         MS. MOESER:  Ms. DiNardo, can we blow up the

21   transactions about two-thirds of the way down the page on

22   1526, please?

23   Q    Ms. Spaulding --

24         MS. MOESER:  Can we make it a little bit bigger

25   Ms. DiNardo?  Thank you.

SPAULDING – DIRECT – MS. MOESER          1476

1   Q    Ms. Spaulding, can you identify the transaction matching

2   the information in the email that you just read?

3   A    Yes.  The wire transfer on October 23, 2013, for

4   $1,175,000.

5   Q    And who is the beneficiary on this transaction?

6   A    Walid Construcoes LDA.

7   Q    Is that the same as the information in the email?

8   A    Yes.

9   Q    What's the amount of this transaction?

10  A    $1,175,000.

11  Q    Is that the same as the information in the email?

12  A    Yes.

13  Q    Did this transaction go through the United States?

14  A    Yes.

15  Q    Who sent this transaction?

16  A    Logistics International SAL Offshore AUH.

17            MS. MOESER:  Your Honor, the Government seeks to

18  admit Government's Exhibit 2325 and 2325A, 2325B.

19            THE COURT:  Any objection?

20            MR. JACKSON:  No objection, Your Honor.

21            THE COURT:  Admitted.  You may publish.

22            (Government Exhibit 2325, 2325A, and 2325B, were

23  received in evidence.)

24            (The above-referred to exhibit was published.)

25            MS. MOESER:  Ms. DiNardo, can we show 2325, and

SPAULDING – DIRECT – MS. MOESER          1477

1    2325A side by side, please?  Can you blow up the top of 2325,

2    please, Ms. DiNardo?

3    BY MS. MOESER:

4    Q    Ms. Spaulding, what is Government's Exhibit 2325?

5    A    It is an email.

6    Q    Who is it from?

7    A    From Jean Boustani.

8    Q    Who is it to?

9    A    N -- excuse me.  Nssmucavele@gmail.com.

10   Q    What's the subject?  You can read the top?

11   A    Transfers.

12   Q    What's the date?

13   A    June 18, 2013.

14           MS. MOESER:  You can take that down, Ms. DiNardo.

15   Q    What's 2325A, Ms. Spaulding?

16           MS. MOESER:  If we can blow it up a little,

17   Ms. DiNardo.

18   A    This is a SWIFT message.

19           MS. MOESER:   Can we show 2325B, Ms. DiNardo?

20   Q    What's 2325B, Ms. Spaulding?

21   A    A SWIFT message.

22           MS. MOESER:  Your Honor, the Government seeks to

23   admit 2351 and 2351A.

24           THE COURT:  Any objections?

25           MR. JACKSON:  No objections, Your Honor.

SPAULDING – DIRECT – MS. MOESER          1478

1          THE COURT:  Admitted.  You may publish.

2          (Government Exhibit 2351 and 2351A, were received in

3     evidence.)

4          (The above-referred to exhibit was published.)

5          MS. MOESER:  Can you blow up the top of 2351,

6     Ms. DiNardo?

7     BY MS. MOESER:

8     Q    Ms. Spaulding, what is Government's Exhibit 2351?

9     A    An email.

10    Q    Who is it from?

11    A    Jean Boustani.

12    Q    Who is it to?

13    A    Najib Allam.

14    Q    What's the date?

15    A    July 24, 2013.

16    Q    Can you read the top part of the email?  I'm sorry, can

17    you read the text in the email at the top?

18    A    Hi.  A account, too, please.  Let's please do the 150K

19    dollars first of August.  300 K dollars first of September.

20    Thanks.

21         MS. MOESER:  Can we blow up 2351A, Ms. DiNardo?

22    Q    Ms. Spaulding, what's the information in 2351A?

23    A    There's a name and a bank, some reference numbers, and

24    dollar amounts.

25         MS. MOESER:  Your Honor, the Government seeks to

SPAULDING – DIRECT – MS. MOESER                    1479

1    admit Government's Exhibit 2766.

2              THE COURT:  Any objection?

3              MR. JACKSON:  No objection, Your Honor.

4              THE COURT:  Admitted.  You may publish.

5              (Government Exhibit 2766, was received in evidence.)

6              (The above-referred to exhibit was published.)

7              MS. MOESER:  Thank you, Ms. DiNardo.

8    BY MS. MOESER:

9    Q    Ms. Spaulding, what's Government's Exhibit 2766?

10   A    An email.

11   Q    Who is it from?

12   A    Jean Boustani.

13   Q    Who is it to?

14   A    Najib Allam.

15   Q    What's the date?

16   A    April 16, 2014.

17   Q    Can you read the email?

18   A    For A.  One.  In South Africa.  Thanks.

19             MS. MOESER:  Your Honor, the Government seeks to

20   admit Government's Exhibit 2780.

21             THE COURT:  Any objection?

22             MR. JACKSON:  No objection, Your Honor.

23             THE COURT:  It's admitted.  You may publish.

24             (Government Exhibit 2780, was received in evidence.)

25             (The above-referred to exhibit was published.)

SPAULDING – DIRECT – MS. MOESER          1480

1           MS. MOESER:  Could you blow up the top, Ms. DiNardo?

2    BY MS. MOESER:

3    Q    Ms. Spaulding, what's Government's Exhibit 2780?

4    A    An email.

5    Q    Who is it from?

6    A    Jean Boustani.

7    Q    Who is it to?

8    A    Najib Allam.

9    Q    What is the date?

10   A    June 13, 2014.

11   Q    Can you read the subject at the top?

12   A    Re:  A.

13          MS. MOESER:  Can you control down, Ms. DiNardo?

14   Q    Ms. Spaulding, the bottom email, who is that from?

15   A    Jean Boustani.

16   Q    Can you read the first three lines?

17   A    New address for A.  700,000 U.S., dollar sign.  Jouberts'

18   attorneys.  Trust account.

19          THE COURT:  Can you spell Jouberts, please?

20          THE WITNESS:  J-O-U-B-E-R-T-S.

21          THE COURT:  Thank you.

22          MS. MOESER:  The Government seeks to admitted

23   Government's Exhibit 3186.

24          THE COURT:  Any objection?

25          MR. JACKSON:  No objection, Your Honor.

1          THE COURT:  You may admit and publish.

2          (Government Exhibit 3186, was received in evidence.)

3          (The above-referred to exhibit was published.)

4          MS. MOESER:  Can you blow up the top part,

5    Ms. DiNardo?

6    BY MS. MOESER:

7    Q    Ms. Spaulding, what's Government's Exhibit 3186?

8    A    An email.

9    Q    Who is it from?

10   A    Jean Boustani.

11   Q    What's the date?

12   A    May 1st, 2013.

13   Q    Can you read the subject at the top?

14   A    Transfer.

15   Q    And what information is in the email?

16   A    It's a SWIFT message.

17   Q    Ms. Spaulding, showing you Government's Exhibit 1527,

18   what is Government's Exhibit 1527?

19   A    A schedule showing wire transfers to the entities in the

20   emails in the Government's Exhibits that we just looked at.

21   Q    What records did you use to identify these transfers?

22   A    The Bank of New York Mellon records.

23          MS. MOESER:  Ms. DiNardo, can you blow up the

24   transactions?  Great.

25   Q    How many transactions did you find, Ms. Spaulding?

SPAULDING – DIRECT – MS. MOESER          1482

1    A    Ten transactions.

2    Q    Who sent these transactions?

3    A    Privinvest Shipbuilding SAL Holding, the account number

4    ending in 0028.

5    Q    Is that the same account that we saw earlier for

6    Privinvest?

7    A    Yes.

8    Q    And what was the total value of these transactions?

9    A    $8,830,869.57.

10   Q    Did each of these transactions go through the United

11   States?

12   A    Yes.

13   Q    Which bank?

14   A    The Bank of New York Mellon.

15        MS. MOESER:  Ms. DiNardo, can we show Government's

16   Exhibit 1527 and 2780 side by side?  Can you blow up the

17   bottom of 2780, Ms. DiNardo?  And can you blow up some of the

18   transactions in Government's Exhibit 1527 -- the bottom part

19   of the transaction, Ms. DiNardo?

20   Q    Ms. Spaulding, you already read the information in

21   Government's Exhibit 2780.  Did you find the transaction

22   matching that information?

23   A    Yes.

24   Q    What date was that transaction?

25   A    June 17, 2014.

SPAULDING – DIRECT – MS. MOESER          1483

1    Q    Who sent that transaction?

2    A    Privinvest Shipbuilding, account number ending in 0028.

3    Q    What's the value of that transaction?

4    A    $700,000.

5    Q    Does that match the information in the email,

6    Government's Exhibit 2780?

7    A    Yes.

8    Q    And who is the recipient of that transaction?

9    A    Jouberts attorney just account.

10   Q    Does that match the information in the email in

11   Government's Exhibit 2780?

12   A    Yes.

13   Q    Ms. Spaulding showing you Government's Exhibit 1528,

14   what's Government's Exhibit 1528?

15   A    A schedule of wire transfers to MS International Trading

16   FZCO.

17   Q    How many transactions did you find to MS International

18   Trading at CZO.

19        MS. MOESER:  If we may see the transactions,

20   Ms. DiNardo.

21   A    Four transactions.

22   Q    What's the total amount of those transactions?

23   A    $2,456,000.

24   Q    Who sent these transactions?

25   A    Logistics International SAL Offshore AUH.

SPAULDING – DIRECT – MS. MOESER          1484

1    Q    Did each of these transactions go through the United

2    States?

3    A    Yes.

4    Q    Showing Government's Exhibit 1529, what's Government's

5    Exhibit 1529, Ms. Spaulding?

6    A    A schedule showing wire transfers to Thyse International

7    Incorporation.

8              THE COURT:  Would you spell that, please?

9              THE WITNESS:  T-H-Y-S-E.

10   BY MS. MOESER:

11   Q    What records did you rely on to identify these

12   transactions?

13   A    The Bank of New York Mellon records.

14   Q    How many transactions did you find to Thyse

15   International?

16   A    Three.

17   Q    What's the total value --

18             MS. MOESER:  May we see the transactions,

19   Ms. DiNardo?

20   Q    What's the total value of those transactions?

21   A    $5 million.

22   Q    Who sent those transactions?

23   A    Logistics International SAL Offshore AUH.

24   Q    Did each of these transactions go through the United

25   States?

SPAULDING – DIRECT – MS. MOESER          1485

1    A     Yes.

2              MS. MOESER:  Your Honor, Government seeks to admit

3    Government's Exhibit 2744.

4              THE COURT:  Any objection?

5              MR. JACKSON:  No objection, Your Honor.

6              THE COURT:  Admitted.  You may publish.

7              (Government Exhibit 2744, was received in evidence.)

8              (The above-referred to exhibit was published.)

9    BY MS. MOESER:

10   Q     Ms. Spaulding, what is Government's Exhibit 2744?

11   A     An email.

12   Q     Who is it from?

13   A     Jean Boustani.

14   Q     Who is it to?

15   A     On Antonio Do Rosario.

16   Q     What's the date?

17   A     March 18, 2014.

18   Q     What's the subject?

19   A     Re:  Bank detail.

20             MS. MOESER:  Ms. DiNardo, if we can scroll down to

21   the bottom of the first page.

22             Ms. Spaulding, can you read the portion that -- the

23   email -- who is the email on the bottom of the first page from

24   underneath the line?

25   A     Jean Boustani.

SPAULDING – DIRECT – MS. MOESER                    1486

1    Q    I'm sorry, up one email.

2    A    Antonio Do Rosario.

3    Q    And who is it to?

4    A    Jean Boustani.

5    Q    Can you read the first two sentences of that email?

6    A    Marshal, sorry.  Send 1.5 to LIFO and 0.5 to AJY Trading

7    because I've just been told that they are different.

8              MS. MOESER:  Your Honor, the Government seeks to

9    admit Government's Exhibit 5108.

10             THE COURT:  Any objection?

11             MR. JACKSON:  No objection.

12             THE COURT:  Admitted.  You may publish.

13             (Government Exhibit 5108, was received in evidence.)

14             (The above-referred to exhibit was published.)

15   BY MS. MOESER:

16   Q    Ms. Spaulding, what's Government's Exhibit 5108?

17   A    It was an email.

18   Q    Who is it from?

19   A    Jean Boustani.

20   Q    Who is it to?

21   A    Najib Allam.

22   Q    What is the information in the bottom part of the email?

23   What's the account name?

24   A    AYJ trading FZC.

25   Q    And what's the subject at the top of the email?

SPAULDING – DIRECT – MS. MOESER                1487

1    A    Forward AYJ SWIFT.

2              MS. MOESER:  Your Honor, the Government seeks to

3    admit Government's Exhibit 2752.

4              THE COURT:  Any objection?

5              MR. JACKSON:  No objection.

6              THE COURT:  Admitted.  You may publish.

7              (Government Exhibit 2752, was received in evidence.)

8              (The above-referred to exhibit was published.)

9              MS. MOESER:  Your Honor, we also seek to admit

10   2752B.

11             THE COURT:  Any objection?

12             MR. JACKSON:  No objection, Your Honor.

13             THE COURT:  You may publish.  It's admitted.

14             (Government Exhibit 2752B, was received in

15   evidence.)

16             (The above-referred to exhibit was published.)

17   BY MS. MOESER:

18   Q    Ms. Spaulding, what's reference Exhibit 2752?

19   A    An email.

20   Q    Who is if from?

21   A    Jean Boustani.

22   Q    Who is it to?

23   A    Najib Allam.

24   Q    What's the date?

25   A    March 31, 2014.

SPAULDING – DIRECT – MS. MOESER                1488

1    Q    Can you read the text of the email?

2    A    DJ -- excuse me.  DG.  One please.  Thanks.

3    Q    What's the subject at the top?

4    A    Forward for Anlaba.

5         MS. MOESER:  Can we show Government's Exhibit 2752B,

6    please, Ms. DiNardo?

7    Q    Ms. Spaulding, what information is there in Government's

8    Exhibit 2752B?

9    A    The top section says AYJ Trading.  There's an invoice

10   number, the date, March 30th, 2014.

11   Q    Is there an amount?

12   A    Yes, 1 million.

13        MS. MOESER:  Your Honor, the Government seeks to

14   admit Government's Exhibit 2775.

15        THE COURT:  Any objection?

16        MR. JACKSON:  No objection, Your Honor.

17        THE COURT:  Admitted.  You may publish.

18        (Government Exhibit 2775, was received in evidence.)

19        (The above-referred to exhibit was published.)

20   BY MS. MOESER:

21   Q    Ms. Spaulding, what's Government's Exhibit 2775?

22   A    An email.

23   Q    Who is it from?

24   A    Jean Boustani.

25   Q    Who is it to?

SPAULDING - DIRECT - MS. MOESER                1489

1    A    Najib Allam.

2    Q    What's the date?

3    A    May 28, 2014.

4    Q    And what's the subject?

5    A    Re:  Transfers.

6            MS. MOESER:  Ms. DiNardo, can we go to the bottom of

7    page 2 on this email?

8    Q    Ms. Spaulding, who is the bottom email from?

9    A    Jean Boustani.

10   Q    Can you read it, please?

11   A    Hi.  Can we please complete:  1.6M, dollar sign, to DG

12   and then the account is closed.  We reach the total of 5M,

13   dollar sign.

14   Q    Could you read the next sentence, please, Ms. Spaulding?

15   A    1M, dollar sign, to Eslat or Islat and then also the

16   account is closed.  We reach the total of 2M, dollar sign.

17           MS. MOESER:  Your Honor, the Government would seek

18   to admit Government's Exhibit 2762 and 2762A.

19           THE COURT:  Any objection?

20           MR. JACKSON:  No objection, Your Honor.

21           THE COURT:  Admitted.  You may publish.

22           (Government Exhibit 2762 and 2762A, were received in

23   evidence.)

24           (The above-referred to exhibit was published.)

25           MS. MOESER:  Can we blow up the top of 2752,

SPAULDING – DIRECT – MS. MOESER                1490

1    Ms. DiNardo -- sorry, 62.

2    BY MS. MOESER:

3    Q    Ms. Spaulding, what's Government's Exhibit 2762?

4    A    An email.

5    Q    Who is it from?

6    A    Jean Boustani.

7    Q    Who is it to?

8    A    Najib Allam.

9    Q    What's the date?

10   A    April 9th, 2014.

11   Q    Can you read the text of the email, please?

12   A    One.  Please.  NYS in my list.  Thanks.

13   Q    And down below, who is the below email from?

14        MS. MOESER:  Can you scroll down a little bit,

15   Ms. DiNardo?

16   Q    Who is this email from?

17   A    Manuel Jorge.

18   Q    Who is it to?

19   A    Jean Boustani.

20   Q    Can you read the text?

21   A    For the new man.

22   Q    Looking at Government's Exhibit 2762A, what's

23   Government's Exhibit 2762A?

24   A    It is an invoice.

25   Q    Showing you Government's Exhibit 1530, what's

1    Government's Exhibit 1530, Ms. Spaulding?

2    A    Government's Exhibit 1530 is a schedule of wire transfers

3    referenced in the emails in the other Government's Exhibits

4    that we just looked at.

5              MS. MOESER:  Can we show the transactions in

6    Government's Exhibit 1530, Ms. DiNardo?

7    Q    Did you find transactions matching the information on the

8    emails that we just reviewed, Ms. Spaulding?

9    A    Yes.

10   Q    What records did you rely upon to find these

11   transactions?

12   A    The Bank of New York Mellon records.

13             MS. MOESER:  Can we show Government's Exhibit --

14   sorry.  Can we show Government's Exhibit 1530 side by side

15   with Government's Exhibit 2762, Ms. DiNardo?

16   Q    Did you find a transaction matching the information in

17   Government's Exhibit 2762 in the Bank of New York Mellon

18   records, Ms. Spaulding?

19   A    Yes.

20             MS. MOESER:  If we can blow up the bottom of

21   Ms. Spaulding's chart, Ms. DiNardo.

22   Q    Which transaction matches that information,

23   Ms. Spaulding?

24   A    The last transaction.

25   Q    What's the date of that transaction?

SPAULDING - DIRECT - MS. MOESER          1492

1    A    April 10th, 2014.

2    Q    And what was the date of the email?

3    A    April 9th, 2014.

4    Q    What's the value of the transaction on your schedule?

5    A    $1 million.

6    Q    And who is the recipient -- who is the beneficiary of the

7    transaction in your schedule?

8    A    Sunflower International Corp. FZE.

9         MS. MOESER:   And Ms. DiNardo, if we can show

10   Government's Exhibit 2762A on the -- maybe on the left side.

11   If we can blow up the bottom information underneath the box,

12   Ms. DiNardo, on 62A.  Yes.

13   Q    Does the beneficiary on your schedule match the

14   information in Government's Exhibit 2762A, Ms. Spaulding?

15   A    Yes.

16   Q    And what's the information in Government's Exhibit 2762A?

17   A    Beneficiary name Sunflower International Corp. FZE.

18   Q    Showing you Government's Exhibit 1531.  What is

19   Government's Exhibit 1531, Ms. Spaulding?

20   A    A summary schedule showing wire transfers to and from

21   Privinvest Shipbuilding, account number ending in 0028.

22   Q    Ms. Spaulding, I apologize, I meant to ask you, for

23   Government's Exhibit 1530, did --

24        MS. MOESER:  Can we bring 1530 up again,

25   Ms. DiNardo?

SPAULDING – DIRECT – MS. MOESER        1493

1    Q    Did each of the transactions in this summary go through

2    the United States?

3    A    Yes.

4    Q    Going back to Government's Exhibit 1531.

5         MS. MOESER:  If we can blow up the top portion,

6    Ms. DiNardo.

7    Q    How many transactions to Privinvest did you identify?

8    A    Six transactions.

9    Q    What's the date of the first transaction?

10   A    March 21, 2013.

11   Q    What's the value of the first transaction?

12   A    $327,900,000.

13   Q    The total -- what's the value of all transactions that

14   went to Privinvest?

15   A    1,047,463,200.

16   Q    Each of these transactions here were on your previous

17   summary schedules, correct?

18   A    Yes.

19   Q    Did each of these transactions go through the United

20   States?

21   A    Yes.

22        MS. MOESER:  Can we scroll down to the second part

23   of this 1531?  Thank you.  You can stop there.

24   Q    What does the second part of the 1531 show,

25   Ms. Spaulding?

SPAULDING – DIRECT – MS. MOESER          1494

1   A    Wire transfers from the Privinvest Shipbuilding account

2   ending in 0028.

3   Q    What's the first date of the wire transfers from the

4   Privinvest Shipbuilding account?

5   A    April 23, 2013.

6   Q    And what's the last date of transfers from the Privinvest

7   Shipbuilding account?

8   A    June 17th, 2014.

9   Q    Approximately how much in total did you identify going

10  from the Privinvest Shipbuilding account?

11  A    Approximately $35 million.

12  Q    If we can look at the top -- are all these transactions

13  going from the Privinvest Shipbuilding account in your earlier

14  summary schedules, Ms. Spaulding?

15  A    Yes.

16  Q    Did each of these transactions go through the United

17  States?

18  A    Yes.

19       MS. MOESER:  If we can look at the top portion,

20  Ms. DiNardo.

21  Q    Was there a transaction on June 25th, 2013, to

22  Privinvest?

23  A    Yes.

24  Q    What's the value of that transaction?

25  A    90,190,000.

SPAULDING – DIRECT – MS. MOESER                1495

1    Q    Who sent that transaction?

2    A    Credit Suisse AG.

3         MS. MOESER:  If we can go to the middle of the

4    transactions from Privinvest, Ms. DiNardo.

5    Q    Were there transactions from Privinvest after June 25th,

6    2013?

7    A    Yes.

8    Q    What's the first transaction after June 25th, 2013?

9    A    Transaction on June 26th, 2013, of $1 million to Andrew

10   Pearse.

11   Q    What's the second transaction after June 25th, 2013?

12   A    A wire transfer of $1 million on July 8th, 2013, to Jean

13   Boustani.

14   Q    Looking at the last transaction out from Privinvest

15   Shipbuilding, what's the date of that transaction,

16   Ms. Spaulding?

17   A    June 17th, 2014.

18   Q    What's the value of that transaction?

19   A    $700,000.

20   Q    Who is the beneficiary of that transaction?

21   A    Jouberts attorney trust account.

22        MS. MOESER:  May I have a moment, Your Honor?

23        THE COURT:  You may.

24        (Pause.)

25        MS. MOESER:  No further questions, Your Honor.

PROCEEDINGS                                                1496

1       THE COURT:  All right.  We are going to have a

2  cross-examination, obviously, ladies and gentlemen, but since

3  it's 1:25, can we agree to return from a lunch break at 2:45?

4  Does that work?  And then we will go straight through until

5  5:00 with perhaps a brief comfort break in between and we'll

6  have the hard stop at 5:00.  All right, so we will see you at

7  2:45.  Enjoy your lunch.  Do not talk about the case.

8       And Madam Witness, please do not talk about your

9  testimony during the lunch hour.

10      Thank you.

11      (Jury exits.)

12      THE COURT:  You may step down, now.  Thank you.

13      (Witness excused.)

14      THE COURT:  You may be seated, ladies and gentlemen

15  of the public.  The jury is out of the courtroom.  Do we have

16  any procedural issues to address while the defendant is

17  present and the jury is not present.

18      MR. BINI:  Not for the Government, Your Honor.

19      THE COURT:  Defense counsel?

20      MR. JACKSON:  No, Your Honor.

21      THE COURT:  Okay.  Thank you.  Enjoy your lunch

22  break.  We will see you at 2:45.

23      MR. BINI:  Thank you, Your Honor.

24      THE COURT:  Thank you.

25      (A recess in the proceedings was taken.)

                            PROCEEDINGS                        1497

 1                A F T E R N O O N   S E S S I O N

 2              (In open court; jury not present.)

 3              THE COURTROOM DEPUTY:  All rise.  Judge Kuntz

 4     presiding.

 5              THE COURT:  Thank you.  I know we have all the

 6     appearances.  You may be seated.  We'll have the defendant

 7     produced.  And are there any procedural questions that we need

 8     to address before we bring in the jury?

 9              MR. BINI:  Not for the Government, Your Honor.

10              MR. JACKSON:  No, Your Honor.  Thank you.

11              THE COURT:  Okay.  Thank you.

12              (Defendant enters the courtroom.)

13              THE COURT:  Welcome back, Mr. Boustani.  Good

14     afternoon.

15              THE DEFENDANT:  Good afternoon.  Thank you.

16              THE COURT:  Mr. Jackson, would you have the CSO

17     bring the jury in?

18              Madam, would you please come back to the witness

19     stand?

20              (Witness reassumes the stand.)

21              (Pause.)

22              (Jury enters.)

23              THE COURT:  Thank you.  Welcome back, ladies and

24     gentlemen of the jury.

25              I appreciate your patience.  Occasionally, matters

SPAULDING - CROSS - MR. JACKSON          1498

1    in other cases come up that I have to deal with in chambers,

2    so your lunch hour gets extended, but we still have our five

3    o'clock hard stop, so please be seated.

4              Please be seated, ma'am.

5              Ladies and gentlemen of the public as well.

6              Now, I'm going to ask you, as I said I would, did

7    you speak with anyone about your testimony during the break,

8    ma'am?

9              THE WITNESS:  No, Your Honor.

10             THE COURT:  Thank you.

11             All right.  We will have cross-examination.

12             MR. JACKSON:  Good morning, everyone -- afternoon.

13   CROSS-EXAMINATION

14   BY MR. JACKSON:

15   Q    Good afternoon to you, ma'am.

16   A    Good afternoon.

17             MR. JACKSON:  Your Honor, may I inquire?

18             THE COURT:  I think you already have.

19             MR. JACKSON:  Thank you, Judge.

20             THE COURT:  Go ahead.

21   BY MR. JACKSON:

22   Q    Now, ma'am, you went over a bunch of charts during your

23   direct examination, correct?

24   A    Yes.

25   Q    And am I correct that the Government when they asked you

SPAULDING – CROSS – MR. JACKSON                1499

1    to create the charts, they didn't just hand you a bunch of

2    records and say, Please make some charts, did they?

3    A      No.

4    Q      In fact, what happened is, you sat down with the

5    prosecutors and talked about the issues that you wanted to

6    present in the charts, right?

7    A      No.

8    Q      Okay.  Well, you did meet with the prosecutors before you

9    made the charts, correct, ma'am?

10   A      No.

11   Q      You didn't meet with them at all?

12   A      Not prior to making the charts, no.

13   Q      Did you speak to the prosecutors?

14   A      Yes.

15   Q      Who did you speak to?

16   A      Molly Moeser.

17   Q      And Ms. Moeser gave you some instructions in terms of

18   what she wanted you to do in terms of making the charts?

19   A      Yes.

20   Q      What was the instruction that she gave you?

21   A      She asked me to look in the wire transfers for

22   transactions involving particular entities.

23   Q      And the particular entities were some of the entities

24   that we talked about today during your direct testimony,

25   correct?

SPAULDING - CROSS - MR. JACKSON          1500

1    A    Yes.

2    Q    Now, to be clear, ma'am, you have always -- well, you've

3    never worked for any of the banks that were the subject of

4    your direct testimony, right?

5    A    Correct.

6    Q    You never worked for Bank of New York Mellon.

7    A    Correct.

8    Q    You never worked for JPMorgan Chase.

9    A    Correct.

10   Q    And you've -- you've never toured the facility of

11   JPMorgan, have you?

12   A    No.

13   Q    Nobody from JPMorgan has ever taken you to one of their

14   data facilities and said, you know, Let us show you around and

15   show you how it works in here, right?

16   A    Correct.

17   Q    And you don't know -- you are not personally familiar

18   with the mechanics of how the Bank of New York Mellon systems

19   work, are you?

20   A    No.

21   Q    In preparing your charts, you, yourself, didn't actually

22   speak to anyone at Bank of New York Mellon, did you?

23   A    No.

24   Q    You didn't speak to anyone at JPMorgan, did you?

25   A    No.

SPAULDING - CROSS - MR. JACKSON          1501

1   Q    Now -- by the way, you are aware that JPMorgan is a very

2   large bank, correct?

3   A    Yes.

4   Q    And you're aware that it has facilities all over the

5   place, right?

6   A    Yes.

7   Q    It has branches all over the country, right?

8   A    Yes.

9   Q    It has -- beyond the branches -- facilities where

10  different operations happen all over the country, right?

11  A    I don't know that.

12  Q    You don't know anything about that, right?

13  A    No.

14  Q    So when you talked about where certain of these banks

15  were located, you were only talking about what you saw on the

16  paper, correct?

17  A    Yes.

18  Q    In fact, you have no idea what the mechanics are of where

19  the actual transactions take place within those banks,

20  correct?

21  A    Correct.

22  Q    Now -- and that includes Bank of New York Mellon,

23  correct?

24  A    Yes.

25  Q    Now, ma'am, you mentioned earlier something called a

1    SWIFT message, right?

2    A    Yes.

3    Q    And it's not called a SWIFT message because it's super

4    fast, is it?

5    A    No.

6    Q    It's called a SWIFT message because SWIFT is an acronym,

7    right?

8    A    Yes.

9    Q    And it stands for the Society For Worldwide Interbank

10   Financial Telecommunication, correct?

11   A    Yes.

12   Q    Now, you, yourself, you've never worked for SWIFT, right?

13   A    Correct.

14   Q    And you don't know anything about it other than what you

15   just pointed out on the documents, right?

16   A    No, I don't.

17   Q    Okay.  Now -- by the way, ma'am, you mentioned that

18   you're an accountant -- you're a CPA.

19   A    Yes.

20   Q    Licensed in Arizona?

21   A    Yes.

22   Q    But you work out of New York mostly.

23   A    No.

24   Q    Do you work all over the country?

25   A    I mostly work in Arizona.  I do cases all over the

SPAULDING - CROSS - MR. JACKSON          1503

1    country.

2    Q    And prior to starting your own business, you worked for a

3    company called NTI, correct?

4    A    No.

5    Q    Okay.  Did you ever work for any other companies prior to

6    starting your own business?

7    A    Well, I've been a consultant.  Maybe that's what you

8    mean.

9    Q    Oh, okay.  You've been a consultant for other companies

10   that do the type of work with the federal government that you

11   do on an individual level.

12   A    Yes.

13   Q    And all of that work is work on behalf of the federal

14   government, right?

15   A    Yes.

16   Q    In fact, it's a regular occurrence in your business that

17   the prosecutors ask you to make some charts similar to the

18   charts that you made in this case, right?

19   A    Yes.

20   Q    And you are never a person who has any independent

21   understanding of the evidentiary significance within the

22   broader questions of the case of the charts that you're

23   creating, right?

24   A    I wouldn't say never.

25   Q    Okay.

1       In this case, you're certainly not offering through

2  the charts any opinion as to the validity of any charges,

3  right?

4  A    Correct.

5  Q    You don't -- your only purpose with the charts is to

6  depict and simplify certain other records that you have been

7  shown, right?

8  A    Correct.

9            MR. JACKSON:  Can we actually take a look at the

10 chart that is marked as Government's Exhibit 1523?

11 Q    Now, Ms. Spaulding, this is one of the charts that you

12 created that we talked about this morning, correct?

13 A    Yes.

14 Q    And this is a chart entitled, Wires to Beneficiary Andrew

15 Pearse, correct?

16 A    Yes.

17 Q    And now you have no idea who Andrew Pearse is, right?

18 A    I don't know Andrew Pearse.

19 Q    Right.  You don't know anything about Andrew Pearse on a

20 personal level, correct?

21 A    Correct.

22 Q    All you know about Andrew Pearse are what you saw in the

23 documents that the prosecutors handed to you, correct?

24 A    Correct.

25 Q    Now, on this document, you noted down at the bottom --

1    first of all, there are a series of transactions that are

2    depicted in this chart, right?

3    A    Yes.

4         MR. JACKSON:  Can we highlight the sixth transaction

5    down, the one that starts at 9/25/13?  Now, I know it's kind

6    of small.  Maybe we can blow that up just a little bit.

7         Can you see that, ladies and gentlemen?

8    Q    Now, as we're looking here, am I correct that what you

9    were depicting is a transaction that you saw in the records

10   from something called Palomar Holdings Limited of $15 million;

11   am I correct about that?

12   A    Yes.

13   Q    And this is money that went to this person named Andrew

14   Pearse, correct?

15   A    Yes.

16   Q    Now, Ms. Spaulding, can you identify what it says in the

17   final field where it says bank-to-bank information?

18   A    Yes.  It says REF dividends payment.

19   Q    Okay.  From your knowledge as an accountant and as a

20   person who does this kind of work, can you explain to us what

21   a dividend is?

22   A    A dividend is generally the return on an investment.

23   Q    What category of people generally get dividends?

24   A    Shareholders.

25   Q    And by shareholders, you mean people who have some sort

1    of equity ownership stake in a company, right?

2    A    Yes.

3    Q    And can we look at what's depicted in eight -- the eighth

4    column down, the one that starts at 10/23/13?  And this is

5    another transaction from this Palomar company of $7.8 million,

6    again, to this gentleman, Andrew Pearse; am I correct about

7    that, Ms. Spaulding?

8    A    Yes.

9    Q    And again it says at the end -- I'm sorry.  What does it

10   say in the bank-to-bank information?

11   A    REF dividend PYN.

12   Q    Okay.  Do you understand that as a dividend payment

13   indication?

14   A    That's what I would think that means.

15   Q    Okay.  And then if we look at the transaction, it says

16   6/3 -- it starts at June 3rd, 2014.  This is yet another

17   transaction from Palomar Holdings Limited to this individual,

18   Andrew Pearse, correct?

19   A    Yes.

20   Q    And, again, it says, dividends payment for this

21   $10 million transaction, right?

22   A    Yes.

23   Q    For him to get a grand total of -- when you added up all

24   of these -- $45 million.  That's what you had at the bottom,

25   right, Ms. Spaulding?

SPAULDING - CROSS - MR. JACKSON          1507

1    A    Yes.

2    Q    Now, you also -- the Government also asked you to take a

3    look at wires that went to Jean Boustani, correct?

4    A    Yes.

5    Q    And you understand Jean Boustani to be the handsome

6    defendant sitting here in the courtroom?

7    A    Yes.

8    Q    Now --

9              MS. MOESER:  Objection, Your Honor.

10             MR. JACKSON:  Withdrawn.

11             THE COURT:  Well, I don't know, I'm no judge of

12   male beauty.  I've already told you I look like Denzel

13   Washington.  Who am I to judge?  All right, go ahead.

14             MR. JACKSON:  Thank you, Judge.

15             THE COURT:  You're welcome.

16   BY MR. JACKSON:

17   Q    Now, these wires to Mr. Boustani, to be clear, these are

18   the only wires to Mr. Boustani that the prosecutors asked you

19   to take a look at and make a chart of, right?

20   A    These are the only wire transfers that I found to

21   Boustani.

22   Q    Right.

23             And if we can look at 1524 -- GX1524, there are a

24   bunch of payments that go from this company called Privinvest

25   to Mr. Boustani, correct?

SPAULDING – CROSS – MR. JACKSON          1508

1    A    Yes.

2    Q    Now, I'm correct, Ms. Spaulding, that you are aware that

3    not all wire transfers constitute illegal activity; am I

4    correct?

5    A    Yes.

6    Q    In fact, it's actually very common that companies wire

7    money to other companies or to individuals in regular business

8    transactions, correct?

9    A    Yes.

10   Q    You're also familiar with the fact that sometimes

11   salesmen get commissions on sales; you're aware of that,

12   correct?

13   A    Yes.

14   Q    Now, you see that all of these transactions that are

15   depicted in GX1524 are wires from Privinvest to Mr. Boustani

16   between May 13th and June 14th of 2014.  I'm sorry, May 6th,

17   2013, to June 30th, 2014, correct?

18   A    They are from Privinvest and from Logistics

19   International.

20   Q    Correct.

21        Privinvest and Logistics International during the

22   time period that I discussed, correct, Ms. Spaulding?

23   A    Yes.

24   Q    And they add up to, over that period of time, about

25   $15 million, right?

SPAULDING - CROSS - MR. JACKSON          1509

1   A     Yes.

2   Q     About $30 million less than what we saw in the chart of

3   all the monies that went to Mr. Pearse, correct?

4   A     Yes.

5   Q     And nowhere in the records did the prosecutors share with

6   you did you see any wires for dividend payments from that

7   company called Palomar to Mr. Boustani, correct?

8   A     Correct.

9   Q     Did the prosecutors ask you if you could take a second

10  look to see if there was anywhere that they might be able to

11  find dividend payments to Mr. Boustani from Palomar?

12  A     No.

13  Q     Okay.

14        By the way, the account that is depicted --

15        MR. JACKSON:  If we can cull up 1524 one more time.

16  Q     The account that's depicted in 1524 where Mr. Boustani

17  received the money, that's in a bank called Abu Dhabi

18  Commercial Bank?

19  A     Yes.

20  Q     And Abu Dhabi, I'm correct, is located outside of the

21  state of New York.

22  A     Yes.

23  Q     In fact, it's outside of the United States of America,

24  correct?

25  A     Yes.

SPAULDING - CROSS - MR. JACKSON                1510

1   Q    Do you know approximately how many miles away from the

2   United States Abu Dhabi is from the United States?

3   A    No.

4   Q    Okay.

5           Fair to say, though, in looking at the records that

6   the prosecutors provided to you at no point did you see any

7   U.S. bank account for Mr. Boustani.

8   A    Correct.

9   Q    Okay.  Now, ma'am, if you don't mind, can we take a brief

10  look at Government's Exhibit 1520?  Now, this is another one

11  of the charts that you put together, correct, Ms. Spaulding?

12  A    Yes.

13  Q    By the way, did the prosecutors at any point ask you to

14  make a chart of all of the actual -- did they ask you to look

15  at emails, right, as well as some of these financial records,

16  right?

17  A    Yes.

18  Q    Did they ever ask you if you could take all of the emails

19  that actually reference information about lies to investors

20  and make that into some kind of chart?

21  A    No.

22  Q    They just asked you to focus on these payments.

23  A    Yes.

24  Q    Okay.  So let's look at 1520, and in 1520, we have --

25  you're basically depicting four different layers of

SPAULDING - CROSS - MR. JACKSON          1511

1    transaction, correct?

2    A    Four different time periods of transactions.  I don't

3    know about layers, but...

4    Q    But that's -- I understand.

5              So just to be clear, there are four different levels

6    on this -- four different, sort of, arrow flows on this chart,

7    correct?

8    A    Yes.

9    Q    But, in fact, each one of these layers -- if you don't

10   mind if I call them layers -- reflects multiple different

11   transactions, correct?

12   A    They reflect the transactions that are shown on the

13   chart.

14   Q    Right.  And some of them represent multiple transactions

15   within the layer, right?  Like, there's one transaction from

16   CS International at the top to Credit Suisse.

17             Do you see that?

18   A    Yes.

19   Q    And then there's another transaction from Credit Suisse

20   paying Privinvest Shipbuilding, correct?

21   A    Yes.

22   Q    Now, you're aware that Credit Suisse is one of the

23   largest banks in the world, correct?

24   A    I'm aware that they are a very large bank.

25   Q    Right.  You know that they have over $1 trillion in

SPAULDING - CROSS - MR. JACKSON          1512

1    assets under management?

2    A    No.

3    Q    Well, you know it's a lot of money, right?

4    A    I know they are a very large bank.

5    Q    You are aware that they manage many, many billions of

6    dollars in assets, correct?

7    A    No.

8    Q    You have no idea what the actual number is.

9    A    No.

10   Q    Certainly, the prosecutors didn't ask you to take a look

11   at all of the financial records of Credit Suisse to prepare

12   these charts.

13   A    No.

14   Q    Now, what other documents, by the way, ma'am, did you

15   utilize to create Government's Exhibit 1520?

16   A    The Bank of New York Mellon wire transfers and also one

17   of the SWIFT messages.

18   Q    Okay.  Do you know what the Government exhibit numbers

19   are of those documents?

20   A    No, not off the top of my head.

21   Q    Now, the first logo that we see depicted here on

22   March 21st, 2013, we see $328 million being transferred from

23   CS International to Credit Suisse AG, correct?

24   A    Yes.

25   Q    But, in fact, this was $372 million loan, correct?

SPAULDING - CROSS - MR. JACKSON          1513

1    A    I don't know.

2    Q    Okay.  And in the second transaction beneath that, you

3    see that there's 90 million transferred from CS International

4    to Credit Suisse AG, correct?

5    A    Yes.

6    Q    But, in fact, that was a hundred million dollar loan at

7    face value, correct?

8    A    I don't know.

9    Q    Okay.  You don't really have deep familiarity with the

10   underlying loan structure involved here?

11   A    No, I don't.

12   Q    The structure of these types of loans can be wildly

13   complex, correct?

14           MS. MOESER:  Objection, Your Honor.

15           THE COURT:  If you know.

16   A    I don't really know.

17   Q    You understand that they can be complex.

18   A    They could be complex.

19   Q    And then in this third transaction, what you have

20   depicted is $6,160,000 and $7,040,000 on July 9th, 2013, going

21   to CS International, correct?

22   A    Yes.

23   Q    Now, you are not actually trying to suggest with this

24   chart that the money that came from ICE Global Credit and ICE

25   3: Global Credit CLO Limited went directly into CS

SPAULDING - CROSS - MR. JACKSON          1514

1    International then into Credit Suisse AG and then that actual

2    money went to Privinvest; that's not what you are suggesting,

3    is it?

4    A    No.

5    Q    These are multiple different transactions that you are

6    depicting, right?

7    A    Well, there are several different transactions.

8    Q    Right.

9            And, in fact, I'm correct, aren't I, that the ICE

10   Global Credit CLO -- actually, before I ask that question, do

11   you know what ICE Global Credit CLO is?

12   A    No.

13   Q    Do you know what a CLO is?

14   A    No.

15   Q    Do you know what ICE 3: Global Credit CLO is?

16   A    No.

17   Q    Did the prosecutors ask you to make these arrows from ICE

18   Global Credit feed into CS International in this way?

19   A    I don't think they specifically asked me to do that.

20   That's the transaction that happened.

21   Q    Okay.  But did they ask you to try to figure out a way to

22   make it look like ICE Global money was going to Privinvest?

23   A    No.

24   Q    Okay.

25           Now, in fact, this ICE Global Credit CLO money on

SPAULDING - CROSS - MR. JACKSON          1515

1    July 9th, it doesn't actually relate to the transaction

2    between CS International and Credit Suisse that took place on

3    August 14th, 2013, does it?

4    A    I don't know.

5    Q    You are not aware one way or the other.

6    A    I don't know.

7    Q    Well, let's take a look at Government's Exhibit 42, which

8    is already in evidence.

9              MR. JACKSON:  May we depict that, Your Honor?

10             THE COURT:  Of course.  If it's in evidence, you can

11   show it to the jury without asking.

12             MR. JACKSON:  Thank you, Judge.

13   BY MR. JACKSON:

14   Q    So this is Government's Exhibit 42, okay?  And --

15             MR. JACKSON:  Is there any way to turn this screen

16   on, Mr. Jackson?

17             THE COURTROOM DEPUTY:  It should be just press the

18   button on the side, sir.  There you go.  The power button.

19             MR. JACKSON:  I apologize, ladies and gentlemen.

20             Thank you.

21   BY MR. JACKSON:

22   Q    Okay.  So here we have Government's Exhibit 42.  And can

23   you read what it says at the top, just the heading of this

24   document?

25   A    Form of Transfer Certificate.

SPAULDING - CROSS - MR. JACKSON                1516

1    Q     And if you go down from there -- first of all, you see

2    that it says to Credit Suisse AG, London branch as facility

3    agent, correct?

4    A     Yes.

5    Q     And then it says Credit Suisse International and ICE 3:

6    Global Credit CLO, correct?

7    A     Yes.

8          MR. JACKSON:  And if we can go to the third page of

9    this, if we can blow up the top half of that, please,

10   Mr. McLeod.

11   Q     Now, can you see where it has -- if we are looking in the

12   middle -- let me try that.  Look at that.  It's like magic.

13         So you can see here there is a June 25th, 2013,

14   transaction reference here, correct?

15   A     Yes.

16   Q     And that's the transaction that is depicted --

17         MR. JACKSON:  Can you put next to this Government's

18   Exhibit 1520?  Let me try that.  Am I messing this up,

19   Mr. Jackson?  I'm sorry.  I'm going to X it.  I'm going to X

20   it.  Forget about it.

21   Q     But can you see here the second layer of Government's

22   Exhibit 1520?  That's taking place on June 25th, 2013,

23   correct?

24   A     Yes.

25   Q     And this document, Government's Exhibit 42 depicts --

SPAULDING - CROSS - MR. JACKSON          1517

1    relates to this transaction which happens on June 25th, 2013,

2    correct?

3    A    I don't know.  I'm not familiar with this document.  I

4    can see the date, but...

5    Q    The prosecutors didn't show you this document in

6    preparing for your testimony.

7    A    No.

8    Q    Okay.

9         MR. JACKSON:   Can we blow up the top half of

10   Government's Exhibit 42?

11   Q    You can see here that this is a transaction document

12   between ICE 3: Global Credit CLO Limited and Credit Suisse

13   International, correct?

14   A    Yes.

15   Q    And those were the exact entities that are depicted on

16   the third layer of GX1520, correct?

17   A    Yes.

18   Q    And, in fact, they're not -- this transaction -- the

19   amount you can see of this transaction, this is the -- this is

20   the transaction that you have depicted in the first part of

21   the third layer, right?

22   A    I don't know.

23   Q    Okay.  So let me just ask you, ma'am, is it possible that

24   Government's Exhibit 1520 got it wrong and this transaction

25   that you have depicted with ICE Global is actually about

SPAULDING - CROSS - MR. JACKSON          1518

1    buying some of the loan that is depicted in the second layer?

2    A    I don't know.

3    Q    You're not sure whether this document is right at this

4    point.

5    A    Oh, I'm sure it's correct.

6              (Continued on the following page.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SPAULDING - CROSS - MR. JACKSON                    1519

1    CROSS-EXAMINATION (Continued)

2    BY MR. JACKSON:

3    Q    You're sure it's correct?

4    A    I'm sure that it shows the transactions that took place

5    in the chronological order that are shown on the flow chart.

6    Q    Okay.  But all you were trying to do was chronological

7    order?

8    A    Yes.

9    Q    Right.  You're not sure that this transaction actually

10   relates to the loan that took place on 8/14/2013, right?

11   A    I don't know.

12   Q    Okay.  In fact, the prosecutors didn't walk through with

13   you the mechanics or the details of a lot of the underlying

14   loan structure, right?

15   A    Correct.

16   Q    So it's fair to say you have no idea whether the ICE

17   Canyon money actually went to Privinvest Shipping?

18   A    No, I didn't.

19        MR. JACKSON:  You can take that down, Mr. McLeod.

20   Q    By the way, do you know where ICE Canyon, the two ICE

21   Canyon entities that are depicted in your chart, do you know

22   where they're incorporated?

23   A    No.

24   Q    You have no idea whether it's in the United States, in

25   Europe, or somewhere else, correct?

SPAULDING – CROSS – MR. JACKSON          1520

1    A    I believe I saw an address on the document but I -- I'm

2    not sure.

3    Q    Okay.

4              MR. JACKSON:  May I have one minute, Your Honor?

5              THE COURT:  Of course.

6              (Pause.)

7              MR. JACKSON:  Ma'am, thank you very much.

8    Appreciate your time.

9              No further questions, Your Honor.

10             THE COURT:  Thank you.  Any redirect?

11             MS. MOESER:  No, Your Honor.

12             THE COURT:  Thank you.  You may step down.

13             (The witness was excused.)

14             THE COURT:  All right.  Call your next witness,

15   please.

16             MR. MEHTA:  Yes, Your Honor.

17             We call FBI Special Agent Jonathan Polonitza.

18             THE COURT:  Okay.  Please have the special agent

19   brought forward and be sworn.

20

21

22

23

24

25

POLONITZA – DIRECT – MR. MEHTA                    1521

1      (Witness takes the witness stand.)

2   **JONATHAN POLONITZA,** called as a witness, having been first

3   duly sworn/affirmed, was examined and testified as follows:

4           THE COURTROOM DEPUTY:  You do solely swear or affirm

5   the answers you are about to give the court, are the truth the

6   whole truth and nothing but the truth, so help you God?

7           THE WITNESS:  I do.

8           THE COURT:  Please be seated, sir.

9           Please state and spell your name clearly for the

10  record.

11          The microphone in front of you will swivel to you,

12  if the green light's lit, and keep the microphone right below

13  where you speak.  We will hear it clearly by counsel and by

14  the jury.

15          Okay, please state your name, spell it, and then

16  counsel will inquire.

17          THE WITNESS:  Sure.  First name Jonathan,

18  J-O-N-A-T-A-N; last name, Polonitza, P-O-L-O-N-I-T-Z-A.

19          THE COURT:  Thank you.

20          You may inquire, counsel.

21          MR. MEHTA:  Thank you, Your Honor.

22  DIRECT EXAMINATION

23  BY MR. MEHTA:

24  Q    Good afternoon.

25  A    Good afternoon.

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

POLONITZA – DIRECT – MR. MEHTA                    1522

1    Q    Sir, where do you work?

2    A    The Federal Bureau of Investigation.

3    Q    And what is your title?

4    A    Special agent.

5    Q    How long have you been a special agent?

6    A    Approximately nine years.

7    Q    And prior to becoming a special agent with the FBI, tell

8    us what your background is?

9    A    I received a bachelor's degree in finance, and after

10   getting my bachelor's degree in finance, I became a financial

11   analyst.

12   Q    What is your employment background prior to joining the

13   FBI?

14   A    I was a financial analyst for several years after

15   graduating college.

16   Q    And when you joined the FBI, were you did you receive

17   training?

18   A    I did.

19        I went to the academy at Quantico, Virginia.

20   Received quite a bit of training there.

21        Upon graduation, I've been in New York for

22   approximately a little over eight years.

23        I have attended and participated in countless

24   trainings over the years.  Trainings and conferences monthly,

25   quarterly, annual basis; online and in person; on matters such

POLONITZA – DIRECT – MR. MEHTA                1523

1    as fraud, money laundering, investigative techniques and a

2    variety of other topics.

3    Q    What unit are you currently assigned to at the FBI?

4    A    I'm on a white collar squad in the criminal division of

5    FIB New York.

6    Q    Are you familiar with an investigation into the

7    defendant, Jean Boustani?

8    A    I am.

9    Q    What role, if any, did you play in the investigation?

10   A    A very minimal role up until recently when I was asked to

11   review hundreds of emails in preparation for today.

12   Q    Did you interview anyone in connection with the

13   investigation?

14   A    I did not.

15   Q    Did you review any notes of any interviews in the

16   investigation?

17   A    I did not.

18   Q    Are you familiar with all the facts of the investigation?

19   A    No.

20             MR. MEHTA:  Your Honor, at this time I'd like to

21   move into evidence, or offer, Your Honor, a number of exhibits

22   to maybe make it smoother.

23             THE COURT:  Smooth is good.

24             MR. MEHTA:  All right.  I'm going to do about 20 to

25   begin with, and we'll take it from there.

POLONITZA – DIRECT – MR. MEHTA                    1524

1           THE COURT:  All right.

2           Have you discussed these with opposing counsel?

3           MR. MEHTA:  I have, Your Honor.  There's no

4    objection.

5           THE COURT:  Why don't you call them out, I'll let

6    you do 20, and at the end of the 20, I'll ask defense counsel

7    if they have any objection to any of the 20.

8           MR. MEHTA:  Yes, Your Honor.

9           3190, 3191, 3191A, 3191B, 3192, 2007, 2012, 2013,

10   2015, 2016, 2018, 2018A, 2018B, 2018C, 2046, 2044, 2044A,

11   2044B, 2021, 2020.  And, Your Honor, I apologize, for 2021,

12   there's an attachment, 2021A.

13          THE COURT:  Any objection to any of the documents

14   that counsel has just identified?

15          MR. SCHACHTER:  No objection, Your Honor.

16          THE COURT:  They're admitted.  You may publish them

17   to the jury.

18          (Government Exhibit 3190, 3191, were received in

19   evidence.)

20          (Government Exhibit 3191A, 3191B, 3192, were

21   received in evidence.)

22          (Government Exhibit 2007, 2012, 2013, were received

23   in evidence.)

24          (Government Exhibit 2015, 2016, were received in

25   evidence.)

POLONITZA – DIRECT – MR. MEHTA                    1525

1              (Government Exhibit 2018, 2018A, 2018B, 2018C, were

2      received in evidence.)

3              (Government Exhibit 2046, was received in evidence.)

4              (Government Exhibit 2044, 2044A, 2044B, were

5      received in evidence.)

6              (Government Exhibit 2021, 2020, and 2021A, were

7      received in evidence.)

8              MR. MEHTA:  Yes, Your Honor, I'm going to start with

9      the first one I referenced, Your Honor.  It's going to be

10     3190.

11             (Exhibit published.)

12             THE COURTROOM DEPUTY:  Laptop?

13             MS. DiNARDO:  Yes, please.

14             MR. MEHTA:  Can we blow up this bottom email.

15     BY MR. MEHTA:

16     Q    Agent Polonitza, can you read that bottom email to the

17     jury?

18     A    Sure.  This is an email from Basetsane Thokoane.

19             THE COURT:  Would you spell that for the reporter,

20     please?

21     A    First name T-H-O-K-O-A-N-E.  Last name,

22     B-A-S-E-T-S-A-N-A.  To Jean Boustani.  Dated April 16th, 2011

23     with the subject of way forward.

24     Q    Can you read the email, please?

25     A    Morning.  Mozambique is consolidated marine

POLONITZA – DIRECT – MR. MEHTA          1526

1   infrastructure, hydro dam, leisure, hospitality and

2   agriculture for now.  This is high level.  What will be the

3   way forward.

4           Regards B.

5           MR. MEHTA:  Can we see the defendant's response,

6   please?

7           (Exhibit published.)

8   Q   Can you plead read that email, sir?

9   A   Hi.  You should tell me how to advance.  I am ready.

10  Shall we start with the meeting the president, question mark.

11  Or do we tackle it project by project, question make.

12          I'm all yours, my dear.

13          MR. MEHTA:  Can we go to 3191 next.

14          (Exhibit published.)

15          MR. MEHTA:  Can we enlarge, please.  Thank you.

16  Q   Can you read the email, sir.

17  A   This is an email from Jean Boustani to Logistics

18  International, dated May 8th, 2011 with the subject line of

19  Mozambique.

20          Attached are a draft letter addressed to the

21  president of Mozambique which needs to be put on the

22  Privinvest Holding letterhead.

23          A note highlighting a macro view of the country for

24  your info.  I need also please with the letter your profile,

25  slash, CV.

POLONITZA – DIRECT – MR. MEHTA                    1527

1    I will be sending them also the different websites

2    of the group.  Privinvest, CMN, Nobiskrug, HSY, KDM.

3    Basetsane Thokoane is my South African friend who is

4    arranging the meeting and work there.

5    Q    Are there attachments to this document?

6    A    There is.

7    MR. MEHTA:  Okay.  Let's start with the first one,

8    3191A.

9    (Exhibit published.)

10   Q    And can you see who it's to please, first, the top left

11   corner?

12   A    President Armando Guebuza from Mozambique.

13   MR. MEHTA:  Back out.  Can we see the actual letter.

14   Thank you.

15   Q    Can you read that please, sir?

16   A    Mr. President, in the outset, I am honored to visit is

17   the Republic of Mozambique and meeting with you.

18   Miss Basetsane Thokoane of Twende Pamoja --

19   THE COURT:  Would you spell Twende Pamoja for the

20   reporter?

21   THE WITNESS:  Sure.

22   T-W-E-N-D-E.  P-A-M-O-J-A.

23   A    -- has been discussing with our group in, quotes,

24   Privinvest Holding various aspects related to the perspectives

25   of foreign direct investments, FDI, in the Republic of

POLONITZA – DIRECT – MR. MEHTA          1528

1    Mozambique.

2           With this in mind, I look forward to our meeting as

3    soon as it is convenient for you to discuss investment

4    opportunities in the Republic of Mozambique and to develop

5    mutual beneficial endeavors.

6           Sincerely, Iskandar Safa.

7           MR. MEHTA:  Go to the second attachment, 3191B.

8           (Exhibit published.)

9           MR. MEHTA:  And can you blow up the first half.

10   Q    Can you see where it says "president", sir?

11   A    Yes.

12   Q    Can you read that please?

13   A    Armando Guebuza.

14          MR. MEHTA:  And can we go down to the second half of

15   this page?

16   Q    Do you see where it says "GDP"?

17   A    I do.

18   Q    Can you read that, please?

19   A    2009 estimate.  Total 19.762 billion.

20          Per capita, $933.

21   Q    And can you read the currency is, please?

22   A    Mozambican metical.

23          MR. MEHTA:  Can we go to page 5 of this document,

24   please?

25          (Exhibit published.)

POLONITZA — DIRECT — MR. MEHTA                    1529

1          MR. MEHTA:  And can you please blow up the middle

2     part, please?

3     Q     And can you please read the second paragraph, sir?

4     A     Presidential and national assembly elections took place

5     on December 1st through the 2nd of 2004.

6               FRELIMO candidate Armando Guebuza won with

7     64 percent of the popular vote.

8               His opponent Alfonso Dhlakama of RENAMO received

9     32 percent of the popular vote.

10          MR. MEHTA:  Let's go to 3192, please.

11          Can we go to the second page.

12          (Exhibit published.)

13          MR. MEHTA:  Stop there, please.

14          Can you blow up the email from the defendant, Jean

15     Boustani.

16     Q     Read the email from the defendant.

17     A     This is an email from Jean Boustani to Basetsane Thokoane

18     dated September 8th, 2011 with the subject regarding NDA.

19               Bassy, I feel that Rosario and Teo want a weaker and

20     shorter NDA.  So they can bring other companies working in EEZ

21     in case they don't get it for us in less than a year and/or we

22     disagree over their cut.  I don't trust them at all.

23               The professor keeps on quote/unquote lecturing.  He

24     needs to say I will get this deal and my bosses and I want X

25     amount of dollars.

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

POLONITZA – DIRECT – MR. MEHTA                1530

1           MR. MEHTA:  Back out of this, please.

2           Can we go up to the top, please?  Keep going.

3    Q    Can you read the email from Basetsane Thokoane?

4    A    Email from Basetsane Thokoane to Jean Boustani dated

5    September 90, 2011.  With the same subject of regarding NDA.

6           Morning.  If that's the case, let's proceed with the

7    NDA.  Rosario is optimistic insists on three months.  They

8    want to sign today 'cause they've already lined up meetings

9    for the next week.

10   Q    Would you read the defendant's response, please?

11   A    The response is:  We will not change any word in the NDA.

12   One year.  It is standard.  It is Rosario who is sending a

13   negative message by negotiating the NDA terms.

14           MR. MEHTA:  Can we go to Exhibit 2007 now.

15           Can we go to the bottom email on page 4.

16           (Exhibit published.)

17           MR. MEHTA:  Blow it up, please.

18   Q    Can you read the email, please, sir.

19   A    There an email from Teofilo Nhangumele to Jean Boustani

20   dated November 11th, 2012 with the subject of way forward.

21           Dear brother, Jean.  This is between you and me and

22   in confidence.  You will agree if I say that the success of

23   this project will depend in considerable a degree on the level

24   at which we communicate openly and accommodate the interest of

25   the parties involved.

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

POLONITZA – DIRECT – MR. MEHTA          1531

1          THE COURT:  You are about to cross the line.

2          Slow, deliberate, Lord Vader speech pattern, and the

3   too quick, Woody Allen, Chris Rock, Wanda Sykes speech

4   pattern.

5          My fancy way of saying, when you're reading, make

6   sure you read slowly.

7          THE WITNESS:  I understand.

8          THE COURT:  Continue with:  You will also.

9   A    You will also agree that closing a deal of this size is

10  not an easy task for both of us since there are few interests

11  involved.  There is increasing expectation in the upcoming

12  visit to Abu Dhabi, given the new impetus that has been given

13  to the deal.

14         The team that I am assembling is very crucial for

15  the success of the deal, since we are the ones who will

16  produce the report which will determine whether or not the

17  project will take off.

18         To secure that project is granted a go-ahead by the

19  HOS, a payment has to be agreed before we get there so that we

20  know and agree well in advance what ought to be paid and when.

21         Whatever advance payments to be paid before the

22  project, they can built -- they can be built into the project

23  and recovered.

24         We see this advance payment as an investment and not

25  a cost to the project.  In the end of the day, whatever monies

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

POLONITZA – DIRECT – MR. MEHTA                    1532

1    paid will be recovered.  I trust this should be fine with...

2              MR. MEHTA:  Can we see the defendant's response.

3              (Exhibit published.)

4    A    The response was:  Dear brother, Teo.

5              I am very glad that we are now talking openly.  Our

6    group operates with the principal of quote/unquote success fee

7    in favor of our local partners which will be added to the

8    final project value.  A very important issue which needs to be

9    clear, we had various negative experiences in Africa,

10   especially related to the quote/unquote success fees payments

11   and, therefore, we have a strict policy in the group

12   consisting of not disbursing any quote/unquote success fee

13   before the signature of the project contract.

14             The quote/unquote success fee disbursements will be

15   also divided proportionally to the project payment

16   installments.

17             A detailed quote/unquote success fee's agreement

18   will be signed between us before the project contract

19   signature to make all things clear.

20             Meanwhile, our group will be gladly inviting you to

21   Abu Dhabi in taking care of all the related expenditures.

22             I trust the above is logical and comfortable for

23   you, brother.

24             MR. MEHTA:  Can we see the response from Jean

25   Boustani.

POLONITZA – DIRECT – MR. MEHTA          1533

1  Q     Read that, please.

2  A     Response was:  Dear, brother.  Fabulous.  I agree with

3  you in principal.

4         Let us agree and look at project in two distinct

5  moments.  One moment is to massage the system and get the

6  political will to go ahead with the project.  The second

7  moment is the project implementation execution.

8         I agree with you that any monies can only be paid

9  after the project signing.  This has to be treated separately

10 from the project implementation.  I will tell you why.

11        Because for the project implementation, there will

12 be other players whose interest will have to be looked after;

13 e.g., ministry of defense, ministry of interior, Air Force, et

14 cetera.

15        At the present moment, all these people are not

16 directly involved.  Our task as levy is to ensure that the

17 project is given a formal go-ahead, and a success fee for that

18 has to be guaranteed.

19        Of course, we will not walk out of the project, as

20 we will continue to offer our support and ensure that nothing

21 is compromised.

22        You will agree with me if I say that in democratic

23 governments like ours, people come and go, and everyone

24 involved will want to have his or her share of the deal while

25 in office, because once out of the office, it will be

POLONITZA – DIRECT – MR. MEHTA                    1534

1    difficult.  So it is important that the contract signing

2    success fee be agreed and paid in a once-off upon the signing

3    of the contract.

4         The project implementation fees and commissions can

5    be paid as monies are being paid to your organization.  We

6    will still be in the system to facilitate communication and

7    managing the stakeholders to ensure the success of the project

8    exhibit.

9         I trust this is fine and acceptable to you.

10        MR. MEHTA:  Can we see the response from the

11   defendant, please?

12        (Exhibit published.)

13   A    The response was:  Good morning, brother.

14        This is good news.

15        However, there is an element of quote/unquote

16   marriage between us which must be cemented.

17        Brother Teo, I want MULEPE to be our local partner

18   in Mozambique.  Ultimately forming a joint venture between

19   ADMAR and MULEPE for the execution of the project.

20        MULEPE imperative and paramount role is to ensure

21   that it acts as the quote/unquote the one and only hub for the

22   disbursement of all quote/unquote success lobbying and other

23   projects related fees.

24        We will not and simply cannot deal with various

25   parties in Mozambique for this subject.  It has to be managed

POLONITZA – DIRECT – MR. MEHTA          1535

1    and controlled by MULEPE, as the whole sole interface between

2    ADMAR and the Mozambique authorities.  Different project

3    actors.  So the quote/unquote success fees agreement has to

4    enclose from now all actors.

5            I am sure that you will fully endorse this issue.

6    Awaiting the delegation list and passport copies ASAP.

7            MR. MEHTA:  And can we see the next email, please,

8    in the chain from Mr. Nhangumele.

9    Q    Can you read that please, sir?

10   A    The response was:  Brother, we are making a steady

11   progress.  I also agree with your approach of cementing the

12   relationship with MULEPE.

13           This has to be concluded as soon as possible.  I

14   want you, brother, to agree that the project go-ahead is a

15   crucial milestone and, therefore, all the effort has to be

16   remunerated.

17           Are we in agreement on this point, question mark.

18   MULEPE will continue to represent your best interests in

19   Mozambique until the completion of the project implementation.

20           Brother, I am being frank and open with you.  We

21   have people to pay to ensure that the project is given a

22   go-ahead.  I am begging you to understand this and come in my

23   support.

24           I am talking to you as a partner now, we have to

25   release funds to ensure that the go-ahead is given.  You and

POLONITZA - DIRECT - MR. MEHTA          1536

1   me will continue to work on the budget of the entire operation

2   in Mozambique until the completion of the project.  But for

3   this stage, some payments have to be made.

4              MR. MEHTA:  Can we see the defendant's response?

5              (Exhibit published.)

6   A     Hi, brother.  What is the size of the fund we are talking

7   about?  What about the budget of the Mozambique authorities

8   for EEZ?

9              Brother, the mechanism is simple.  The delegation is

10  invited by us to Abu Dhabi.  Contract negotiations are on in

11  Abu Dhabi.

12             The most critical points are budget, which

13  Mozambique authorities will allocate for the project, plus

14  quote/unquote success fees of MULEPE to be added on top of the

15  budget.

16             Delegation returns to Maputo with a draft EEZ

17  contract between Mozambique government and ADMAR.  And the

18  draft quote/unquote success fees contract between ADMAR and

19  MULEPE.

20             The project will start with an advance payment from

21  the Mozambique government to ADMAR.  From this advance

22  payment, the quote/unquote success fees will be disbursed.

23             Brother, nowadays in all international contracts

24  quote/unquote success fees are paid proportionally to the

25  installments in order to ensure a true partnership between the

POLONITZA – DIRECT – MR. MEHTA                1537

1    partners.

2            Nevertheless, a clear quote/unquote success fee's

3    agreement has to be signed before the EEZ contract to protect

4    MULEPE and other project stakeholders.

5            I want to add a very important element.  The EEZ

6    project will include massive civil and infrastructure works in

7    Mozambique.

8            These must be undertaken by MULEPE.  These works

9    constitute a very substantial part of the total project,

10   excluding the quote/unquote success fees.

11           So, please, I beg you to educate the various parties

12   in Mozambique to build our endeavor on a quote/unquote medium

13   to long-term basis and not as a quote/unquote hit-and-run

14   exercise.

15           (Continued on next page.)

16

17

18

19

20

21

22

23

24

25

POLONITZA – DIRECT – MEHTA                    1538

1   DIRECT EXAMINATION (Continued)

2              MR. MEHTA:  Can we go to 2012.  And again to the

3   bottom email on page 3.

4   Q    And can you read the email from the defendant on

5   December 27, 2011.

6   A    Brother, presentation of ADM attached.  You will have a

7   fully fledged proposal in the coming hours.  Any updates from

8   your side?

9   Q    And the response from Moran Harpazi?

10  A    The response from Moran Harpazi on December 27, 2011 to

11  Jean Boustani was:  Hours, question mark.

12  Q    And the response from the defendant?

13  A    The response was could be 72, smiley face.  Teo is

14  pressing a lot so I thought of, quote/unquote, easing him

15  down.

16  Q    The next email please up the chain.  Read that please.

17  A    Hi Jean, the document is ready to be sent as a first

18  draft for internal use.  We still do not have the partners

19  number.  Please check and let me know so we can update the

20  numbers.

21             MR. MEHTA:  Can you please go up to the next email

22  please.

23  Q    The response from the defendant.  Go ahead.

24  A    Hi Moran, they don't want to give their numbers.  They

25  want our figure and add up on it.  That is why I suggest we

POLONITZA – DIRECT – MEHTA          1539

1   address this proposal to Armando Guebuza personally and not

2   the MOD since he requested it in the last meeting at

3   Nobiskrug.  In that case, we avoid any, quote/unquote,

4   official correspondence of numbers which might have potential

5   effects at the end once we add the, quote/unquote, fees of the

6   partners.

7   Q    And what's the response of Mr. Harpazi to the defendant?

8   A    I do not think we can provide it directly to Armando,

9   exclamation mark.  We must have the numbers from them.  How

10  can we do business otherwise, question mark.  We can send the

11  document without numbers, but it will not fulfill the need

12  they mentioned.  Tell Teo that if he wants the proposal he can

13  get it after we know all the numbers.  It's too far down to

14  avoid this.

15       We can send out a proposal with 20 percent for the

16  partners and let them know that this is the reference.

17       What does Bassy say here?

18  Q    And the defendant's response please, read that please,

19  sir.

20  A    Spoke to him and pushed, gently, smiley face.  Give me 30

21  minutes and I will give you the Mozambique figures plus Bassy.

22       FYI, they asked me to address the offer to the

23  president personally.

24       MR. MEHTA:  Let's go to the next exhibit.  That's

25  going to be Government Exhibit 2013, please.  Again, the

POLONITZA – DIRECT – MEHTA                  1540

1   bottom email in the chain.

2   Q    And, sir, can you please read the email from

3   Mr. Nhangumele to Mr. Boustani, the defendant.

4   A    Brother, I have been conducting extensive consultation in

5   relation to the above.  But definitely there is no figure to

6   be thrown out from our side.  As I indicated to you, we have

7   no basis whatsoever to estimate the cost of this solution.

8   Only you and your team, brother, know the costs of radars and

9   stuff.

10        Please feel free to give us the real cost of the

11  medium solution as we discussed and agreed.

12        Please let's move on with whatever figure you have

13  in mind and we will take it from there.

14  Q    And who is it from, Best regards?

15  A    Best regards, Teo.

16  Q    Can you go up please.

17        And he's referencing this email from Mr. Boustani,

18  correct?

19  A    Correct.

20  Q    The earlier email, can you read that please, from the

21  defendant?

22  A    Brother, I can't push my board to publish any figure

23  without adding the stakeholders portion.  I need a percent or

24  figure.  You know our range, bro.  I need yours too.  The

25  proposal will be addressed to HoS, the big boss, after

POLONITZA – DIRECT – MEHTA                    1541

1    clubbing all figures.  It is a must.

2              If it is too early, I can send you the proposal for

3    the concept with no figures.

4    Q    Can we go up to the response from Mr. Nhangumele.

5    A    The response from Mr. Nhangumele to Jean Boustani, dated

6    December 28th, 2011 was, Fine, brother.  I have consulted and

7    please put 50 million chickens.  Whatever numbers you have on

8    your poultry I will add 50 million of my breed.  Regards, Teo.

9    Q    And the response from the defendant?

10   A    Lots of legs.

11             I love your chicken, bro.

12             Done.

13   Q    Can we go to the next exhibit, please, 2015.

14             THE COURT:  So that's what LOL means.  Go ahead.

15             MR. MEHTA:  And can we go the first page, the top

16   two emails, Ms. DiNardo.  Can you blow it up please.

17   Q    We saw the below email just now, right, the 3 million

18   chickens?

19   A    Correct.

20   Q    And it's being forwarded by Mr. Boustani, do you see

21   that?

22   A    I do.

23   Q    To who?

24   A    Basetana Thokoane.

25   Q    Can you read the email from the defendant.

POLONITZA – DIRECT – MEHTA                    1542

1    A    FYI.  Lots of legs for chickens.  I will add 62 million

2    in total.  12 million for you and I equals 5 percent because

3    the budget we put is approximately 240 million.

4              MR. MEHTA:  Can we go to the next exhibit, that's

5    going to be 2016.  Again, if you want to just blow up the

6    bottom two emails.

7              And we have the chickens email that's being

8    forwarded again from Mr. Boustani to Moran Harpazi, do you see

9    that?

10   A    I do.

11   Q    Can you read that, please.

12   A    FYI.  50 million for them and 12 million for Bassy,

13   5 percent.  Total is 62 million on top.  Report to be

14   addressed to the president personally.

15   Q    Can we go up please in that email to the response.

16   Actually I think it's the defendant again.

17             MR. MEHTA:  Keep going please.  There you go.

18   Q    Read that please, sir.

19   A    IS is okay with proposal.

20   Q    Do you remember seeing a letter earlier in the documents

21   from Iskandar Safa?

22   A    I do.

23   Q    What are his initials?

24   A    IS.

25   Q    Can you go further up, please, in the next email from the

POLONITZA – DIRECT – MEHTA                 1543

1    defendant.

2              Read that, sir.

3    A    Good morning.  Shall I send the proposal now, question

4    mark.  IS gave his okay.

5    Q    Can we go to the next Government Exhibit 2018 and blow

6    that up, please.  Thank you.

7              Sir, read the email, please.

8    A    This is an email from Jean Boustani to Teo Nhangumele

9    dated December 31st, 2011.

10             Brother Teo, the EEZ proposal addressed to HoS.

11   Awaiting your feedback.

12   Q    We saw HoS earlier as well, didn't we?

13   A    We did.

14   Q    Based on the review of the documents here, it's saying

15   it's addressed to HoS, what's the attachment, the letter to

16   who?

17   A    The president.

18   Q    Based on that, what does HoS refer to?

19   A    Head of State.

20             MR. MEHTA:  Look at the attachment, please.  It's

21   going to be 2018-A.  Can you blow that up please.  Can we go

22   to 2018-C.

23             Can you see who the letter is addressed to?

24   A    Yes.  Armando Guebuza, the president of Mozambique.

25             MR. MEHTA:  And can we actually go down to the

GEORGETTE K. BETTS, RPR, FCRR, CCR
Official Court Reporter

POLONITZA - DIRECT - MEHTA                    1544

1   letter.

2   Q    And without reading the entire letter, can you just read

3   the first sentence.

4   A    Abu Dhabi MAR group ADM is honored to propose for the

5   government of Mozambique an Exclusive Economic Zone, EEZ,

6   Monitoring and Protection System.

7          MR. MEHTA:  And can you go to the second page,

8   please.  Blow that up, please.

9   Q    Can you read that sentence and who is it signed by?

10  A    With this in mind, I look forward to our meeting as soon

11  as it is convenient for you to conclude and launch this

12  project.  Sincerely, Iskandar Safa, chairman.

13         MR. MEHTA:  Can we go to 2018-B.  And can we blow up

14  the top please first.

15  Q    Can you read that, please, sir, the top sentence under

16  Program Total Price.

17  A    The prices for the proposed tasks and deliverables as

18  described in the, quote, Mozambique EEZ Monitoring and

19  Protection Solution, document ending in zero one, dated

20  December 31st, 2011, are as follows.

21  Q    And can you just kind of scroll down.  Do you see the

22  various system components listed, Mr. Polonitza?

23  A    I do.

24  Q    And keep going down, please.  At the bottom is there a

25  final price?

POLONITZA – DIRECT – MEHTA                    1545

1    A    There is.

2    Q    Can you read that please to the jury.

3    A    $352,650,067.

4         MR. MEHTA:  Can we go to Government Exhibit 2046 and

5    on this one can we go to the bottom of page 1.

6    Q    And can you read that email, just first sentence and just

7    tell us from/to/date and the first sentence.

8    A    This is an email from Dolphin Global LTD to Logistics

9    International, sent on July 11th, 2012, that reads:

10        Hi Sandy, please find attached updated draft

11   proposals for Mozambique EEZ program.

12   Q    And is this copied to the defendant Jean Boustani, this

13   email?

14   A    It does.

15   Q    Do you see where it says, Main Changes as Follows?

16   A    I do.

17   Q    Can you read the first three points.

18   A    Number 1:  Finance costs.  $40 million which need to be

19   absorbed in the proposal.

20        Number 2:  Additional commission of $3 million.

21        And number 3:  Total budget raised from $352 million

22   to $355 million.

23   Q    If we can just go back to number 2015 and if you could

24   just go to the second email -- I'm sorry, the top email.

25        What is the total amount for the additional amount

POLONITZA – DIRECT – MEHTA                    1546

1    listed there, the "I will add," what's that amount total?

2    A    62 million.

3    Q    And then what number do you see there in the prior

4    exhibit for commissions?

5    A    3 million.

6    Q    If you add that up it's $65 million?

7    A    That's correct.

8    Q    Can we go to Government 2044.

9            Can we see the top email, it's from the defendant?

10   A    Correct.

11   Q    It's forwarding an email; is that correct?

12   A    It is.

13           MR. MEHTA:  Can we scroll down.

14   Q    Can you read what he's forwarding?

15   A    Hi, attached is the updated commercial proposal with the

16   following updates:

17           Number 1:  Payment schedule changed as communicated.

18   The previous one was program oriented.  This one is,

19   quote/unquote, bank related.

20           Additional 3 million commission as communicated.

21           Number 3:  Systems changes.

22           Two mobile radars instead of four.

23           One HF radar instead of three.

24           Costs and price breakdown and the updated technical

25   proposal is attached for your review.

POLONITZA - DIRECT - MEHTA                    1547

1    Q    And there is an attachment; is that correct?

2              MR. MEHTA:  Can you go up and go to 2044-A.

3    Q    Do you see the attachment?

4    A    I do.

5              MR. MEHTA:  Can we blow up just top title so the

6    jury can see the title, please.

7    Q    Read that please, sir.

8    A    Mozambique EEZ program Phase 1, cost and price.

9              MR. MEHTA:  Can you come out of there again.

10   Q    You see where it says confidential next to it?

11   A    I do.

12             MR. MEHTA:  Can we blow up just the top left chart,

13   the first four rows.

14             Can you read that, ladies and gentlemen?

15   Q    Do you see various assets and quantities and costs on

16   this?

17   A    I do.

18   Q    For example, do you see the top one says, Manned Radar

19   Stations?

20   A    I do.

21   Q    Quantity six?

22   A    Correct.

23   Q    What's the unit cost?

24   A    1 million.

25   Q    And then you see where it says, Mobile Radar Station?

POLONITZA – DIRECT – MEHTA                    1548

1    A    I do.

2    Q    How many of those are there?

3    A    Two.

4    Q    How much do they cost?

5    A    800,000 a piece.

6    Q    Do you see where it says, OPV?

7    A    I do.

8    Q    How many of those are there?

9    A    Two.

10   Q    How much do they cost?

11   A    Twenty-seven and a half million.

12   Q    And then at the bottom do you see a total price for the

13   project?

14   A    I do.

15   Q    The EEZ project?

16        What is it?

17   A    170,423,000.

18        MR. MEHTA:  Let's come out of this chart.

19        The bottom left chart, please, blow it up.

20   Q    Can you read that, please, the whole chart?

21   A    Cost to price equals cost plus risk, plus profit, plus

22   partners, plus finance.

23        Total costs, 170,423,000.

24        ADM risk, 10 percent 17,042,300.

25        ADM profit, 25 percent, 62,488,433.

POLONITZA – DIRECT – MEHTA                1549

1          MR. MEHTA:  Can you move it back to where it was.

2    Thank you.

3    A     Partners, 65 million.  Finance, 40 million.  And the

4    grand total, 354,953,733.

5    Q     Is the 65 million-dollar number similar to the number we

6    saw earlier when we added up the chickens and the commission?

7    A     Yes.

8          MR. MEHTA:  Can we come out of this please.  Let's

9    go to the next -- can we blow up the first seven rows so it's

10   going to be -- exactly.  And maybe just do the first half or

11   it maybe too small I think.

12   Q     Do you remember we saw manned radar stations?

13   A     Yes.

14   Q     You see the unit cost?

15   A     I do.

16   Q     What is that?

17   A     The ADM unit price is 2,082,781.

18   Q     Is that more than double the unit cost in Column 3?

19   A     It is.

20   Q     Remember we looked at mobile radar stations?

21   A     I do.

22   Q     How much were those for a unit cost?

23   A     1,666,225.

24   Q     And is that more than double the column in Column 3?

25   A     It is.

POLONITZA – DIRECT – MEHTA                    1550

1    Q    And then look at the OPV, what's the ADM unit price?

2    A    57,276,469.

3    Q    And that's approximately $30 million more than the price

4    listed on the third column?

5    A    Approximately, yes.

6    Q    More than double?

7    A    Correct.

8    Q    And can we keep scrolling down, please, on this.  In

9    fact, all of these items are more than double; is that right?

10   A    It appears so, yes.

11   Q    And we get to the total, what's the total price now?

12   A    354,953,733.

13   Q    Is that over a hundred and 84 million dollars more than

14   the cost?

15   A    Approximately, yes.

16          MR. MEHTA:  Let's go to Government Exhibit 2020 --

17   I'm sorry 2044-B.

18   Q    This is a price proposal?

19   A    Yes.

20   Q    Can you go to total price at the bottom.

21   A    $354,953,733.

22   Q    Is that the same as the total price that we just saw in

23   the prior exhibit?

24   A    It's the exact same, yes.

25          MR. MEHTA:  Can we go now to 2021.  Can we blow up

POLONITZA – DIRECT – MEHTA                    1551

1    the top first, please, the top email.

2    Q    Who is this from?  Who is it to?  Can you read it,

3    please?

4    A    This email is from Jean Boustani to Said Freiha, subject

5    regarding Mozambique dated February 20th, 2012.

6    Q    Read it, please.

7    A    Hi, Said.  Answers in red.

8    Q    Can we scroll down, please.  You see there are a number

9    of questions?

10   A    I do.

11   Q    From Said Freiha at Credit Suisse.com?

12   A    I do.

13   Q    Dear Jean, do you see that?

14   A    Yes.

15   Q    Can you look at the last bullet, it's the fourth one.

16        MR. MEHTA:  Can we blow that up please.

17   Q    Can you read that, please.

18   A    The Mozambique government never pays market rates and

19   typically deals get done on the basis of a subsidy to be paid

20   by the contractor to the lender -- the contactor to the

21   lender.  Will that be the case here and what is the

22   profitability of the project for you, question mark.

23   Q    Can you read the answer by defendant Jean Boustani.

24   A    As discussed, Abu Dhabi MAR does not want the deal in the

25   financing of this project.

POLONITZA – DIRECT – MEHTA                1552

1          THE COURT:  Does not want to deal.

2    A    Does not want to deal in the financing of this project.

3          The sole borrower is the Mozambican government who

4    will then open an LC in favor of Abu Dhabi MAR.  The

5    Mozambique government will be directing local banks to

6    participate in this syndication.

7          All guaranties for the loan to be given by the

8    authorities to CS.  A, quote/unquote, premium is well expected

9    by the Mozambicans.  Abu Dhabi MAR built up this project since

10   August 2011 on a, quote, cost plus basis together with the

11   Mozambican authorities.

12         Our profit approximately 10 percent and this is why

13   and how we got selected.

14   Q    Can we go back to 2044-A, the bottom left chart, please.

15   You see where it says, Profit?

16   A    I do.

17   Q    What does it say?

18   A    25 percent.

19   Q    And then you see where it says, Risk?

20   A    Yes.

21   Q    What does that say?

22   A    10 percent.

23   Q    What's the total risk and profit together in amount of

24   money approximately?

25   A    It's 35 percent for a total of approximately $79 million.

POLONITZA – DIRECT – MEHTA                    1553

1    Q    Can we go to Government Exhibit 2020, please.  And is

2    this an email that's being forwarded by the defendant?

3    A    Yes.

4    Q    From an email he had sent?

5    A    Yes.

6    Q    Can you just kind of give the details of those emails,

7    please.

8    A    Sure.  So the original email appears to be an email from

9    Jean Boustani to Teofilo Nhangumele dated January 20th, 2012,

10   with the subject of consultancy agreement.

11        MR. MEHTA:  Can we look up the attachment, it's

12   going to be 2020-A.  Can you blow up the top, please.

13        Can you read the second paragraph.

14   A    Whereas, company wishes to participate in a consortium or

15   otherwise to execute a contract to provide Exclusive Economic

16   Zone Monitoring and Protection Solution based on the proposal,

17   reference ending PRJ01, dated on December 31st, 2011 with a

18   total value of 352,650,067 U.S. dollars.  The, quote/unquote,

19   project for the Republic of Mozambique, the, quote/unquote,

20   client.

21   Q    Can we go down to page 2, please.  Do you see where it

22   says, Compensation for Services?

23   A    I do.

24   Q    Can you read Section 7.1.

25   A    7.1.  Company shall pay consultant as compensation for

POLONITZA - DIRECT - MEHTA                    1554

1   its services pursuant to this agreement a fee equal to

2   50 million U.S. dollars including VAT representing

3   14.178 percent of the value of the proceeds of the project

4   received following the successful award of the project to the

5   company.

6   Q     Can you go back to 2015.  You see the number $50 million

7   here?

8   A     I do.

9           MR. MEHTA:  Go back to 2015, please.  Can you blow

10  up the second email from Mr. Nhangumele.

11  Q     Is the 50 million-dollar number the same as the

12  50 million chickens number Mr. Nhangumele refers to there?

13  A     It is.

14          MR. MEHTA:  Can you come out of that please.  Let's

15  go back to the contract, 2020-A.

16  Q     And can we just see what the company is called here, it's

17  going to be in the first paragraph.

18  A     Abu Dhabi MAR LLC.

19  Q     And can we go to the -- I'm going to tell you it's going

20  to be page 2 again under covenants and warranties and

21  representations.

22          MR. MEHTA:  I want you to blow up provision 5.2.

23  Q     Read that, sir, please?

24  A     5.2.  Consultant represents and warrants that neither

25  consultant nor any of its shareholders, directors, officers,

POLONITZA – DIRECT – MEHTA                    1555

1    employees or consultants is officials or public servants of

2    any government or state authority or directors or employees of

3    any state-controlled company or entity.

4                MR. MEHTA:  Can we go to Government Exhibit 2027.

5    Let's go to page 2, the bottom email.  Blow that up, please.

6    Q    You see this is an email from Jean Boustani the

7    defendant?

8    A    I do.

9    Q    Details please and read the email, please.

10   A    Email from Jean Boustani to Said Freiha, Surjan Singh,

11   Edward Kelly CC Teofilo Nhangumele sent on March 7th, 2012

12   with the subject of MOZ EEZ project.

13   Q    Read the email please.

14   A    Dear Said, Surjan and Kelly, I have communicated with

15   Mr. Teofilo Nhangumele copied in this email yesterday night.

16   Mr. Nhangumele heads the team assigned to the EEZ project from

17   the office of HE, the president.

18   Q    Do you remember seeing a reference to HE earlier?

19   A    I do.

20   Q    In front of Mr. Armando Guebuza's name?

21   A    Yes.

22   Q    Do you know what that refers to?

23   A    I believe it refers to his excellency.

24   Q    Keep reading, sir.

25   A    The team is finalizing internal procedures and will

POLONITZA – DIRECT – MEHTA          1556

1    shortly engage with Credit Suisse and Abu Dhabi MAR over the

2    relevant details pertaining to the financing agreement,

3    project contract and implementation plans.

4              Nevertheless, for any queries, please do not

5    hesitate to contact Mr. Nhangumele on his cell number ending

6    in 75140 in case you need to expedite financing matters,

7    quote/unquote, in advance.  Regards, Jean.

8    Q    Can you see the email that comes up after that response

9    from Mr. Said Freiha?

10   A    I do.

11   Q    Can you read that, please.

12   A    The response states:  Dear Jean, sorry to bother you with

13   the below but both for internal KYC and credit purposes can

14   you please help us with the following:  Was there a bidding

15   process on the EEZ project, question mark.  Can you please

16   give us the background.

17             Given that Abu Dhabi MAR's expertise is mainly in

18   shipbuilding, is this new business for you and, if so, how are

19   you getting the expertise.

20             Surjan, Ed, do you have other questions?

21   Q    Can you read his response to Jean Boustani.  It's a

22   lengthy email, maybe you can read the first four paragraphs.

23   A    Sure.

24             Hi Said, the EEZ project in Mozambique was, quote,

25   created by Abu Dhabi MAR.  Meaning that through our high level

POLONITZA – DIRECT – MEHTA                    1557

1    connections we managed to persuade the authorities to protect

2    their EEZ and their natural resources.  The process started

3    more than a year ago.  Then we have been requested to design

4    the concept and to send them the proposal.

5            The budget was decided by the authorities based on

6    our advice in order to cover the full territorial waters.

7            For their privacy and security purposes and due to

8    the above mentioned facts, we have been selected to execute

9    the project.  A private tendering process occurred for the

10   selection of the different hardware equipment.  Whereby

11   various suppliers have been invited to do supply the best

12   equipment for the best price.  We acted like an advisor for

13   the authorities.

14           MR. MEHTA:  Can we go to 2758.  I believe that's not

15   been offered yet, Your Honor, so I offer it now.

16           THE COURT:  Any objection to 2758?

17           MR. JACKSON:  No objection, Your Honor.

18           THE COURT:  It's admitted.  It is the last document

19   of the day, ladies and gentlemen.

20           MR. MEHTA:  Yes, Your Honor.

21           Can you blow it up, sir.

22           (Government Exhibit 2758, was received in evidence.)

23           (Exhibit published.)

24   Q    Can you read the email, sir, from the defendant?

25   A    This is an email from Jean Boustani to Najiallam@me.com,

POLONITZA – DIRECT – MEHTA                1558

1    sent April 8, 2014 with the subject line regarding invoice.

2              125 for all for everything.

3              Less:  60 still for A.

4              Total is 65.

5              Spread was:  A:  4 on account.

6              Teo:  8.5.

7              Bruno:  8.5.

8              Chopstick:  7.

9              Esalt:  3.

10             Ros:  15.

11             Ros 2:  1.

12             Professor:  1.

13             Euge:  1.

14             Inro:  1.

15             DG:  13.

16             NUY: 2, which we did for the SMS I sent you 10 days

17   ago.

18             All is done except:  Five still for DG which we will

19   split 1.7/1.7/1.6.

20             And 2 for Esalt.

21   Q    Can you scroll down and just see what the response is

22   from to the earlier emails.  Can you go all the way to the

23   bottom and stop right there.

24             Can you read the email that's forwarded from the

25   defendant from Manuel Jorge?

POLONITZA – DIRECT – MEHTA                    1559

1    A    Email from Manuel Jorge to Jean Boustani, on April 8th,

2    2014 forwarding invoice for three beijos.

3    Q    And the response from the defendant?

4    A    Please let's do one Isalt or Esalt, her total is 2.

5         We do only one for now please.

6    Q    And the next email, please.

7    A    From Najib Allam to Jean Boustani.  Hi, with me Esalt is

8    zero.

9    Q    Next email, sir, from the defendant Jean Boustani.

10   A    Question mark.  For EMATUM, exclamation mark.  There must

11   be a mistake.  There should be two for her.

12   Q    And finally, the last email before we got to the email

13   before from the defendant?

14   A    You still have the paper I handed you in France, question

15   mark.

16            MR. MEHTA:  We'll stop there, Your Honor.

17            THE COURT:  We will indeed.

18            Ladies and gentlemen of the jury, it's 5 o'clock.

19   Enjoy your weekend.  Do not talk about the case and we will

20   see you on Monday at 9:30.  Thank you.

21            THE COURT:  And, sir, you will not discuss your

22   testimony with anyone during the break.  We will see you

23   Monday morning at 9:30 to resume your examination.

24            THE WITNESS:  Yes, sir.

25            THE COURT:  Have a good weekend everyone.

POLONITZA – DIRECT – MEHTA                    1560

1          JURY:  Thank you, Your Honor.

2          (Jury exits courtroom.)

3          THE COURT:  You may be seated.  The jury has left

4     the courtroom, the defendant is still present.  Do we have any

5     issues to address with counsel before we adjourn for the

6     weekend?

7          MR. BINI:  Not from the government.

8          THE COURT:  For the defense?

9          MR. JACKSON:  None from us, thank you, Your Honor.

10         THE COURT:  Have a good weekend, see you at 9:30.

11         MS. MOESER:  Thank you, Your Honor.

12         MR. BINI:  Thank you, Your Honor.

13         THE COURT:  Thank you.

14         (Whereupon, the trial adjourned at 5:00 p.m. to

15    resume Monday, October 28, 2019 at 9:30 a.m.)

16

17

18

19

20

21

22

23

24

25

1561

```
 1                      I N D E X

 2   WITNESS                            PAGE

 3   WENDY SPAULDING

 4   DIRECT EXAMINATION   BY MS. MOESER     1429
     CROSS-EXAMINATION    BY MR. JACKSON    1498
 5
     JONATHAN POLONITZA
 6
     DIRECT EXAMINATION   BY MR. MEHTA      1521
 7

 8                    E X H I B I T S

 9   GOVERNMENT              PAGE

10   1                      1375
     8                      1375
11   10                     1375
     29                     1376
12   31                     1376
     37                     1376
13   38                     1376
     48                     1376
14   50                     1377
     57                     1377
15   58                     1377
     79                     1377
16   115                    1377
     117                    1378
17   118                    1378
     119                    1378
18   207                    1378
     211                    1378
19   212                    1379
     215                    1379
20   216                    1379
     222                    1379
21   241                    1379
     249                    1380
22   250                    1380
     251                    1380
23   252                    1380
     303                    1380
24   304                    1381
     306                    1381
25   308                    1381
     310                    1381
```

1562

```
1            E X H I B I T S

2    GOVERNMENT              PAGE

3    314                     1381
     315                     1382
4    1401                    1382
     1402                    1382
5    1834                    1382
     1836                    1383
6    1840                    1383
     1842                    1383
7    2404-D                  1383
     2732B                   1384
8    3013B, 3013C, and 3013D 1384
     3016B                   1384
9    1301A                   1390
     1201-4                  1391
10   1201A1 through 1201A14  1391
     1201B1 trough 1201B6    1391
11   1201C1 through 1201C14  1392
     1201D1 through 1201D3   1392
12   1201E1 through 120E22   1392
     1201F1 through 1201F9   1392
13   1201G1 through 1201G2   1392
     1201H1 through 1201H7   1392
14   1201I1 through 1201I18  1393
     1201J1 through 1201J28  1393
15   714                     1393
     1519                    1441
16   1520                    1444
     1521                    1444
17   1522                    1444
     1523                    1444
18   1524                    1445
     1525                    1445
19   1526                    1445
     1527                    1445
20   1528                    1445
     1529                    1446
21   1530                    1446
     1531                    1446
22   1843                    1470
     2462                    1472
23   2613 and 2613A          1473
     2325, 2325A, and 2325B  1476
24   2351 and 2351A          1478
     2766                    1479
25   2780                    1479
     3186                    1481
```

1563

1          E X H I B I T S

2    GOVERNMENT              PAGE

3    2744                    1485
     5108                    1486
4    2752                    1487
     2752B                   1487
5    2775                    1488
     2762 and 2762A          1489
6    3190, 3191              1524
     3191A, 3191B, 3192      1524
7    2007, 2012, 2013        1524
     2015, 2016              1524
8    2018, 2018A, 2018B, 2018C 1525
     2046                    1525
9    2044, 2044A, 2044B      1525
     2021, 2020, and 2021A   1525
10
     DEFENDANT               PAGE
11   2758                    1557

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*